### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Chapter 11 |
| ROOSEVELT INN, LLC, | |
| Debtor. | Case No. 21-11697(AMC) |
| In re: | Chapter 11 |
| ROOSEVELT MOTOR INN, INC., | |
| Debtor. | Case No. 21-11698(AMC) |

### DECLARATION OF ANTHONY UZZO IN SUPPORT OF
### CHAPTER 11 PETITIONS AND FIRST DAY MOTIONS

I, ANTHONY UZZO, declare under penalty of perjury:

1.    I am currently an officer of Roosevelt Inn, LLC (the "Management Debtor"), a Delaware limited liability company, and the Vice President of Roosevelt Motor Inn, Inc. (the "Real Estate Debtor"), a Pennsylvania corporation, each a debtor and debtor in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"). In this capacity, I am generally familiar with the Debtors' day-to-day operations, organizations, financial affairs, and books and records.

2.    On June 16, 2021 (the "Petition Date"), each of the Debtors filed a voluntary bankruptcy petition with the United States Bankruptcy Court for the Eastern District of Pennsylvania under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code").

3.    The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.    Except as otherwise indicated, all facts set forth herein are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of

relevant documents, and information supplied to me by other members of the Debtors' management and employees, and the Debtors' advisors. I am authorized to submit this Declaration on behalf of the Debtors, and, if called upon to testify, I would testify competently to the facts set forth herein

5.      I submit this Declaration (1) to provide an overview of the Debtors and these chapter 11 cases and (2) in support of the Debtors' chapter 11 petitions and "first day" motions (each, a "First Day Motion" and collectively, the "First Day Motions") and the relief requested in the proposed orders therein (each, a "Proposed Order" and collectively, the "Proposed Orders"), which have been filed to minimize the adverse effects of filing for chapter 11 protection and to enhance the Debtors' ability to maximize the value of their estates.

**The Debtors' Business**

**Background**

6.      The Debtors operate a hotel property in Northeast Philadelphia. In the early 1960's, Joseph Cion and a business partner built, and then operated, the Roosevelt Inn hotel located at 7600 Roosevelt Boulevard, Philadelphia, Pennsylvania.[1]

7.      The Management Debtor has operated profitably since it began operating the Roosevelt Inn.

8.      The Joseph Cion Irrevocable Trust of 1993 and the Trust UWO Henriette Jacobsen each own fifty (50%) of the membership interests in the Management Debtor and the stock of the Real Estate Debtor.

9.      Joseph Cion's daughter, Blanche Bersch, is still involved with the ownership of the Roosevelt Inn. In addition to Ms. Bersch, the Roosevelt Inn employs several individuals and

---

[1] The City of Philadelphia property records identify the street address for the property as 7630 E. Roosevelt Boulevard but its mailing address is Roosevelt Inn, 7600 Roosevelt Boulevard, Philadelphia, PA 19152.

representatives, including its hotel general manager, Yagna Patel ("Patel"), who has worked for the Roosevelt Inn for more than 30 years.

### Corporate Structure and Prepetition Indebtedness

10.     The Debtors' corporate structure is common for a hotel business.  The Real Estate Debtor holds title to the hotel property, and the Management Debtor is the operator of the hotel.

11.     The Debtors do not have any secured indebtedness.  A mortgage held by Royal Bank of Pennsylvania secured by the hotel property was fully satisfied by the Debtors prior to the Petition Date.

12.     In the ordinary course of business, the Debtors incurred unsecured indebtedness to various trade vendors, utility providers, service providers, and taxing authorities, among others. As of the Petition Date, the Debtors' estimated outstanding unsecured indebtedness is approximately $70,000.

### Circumstances Giving Rise to These Cases

13.     Beginning in March 2017, the Debtors were served with what would be the first of five lawsuits that alleged statutory and common law negligence claims associated with the sex trafficking of minors.  These complaints generally allege that traffickers would bring minors to the Roosevelt Inn for the purpose of commercial sex work.

### FBI Investigation and Criminal Case against the Sex Traffickers

14.     In 2014, before the civil actions were commenced against the Debtors, Debtors learned that the FBI, as part of a broader nationwide mandate to disrupt sex trafficking operations, conducted surveillance of the Roosevelt Inn.  When Ms. Bersch learned of the investigation, she called the FBI and spoke with an agent to aid the investigation, pledging the cooperation and support of herself and the hotel.

15.     Mr. Patel, acting in his capacity as an employee and General Manager of the

Roosevelt Inn, also routinely cooperated with various law enforcement agencies over the course of his employment at the Roosevelt Inn.

16.    Ms. Bersch's contact and communication with the FBI to answer any questions the FBI had about the Roosevelt Inn, and Mr. Patel's similar assistance to law enforcement, highlight that the Roosevelt Inn always fully cooperated with all law enforcement agencies that requested assistance.  For example, local law enforcement would occasionally ask employees of the Roosevelt Inn for guest registries or trash items from guests' rooms and would always receive the hotel staff's cooperation and assistance.

17.    In the end, neither the FBI nor any other law enforcement agency charged any employee or owner of the Roosevelt Inn with any crime associated with sex trafficking, and the Philadelphia District Attorney's Office never attempted to shut down the Roosevelt Inn as a public nuisance.

18.    Several traffickers were charged by the United States Attorney for the Eastern District of Pennsylvania and the District Attorneys' Offices of Philadelphia and Bucks Counties and were ultimately convicted of sex trafficking crimes they committed at various Philadelphia hotels, including the Roosevelt Inn.

19.    The traffickers have consistently testified that they went out of their way to conceal their actions and activities.  They also testified that the employees of the Roosevelt Inn were not aware of their actions and that the Roosevelt Inn would throw out any guest who was caught breaking the rules, breaking the law, or disruptive, and maintained a list of guests who were permanently banned from ever staying at the Inn again.

**The Civil Actions against the Debtors**

20.    The complaints against the Debtors generally assert claims for negligence, alleging

that sex trafficking occurred at various times from 2008 through 2015 at the Roosevelt Inn. The

pending cases against the Debtors in the Philadelphia County Court of Common Pleas are:

   a.  *M.B., minor by her Guardian, William A. Calandra, Esq. v. Roosevelt Inn*

*LLC (d/b/a Roosevelt Inn and Roosevelt Inn Café); Roosevelt Motor Inn, Inc. (d/b/a Roosevelt*

*Motor Inn); UFVS Management Company, LLC; and Yagna Patel, et al.*, Case No. 00712,

Philadelphia County Court of Common Pleas, March Term, 2017.  Plaintiff M.B. is represented

by Kline & Specter, P.C.  One of Debtors' insurance carriers, Samsung Fire & Marine Insurance

Co. Ltd. ("Samsung"), pays the legal defense costs for the Debtors in the M.B. case.

   b.  *C.A. v. Roosevelt Inn LLC (d/b/a Roosevelt Inn); Roosevelt Motor Inn, Inc.;*

*UFVS Management Company, LLC, et al.*, Case No. 03355, Philadelphia County Court of

Common Pleas, March Term, 2019.  Plaintiff C.A. is represented by Kline & Specter, P.C.  Two

of Debtors' insurance carriers, Nationwide Mutual Insurance Company ("Nationwide") and

Samsung, split legal defense costs for the Debtors in the C.A. case.

   c.  *B.H. v Roosevelt Inn LLC (d/b/a Roosevelt Inn); Roosevelt Motor Inn, Inc.;*

*UFVS Management Company, LLC; et al.*, Case No. 03356, Philadelphia County Court of

Common Pleas, March Term, 2019.   Plaintiff B.H. is represented by Kline & Specter, P.C.

Nationwide and Samsung split legal defense costs for the Debtors in the B.H. case.

   d.  *K.R. v. Roosevelt Inn LLC (d/b/a Roosevelt Inn); Roosevelt Motor Inn, Inc.*

*(d/b/a Roosevelt Motor Inn); UFVS Management Company, LLC; et al.*, Case No. 00552,

Philadelphia County Court of Common Pleas, November Term, 2019. Plaintiff K.R. is represented

by Kline & Specter, P.C.  Nationwide and Samsung split legal defense costs for the Debtors in the

K.R. case.

   e.  *A.H. v. Roosevelt Inn LLC (d/b/a Roosevelt Inn); Roosevelt Motor Inn, Inc.;*

*UFVS Management Company, LLC; and Yagna Patel, et al.*, Case No. 02954, Philadelphia County Court of Common Pleas, January Term, 2020.  Plaintiff A.H. is represented by Saltz, Mongeluzzi & Bendesky, P.C.  Debtors' insurance carriers, Praetorian Insurance Company ("Praetorian") and Public Service Mutual Insurance ("PSMI") refused to undertake Debtors defense in the A.H. case, leaving Debtors to fund the defense of this case.

21.     In each of these cases, Debtors joined the traffickers as parties to the lawsuits.

22.     A settlement demand made in the M.B. case exceeds the value of the assets of the Roosevelt Inn, and Plaintiffs seek punitive damages in each of the cases.

**Insurance Coverage Dispute and Impending Trial Date in the M.B. Action**

23.     To compound matters, Samsung sued the Debtors, UFVS Management Company, and Yagna Patel seeking a judicial determination that it has no obligation to defend and/or indemnify the Debtors, UFVS Management Company, and Mr. Patel under the policies it issued to Debtors in connection with the M.B., C.A., B.H. and K.R. cases.  The Samsung's insurance litigation is currently pending in the U.S. District Court for the Eastern District of Pennsylvania, C.A. 18-cv-04365 (CDJ).

24.     Debtors counterclaimed against Samsung and filed third party claims against Nationwide, and its umbrella insurance carrier, ACE Property and Casualty Insurance Company ("ACE").

25.     Debtors' claims against Samsung and Nationwide seek a judicial determination that Samsung and Nationwide are obligated to defend and indemnify Debtors in the M.B., C.A., B.H. and K.R. cases.

26.     As ACE denied coverage to Debtors altogether on the basis of an exclusion in its policy excluding coverage for sexual abuse and molestation, Debtors' claim against ACE seeks

damages for breach of contract.

27.     Samsung, Nationwide and Debtors filed cross-motions for Judgment on the Pleadings in March 2020, which have yet to be resolved in the District Court.

28.     At that time, ACE filed a Motion to Dismiss, which also remains unresolved in the District Court.

29.     Although the Debtors moved to continue the M.B. trial until the insurance coverage dispute outlined above was resolved, this request was denied.

30.     Jury selection is scheduled to begin on June 17 for the M.B. trial.  Trial is scheduled to begin next Monday, June 21, 2021.

31.     Debtors have also instituted coverage litigation against Praetorian and PSMI in connection with the claim brought by A.H.  The litigation against Praetorian and PSMI is pending in the Court of Common Pleas in Philadelphia County No. 2007-01464.

**Summary of First Day Motions**

32.     To minimize the adverse effects of the commencement of these cases, the Debtors have requested a variety of relief in the First Day Motions filed concurrently herewith.  I am familiar with the contents of each of the First Day Motions, and to the best of my knowledge, information, and belief, the facts set forth therein are true and correct.  I believe that the relief sought therein is necessary to permit an effective transition into chapter 11.  A description of the relief requested in and the facts supporting each of the First Day Motions is set forth below.

**First Day Motions**

A.     **Motion of the Debtors for an Order Directing Joint Administration of Their Related Chapter 11 Cases**

33.     The Debtors in these chapter 11 cases are affiliated entities. The Real Estate Debtor and the Management Debtor have the same owners, the Joseph Cion Irrevocable Trust

7

of 1993 and the Trust UWO Henriette Jacobsen, each owning 50%. I am a vice president of the Real Estate Debtor and an officer of the Management Debtor. The Debtors request that, in light of the fact that Real Estate Debtor and the Management Debtor have each filed a petition in this Court, the Court can and should jointly administer these chapter 11 cases.

34.    I believe that jointly administering these chapter 11 cases: (a) will ease the administrative burden on the Court and the parties; (b) will protect creditors of different estates; and (c) will simplify the United States Trustee's supervision of the administrative aspects of the chapter 11 cases. Accordingly, I believe that joint administration is in the best interests of the Debtors' estates.

**B.    Motion of Roosevelt Inn, LLC for an Order Authorizing and Approving Maintenance and Use of Existing Bank Accounts; Use of Existing Books, Records, and Business Forms; and Continued Use of Existing Investment Guidelines**

35.    By this Motion, the Management Debtor seeks entry of an order authorizing the Debtor to maintain and use its existing bank accounts and merchant accounts at Wells Fargo Bank, N.A; existing books, records, and business forms; and investment guidelines. The Management Debtor is not seeking authority to maintain the existing account at Morgan Stanley which will be closed by the Management Debtor after the Petition Date and the monies deposited into the Management Debtor's other bank accounts.

36.    The use of the existing accounts at Wells Fargo Bank, N.A. are essential to maintaining the Management Debtor's operations during this case and, therefore, to maximize the value of the Management Debtor's estate. The Management Debtor uses the merchant account to collect credit card sales from its operations that are deposited into the operating account and utilized to pay vendors, manage and support business operations, and pay its payroll.

**C.** **Motion of Roosevelt Inn, LLC for an Order (A) Authorizing the Debtors to Pay Certain Pre-Petition (I) Wages, Salaries, and Other Compensation, (II) Reimbursable Employee Expenses; (B) Confirming that the Debtor May Continue Pre-Petition Employee Programs in the Ordinary Course of Business; and (C) Directing Banks and Other Financial Institutions to Honor all Related Checks and Electronic Payment Requests**

37.    As of the Petition Date, the Management Debtor employs nineteen (19) employees.

38.    To minimize the personal hardship that the Debtor's employees would suffer if pre-petition wages and are not paid when due or as expected, and to maintain morale and stability in the Debtor's workforce during this critical time, by this Motion, the Debtor seeks authority to pay and honor, in its sole discretion, certain pre-petition claims for, wages, salaries and other compensation, expense reimbursement, federal and state withholding taxes, and other amount withheld (including, garnishments), holidays, vacation and all other benefits that the Management Debtor has historically provided in the ordinary course of business and to pay all costs incident to the foregoing.

39.    The Debtor will not pay any prepetition wage claims over the priority limit of 11 U.S.C. § 507(a)(4), presently $13,650.00.

**D.** **Motion of Roosevelt Inn, LLC for Entry of an Order Providing Utility Companies With Adequate Assurance of Payment Pursuant to 11 U.S.C. § 366**

40.    In connection with the operation of its business, the Management Debtor obtains electric, water, telephone, internet and other similar utility services provided by a number of utility companies.

41.    Preserving utility services on an uninterrupted basis is essential to the Management Debtor's ongoing operations and, therefore, to the success of its reorganization. Indeed, any interruption of utility services, even for a brief period of time, would disrupt the Management Debtor's operations.  Such a result could seriously jeopardize the Management

Debtor's reorganization efforts and, ultimately, its enterprise value and creditor recoveries. It is, therefore, critical that utility services continue uninterrupted during this chapter 11 case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15th day of June, 2021.

_____
Anthony Uzzo, *Vice President*
*Roosevelt Motor Inn, Inc.*
*and officer of Roosevelt Inn, LLC*