**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **In re:** | : | **CHAPTER 11** |
| | : | |
| **ROOSEVELT INN, LLC and** | : | **Bky. No. 21-11697(AMC)** |
| **ROOSEVELT MOTOR INN, INC.** | : | |
| | : | **JOINTLYADMINISTERED** |
| **Debtors** | : | |
| | : | |

---

**JOINT PLAN OF REORGANIZATION
PROPOSED BY DEBTORS-IN-POSSESSION**

---

**KARALIS PC
Aris J. Karalis
Robert W. Seitzer
1900 Spruce Street
Philadelphia, PA 19103
(215) 546-4500
Attorneys for the Debtors
and Debtors in Possession**

**Dated: December 16, 2022**

# TABLE OF CONTENTS

PAGE NO.

ARTICLE I    Definitions, Rules of Interpretation, and Computation of Time ............................1
    A.    Scope of Definitions ...................................................................................1
    B.    Definitions ....................................................................................................1
    C.    Rules of Interpretation ..............................................................................20
    D.    Computation of Time .................................................................................21
    E.    References to Monetary Figures .................................................................21
    F.    Exhibits ......................................................................................................21
    G.    Controlling Document ...............................................................................21

ARTICLE II    Classification and Treatment of Claims and Interests ...........................................21
    A.    Classification of Claims and Interests........................................................21
        1.    Grouping of Debtors for Convenience ...........................................21
        2.    Classification in General .................................................................22
        3.    Summary of Classification...............................................................22
    B.    Treatment of Claims and Interests .............................................................22
        1.    Class 1.  Secured Claims................................................................22
        2.    Class 2.  Priority Non-Tax Claims .................................................22
        3.    Class 3.  General Unsecured Claims...............................................23
        4.    Class 4.  Non-Tort Litigation Claims.............................................23
        5.    Class 5.  Direct Tort Claims..........................................................24
        6.    Class 6.  Indirect Tort Related Claims ...........................................25
        7.    Class 7.  Interests in RI .................................................................25
        8.    Class 8.  Interests in RMI ..............................................................26
        9.    Elimination of Vacant Classes .......................................................26
        10.    Cramdown........................................................................................26

ARTICLE III    Administrative Expense Claims and Priority Claims .............................................26
    A.    Administrative Expenses Claims ................................................................26
        1.    Administrative Expense Claims Generally.......................................26
        2.    Professional Fee Claims..................................................................27
    B.    Priority Tax Claims....................................................................................28

ARTICLE IV    Plan Settlement Trust..............................................................................................28
    A.    Establishment of the Settlement Trust .......................................................28
    B.    Purposes of the Settlement Trust ...............................................................28
    C.    Transfer of Claims to the Settlement Trust................................................29
    D.    Transfer of Settlement Trust Assets to the Settlement Trust .....................30
        1.    Transfers on the Effective Date .......................................................30
        2.    Transfers after the Effective Date ...................................................30
        3.    Specified Insurance Policies and Non-Tort Litigation Claims .................30
        4.    Settlement Trust Causes of Action .................................................31
    E.    Settlement Trustee .....................................................................................31
    F.    Settlement Trust Advisory Committee .......................................................31

G. Trust Distribution Procedures ................................................................32
H. Post-Effective Date Settling Insurance Companies ..............................32
I. Settlement Trust Expenses ...................................................................32
J. Defense Costs .........................................................................................33
K. Reimbursement by Settlement Trust ....................................................33
   1. Actions filed against a Protected Party in violation
      of Channeling Injunction .............................................................34
   2. Reimbursement of Fees and Costs Paid by Debtors ...................34
   3. Recovery of Bad Faith Claims ....................................................34
L. Assignment of Claims and Defenses ....................................................34
M. Dismissal of Pending Litigation ..........................................................35
N. Tort Claims Allowance Process ...........................................................35
O. Favorable Coverage Decision and Additional Mediations ..................35
P. Release of Tort Claim or Non-Tort Litigation Claim Required for a
   Distribution from Settlement Trust ......................................................36
Q. Indemnification by Settlement Trust ...................................................36
R. Investment Guidelines ..........................................................................36
S. Excess Settlement Trust Assets ...........................................................36
T. Document Agreement ...........................................................................36
U. Privileged Information ..........................................................................36
V. No Liability ...........................................................................................36
W. U.S. Federal Income Tax Treatment of the Settlement Trust ..............37
X. Institution and Maintenance of Legal and Other Proceedings ............37
Y. Notation on Claims Register Regarding Tort Claims ...........................37

ARTICLE V   Means for Implementation of the Plan .........................................37
A. General ...................................................................................................37
B. Compromise and Settlement of Claims, Interests and Controversies ...38
C. Continued Legal Existence of RI and RMI ..........................................38
D. Merger of Reorganized RMI into Reorganized RI ..............................38
E. Operations of the Debtors between Confirmation and the Effective Date ...........38
F. Reorganized Debtors' Directors and Officers ......................................38
G. Due Authorization .................................................................................38
H. Restatement ...........................................................................................39
I. Cancellation of Liens ............................................................................39
J. Effectuating Documents and Further Transactions ..............................39
K. Payment of the Equity Security Holders Contribution ........................39
L. Exit Financing Facility .........................................................................39
M. Sources of Consideration for Distributions .........................................40
N. Resolution of Tort Claims ....................................................................40
O. Funding by Settlement Trust ................................................................41
P. Disbursing Agent ..................................................................................41
Q. Single Satisfaction of Allowed General Unsecured Claims ................41
R. Exemption from Certain Transfer Taxes and Recording Fees .............41

ARTICLE VI   Executory Contracts and Unexpired Leases ..............................41

A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ..........41
B.    Rejection Damages Claims ...................................................................................42
C.    Cure of Defaults under Executory Contracts and Unexpired Leases ...................42
D.    Dispute Resolution...............................................................................................44
E.    Contracts and Leases Entered into After the Petition Date...................................44
F.    Insurance Policies ................................................................................................44
G.    Indemnification Obligations ................................................................................45
H.    Modifications, Amendment, Supplements, Restatements, or Other Agreements..45
I.    Reservation of Rights...........................................................................................46

ARTICLE VII    Provisions Governing Distributions..................................................46
A.    Applicability ........................................................................................................46
B.    Distributions Generally........................................................................................46
C.    Distributions on Account of Certain Claims Allowed as of the Effective Date ....46
D.    Distributions on Account of Allowed General Unsecured Claims........................46
E.    Distributions on Account of Disputed Claims Allowed After the Effective Date.46
F.    Rights and Powers of Disbursing Agent ..............................................................47
G.    Delivery of Distributions and Undeliverable or Unclaimed Distributions ...........47
    1.    Claims Record Date ..................................................................................47
    2.    Delivery of Distributions ..........................................................................47
    3.    Special Rules for Distributions to Holders of Disputed Claims ...............47
H.    Undeliverable and Non-Negotiated Distributions ................................................48
    1.    Undeliverable Distributions ......................................................................48
    2.    Non-Negotiated Distributions ...................................................................48
I.    Manner of Payment under the Plan.......................................................................48
J.    Satisfaction of Claims ..........................................................................................48
K.    Minimum Cash Distributions................................................................................48
L.    Postpetition Interest .............................................................................................48
M.    Setoffs .................................................................................................................49
N.    Claims Paid or Payable by Third Parties ..............................................................49
    1.    Claims Paid by Third Parties .....................................................................49
    2.    Non-Tort Litigation Claims Payable from Insurance ................................49
O.    Compliance with Tax Requirements and Allocations ...........................................49

ARTICLE VIII    Procedures for Resolving Contingent, Unliquidated, and Disputed Claims....50
A.    Applicability ........................................................................................................50
B.    Allowance of Claims.............................................................................................50
C.    Claims Administration Responsibilities ...............................................................50
D.    Estimation of Claims............................................................................................50
E.    No Distributions Pending Allowance ...................................................................51
F.    Distributions after Allowance ..............................................................................51
G.    Disputed Claims Reserve .....................................................................................51
H.    Adjustment to Claims Register without Objection ...............................................52
I.    Time to File Objections to Claims ........................................................................52
J.    Treatment of Untimely Claims .............................................................................52

ARTICLE IX  Conditions Precedent to Confirmation and Effective Date ................................... 52
    A.    Conditions Precedent to Confirmation of the Plan ................................... 54
    B.    Conditions Precedent to the Effective Date ................................... 55
    C.    Waiver of Conditions Precedent ................................... 55
    D.    Substantial Consummation of the Plan ................................... 55
    E.    *Vacatur* of Confirmation Order; Non-Occurrence of Effective Date ................. 55

ARTICLE X  Effect of Plan Confirmation ................................... 56
    A.    Vesting of Assets in Reorganized Debtors ................................... 56
    B.    Retention of Certain Causes of Action ................................... 56
    C.    Binding Effect ................................... 56
    D.    Post-Confirmation Interim Injunction and Stays ................................... 57
    E.    Discharge ................................... 57
        1.    Discharge of Debtors ................................... 57
        2.    Discharge Injunction ................................... 57
    F.    Channeling Injunction ................................... 58
        1.    Terms ................................... 58
        2.    Reservations ................................... 59
    G.    Provisions Relating to Channeling Injunction ................................... 59
        1.    Modifications ................................... 59
        2.    Non-Limitation ................................... 59
        3.    Bankruptcy Rule 3016 Compliance ................................... 59
        4.    Enforcement ................................... 60
        5.    Contribution Claims ................................... 60
        6.    No Duplicative Recovery ................................... 60
    H.    Insurance Entity Injunction ................................... 60
        1.    Purpose ................................... 60
        2.    Terms Regarding Claims against Insurance Companies ................... 60
        3.    Reservations ................................... 61
    I.    Injunction against Interference with Plan ................................... 62
    J.    Releases ................................... 62
        1.    Releases by the Debtors and the Estates ................................... 62
        2.    Releases by Holders of Tort Claims ................................... 63
        3.    Releases by Holders of Claims ................................... 64
    K.    Exculpation ................................... 65
    L.    Injunctions Related to Releases and Exculpation ................................... 65
        1.    Injunction Related to Releases ................................... 65
        2.    Injunction Related to Exculpation ................................... 65
    M.    Insurance Provisions ................................... 66
    N.    Judgment Reduction ................................... 66
    O.    Reservation of Rights ................................... 67
    P.    Disallowed Claims ................................... 67
    Q.    No Successor Liability ................................... 68
    R.    Indemnities ................................... 68
        1.    Prepetition Indemnification and Reimbursement Obligations .................. 68
        2.    Plan Indemnity ................................... 68

3.    Limitation on Indemnification ....................................................................68

ARTICLE XI. Retention of Jurisdiction ...........................................................................68
A.    Jurisdiction ..............................................................................................68
B.    General Retention ....................................................................................69
C.    Specific Purposes ....................................................................................69
D.    Courts of Competent Jurisdiction ...........................................................72

ARTICLE XII.    Miscellaneous Provisions.........................................................................72
A.    Closing of Chapter 11 Cases ..................................................................72
B.    Amendment or Modification of the Plan ................................................72
1.    Plan Modifications ........................................................................72
2.    Other Amendments ........................................................................73
C.    Revocation or Withdrawal of Plan .........................................................73
D.    Request for Expedited Determination of Taxes......................................73
E.    Non-Severability of Plan Provisions ......................................................73
F.    Notices .....................................................................................................73
G.    Notices to Other Persons ........................................................................74
H.    Governing Law ........................................................................................74
I.    Immediate Binding Effect .......................................................................74
J.    Timing of Distributions or Actions.........................................................74
K.    Deemed Acts ...........................................................................................74
L.    Entire Agreement ....................................................................................75
M.    Plan Supplement .....................................................................................75
N.    Withholding of Taxes ..............................................................................75
O.    Payment of Quarterly Fees......................................................................75
P.    Effective Date Actions Simultaneous .....................................................75
Q.    Consent to Jurisdiction............................................................................75

Roosevelt Inn, LLC and Roosevelt Motor Inn Inc., the Debtors and Debtors-in-Possession (as such terms are hereinafter defined), hereby propose this Joint Reorganization Plan (the "Plan") under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §101, et seq.  Reference is made to the Disclosure Statement accompanying the Plan for a discussion of the Debtors' history, business, results of operations, historical financial information, properties, projections for future operations and risk factors, a summary and analysis of the Plan, and certain related matters.

ALL CREDITORS OF THE DEBTORS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.   SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019 AND THE PLAN, THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.   THE DEBTORS HAVE OBTAINED BANKRUPTCY COURT AUTHORITY TO HAVE THE CHAPTER 11 CASES JOINTLY ADMINISTERED FOR ADMINISTRATIVE AND PROCEDURAL PURPOSES ONLY.

## ARTICLE I
## Definitions, Rules of Interpretation, and Computation of Time

A.      Scope of Definitions.

For the purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I.B of this Plan.  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed in the Bankruptcy Code or the Bankruptcy Rules.

B.      Definitions.

1.      "Accrued Professional Fees" means, as of any date, and regardless of whether such amounts are billed or unbilled, all of a Professional's accrued fees and reimbursable expenses for services rendered in the Chapter 11 Cases up to and including such date, whether or not such Professional has then filed an application for the Allowance and payment of such fees and expenses: (a) to the extent that any such fees and expenses have not been previously paid by the Debtors; and (b) after each Professional has applied to such accrued fees and expenses the balance of any retainer that has been provided by the Debtors to such Professional, if applicable.   No amount of a Professional's fees or expenses denied by a Final Order of the Bankruptcy Court shall constitute Accrued Professional Fees.

2.      "Actions against Alpha Centurion" means any liquidated or unliquidated claim, causes of action, or right of the Protected Parties, against Alpha Centurion arising from or related to a Tort Claim, including: (a) the claims that the Protected Parties asserted against Alpha Centurion (in the actions filed by plaintiffs M.B., C.A., B.H., K.R., and A.H. in the Philadelphia Court of Common Pleas) in their answers, new matter, new matter crossclaims for common law contribution and indemnity, contractual indemnity, negligence per se based on Alpha Centurion's violation of the Private Detective Act of 1953, 22 P.S.C. §§ 11-49, and negligent hiring training

and supervision; (b) any liquidated or unliquidated claim, causes of action, or right of the Protected Parties, against Alpha Centurion for common law indemnity and contribution, contractual indemnity, negligence per se based on Alpha Centurion's violation of the Private Detective Act of 1953, 22 P.S.C. §§ 11-49, and negligent hiring training and supervision with respect to the Tort Claims filed by D.P., L.E., D.W., E.B., S.W., S.M., J.H., B.S., T.S. and T.H; and (c) any right to receive proceeds or benefits with respect to any Alpha Centurion insurance policy.

3.    "Alpha Centurion" means Alpha-Centurion Security, Inc., Alpha Century, Inc. and Alpha Century Security, Inc., or any of them, and each of their past, present, and future, direct or indirect, predecessors, successors, assigns, parents, subsidiaries, affiliates, and controlled entities.

4.    "Administrative Expense Claim" means any right to payment from the Debtors that constitutes a cost or expense of administration incurred during the Chapter 11 Cases of the kind specified under 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estates or continuing the operations of the Debtors incurred during the period from the Petition Date to the Effective Date; (b) Professional Fee Claims; (c) Quarterly Fees; and (d) any Tort Claim arising from or related to any act or omission occurring after the Petition Date and up to and including the Effective Date.

5.    "Affiliate" has the meaning ascribed to such term in section 101(2) of the Bankruptcy Code. With respect to any Person that is not a Debtor in the Chapter 11 Cases, the term "Affiliate" shall apply to such Person as if the Person were a Debtor.

6.    "Allowed" has the following meanings for Non-Tort Claims:

a.    with respect to any Claim that is asserted to constitute an Administrative Expense Claim: (i) a Claim that represents an actual and necessary cost or expense of preserving the Estates or continuing the operations of the Debtors incurred during the period from the Petition Date to the Effective Date for which a request for payment is filed, (A) to the extent such Claim is determined by the Debtors to constitute an Administrative Expense Claim or allowed by a Final Order of the Bankruptcy Court or (B) as to which no objection to allowance has been interposed and not withdrawn within the applicable period fixed by the Plan or applicable law; (ii) other than with respect to a Professional Fee Claim, a Claim that arises during the period from the Petition Date to the Effective Date for which a request for payment is filed that is Disputed by the Debtors, which Claim is allowed in whole or in part by a Final Order of the Bankruptcy Court to the extent that such allowed portion is determined by a Final Order to constitute a cost or expense of administration under sections 503(b) and 507(a)(1) of the Bankruptcy Code; (iii) a Claim that arises during the period from the Petition Date to the Effective Date in the ordinary course of the Debtors' operations that is determined by the Debtors to constitute an Administrative Expense Claim; (iv) a Professional Fee Claim, to the extent allowed by a Final Order of the Bankruptcy Court; or (v) any Claim that is expressly allowed as provided in Article III.A.1; and

2

b.      with respect to any Priority Tax Claim, Priority Non-Tax Claim, Secured Claim, General Unsecured Claim, Non-Tort Litigation Claim, or any portion of any of the foregoing, a Claim that is: (i) listed in the Schedules as not be disputed, contingent or unliquidated and with respect to which no contrary or superseding Proof of Claim has been filed, and that has not been paid pursuant to an order of this Court prior to the Effective Date; (ii) evidenced by a Proof of Claim filed on or before the applicable Bar Date, not listed in the Schedules as disputed, contingent or unliquidated, and as to which no objection has been filed on or before the Claims Objection Deadline; (iii) not the subject of any objection to Allowance, which Claim (A) was filed on or before the Claims Objection Deadline and (B) has not been settled, waived, withdrawn or Disallowed pursuant to a Final Order; or (iv) expressly Allowed (x) pursuant to a Final Order, (y) pursuant to an agreement between the holder of such Claim and the Debtors or Reorganized Debtors, as applicable, or (z) pursuant to the terms of the Plan.  For the avoidance of doubt, the holder of a Claim evidenced by a Proof of Claim filed after the applicable Bar Date shall not be treated as a creditor with respect to such Claim for the purposes of voting and distribution. "Allowance" and "Allowing" have correlative meanings.

5.      "Assumed Contracts and Unexpired Leases Schedule" means the schedule of Executory Contracts or Unexpired Leases to be assumed by the Debtors under the Plan and the Cure Amount for each such Executory Contract or Unexpired Lease, as set forth in the Plan Supplement, as may be amended, modified, or supplemented from time to time in accordance with the terms hereof.

6.      "Avoidance Actions" means any and all actual or potential avoidance, recovery, subordination or other Claims, causes of action or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including Claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) were commenced prior to the Effective Date.

7.      "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101 1532, as in effect on the Petition Date.

8.      "Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of Pennsylvania or such other court having jurisdiction over the Chapter 11 Cases.

9.      "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases, and the general, local, and chambers rules of the Bankruptcy Court, each as amended from time to time.

10.      "Bar Date" means (a) October 30, 2021 for any Claim (other than an Administrative Expense Claim or a Claim of a Governmental Unit or a Tort Claim), (b) November 30, 2021 for any Tort Claim, or (c) December 13, 2021 for any Claim of a Governmental Unit, in each case as established by the Bar Date Order.

3

11.    "Bar Date Order" means the *Order, Pursuant to 11 U.S.C. §§ 502(b)(9), Bankruptcy Rules 2002 and 3003(c)(3), and Local Rules 9008-1. 9014-2 (7), 9014-3, (I) Establishing Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, (III) Approving Procedures for Providing Notice of Bar Date and Other Important Information to Holders of Tort Claims, and (IV) Approving Confidentiality Procedures for Tort Claims*, entered by the Bankruptcy Court on September 24, 2021, at Docket No. 154, as amended, modified or supplemented by order of the Bankruptcy Court from time to time.

12.    "Business Day" means any day, other than a Saturday, Sunday or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a), on which commercial banks in Philadelphia, Pennsylvania are required or authorized by law to close.

13.    "Cash" means legal tender of the United States of America.

14.    "Causes of Action" means any claims, interests, damages, remedies, causes of action, demands, rights, actions (including Avoidance Actions), suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, capable of being asserted, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, whether arising before, on, or after the Petition Date. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (d) any claim under any local, state, federal or foreign law, including any fraudulent transfer or similar claim.

15.    "Channeling Injunction" means the permanent injunction provided for in Article X.F with respect to Tort Claims against the Protected Parties.

16.    "Chapter 11 Cases" means the cases filed by the Debtors under chapter 11 of the Bankruptcy Code, which are jointly administered under Case No. 21-11697(AMC).

17.    "Cion Trust" means the Joseph Cion Irrevocable Trust of 1993.

18.    "Claim" means any "claim," as defined in section 101(5) of the Bankruptcy Code, which, for the avoidance of doubt, shall include any Tort Claim.

19.    "Claims Objection Deadline" means the deadline for filing an objection to any Administrative Expense Claim (other than a Professional Fee Claim), Priority Tax Claim, Priority Non-Tax Claim, General Unsecured Claim, or Non-Tort Litigation Claim, which deadline shall be: (a) 90 days after the Effective Date with respect to all such Claims and Interests, subject to any extensions approved by an order of the Bankruptcy Court; provided, however, that the Debtors shall not be bound by the Claims Objection Deadline with respect to any Claim filed after the Bar

4

Date; provided further, however, that the Claims Objection Deadline shall not apply to Tort Claims, which shall be administered exclusively in accordance with the Settlement Trust Documents; and provided further, however, that the Settlement Trust reserves the right to file an objection to any Indirect Tort Related Claim or Non-Tort Litigation Claim with the Bankruptcy Court for determination.

20.     "Claims Record Date" means the Voting Deadline, which is the date on which the transfer register for each Class of Non-Tort Claims, or Interests in the Debtors, as such register is maintained by the Debtors shall be deemed closed.

21.     "Claims Register" means the official Claims register maintained by the Clerk of the Bankruptcy Court for each of the Chapter 11 Cases.

22.     "Common-Interest Communications with Insurers" means documents, information, or communications that are subject to the attorney-client privilege, attorney-work product doctrine, or other privilege or protection from disclosure, and are shared between or among (a) the Debtors and/or any Protected Party, on the one hand, and (b) any Insurance Company or its Representatives, on the other hand, including documents that reflect defense strategy, case evaluations, discussions of settlements or resolutions, and communications regarding underlying litigation. Common-Interest Communications with Insurers do not include any communications between or among the Debtors and any Insurance Company relating to matters on which an Insurance Company has denied coverage.

23.     "Confirmation" means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases. Confirm, Confirmed and Confirmability shall have correlative meanings.

24.     "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

25.     "Confirmation Hearing" means the hearing(s) held by the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtors seek entry of the Confirmation Order.

26.     "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code and inter alia authorizing the transfer of the Insurance Assignment and the Settlement Trust Causes of Action to the Settlement Trust, issuing the Channeling Injunction and the Settlement Trust's assumption of all liability with respect to Tort Claims and the releases by holders of Tort Claims for the benefit of the Protected Parties, each as set forth in this Article X, and the other Releases and Injunctions set forth in the Plan.

27.     "Cure Amount" means, with respect to any Executory Contract or Unexpired Lease sought to be assumed or assumed and assigned by the Debtors, the monetary amount, if any, required to cure the Debtors' defaults under any such Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the non-Debtor party to an

Executory Contract or Unexpired Lease) at the time such Executory Contract or Unexpired Lease is assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

28.    "Cure and Assumption Notice" means the notice of proposed assumption of, and proposed Cure Amount payable in connection with, an Executory Contract or Unexpired Lease (and, to the extent the Debtors seek to assume and assign any such Executory Contract or Unexpired Lease pursuant to the Plan, adequate assurance of future performance within the meaning of section 365 of the Bankruptcy Code), to be served in accordance with Article VI.C.

29.    "D&O Liability Insurance Policies" means all Insurance Policies issued at any time to any of the Debtors for directors', managers', and officers' liability (including any "tail policy" or run-off coverage) and all agreements, documents, or instruments relating thereto.

30.    "Debtors" means RI and RMI that are debtors and debtors in possession in the Chapter 11 Cases.

31.    "Debtors' Insurance Policies" means any and all known and unknown contracts, binders, certificates or Insurance Policies currently or previously in effect at any time on or before the Petition Date naming the Debtors, or either of them, or any predecessor, subsidiary, or past or present Affiliate of the Debtors, as an insured (whether as the primary or an additional insured), or otherwise alleged to afford the Debtors insurance coverage, upon which any claim could have been, has been, or may be made with respect to any Tort Claim, including the policies listed on **Schedule 1**.  Notwithstanding the foregoing, Debtors Insurance Policies shall not include: (a) any policy providing reinsurance to any Insurance Company; (b) any Non-Tort Insurance Policy; or (c) any Postpetition Insurance Policy.

32.    "Direct Tort Claim" means a Tort Claim that is not an Indirect Tort Related Claim.

33.    "Disallowed" means, as to any Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, Indirect Tort-Related Claim, Secured Claim,  General Unsecured Claim,  or Non-Tort Litigation Claim, any such Claim or portion thereof that: (a) has been disallowed, denied, dismissed, expunged, or overruled pursuant to the terms of the Plan or a Final Order of the Bankruptcy Court or any other court of competent jurisdiction or by a settlement; (b) has been listed on the Schedules at an amount of $0.00 or as contingent, disputed, or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court, including the Bar Date Order, or otherwise deemed timely filed under applicable law; or (c) has not been scheduled and as to which a Bar Date has been established but no Proof of Claim has been timely filed, such that the creditor holding such Claim shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution. "Disallowance" and "Disallowing" have correlative meanings.  The term "Disallowed" does not apply to Direct Tort Claims.

34. "Disbursing Agent" means, with respect to all Claims other than Tort Claims, the Reorganized Debtors or a Person or Persons selected by the Debtors or Reorganized Debtors to make or facilitate Distributions contemplated under the Plan.

35. "Discharge Injunction" means the injunction issued in accordance with sections 524 and 1141 of the Bankruptcy Code and contained in Article X.E.2 of the Plan.

36. "Discharges" means the discharges set forth in Article X.E.

37. "Disclosure Statement" means the disclosure statement for the Plan, including all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

38. "Disclosure Statement Order" means one or more orders entered by the Bankruptcy Court: (i) finding that the Disclosure Statement (including any amendment, supplement, or modification thereto) contains adequate information pursuant to section 1125 of the Bankruptcy Code; (ii) fixing the amounts of Claims solely for voting purposes and not for purposes of distributions; (iii) approving the Voting Procedures; and (iv) authorizing solicitation of the Plan.

39. "Disputed" means, as to any Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, Indirect Tort Related Claim, Secured Claim, General Unsecured Claim, or Non-Tort Litigation Claim, any such Claim (or portion thereof) (a) that is neither Allowed nor Disallowed, (b) that is listed on the Schedules a "disputed," "contingent," or "unliquidated" or (c) for which a Proof of Claim has been filed or a written request for payment has been made to the extent that any party in interest has interposed a timely objection to such Claim, which objection has not been withdrawn or adjudicated pursuant to a Final Order. The term "Disputed" does not apply to Direct Tort Claims.

40. "Disputed Claims Reserve" means the reserve of Cash within the GUC Fund to be Distributed to holders of Disputed General Unsecured Claims, if and when such Disputed Claims become Allowed.

41. "Distribution" means the payment or delivery of Cash, property, or interests in property, as applicable, to holders of Allowed Non-Tort Claims under the terms of the Plan. "Distributed" and "Distribution" have correlative meanings.

42. "Distribution Date" means the dates on which the Disbursing Agent makes a Distribution, or causes a Distribution to be made from the GUC Fund to holders of Allowed General Unsecured Claims and, subject to the terms of Article II.B.4, holders of Allowed Non-Tort Litigation Claims. The Distribution Date shall occur as soon as practicable after Reorganized RI makes its payment to the GUC Fund in accordance with Article II.B.3.

43. "District Court" means the United States District Court for the Eastern District of Pennsylvania.

44.    "Document Agreement" means the agreement by and among Reorganized Debtors, the Protected Parties and the Settlement Trust, substantially in the form contained in the Plan Supplement.

45.    "Effective Date" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in Article IX.B shall have been satisfied or waived pursuant to Article IX.C.

46.    "Encumbrance" means, with respect to any property (whether real or personal, tangible or intangible), any mortgage, Lien, pledge, charge, security interest, assignment, or encumbrance of any kind or nature in respect of such property, including any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction, to secure payment of a debt or performance of an obligation.

47.    "Entity" means an entity as defined in section 101(15) of the Bankruptcy Code.

48.    "Equity Security Holders" means the Cion Trust and Jacobson Trust who equally own the Interests of each Debtor.

49.    "Equity Security Holders Contribution" means the amount of One Million One Hundred Thousand Dollars ($1,100,000.00) to be paid in Cash by the Equity Security Holders on the Effective Date in consideration for the treatment, protections, injunctions, and releases provided to them under the Plan and Plan Documents.

50.    "Estate" means, as to each Debtor, the estate created for such Debtor in its Chapter 11 Case under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Chapter 11 Case.

51.    "Estate Causes of Action" means any and all Causes of Action owned, held, or capable of being asserted by or on behalf of either Debtor or its Estate, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that: (a) arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtors or their respective Estates, including actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estates, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions, that may be commenced by a representative of the Estates under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise; or (b) seek to impose any liability upon, or injunctive relief on, any Protected Party or to satisfy, in whole or in part, any Tort Claim.

52.    "Exit Financing Facility" means the financing to be provided by the Exit Financing Lender on the Effective Date of the Plan which shall be secured by a first mortgage lien in all of the assets of the Reorganized Debtors and in an amount sufficient to fund the additional monies required by the Reorganized Debtors to make all the payments due on the Effective Date.

53.    "Exit Financing Lender" means collectively, the commercial banks, credit institutions, non-bank lenders, related parties, or any combination thereof, as may be designated by the Debtors.

54.    "Exit Financing Facility Agreement" means the credit agreement governing the Exit Financing Facility, dated as of the Effective Date.

55.    "Exculpated Parties" means, collectively, the following Persons: (a) the Debtors; (b) Reorganized Debtors; and (c) all of such Persons' current officers and directors, employees, agents, attorneys, financial advisors, accountants, consultants, representatives, and other professionals.

56.    "Executory Contract" means any executory contract to which RI or RMI is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

57.    "Final Order" means an order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) that has not been reversed, vacated, stayed, modified or amended, and as to which (a) the time to appeal, petition for *certiorari* or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied or a new trial, reargument or rehearing shall have been denied with prejudice or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order to not be a Final Order.

58.    "General Unsecured Claim" means any Claim against the Debtors that is not an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim, a Non-Tort Litigation Claim, a Direct Tort Claim or an Indirect Tort Related Claim.

59.    "GUC Fund" means Cash in the aggregate amount of $40,000.00 for purposes of making Distributions to holders of Allowed General Unsecured Claims and, subject to the terms of Article II.B.4, holders of Allowed Non-Tort Litigation Claims. Reorganized Debtors shall fund the GUC Fund in accordance with Article II.B.3.

60.    "<u>Governmental Unit</u>" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

61.    "<u>Impaired</u>" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

62.    "<u>Indemnification Obligations</u>" means each of the Debtors' indemnification obligations in place as of the Effective Date, whether in the bylaws, limited liability company agreements, or other organizational or formation documents, board resolutions, management or indemnification agreements, employment or other contracts, or otherwise, for the past and present directors, officers, employees, attorneys, accountants, and other professionals and agents who provided services to the Debtors before, on, or after the Petition Date.

63.    "<u>Indirect Tort Related Claim</u>" means a liquidated or unliquidated claim for contribution, indemnity, subrogation, or reimbursement whether contractual or implied by law (as those terms are defined by applicable non-bankruptcy law of the relevant jurisdiction), or any other indirect or derivative recovery, on account of, or with respect to, any Protected Party's actual or alleged liability, for any Claim related to a Tort Claim and any other derivative Tort Claim of any kind whatsoever whether in the nature of or sounding in contract, tort, warranty or any other theory of law or equity whatsoever, including any indemnification, reimbursement, hold-harmless or other payment obligation provided for under any prepetition insurance policy or contract; <u>provided</u>, <u>however</u>, that any retrospective premiums and self-insured retentions arising out of any Tort Claims under the Tort Insurance Policies shall not constitute an Indirect Tort Related Claim and shall be treated in accordance with <u>Article IV.D.1.</u>

64.    "<u>Injunctions</u>" means the Discharge Injunction, the Channeling Injunction, the Insurance Entity Injunction, the Post-Confirmation Interim Injunction, the Release Injunctions, and any other injunctions entered by the Bankruptcy Court in connection with Confirmation of the Plan.

65.    "<u>Insider</u>" means any "insider" as that term is defined in paragraphs (B), (C), (E) or (F) of § 101(31) of the Bankruptcy Code.

66.    "<u>Insurance Action</u>" means any claim, Cause of Action, or right of the Debtors, or any other Protected Party, or any of them, under the laws of any jurisdiction, against any Insurance Company, arising from or related to a Tort Insurance Policy, including: (a) any such Insurance Company's failure to provide coverage or otherwise pay under a Tort Insurance Policy; (b) the refusal of any Insurance Company to compromise and settle any Tort Claim under or pursuant to any Tort Insurance Policy; (c) the interpretation or enforcement of the terms of any Tort Insurance Policy with respect to any Tort Claim; (d) any conduct by any Insurance Company that could otherwise give rise to extra-contractual damages, or other wrongful conduct under applicable law; or (e) any right to receive proceeds held by such Person with respect to a Tort Insurance Policy or an Insurance Coverage Action.

67.    "Insurance Action Recoveries" means (a) Cash or other proceeds derived from and paid by an Insurance Company pursuant to an Insurance Settlement Agreement and (b) the right to receive the proceeds or benefits of any Insurance Action.

68.    "Insurance Assignment" means (x) the assignment and transfer to the Settlement Trust of (a) the Insurance Actions, (b) the Insurance Action Recoveries, (c) if applicable, the Insurance Settlement Agreements, and (d) all other rights, claims, benefits, or Causes of Action of the Debtors, or any other Protected Party, under or with respect to the Tort Insurance Policies (but not the policies themselves). The Insurance Assignment does not include any rights, claims, benefits, or Causes of Action under or with respect to any Non-Tort Insurance Policies, including D&O Liability Insurance Policies.

69.    "Insurance Company" means any insurance company, insurance syndicate, coverholder, insurance broker or syndicate insurance broker, guaranty association, or any other Entity that has issued, or that has any actual, potential, demonstrated, or alleged liabilities, duties, or obligations under or with respect to, any Insurance Policy.

70.    "Insurance Coverage Actions" means any and all pending coverage litigation between and among the Debtors or any other Protected Party, and any Insurance Company, as of the Effective Date, including: (a) *Samsung Fire and Marine Insurance Co. Ltd. (U.S. Branch) v. UFVS Management Company LLC, et al.* and was filed in the District Court for the Eastern District of Pennsylvania, C.A. 18-cv-04365 (CDJ), (b) *UFVS Management Company, LLC, et. al., v. Praetorian Insurance Company and Public Service Mutual Insurance Company, that was filed in the Philadelphia Court of Common Pleas (Case no.* 200701464) and removed to the Bankruptcy Court for the Eastern District of Pennsylvania, Adversary No. 21-00053(AMC), (c) all claims and crossclaims that either Debtor, or any other Protected Party have filed against Alpha Centurion with respect to the Tort Claims filed by M.B., C.A., B.H., K.R., and AH that had also filed prepetition lawsuits against the Debtors and other Protected Parties, (d) the Debtors' notices of new claims listed on **Schedule "2"** that were sent by the Debtors or their counsel to the Insurance Companies listed thereon advising them that ten (10) new Tort Claims were filed with the Bankruptcy Court against the Debtors by Tort Claimants B.S., D.P., D.W., E.B., J.H., L.E., S.M., S.W., T.H., and T.S. and that based on the allegations raised in these Tort Claims, the respective Insurance Companies coverage obligations to defend and protect the Debtors have been triggered; (e) the Debtors' notice of claims dated January 20, 2022 sent by their counsel to counsel for Alpha-Centurion Security, Inc. and Alpha-Century, Inc. of the Debtors' claims against each of these entities for contractual and common law indemnity and contribution with respect to the Tort Proofs of Claim filed by B.S., D.P., D.W., E.B., J.H., L.E., S.M., S.W., T.H., and T.S.

71.    "Insurance Coverage Defense" means, subject to Article X.M, all rights and defenses that any Insurance Company may have under any Insurance Policy and applicable law with respect to a claim seeking insurance coverage or to an Insurance Action, but Insurance Coverage Defenses do not include any defense that the Plan or any of the other Plan Documents do not comply with the Bankruptcy Code. Upon entry of the Confirmation Order in the Chapter 11 Cases determining that the Insurance Assignment is authorized notwithstanding any terms or provisions of the Tort Insurance Policies that any Insurance Company asserts or may assert otherwise prohibits the

Insurance Assignment, an Insurance Coverage Defense shall not include any defense that the Insurance Assignment is prohibited by the Tort Insurance Policies or applicable non-bankruptcy law.

72.     "Insurance Entity Injunction" means the injunction described in Article X.H.

73.     "Insurance Policies" means any and all known and unknown contracts binders, certificates or insurance policies currently or previously in effect at any time on or before the Petition Date naming the Debtors or any other Protected Party, or any predecessor, subsidiary, or past or present Affiliate of the Debtors, as an insured (whether as the primary or an additional insured), or otherwise alleged to afford the Debtors or any other Protected Party insurance coverage. Insurance Policies include Tort Insurance Policies and Non-Tort Insurance Policies.

74.     "Insurance Settlement Agreement" means (a) any settlement agreement entered into after the Petition Date and before the Effective Date by and among (i) any Insurance Company, on the one hand, and (ii) one or more of the Debtors and/or any other Protected Party, on the other hand, under which an Insurance Policy and/or the Debtors and/or other Protected Parties' rights thereunder with respect to Tort Claims or Non-Tort Litigation Claims are, subject to confirmation of the Plan and the entry of a Final Order approving such settlement agreement (which order may be the Confirmation Order), released; and (b) any Post-Effective Date Insurance Settlement entered into during the Insurance Settlement Period by and between (i) any Insurance Company, on the one hand, and (ii) the Settlement Trustee (or the Settlement Trustee and any other Protected Party), on the other hand, under which an Insurance Policy that is subject to the Insurance Assignment and/or the Settlement Trustee rights thereunder with respect to Tort Claims or Non-Tort Litigation Claims are released.

75.     "Insurance Settlement Period" has the meaning ascribed to such term in Article IV.H.

76.     "Interest" means any "equity security" as defined in section 101(16) of the Bankruptcy Code.

77.     "Internal Revenue Code" means title 26 of the United States Code, 26 U.S.C. §§ 1 *et seq.*, as in effect on the Petition Date, together with all amendments, modifications, and replacements of the foregoing as the same may exist on any relevant date to the extent applicable to the Chapter 11 Cases.

78.     "Jacobson Trust" means the Trust A U/W/O of Henriette Jacobson.

79.     "Lien" means any "lien" as defined in section 101(37) of the Bankruptcy Code.

80.     "Non-Settling Insurance Company" means any Insurance Company that is not a Settling Insurance Company.

81.     "<u>Non-Tort Claim</u>" means any Claim against the Debtors that is not a Tort Claim.

82.     "<u>Non-Tort Insurance Policy</u>" means any and all known and unknown contracts, binders, certificates or Insurance Policies currently or previously in effect at any time on or before the Petition Date naming the Debtors, and/or any other Protected Party, or any of them, or any predecessor, subsidiary, or past or present Affiliate of the Debtors and/or any other Protected Party, as an insured (whether as the primary or an additional insured), or otherwise alleged to afford the Debtors, and/or any other Protected Party insurance coverage, upon which any claim could have been, has been, or may be made with respect to any Non-Tort Claim and which does not include coverage for Tort Claims; provided, however, Non-Tort Insurance Policies, including the D&O Liability Insurance Policies, do not include Tort Insurance Policies (which Tort Insurance Policies, for the avoidance of doubt, include Specified Insurance Policies).

83.     "<u>Non-Tort Litigation Claim</u>" means any Claim that is a prepetition unsecured non-priority Claim against the Debtors relating to pending or threatened litigation against one or both of the Debtors that does not relate to a Tort Claim. For the avoidance of doubt, Non-Tort Litigation Claims include all personal injury or wrongful death Claims against the Debtors that do not relate to a Tort Claim. Non-Tort Litigation Claims do not include any Administrative Expense Claims that may be asserted by holders of Non-Tort Litigation Claims.

84.     "<u>Person</u>" has the meaning set forth in section 101(41) of the Bankruptcy Code.

85.     "<u>Petition Date</u>" means June 16, 2021.

86.     "<u>Plan</u>" means this *Joint Plan of Reorganization for Roosevelt Inn, LLC and Roosevelt Motor Inn, Inc.* filed by the Debtors, as the same may be amended or modified from time to time pursuant to section 1127 of the Bankruptcy Code.

87.     "<u>Plan Documents</u>" means, collectively, the Plan, the Disclosure Statement, the Disclosure Statement Order, each of the documents that comprises the Plan Supplement, and all of the exhibits and schedules attached to any of the foregoing.

88.     "<u>Plan Supplement</u>" means the compilation of documents and forms of documents, agreements, schedules, exhibits, and annexes to the Plan, which the Debtors shall file no later than fourteen (14) days before the Voting Deadline, unless otherwise ordered by the Bankruptcy Court, and additional documents filed with the Bankruptcy Court before the Effective Date as amendments, modifications or supplements to the Plan Supplement. The Plan Supplement will include the following: (a) the Assumed Contracts and Unexpired Leases Schedule; (b) the form of the Document Agreement; (c) change if any, to Reorganized RI's directors and officers; (d) the Rejected Contracts and Unexpired Leases Schedule; (e) <u>if applicable</u>, the names of the initial members of the Settlement Trust Advisory Committee; and (f) the form of releases to be executed by a holder of a Tort Claim with respect to such Tort Claim as a condition precedent to receiving any proceeds from the Settlement Trust as set forth in the Trust Distribution Procedures; <u>provided</u> that the Plan Documents listed in clauses (a) and (d) of the foregoing sentence will be revised, in the Debtors'

discretion, subject to <u>Article VI</u>. The Plan Supplement shall be served only on those parties that have requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 and any party in interest who requests in writing a copy from counsel to the Debtors.

89.     "<u>Post-Confirmation Interim Injunction</u>" shall have the meaning ascribed to such term in <u>Article X.D.</u>

90.     "<u>Postpetition Insurance Policies</u>" means insurance policies issued by the Insurance Companies to the Debtors and/or any other Protected Party and effective on or after the Petition Date, but only to the extent of coverage for Claims and Causes of Action arising from acts or events that first took place after the Petition Date.

91.     "<u>Priority Non-Tax Claim</u>" means any Claim against the Debtors that is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim or a Priority Tax Claim.

92.     "<u>Priority Tax Claim</u>" means any Claim of a Governmental Unit against the Debtors that is entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

93.     "<u>Privileged Information</u>" means any privileged information that relates, in whole or in part, to any Tort Claim, including: (a) the Debtors' books and records transferred to the Settlement Trust in accordance with the Document Agreement; (b) any privileged information containing a factual or legal analysis or review of any Tort Claim; (c) any privileged information evaluating the reasonableness, effectiveness, or Confirmability of the Plan or any other chapter 11 plan filed or that could be filed in the Chapter 11 Cases; (d) any privileged information exchanged by the Debtors or their professionals, on the one hand, and any of the other Protected Parties, or their respective Representatives, on the other hand, related to the Plan, the Plan Documents, or the Tort Claims; and (e) any privileged information containing a factual or legal analysis of the Debtors' potential exposure in connection with any Tort Claim or any litigation related thereto; and (f) any Common-Interest Communications with Insurers.

94.     "<u>Pro Rata</u>" means, at any time, with respect to any Claim, the proportion that the amount of such Claim in a particular Class or group of Classes bears to the aggregate amount of all Claims (including Disputed Claims) in such Class or group of Classes, unless in each case the Plan provides otherwise.

95.     "<u>Pro Rata Share</u>" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in that Class.

96.     "<u>Professional</u>" means any Person retained by the Debtors pursuant to a Final Order of the Bankruptcy Court entered under sections 327, 328, 363, or 1103 of the Bankruptcy Code.

97.     "<u>Professional Fee Claim</u>" means any Claim of a Professional or other Person for Allowance by the Bankruptcy Court and payment by the Debtors of compensation for services rendered and/or reimbursement of costs or expenses incurred in the Chapter 11 Cases for the period

from the Petition Date to and including the Effective Date under sections 328, 330, 331, or 503(b) of the Bankruptcy Code.

98.    "Professional Fee Reserve" means the aggregate account funded by the Debtors as of the Effective Date in an amount equal to the Professional Fee Reserve Amount as of such date, solely for the purpose of paying all Allowed Professional Fee Claims except for the Allowed Professional Fee Claims of Reed Smith for the period commencing on January 1, 2023 through the Effective Date that remain unpaid as of the Effective Date, which pursuant to the provisions of this Plan shall be paid by the Settlement Trust from the Settlement Trust Assets.

99.    "Professional Fee Reserve Amount" means the aggregate Accrued Professional Fees as of the Effective Date, as estimated by the Professionals in accordance with Article III.A.2.

100.    "Proof of Claim" means any proof of claim filed with the Bankruptcy Court or the Notice and Claims Agent pursuant to section 501 of the Bankruptcy Code and Bankruptcy Rules 3001 or 3002 that asserts a Claim against either of the Debtors.

101.    "Protected Parties" means the following Persons: (a) the Debtors; (b) the Reorganized Debtors; (c) UVFS Management Company, LLC, (d) Yagna Patel; (e) the Equity Security Holders, (f) any Settling Insurance Company, and (g) all of such Persons' Representatives.

102.    "Quarterly Fees" means all fees due and payable pursuant to section 1930(a)(6) of title 28 of the United States Code.

103.    "RI" means the Roosevelt Inn, LLC, a Delaware limited liability company.

104.    "RMI" means the Roosevelt Motor Inn, Inc., a Pennsylvania corporation.

105.    "Reinstatement" means (a) leaving unaltered the legal, equitable and contractual rights to which a Claim entitles the holder of such Claim or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default, (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; (iv) if such Claim arises from any failure to perform a nonmonetary obligation, compensating the holder of such Claim (other than the Debtors or an "insider" of the Debtors within the meaning of section 101(31) of the Bankruptcy Code) for any actual pecuniary loss incurred by such holder as the result of such failure; and (v) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the holder thereof.  "Reinstated" has a correlative meaning.

106.    "Rejected Contracts and Unexpired Leases Schedule" means the schedule of Executory Contracts or Unexpired Leases to be rejected by the Debtors under the Plan, as set forth in the Plan Supplement, as may be amended, modified, or supplemented from time to time.

107.    "Rejection Damages Bar Date" has the meaning ascribed to such term in Article VI.B.

108.    "Rejection Damages Claim" means a Claim for damages alleged to arise from the rejection of an Executory Contract or Unexpired Lease pursuant to section 365 or 1123 of the Bankruptcy Code.

109.    "Release Date" means the date on which the Confirmation Order becomes a Final Order.

110.    "Release Injunctions" means the injunctions described in Article X.L.

111.    "Released Parties" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized RI; (c) the Reorganized RMI; (d) UVFS Management Company, LLC; (e) Yagna Patel; (f)  the Equity Security Holders; (g) any Settling Insurance Company, and (h) all of such Persons' Representative, provided, however, that the definition of "Released Parties" shall in all instances be subject to Article X.J.

112.    "Releases" means the releases set forth in Article X.J.

113.    "Releasing Claim Holder" means, collectively, (a) all holders of Claims that vote to accept the Plan and do not opt out of the releases set forth in Article X.J.3; (b) all holders of Claims that are presumed to accept the Plan, except for holders of such Claims that file a timely objection to the releases set forth in Article X.J.3; (c) all holders of Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases set forth in Article X.J.3; and (d) all of predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and all such Persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such. No holder of a Claim in a Class that is Impaired under the Plan will be deemed a "Releasing Claim Holder" to the extent such holder abstained from voting.

114.    "Reorganized Debtors" means the Reorganized RI and the Reorganized RMI.

115.    "Reorganized RI" means RI, as reorganized pursuant to and under the Plan on or after the Effective Date.

116.    "Reorganized RMI" means RMI, as reorganized pursuant to and under the Plan on or after the Effective Date.

117.    "Representatives" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, subsidiaries, and Affiliates, (b) current and former officers, directors, principals, Equity Security Holders, trustees, members, partners, managers, officials,

board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, and (c) respective heirs, executors, estates, and nominees, in each case solely in its capacity as such.

118.   "Retained Actions" means all Causes of Action which the Debtors may hold against any Person, including, without limitation, (a) any Causes of Action brought prior to the Confirmation Date, (b) any Causes of Action against any Persons for failure to pay for products or services provided or rendered by the Debtors, and (c) any Causes of Action seeking the recovery of the Debtors' accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtors' businesses.

119.   "Schedules" means, with respect to each Debtor, the schedules of assets and liabilities and the statement of financial affairs filed by such Debtor with the Bankruptcy Court pursuant to sections 521 and 1106(a)(2) of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statements may be amended or supplemented from time to time prior to the Effective Date.

120.   "Secured" means, with respect to any Claim, the extent to which the Claim is: (a) secured by a Lien on property of a Debtor's Estate (i) as set forth in the Plan, (ii) as agreed to by the holder of such Claim and the Debtors, or (iii) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code; or (b) subject to any setoff right of the holder of such Claim under section 553 of the Bankruptcy Code, but, with respect to both of the foregoing clauses (a) and (b), only to the extent of the value of the interest of such holder in the Estate's interest in the property securing such Claim or the amount subject to setoff, as applicable.

121.   "Settlement Trust" means the trust organized under the laws of the Commonwealth of Pennsylvania and established under Article IV and the Settlement Trust Agreement for the purposes set forth therein, including assuming liability for all Tort Claims, holding, preserving, maximizing, and administering the Settlement Trust Assets, and directing the processing, liquidation and payment of all compensable Tort Claims in accordance with the Settlement Trust Documents.

122.   Settlement Trust Contribution" means:

      a.   the payment of One Million Five Hundred and Eighty Seven Thousand Five Hundred 00/100 Dollars ($1,587,500.00);

      b.   the Insurance Assignment; and

      c.   the Settlement Trust Causes of Action.

For the avoidance of doubt, the Debtors' Settlement Trust Contribution shall not include: (i) any Causes of Action against Released Parties or holders of General Unsecured Claims, Non-Tort Litigation Claims, or Interests released by the Debtors and their Estates under Article X.J.

123.   "Settlement Trust Advisory Committee or STAC" means the committee serving in accordance with Article IV and the Settlement Trust Agreement, which shall have the powers, duties and obligations set forth in the applicable Settlement Trust Agreement. The initial members of the Settlement Trust Advisory Committee shall be identified in the Plan Supplement.

124.   "Settlement Trust Agreement" means the Settlement Trust Agreement dated as of the Effective Date, substantially in the form attached hereto as Exhibit A, as the same may be amended or modified from time to time in accordance with the terms thereof.

125.   "Settlement Trust Assets" means the following assets and any income, profits and proceeds realized, received or derived from such assets subsequent to the transfer of such assets to the Settlement Trust:  (a) the Settlement Trust Contribution; and (b) any and all funds, proceeds or other consideration contributed to the Settlement Trust under the terms of any Insurance Settlement Agreement; and (c) any rights, claims, or assets of a holder of a Direct Tort Claim that is assigned to the Settlement Trust pursuant to the terms of the Trust Distributions Procedures and Settlement Trust Agreement.

126.   "Settlement Trust Causes of Action" means any Estate Cause of Action and any Cause of Action held by the Debtors or any other Person that is or becomes a Protected Party, which Estate Cause of Action or other such Cause of Action, as applicable, is not otherwise expressly released under the Plan or the Plan Documents, in each case solely attributable to: (a) all defenses to any Tort Claim, including all defenses under section 502 of the Bankruptcy Code; (b) with respect to Tort Claims, all rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect claim of any kind whatsoever, whenever and wherever arising or asserted; (c) any other Causes of Action with respect to Tort Claims that either Debtor, or any other Protected Party would have had under applicable law if the Chapter 11 Cases had not occurred and the holder of such Tort Claim had asserted such Cause of Action by initiating civil litigation against either Debtor, or any other Protected Party (including any Causes of Action against co-defendants); (d) any Cause of Action of either Debtor, or any other Protected Party, under the laws of any jurisdiction, for reimbursement, indemnity, contribution, breach of contract, or otherwise arising from or relating to any payments made by either Debtor, or any other Protected Party on account of Tort Claims on or before the Effective Date; and (e) any additional coverage litigation commenced by any Protected Party or any Insurance Company with respect to any Tort Claim. For the avoidance of doubt, Settlement Trust Causes of Action shall include any Estate Cause of Action, any Insurance Action, all Insurance Coverage Actions and all Causes of Action against Alpha Centurion its predecessors, successors, assigns, subsidiaries and Affiliates that are not otherwise expressly released under the Plan or the Plan Documents.

127.   "Settlement Trust Documents" means, collectively, (a) the Settlement Trust Agreement, (b) the Trust Distribution Procedures, (c) the Document Agreement, (d) the Confirmation Order, and (e) any other agreements, instruments and documents governing the establishment, administration and operation of the Settlement Trust, which shall be substantially in the forms set forth as exhibits hereto or in the Plan Supplement, as the same may be amended or modified from time to time in accordance with the terms thereof.

128.    "<u>Settlement Trust Expenses</u>" means any liabilities, costs, or expenses of, or imposed upon, or in respect of, the Settlement Trust once established (except for payments to holders of Tort Claims on account of such Claims). Settlement Trust Expenses shall also expressly include: (a) any and all liabilities, costs, and expenses incurred subsequent to the Effective Date in connection with the Settlement Trust Assets (including the prosecution of any Settlement Trust Causes of Action and Insurance Actions), in each case whether or not any such action results in a recovery for the Settlement Trust; and (b) the reasonable documented costs and expenses incurred by Reorganized Debtors, or any other Protected Party, in taking any action on behalf of or at the direction of the Settlement Trust, if any, following such Entities' transfer to the Settlement Trust of copies of all records and documents in their possession, custody or control pertaining to Tort Claims in accordance with the Document Agreement.

129.    "<u>Settlement Trustee</u>" means the initial trustee disclosed in a notice filed on the docket of these Chapter 11 Cases prior to the commencement of the Confirmation Hearing, or any successor trustee who may subsequently be appointed pursuant to the terms of the Settlement Trust Agreement.

130.    "<u>Settling Insurance Company</u>" means any Insurance Company that contributes funds, proceeds or other consideration to or for the benefit of the Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by (a) an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order or (b) the Settlement Trust.

131.    "<u>Specified Insurance Policy</u>" means any Debtors Insurance Policy with an inception date of April 20, 2019 to the present.

132.    "<u>Specified Excess Insurance Policy</u>" means any Specified Insurance Policy that is an umbrella or excess Tort Insurance Policy.

133.    "<u>Specified Primary Insurance Policy</u>" means any Specified Insurance Policy that is a primary Tort Insurance Policy, subject to the definition of Postpetition Insurance Policies.

134.    "<u>Tort Claim</u>" means a liquidated or unliquidated Claim against a Protected Party, or any of their respective Representatives (in their capacities as such) that is attributable to, arises from, is based upon, relates to, or results from, in whole or in part, directly, indirectly, or derivatively, from alleged injury to an individual's body, mind or emotions, or sexual conduct or misconduct, sexual abuse or molestation, sexual exploitation, indecent assault and/or battery, or rape, including sex trafficking, or sexually related psychological or emotional harm, humiliation, anguish, shock, sickness, disease, disability, dysfunction, or intimidation that occurred at the Debtors' hotel on or before the Petition Date and allegedly caused by the negligent or intentional conduct of the Debtors, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, alter ego, or respondeat superior, any negligence-based or employment-based theory, (including any such Claim that has been asserted or may be amended to assert in a proof of claim such claims, whether or not timely filed, in the Chapter 11 Cases, or any such Claim that has been asserted against the Settlement Trust)

19

including any proportionate or allocable share of liability based thereon. Tort Claims include any Indirect Tort Related Claims. For the avoidance of doubt, Direct Tort Claims include the fifteen (15) Direct Tort proofs of claim filed with the Bankruptcy Court before the Tort Bar Date by each of the following claimants: A.H., B.H., C.A., K.R., M.B., B.S., D.P., D.W., E.B., J.H., L.E., S.M., S.W., T.H., and T.S.

135.    "Tort Insurance Policies" means the Debtors Insurance Policies. Tort Insurance Policies do not include Non-Tort Insurance Policies or Postpetition Insurance Policies.

136.    "Trust Distribution Procedures" means the Debtors Trust Distribution Procedures for Tort Claims, substantially in the form attached hereto as Exhibit B, as the same may be amended or modified from time to time in accordance with the terms thereof.

137.    "Unexpired Lease" means a lease to which RI or RMI is a party, including any and all pre- and postpetition amendments thereto, that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

138.    "Unimpaired" means any Claim that is not Impaired, including any Claim that is Reinstated.

139.    "United States Trustee" means the Office of the United States Trustee for the Eastern District of Pennsylvania.

140.    "Voting Deadline" means the date by which all Persons entitled to vote on the Plan must vote to accept or reject the Plan.

141.    "Voting Procedures" means those certain procedures and supplemental procedures approved by the Bankruptcy Court for soliciting and tabulating the votes to accept or reject the Plan cast by holders of Claims against the Debtors entitled to vote on the Plan.

C.    Rules of Interpretation. For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter; (c) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (d) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan; (e) any reference to an entity as a holder of a Claim or Interest includes that entity's successors and assigns; (f) all references in this Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to this Plan; (g) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (i) subject to the provisions of any contract, Articles of Incorporation, Bylaws, instrument, release or other agreement or document entered into

in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with federal law, including the Bankruptcy Code and Bankruptcy Rules; and (j) the rules of construction set forth in §102 of the Bankruptcy Code will apply.

D.    <u>Computation of Time</u>.  In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

E.    <u>References to Monetary Figures</u>. All references in the Plan to monetary figures shall refer to United States of America currency, unless otherwise expressly provided.

F.    <u>Exhibits</u>.  All Exhibits are incorporated into and are a part of the Plan as if set forth in full herein and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court on or before the Exhibit Filing Date.  After the Exhibit Filing Date, copies of Exhibits can be obtained upon written request to Karalis PC, 1900 Spruce Street, Philadelphia, PA 19103 (Attention: Aris J. Karalis, Esquire), counsel to the Debtors, or by downloading such Exhibits from the Bankruptcy Court website at http://ecf.paeb.uscourts.gov.   To the extent any Exhibit is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-Exhibit portion of the Plan shall control.

G.    <u>Controlling Document</u>. In the event of any conflict between the terms and provisions in the Plan (without reference to the Plan Supplement), on the one hand, and the terms and provisions in the Disclosure Statement, the Plan Supplement, any other instrument or document created or executed pursuant to the Plan, or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), on the other hand, the Plan (without reference to the Plan Supplement) shall govern and control; <u>provided</u>, <u>however</u>, that (1) in the event of a conflict between Confirmation Order, on the one hand, and any of the other Plan Documents, on the other hand, the Confirmation Order shall govern and control in all respects, and (2) in the event of a conflict between the terms and provisions of the Plan, the Disclosure Statement, the Plan Supplement, or any other Plan Document, on the one hand, and the terms and provisions of any Insurance Settlement Agreement, on the other hand, the terms and provisions of the applicable Insurance Settlement Agreement shall control.

## ARTICLE II
## Classification and Treatment of Claims and Interests

A.    <u>Classification of Claims and Interests</u>.

1.    <u>Grouping of Debtors for Convenience</u>. The Plan is being proposed as a joint plan of reorganization of the Debtors for administrative purposes only and constitutes a separate chapter 11 plan of reorganization for each Debtor. The Plan is not premised upon the substantive consolidation of the Debtors with respect to the Classes of Claims or Interests set forth in the Plan.

2.      Classification in General. For purposes of organization, voting, and all matters related to Confirmation, and except as otherwise provided herein, all Claims (other than Administrative Expense Claims and Priority Tax Claims) against and Interests in the Debtors are classified as set forth in this Article II. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims described in Article III have not been classified and are excluded from the following Classes. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest falls within the description of such Class, and is classified in another Class or Classes to the extent that any remainder of the Claim or Interest falls within the description of such other Class or Classes. Notwithstanding anything to the contrary contained in the Plan, no distribution shall be made on account of any Claim that is not Allowed for distribution purposes (if applicable) or any Claim that has been satisfied, released, or otherwise settled prior to the Effective Date.

3.      Summary of Classification. The following table designates the Classes of Claims against and Interests in the Debtors and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan; (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code; or (c) presumed to accept or deemed to reject the Plan.

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Secured Claims | Impaired | Entitled to Vote |
| 2 | Priority Non-Tax Claims | Unimpaire | Presumed to Accept; Not Entitled to Vote |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Non-Tort Litigation Claims | Impaired | Entitled to Vote |
| 5 | Direct Tort Claims | Impaired | Entitled to Vote |
| 6 | Indirect Tort Related Claims | Impaired | Entitled to Vote |
| 7 | Interests in RI | Unimpaire | Presumed to Accept; Not Entitled to Vote |
| 8 | Interests in RMI | Unimpaire | Presumed to Accept; Not Entitled to Vote |

B.      Treatment of Claims and Interests.

1.      **Class 1.  Secured Claims.**

a.      Classification:  Class 1 consists of all Secured Claims.

b.      Treatment:  Except to the extent that a holder of an Allowed Secured Claim agrees to a less favorable treatment of such Claim, in full and final satisfaction of such Secured Claims at the sole option of the Reorganized Debtors:  (i) each such holder shall receive payment in Cash in an amount equal to such Allowed Secured Claim, payable on or as soon as practicable after the last to occur of (y) the Effective Date, or (z) the date on which the holder of such and the Debtors or Reorganized Debtors, as applicable, shall otherwise agree in writing.

c.      Voting:  Class 1 is Impaired, and is entitled to vote to accept or reject the Plan.

2.      **Class 2.          Priority Non-Tax Claims.**

a.      Classification:  Class 2 consists of all Priority Non-Tax Claims.

b.      Treatment:  Except as otherwise agreed by the holder of such claim, each holder of a Priority Non-Tax Claim, shall be paid in accordance with the priorities set forth in the Bankruptcy Code on the Effective Date.

c.      Voting:  Class 2 is Unimpaired, and each holder of a Priority Non-Tax Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 2 Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Priority Non-Tax Claims.

3.      **Class 3.**      **General Unsecured Claims.**

a.      Classification:  Class 3 consists of all General Unsecured Claims.

b.      Treatment:  The Debtors acknowledge and agree that General Unsecured Claims are held by creditors who are core to the Debtors' operations, or creditors whose Claims, if Allowed, were incurred in furtherance of the Debtors' operations.  Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment of such Claim, in exchange for full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed General Unsecured Claim, each holder thereof shall receive its Pro Rata share of the GUC Fund on each Distribution Date on account of its Allowed General Unsecured Claim. Reorganized RI shall deposit Cash into the GUC Fund by making a deposit in the amount of $40,000.00 one hundred and twenty (120) days after the Effective Date.

c.      Voting:  Class 3 is Impaired, and each holder of a General Unsecured Claim is entitled to vote to accept or reject the Plan.

d.      General Provisions:  No interest or other similar postpetition charges will be paid on account of Class 3 Claims.

4.      **Class 4.**      **Non-Tort Litigation Claims**.

a.      Classification:  Class 4 consists of all Non-Tort Litigation Claims.

b.      Treatment:

(i)      Except to the extent that a holder of an Allowed Non-Tort Litigation Claim agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Non-Tort Litigation Claim, each holder thereof shall, subject to the terms and conditions of Article IV.D.3 (as applicable), retain the right to recover up to the amount of such holder's Allowed Non-Tort Litigation Claim from (x) available insurance coverage or the proceeds of any Insurance Policy, including any Tort Insurance Policy or Non-Tort Insurance Policy, (y) applicable proceeds of any Insurance Settlement Agreements, and (z) co-liable non-debtors (if any) or their insurance coverage and be paid exclusively as provided under the applicable policy. To the extent that any Allowed Non-Tort Litigation Claim is underinsured, the

23

underinsured portion of such Allowed Claim shall be treated as an Allowed General Unsecured Claim under Class 3 of the Plan.

(ii)    As of the Effective Date, Class 4 Claimants are granted relief from the automatic stay of 11 U.S.C. § 362 solely for the purpose of continuing to prosecute and/or settle their Class 4 Claim in a court of competent jurisdiction, including litigating such action through entry of a judgement, prosecution of any appeals, and/or settlement of such action, subject to the terms, conditions and limitations set forth herein as to payment of any judgment that may be entered in such action.

(iii)    Notwithstanding any provision to the contrary in the Plan, such Class 4 Claimants shall be limited to recovering from (a) the proceeds of any applicable insurance policy which provides coverage, or could provide coverage, with respect to such Class 4 Claim, if any, and (b) to the extent any portion of the Allowed Class 4 Claim is underinsured, the underinsured portion of such Allowed Claim shall be treated as an Allowed General Unsecured Claim under Class 3 of the Plan.

(iv)    The rights of all Persons, under any insurance policy relevant to a Class 4 Claim, shall be unaffected in any way whatsoever by the provisions of this Plan, and all rights, remedies and/or defenses with respect to Class 4 Claims shall be unaffected in any way whatsoever by the provisions of this Plan.

c.    <u>Voting</u>:  Class 4 is Impaired, and each holder of a Non-Tort Litigation Claim is entitled to vote to accept or reject the Plan.

5.    **Class 5**.    **<u>Direct Tort Claims</u>.**

a.    <u>Classification</u>:  Class 5 consists of all Direct Tort Claims.

b.    <u>Treatment</u>:

(i)    On the Effective Date, the Settlement Trust shall receive, for the benefit of holders of Tort Claims, the Settlement Trust Contribution.   As of the Effective Date, liability for all Direct Tort Claims shall be assumed in full by the Plan Settlement Trust without further act, deed, or court order and shall be satisfied solely from the Plan Settlement Trust as set forth in the Trust Documents.

(ii)    Pursuant to the Channeling Injunction set forth in <u>Article X.F.</u>, each holder of a Direct Tort Claim shall have his or her Direct Tort Claim permanently channeled to the Plan Settlement Trust, and such Direct Tort Claim shall thereafter be asserted exclusively against the Plan Settlement Trust and resolved in accordance with the terms, provisions, and procedures of the Settlement Trust Documents. Holders of Direct Tort Claims are enjoined from prosecuting any outstanding, or filing any future, litigation, Claims, or Causes of Action arising out of or related to such Direct Tort Claims against any of the Protected Parties and may not proceed in any manner against any such Persons in any forum whatsoever, including any state, federal, or any administrative or arbitral forum, and are required to pursue their Direct Tort

24

Claims solely against the Plan Settlement Trust as provided in the Settlement Trust Documents. For the avoidance of doubt, the Protected Parties shall include: (a) the Debtors; (b) the Reorganized Debtors, (c) UVFS Management Company, LLC; (d) Yagna Patel; (e) the Equity Security Holders, (f) any Settling Insurance Company, and (g) all of such Persons' Representatives.

      c.    <u>Voting</u>:  Class 5 is Impaired, and each holder of a Direct Tort Claim is entitled to vote to accept or reject the Plan.

    6.    **Class 6.  <u>Indirect Tort Related Claims</u>.**

      a.    <u>Classification</u>:  Class 6 consists of all Indirect Tort Related Claims.

      b.    <u>Treatment</u>:

      (i)    As of the Effective Date, the Debtors' liability for all Indirect Tort Related Claims shall be assumed by the Plan Settlement Trust and shall be satisfied solely from the Settlement Trust as set forth in the Settlement Trust Documents.

      (ii)    Pursuant to the Channeling Injunction set forth in <u>Article X.F.</u>, each holder of an Indirect Tort Related Claim shall have his or her Indirect Tort Related Claim permanently channeled to the Plan Settlement Trust, and such Indirect Tort Related Claim shall thereafter be asserted exclusively against the Plan Settlement Trust and resolved in accordance with the terms, provisions, and procedures of the Settlement Trust Documents.  Holders of Indirect Tort Related Claim are enjoined from prosecuting any outstanding, or filing any future, litigation, Claims, or Causes of Action arising out of or related to such Indirect Tort Related Claim against any of the Protected Parties and may not proceed in any manner against any such Persons in any forum whatsoever, including any state, federal, or any administrative or arbitral forum, and are required to pursue their Direct Tort Claims solely against the Plan Settlement Trust as provided in the Settlement Trust Documents.  For the avoidance of doubt, the Protected Parties shall include: (a) the Debtors; (b) the Reorganized Debtors, (c) UVFS Management Company, LLC; (d) Yagna Patel; (e) the Equity Security Holders, (f) any Settling Insurance Company, and (g) all of such Persons' Representatives.

      c.    <u>Voting</u>:  Class 6 is Impaired, and each holder of an Indirect Tort Related Claim is entitled to vote to accept or reject the Plan.

    7.    **Class 7.  <u>Interests in RI</u>.**

      a.    <u>Classification</u>:  Class 7 consists of all Interests in RI.

      b.    <u>Treatment</u>:  As of the Effective Date, the Interests in RI shall remain unchanged and equal to the structure that existed on the Petition Date.

      c.    <u>Voting</u>:   Class 7 is unimpaired and each holder of Interests in RI are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 7 Interests are not entitled to vote to accept or reject the Plan.

      8.      **Class 8.  <u>Interests in RMI</u>.**

      a.      <u>Classification</u>:  Class 8 consists of all Interests in RMI.

      b.      <u>Treatment</u>:  As of the Effective Date, Interests in RMI shall remain unchanged and equal to the structure that existed on the Petition Date.

      c.      <u>Voting</u>:  Class 8 is unimpaired and each holder of Interests in RMI are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 8 Interests are not entitled to vote to accept or reject the Plan.

      9.      <u>Elimination of Vacant Classes</u>.  Any Class of Claims against or Interests in the Debtors that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

      10.      <u>Cramdown</u>.  If any Class is deemed to reject the Plan or is entitled to vote on the Plan and does not vote to accept the Plan, the Debtors may (a) seek Confirmation of the Plan under section 1129(b) of the Bankruptcy Code or (b) amend or modify the Plan in accordance with the terms hereof and the Bankruptcy Code.  If a controversy arises as to whether any Claims are, or any class of Claims is, impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**ARTICLE III**
**<u>Administrative Expense Claims and Priority Claims</u>**

      A.      <u>Administrative Expense Claims</u>.

      1.      <u>Administrative Expense Claims Generally</u>.  Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to less favorable treatment with respect to such Allowed Administrative Expense Claim, each holder of an Allowed Administrative Expense Claim shall receive, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Claim, payment of Cash in an amount equal to such Allowed Administrative Expense Claim on or as soon as reasonably practicable after the later of: (a) the Effective Date; (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; (c) such other date(s) as such holder and the Debtors or the Reorganized Debtors shall have agreed; or (d) such other date ordered by the Bankruptcy Court; <u>provided, however,</u> that Allowed Administrative Expense Claims that arise in the ordinary course of the Debtors' operations during the Chapter 11 Cases may be paid by the Debtors or the Reorganized Debtors in the ordinary course of business and in accordance with the terms and conditions of the particular agreements governing such obligations, course of dealing, course of operations, or customary practice.

2.     <u>Professional Fee Claims</u>.

a.     <u>Final Fee Applications</u>.    All Professionals or other Persons requesting the final allowance and payment of compensation and/or reimbursement of expenses pursuant to sections 328, 330, 331 and/or 503(b) for services rendered during the period from the Petition Date to and including the Effective Date shall file and serve final applications for allowance and payment of Professional Fee Claims on counsel to the Debtors and the United States Trustee no later than the first Business Day that is forty-five (45) days after the Effective Date. Objections to any Professional Fee Claim must be filed and served on the Reorganized Debtors and the applicable Professional within fourteen (14) calendar days after the filing of the final fee application that relates to the Professional Fee Claim (unless otherwise agreed by the Debtors or the Reorganized Debtors, as applicable, and the Professional requesting allowance and payment of a Professional Fee Claim).

b.     <u>Professional Fee Reserve</u>.    On the Effective Date, the Debtors shall establish and fund the Professional Fee Reserve with Cash in an amount equal to the Professional Fee Reserve Amount plus a reasonable cushion amount determined by the Debtors. Funds held in the Professional Fee Reserve shall not be considered property of (i) the Debtors' Estates, (ii) the Settlement Trust, or (iii) the GUC Fund. Professional Fees owing on account of Allowed Professional Fee Claims shall be paid in Cash from funds held in the Professional Fee Reserve as soon as reasonably practicable after such Professional Fee Claims are allowed by a Final Order of the Bankruptcy Court; provided, however, that the Reorganized Debtors obligations with respect to the Allowed Professional Fee Claims shall not be limited by or deemed limited to the balance of funds held in the Professional Fee Reserve. Notwithstanding anything otherwise contained herein, the Reorganized Debtors obligations for the Allowed Professional Fee Claims of Reed Smith for the period commencing on January 1, 2023 through the Effective Date that remain unpaid as of the Effective Date, shall be paid by the Settlement Trust from the Settlement Trust Assets. For the avoidance of doubt, prior to the Effective Date the Debtors, to the extent of available cash, have been making monthly Pro Rata payments to all of their Professionals (including Reed Smith) on account of Allowed Professional Fee Claims and will continue to do so through the Effective Date, however to the extent after making said Pro Rata monthly payments to Reed Smith, there is a balance due Reed Smith on account of its Allowed Professional Fee Claims as of the Effective Date, said balance will be paid to Reed Smith by the Settlement Trust. Except as set forth above with respect to unpaid Allowed Professional Fee Claims of Reed Smith, to the extent the funds in the Professional Fee Reserve are insufficient to satisfy the Allowed Professional Fee Claims in full, each holder of an Allowed Professional Fee Claim (other than Reed Smith) shall have an Allowed Administrative Expense Claim for any deficiency, which will be satisfied as soon as reasonably practicable by the Debtors. No Liens, Claims, interests, charges or other Encumbrances or liabilities of any kind shall encumber the Professional Fee Reserve in any way. When all Allowed Professional Fee Claims have been paid in full, amounts remaining in the Professional Fee Reserve, if any, shall be transferred to the Reorganized Debtors.

c.     <u>Professional Fee Reserve Amount</u>.    Subject to the limitations set forth in Article III.A.2.b above with respect to Reed Smith, to be eligible for payment for Accrued Professional Fees incurred up to an including the Effective Date, Professionals shall estimate their Allowed Fees incurred up to and including the Effective Date, and deliver such estimate to the

27

Debtors at least five (5) Business Days prior to the anticipated Effective Date.  If a Professional does not provide such estimate, the Debtors may estimate unbilled fees and expenses of such Professional.  The total amount so estimated shall constitute the Professional Fee Reserve Amount, provided that such estimate will not be considered an admission or limitation with respect to the fees and expenses of such Professional.

           d.      <u>Post-Effective Date Fees and Expenses</u>.  From and after the Effective Date, any requirement that Professionals comply with sections 327 through 331 or 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and Professionals may be employed and paid in the ordinary course of operations without any further notice to or action, order, or approval of the Bankruptcy Court.

        B.      <u>Priority Tax Claims</u>.  Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, at the sole option of the Debtors or the Reorganized Debtors, as applicable: (1) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date; (b) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; and (c) the date such Allowed Priority Tax Claim is due and payable in the ordinary course as such obligation becomes due; <u>provided, however,</u> that the Debtors reserve the right to prepay all or a portion of any such amounts at any time under this option without penalty or premium; or (2) regular installment payments in Cash of a total value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claim over a period ending not later than five years after the Petition Date.

**ARTICLE IV**
**<u>Plan Settlement Trust</u>**

        A.      <u>Establishment of the Settlement Trust</u>. The Settlement Trust shall be established on the Effective Date in accordance with the Plan Documents. The Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code, with respect to which Reorganized RI shall timely make an election to treat the Settlement Trust as a "grantor trust" for U.S. federal income tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes.

        B.      <u>Purposes of the Settlement Trust</u>.

        1.      The purposes of the Settlement Trust shall be to (a) assume the liability for all Tort Claims, (b) assume the liability, obligation and responsibility, financial or otherwise of each Protected Party with respect to the Tort Claims, (c) hold, preserve, maximize and administer the Settlement Trust Assets, and (d) direct the processing, liquidation and payment of all compensable Tort Claims in accordance with the Settlement Trust Documents.  The Settlement Trust Assets include the Settlement Trust Contribution; and any and all other funds, proceeds or other

consideration otherwise contributed to the Settlement Trust pursuant to the Plan or the Confirmation Order or other Final Order of the Bankruptcy Court.

2.       The Settlement Trust shall resolve all Tort Claims in accordance with the Settlement Trust Documents.  The Settlement Trust shall resolve all Tort Claims in a fair, consistent, equitable manner, and on a Pro Rata basis, in compliance with the terms of the Settlement Trust Documents and to the extent of available Settlement Trust Assets.  From and after the Effective Date, the Tort Claims shall be channeled to the Settlement Trust pursuant to the Channeling Injunction set forth in <u>Article X.F</u> herein and may be asserted only and exclusively against the Settlement Trust.

3.       In the event of any ambiguity or conflict between the terms of the Settlement Trust Agreement or any related document required or provided for under the Settlement Trust Documents (other than the Confirmation Order), on the one hand, and the terms of the Plan and the Confirmation Order, on the other hand, the terms of the Plan and the Confirmation Order shall control, notwithstanding that the Settlement Trust Agreement and related documents required or provided for under the Settlement Trust Documents may be incorporated in or annexed to the Plan or the Confirmation Order.

C.       <u>Transfer of Claims to the Settlement Trust</u>.

1.       On the Effective Date or as otherwise provided herein, and without further action of any Person, the Settlement Trust shall assume the liabilities, obligations, and responsibilities, financial or otherwise, of the Protected Parties for all Tort Claims. These assumptions by the Settlement Trust shall not affect (i) the application of the Discharge Injunction or the Channeling Injunction or (ii) any Insurance Company's obligation under any Tort Insurance Policy or applicable law.

2.       Except as otherwise expressly provided in the Plan, the Settlement Trust Agreement, or the Trust Distribution Procedures, the Settlement Trust shall have control over the Settlement Trust Causes of Action and the Insurance Actions, and Settlement Trust shall thereby become the estate representative pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with the exclusive right (except as otherwise provided in <u>Article IV.D.4</u>) to enforce each of the Settlement Trust Causes of Action and the Insurance Actions, and the proceeds of the recoveries on any of the Settlement Trust Causes of Action or the Insurance Actions shall be deposited in and become the property of the Settlement Trust, and the Settlement Trust shall have the right to enforce the Plan and any of the other Plan Documents (including the Document Agreement) according to their respective terms, including the right to receive the Settlement Trust Assets as provided in the Plan; <u>provided</u>, <u>however</u>, that (a) the Settlement Trust shall have no other rights against the Protected Parties except to enforce the Plan and any of the other Plan Documents; and (b) for the avoidance of doubt, the Settlement Trust Causes of Action and the Insurance Actions, do not include any rights of the Protected Parties arising under the Channeling Injunction or any of the Injunctions, Releases, or Discharges granted under the Plan and the Confirmation Order.

D.     Transfer of Settlement Trust Assets to the Settlement Trust.

1.     Transfers on the Effective Date. On the Effective Date, subject to Article IV.D.2, all right, title, and interest in and to the Settlement Trust Assets and any proceeds thereof shall be automatically, and without further act or deed, transferred to, vested in, and assumed by the Settlement Trust free and clear of all Encumbrances or Claims or other interests of any Person, subject to the Channeling Injunction and other provisions of the Plan. Notwithstanding the foregoing, the Settlement Trust shall satisfy, to the extent required under the relevant policies and applicable law, and in accordance with the Trust Distribution Procedures, any retrospective premiums and self-insured retentions arising out of any Tort Claims under the Tort Insurance Policies.

2.     Transfers after the Effective Date. To the extent any of the Settlement Trust Assets are not transferred to the Settlement Trust by operation of law on the Effective Date pursuant to the Plan, then when such assets accrue or become transferable subsequent to the Effective Date, they shall automatically and immediately transfer to the Settlement Trust free and clear of all Encumbrances and Claims or other interests of any Person, subject to the Channeling Injunction and other provisions of the Plan. In the event a Protected Party breaches any obligation contained in this section, the Settlement Trust will have no adequate remedy at law and shall be entitled to preliminary and permanent declaratory and injunctive relief.

3.     Specified Insurance Policies and Non-Tort Litigation Claims.

a.     The Settlement Trust shall have consent over any post-Effective Date settlement of any Non-Tort Litigation Claim (such consent not to be unreasonably withheld) that is entitled to a recovery from the proceeds of any Specified Excess Insurance Policies. For the avoidance of doubt, no consent of the Settlement Trust shall be required for any post-Effective Date settlement of a Non-Tort Litigation Claim to the extent the recovery is from the proceeds of any Specified Primary Insurance Policies. A condition of payment of a Non-Tort Litigation Claim by the Settlement Trust from any Specified Insurance Policy shall be a release by the holder of such Non-Tort Litigation Claim of the Debtors, the Protected Parties, and any other insureds under applicable Specified Insurance Policies. Before the Settlement Trust settles any Specified Insurance Policy(ies) under which the holder of a Non-Tort Litigation Claim is seeking to recover, the holder of a Non-Tort Litigation Claim may recover up to the full amount of such Claim in the first instance from any such available unsettled Specified Primary Insurance Policy(ies) or unsettled Specified Excess Insurance Policy(ies).  If and when the Settlement Trust settles one or more Specified Insurance Policies under which the holder of a Non-Tort Litigation Claim is seeking to recover: (a) the holder of such Non-Tort Litigation Claim shall remain entitled to recover up to $1,000,000 of such Claim under any such Specified Primary Insurance Policy(ies); and (b) any amounts exceeding $1,000,000 shall be recoverable in the first instance from any such available unsettled Specified Excess Insurance Policies. Subject to a review of the details concerning a Non-Tort Litigation Claim by the Settlement Trustee, to the extent that the holder of a Non-Tort Litigation Claim cannot, as a result of the Settlement Trust's release of such Specified Insurance Policy(ies), recover the full amount of any judgment or settlement of such Claim (consented to by the Settlement Trust (such consent not to be unreasonably withheld) if the settlement entitles the holder of the Non-Tort Litigation Claim to

recover from the proceeds of any Specified Excess Insurance Policies) from any Specified Insurance Policy(ies) under which the holder of a Non-Tort Litigation Claim is seeking to recover, then any unpaid amounts (up to applicable policy limits) shall be submitted to the Settlement Trust, which shall pay such amounts out of the proceeds of the Specified Insurance Policies.

b.      The Settlement Trustee shall have a duty to treat Direct Tort Claims and Non-Tort Litigation Claims that implicate the Specified Insurance Policies fairly and equally. In negotiating any settlements involving Specified Insurance Policies, the Settlement Trustee shall bear in mind the interests of both Direct Tort Claims and Non-Tort Litigation Claims in structuring any settlement and use best efforts to maximize recoveries for both constituencies.

4.      Settlement Trust Causes of Action. The transfer of the Settlement Trust Causes of Action to the Settlement Trust, insofar as they relate to the ability to defend against or reduce the amount of Tort Claims, shall be considered the transfer of a nonexclusive right enabling the Settlement Trust to defend itself against asserted Tort Claims, which transfer shall not impair, affect, alter, or modify the right of any Person, including the Protected Parties, an insurer or alleged insurer, or co-obligor or alleged co-obligor, sued on account of a Tort Claim or on account of any asserted right relating to any Tort Insurance Policy, to assert each and every defense or basis for claim reduction such Person could have asserted had the Settlement Trust Causes of Action not been assigned to the Settlement Trust (including any defense or basis for claim reduction that any Insurance Company or other insurer or alleged insurer could have asserted under section 502 of the Bankruptcy Code, applicable non-bankruptcy law, or any Tort Insurance Policy or other agreement with respect to (a) any alleged liability of the  Debtors, or  Alpha Centurion, its predecessors, successors, assigns, subsidiaries and Affiliates or Alpha-Century, Inc., its predecessors, successors, assigns, subsidiaries and Affiliates or any other  Person (whether insured or not) for any Tort Claim or (b) any alleged liability of any Insurance Company or other insurer or alleged insurer to provide indemnity or defense relating to any Tort Claim or any alleged extracontractual liability of any Insurance Company or other insurer or alleged insurer relating to any Tort Claim).

E.      Settlement Trustee. There shall be one Settlement Trustee, who shall be appointed by the Bankruptcy Court in the Confirmation Order. The initial Settlement Trustee shall be disclosed in a notice filed on the docket of these Chapter 11 Cases by the commencement of the Confirmation Hearing.  Any successor Settlement Trustee shall be appointed in accordance with the terms of the Settlement Trust Agreement. For purposes performing his or her duties and fulfilling his or her obligations under the Settlement Trust and the Plan, the Settlement Trustee shall be deemed to be, and the Confirmation Order shall provide that he or she is, a "party in interest" within the meaning of section 1109(b) of the Bankruptcy Code. The Settlement Trustee shall be the "administrator" of the Settlement Trust as such term is used in Treas. Reg. Section 1.468B-2(k)(3).

F.      Settlement Trust Advisory Committee.

1.      The Settlement Trust Advisory Committee (the "STAC") shall be composed of three (3) individuals identified below, one (1) of whom shall be selected by the Tort Plaintiffs, and two (2) of whom shall be selected by the Debtors.  The STAC members shall be reasonably acceptable to the Debtors and shall have the functions, duties, and rights provided in

31

the Settlement Trust Agreement. Each STAC member shall serve in accordance with the terms and conditions of the Settlement Trust Agreement.

2.      The commencement or continuation of a TDP State Tort Election Claim or TDP Federal Tort Election Claim (as defined in the Trust Distribution Procedures) and the approval of any global settlement after the Effective Date that causes an Insurance Company to become a Protected Party must be approved in accordance with the Settlement Trust Agreement.

G.      <u>Trust Distribution Procedures</u>. On the Effective Date, the Settlement Trust shall implement the Trust Distribution Procedures in accordance with the terms of the Settlement Trust Agreement. From and after the Effective Date, the Settlement Trustee shall have the authority to administer, amend, supplement, or modify the Trust Distribution Procedures solely in accordance with the terms thereof and the Settlement Trust Agreement.

H.      <u>Post-Effective Date Settling Insurance Companies</u>.

1.      Notwithstanding any present exclusionary language in the Plan, after the Effective Date, any Insurance Company may, within twelve (12) months of the Effective Date (the "<u>Insurance Settlement Period</u>"), and such Insurance Settlement Period may be extended by the Settlement Trustee with the consent of a majority of the STAC, enter into an Insurance Settlement Agreement with the Settlement Trustee (a "<u>Post-Effective Date Insurance Settlement</u>"); <u>provided</u>, <u>however</u>, that the Settlement Trustee shall file a notice with the Bankruptcy Court within thirty (30) days of entering into any such Post-Effective Date Insurance Settlement, and such Insurance Company (and any related Persons or Representatives, as applicable) shall be deemed to be a Settling Insurance Company and Protected Party for all purposes hereunder and the Settlement Trustee shall have the authority to seek approval of a Post-Effective Date Insurance Settlement in accordance with the Settlement Trust Agreement. The Post-Effective Date Insurance Settlement and amendment shall be deemed binding and effective absent objection by any Person within fifteen (15) calendar days. The Settlement Trustee shall have the sole discretion, upon order of the Bankruptcy Court, to extend the Insurance Settlement Period.

2.      Any Insurance Company that becomes a Protected Party in accordance with this <u>Article IV.H</u> shall have all of the rights, remedies and obligations of a Protected Party under the Plan, including under the Channeling Injunction, notwithstanding that such Insurance Company was not a Protected Party under the Plan as of the Effective Date.

I.      <u>Settlement Trust Expenses</u>. The Settlement Trust shall pay all Settlement Trust Expenses from the Settlement Trust Assets within thirty (30) days of the submission of any invoices documenting such expenses by the affected party. The Settlement Trust shall bear sole responsibility with respect to the payment of the Settlement Trust Expenses. Additionally, the Settlement Trust shall promptly pay all reasonable and documented Settlement Trust Expenses incurred by any Protected Party for any and all liabilities, costs or expenses as a result of taking action on behalf of or at the direction of the Settlement Trust following the transfer to the Settlement Trust of copies of all records and documents in such Persons' possession, custody or control pertaining to Tort Claims in accordance with the Document Agreement. To the maximum extent permitted by applicable law, the Settlement Trustee shall not have or incur any liability for

actions taken or omitted in his or her capacity as Settlement Trustee, or on behalf of the Settlement Trust, except those acts found by Final Order to be arising out of his or her willful misconduct, bad faith, gross negligence or fraud, and shall be entitled to indemnification and reimbursement for reasonable fees and expenses in defending any and all of his or her actions or omissions in his or her capacity as Settlement Trustee, or on behalf of the Settlement Trust, except for any actions or omissions found by Final Order to be arising out of his or her willful misconduct, bad faith, gross negligence or fraud. Any valid indemnification claim of the Settlement Trustee shall be satisfied only from the Settlement Trust Assets.  The Settlement Trust shall also pay from the Settlement Trust Assets the Allowed Professional Fee Claims of Reed Smith for the period commencing on January 1, 2023 through the Effective Date that remain unpaid as of the Effective Date.  For the avoidance of doubt, prior to the Effective Date the Debtors, to the extent of available cash, have been making monthly Pro Rata payments to all of their Professionals (including Reed Smith) on account of Allowed Professional Fee Claims and will continue to do so through the Effective Date, however to the extent after making said Pro Rata monthly payments to Reed Smith, there is a balance due Reed Smith on account of its Allowed Professional Fee Claims as of the Effective Date, said balance will be paid to Reed Smith by the Settlement Trust.

J.    Defense Costs.  The Settlement Trust shall pay all reasonable and necessary out of pocket attorneys' fees and costs for defense counsel and other expenses of the Settlement Trust in connection with the defense of any Tort Claims asserted under the Tort System Alternative ("Defense Costs"); provided, however, that if a responsible Insurance Company defends one or more of the Protected Parties and/or the Settlement Trust with respect to any Tort Claim commenced under the Tort System Alternative (for defense counsel selected by the Protected Parties and Settlement Trust), the Settlement Trust shall be relieved of its obligations to pay Defense Costs; provided, further, however, that if an Insurance Company has a duty to defend, or has a duty to reimburse defense costs of a Protected Party, but fails to honor that obligation, the Settlement Trust will pay or reimburse the Protected Party for reasonable and necessary Defense Costs.  Should the Settlement Trust be required to retain counsel in connection with the defense of any Tort Claim asserted under the Tort System Alternative, the Settlement Trust (with the consent of the applicable Insurance Company if such Defense Costs are covered) shall retain Blank Rome LLP in connection with such defense, given Blank Rome LLP's extensive pre- and post-petition involvement in defense of Reorganized Debtors with respect to claims made that are similar to, if not otherwise identical to, the Tort Claims commenced under the Tort System Alternative. Blank Rome LLP shall exercise its professional judgment in accordance with the Rules of Professional Conduct and any other relevant rules governing their duties and obligations of attorneys to their clients and will be engaged at a rate to be agreed upon by the Settlement Trust and, if applicable, any Insurance Company that is providing, by agreement or court order, Defense Costs. For the avoidance of doubt: (i) the Protected Parties shall be made whole by the Settlement Trust for any actually expended or incurred Defense Costs for their participation in the Trust Distribution Procedures including the Tort System Alternative; and (ii) any Defense Costs previously paid by the Settlement Trust to a Protected Party shall be reimbursed to the Settlement Trust upon the responsible Insurance Company's satisfaction of any such amounts.  All Defense Costs shall be paid by the Settlement Trust within thirty (30) days of the presentation of any invoices by Reorganized RI or a Protected Party.

K.    Reimbursement by Settlement Trust. From and after the Effective Date, the Settlement Trust shall promptly reimburse, to the fullest extent permitted by applicable law, the

Reorganized Debtors, and each other Protected Party for any documented and reasonable out-of-pocket, losses, costs, and expenses (including judgments, attorneys' fees, and expenses) incurred by the Reorganized Debtors or any other Protected Party after the Effective Date attributable to the defense of a Tort Claim that is channeled to the Settlement Trust if the holder of such Tort Claim seeks to hold the Reorganized Debtors or any other Protected Party liable for such Tort Claim in violation of the terms of the Plan or the Confirmation Order; provided that any amounts (a) incurred by the Settlement Trust as set forth herein, (b) incurred by the Settlement Trust to enforce the Channeling Injunction against a holder of a Tort Claim, or (c) that reduce Settlement Trust Assets as a result of the enforcement of the Channeling Injunction shall be deducted on a dollar-for-dollar basis against such holder's distribution from the Settlement Trust on account of such Tort Claim, as applicable.  The Reorganized Debtors and any other Protected Party shall provide notice to the Settlement Trust within ten (10) business days of the service of any claim or lawsuit filed by a holder of a Tort Claim that could result in any reimbursement obligations by the Settlement Trust under this provision.

> 1.    Actions filed against a Protected Party in violation of Channeling Injunction. In the event that any litigation asserting a Tort Claim is filed naming the Reorganized Debtors or any other Protected Party as a defendant in violation of the terms of the Plan or the Confirmation Order, the Settlement Trust shall, at the request of the Reorganized Debtors or such other Protected Party, promptly appear (y) before the Bankruptcy Court to obtain entry of an order enforcing the Channeling Injunction in such litigation and (z) seek the dismissal of the case.

> 2.    Reimbursement of Fees and Costs Paid by Debtors.  If the Debtors, or the Settlement Trust after the Effective Date, is able to obtain a Final Order with respect to the Insurance Coverage Actions against Praetorian Insurance Company and Public Service Mutual Insurance Company related to the Tort Claim filed by A.H. awarding the reimbursement of the fees and costs incurred by the Debtors or the Settlement Trust, then the portion of such Final Order that relates to fees and costs previously paid (prepetition or postpetition) by the Debtors shall be paid to the Reorganized Debtors and the portion of such Final Order that relates to fees and costs paid by the Settlement Trust shall be paid to the Settlement Trust.

> 3.    Recovery of Bad Faith Claims.  If any of the bad faith claims asserted by the Debtors against the Insurance Companies or if applicable, the Settlement Trustee, are awarded by the District Court or Bankruptcy Court, said awards shall be paid and shared by the Reorganized Debtors and the Settlement Trust as their interest may appear.

L.    Assignment of Claims and Defenses. Notwithstanding anything herein to the contrary, on the Effective Date, the Debtors, and each party that is or becomes a Protected Party shall be deemed to assign any and all Claims and defenses to the Settlement Trust that arise from or relate to Tort Claims, including any Claims and defenses against co-defendants which shall be assumed by the Settlement Trust. Notwithstanding the foregoing, nothing within the Plan or Confirmation Order shall be deemed to provide an assignment of any Claims or defenses to the Settlement Trust with respect to any Claims that have not been assumed by the Settlement Trust and subject to the Channeling Injunction of Article X.F herein.

M.    <u>Dismissal of Pending Litigation</u>.  Within thirty (30) days after the Effective Date, all Tort Claims against Protected Parties currently pending in any state or federal court shall be dismissed without prejudice.  Such Tort Claims shall be channeled to the Settlement Trust; provided, however, the running of the relevant statute of limitations shall be tolled as to any Tort Claim which elects to proceed under the Tort System Alternative set forth in Article XII of the Trust Distribution Procedures and satisfies the conditions precedent to do so.  Following the resolution of such Tort Claims in accordance with the Trust Distribution Procedures, such claims shall be released and dismissed in accordance with the terms of the Plan and the Trust Distribution Procedures.  Such dismissals are not, and shall not be construed as, a discharge and/or release of any Tort Claim that is subject to coverage under any Insurance Policy.

N.    <u>Tort Claims Allowance Process</u>.  Each Tort Claimant must submit his or her Tort Claim to the Settlement Trust for allowance and potential valuation and determination of its insurance status by the Settlement Trustee pursuant to the requirements set forth in the Trust Distribution Procedures or (2) if all conditions precedent set forth in the Trust Distribution Procedures are satisfied to allow such Claim to be pursued under the Tort System Alternative set forth under Article XII of the Trust Distribution Procedures, said Tort Claimant may elect to proceed under Article XII of the Trust Distribution Procedures.

O.    <u>Favorable Coverage Decision and Additional Mediations</u>.  If the Debtors, or the Settlement Trust after the Effective Date, are able to obtain an order of the District Court for the Eastern District of Pennsylvania in the cases of M.B., C.A., B.H., or K.R. or, in the case of A.H. of the Bankruptcy Court, determining that any of the Insurance Companies that issued the Insurance Policies to the Debtors with respect to these Tort Claims are required to defend or indemnify the Debtors, Reorganized Debtors, other Protected Party, or Settlement Trust with respect to these Tort Claims (a "<u>Favorable Coverage Decision</u>"), then

1.    In the first instance, the Trustee for the Settlement Trust, each holder of an applicable Direct Tort Claim or Indirect Tort Related Claim, and the applicable Insurance Companies, shall participate in a second mediation session with a mediator approved by the Bankruptcy Court (the "<u>Second Mediation</u>") to determine if a settlement can be reached among the applicable holders of Direct Tort Claims, the holders of Indirect Tort Related Claims, the Insurance Companies and the Settlement Trust; and if the Second Mediation does not result in settlement within 90 days from the commencement of the Second Mediation, then

2.    In the second instance, each of M.B., C.A., B.H., K.R., or A.H.: (a) must have their claims resolved by the Settlement Trust in accordance with the Trust Distribution Procedures, or (b) to the extent that a Favorable Coverage Decision covers their respective Tort Claim; then said Tort Claimant may elect to proceed under the Tort System Alternative under Article XII.A of the Trust Distribution Procedures; and

3.    In the third instance, each of D.P., E.B., L.E., T.H., T.S., J.H., S.M., S.W., B.S., or D.W.:  (a) must have their claims resolved by the Settlement Trust in accordance with the Trust Distribution Procedures, or (b) to the extent that a favorable coverage decision as set forth above is obtained from the District Court or Bankruptcy Court that covers their respective Tort Claim, then said Tort Claimant may elect to proceed under the Tort System Alternative under Article

XII.B of the Trust Distribution Procedures.

4.      If the Settlement Trust does not obtain an order of the District Court in the cases of M.B., C.A., B.H., or K.R., or, the Bankruptcy Court in the case of A.H., determining that any of the Insurance Companies that issued the Insurance Policies to the Debtors are required to defend or indemnify the Debtors, Reorganized Debtors, other Protected Party, or Settlement Trust with respect to these Tort Claims (an "Unfavorable Coverage Decision"), then all Direct Tort Claimants shall have their claims resolved by the Settlement Trust in accordance with the Trust Distribution Procedures, and the TDP State Tort Election Claim and TDP Federal Tort Election Claims set forth in Article XII.A. and Article XII.B. of the Trust Distribution Procedures shall not be applicable or enforceable.

P.      Release of Tort Claim or Non-Tort Litigation Claim Required for a Distribution from Settlement Trust.  No Tort Claimant or Non-Tort Litigation Claim may receive a distribution from the Settlement Trust on its Allowed Claim until such claimant has executed a release agreement in favor of the Reorganized Debtors and each other Protected Party in a form acceptable to the Reorganized Debtors, each other Protected Party and the Settlement Trust.

Q.      Indemnification by Settlement Trust.   If any of the Protected Parties are named as defendants in any action by a holder of a Tort Claim which is enjoined by the terms of the Plan and channeled to the Settlement Trust by the Channeling Injunction, the Protected Parties shall tender the defense of such action to the Settlement Trust and the Settlement Trust shall be responsible for all actions required to defend the Protected Parties in such action utilizing the Protected Parties current defense counsel including, payment of any legal fees not otherwise covered by any Insurance Policy.

R.      Investment Guidelines. All monies held in the Settlement Trust shall be invested, subject to the investment limitations and provisions enumerated in the Settlement Trust Agreement.

S.      Excess Settlement Trust Assets. To the extent any Settlement Trust Assets remain at such time as the Settlement Trust is dissolved under the terms of the Settlement Trust Documents, any remaining Settlement Trust Assets shall be distributed to Reorganized RI.

T.      Document Agreement. The Reorganized Debtors, each Protected Party, and the Settlement Trust shall enter into the Document Agreement on the Effective Date, substantially in the form contained in the Plan Supplement. The parties to the Document Agreement shall be bound by the terms thereof.

U.      Privileged Information. The transfer or assignment of any Privileged Information to the Settlement Trustee shall be subject to the terms of the Document Agreement.

V.      No Liability. The Protected Parties shall neither have nor incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance in connection with or related to the Settlement Trust, the Settlement Trustee, or the

Settlement Trust Documents, including the administration of Tort Claims and the distribution of Settlement Trust Assets by the Settlement Trust, or any related agreement.

W.    <u>U.S. Federal Income Tax Treatment of the Settlement Trust</u>. The Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code. Reorganized RI shall make a "grantor trust" election under Treasury Regulation section 1.468B-1(k) with respect to the Settlement Trust for U.S. federal income tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes. All parties shall report consistently with such grantor trust election. The Settlement Trust shall file (or cause to be filed) statements, returns, or disclosures relating to the Settlement Trust that are required by any Governmental Unit. The Settlement Trustee shall be responsible for the payment of any taxes imposed on the Settlement Trust or the Settlement Trust Assets, including estimated and annual U.S. federal income taxes in accordance with the terms of the Settlement Trust Agreement. The Settlement Trustee may request an expedited determination of taxes on the Settlement Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Settlement Trust for all taxable periods through the dissolution of the Settlement Trust.

X.    <u>Institution and Maintenance of Legal and Other Proceedings</u>. As of the Effective Date, the Settlement Trust shall be empowered to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve all legal actions and other proceedings related to any asset, liability, or responsibility of the Settlement Trust, including the Insurance Actions, Tort Claims, and the Settlement Trust Causes of Action. Without limiting the foregoing, on and after the Effective Date, the Settlement Trust shall be empowered to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve all such actions, in the name of the Debtors or Reorganized Debtors, if deemed necessary or appropriate by the Settlement Trust. The Settlement Trust shall be responsible for the payment of all damages, awards, judgments, settlements, expenses, costs, fees, and other charges incurred on or after the Effective Date arising from, relating to, or associated with any legal action or other proceeding which is the subject of this <u>Article IV.X</u> and shall pay Indirect Tort Related Claims, in accordance with the Trust Distribution Procedures, that may arise from deductibles or other charges. Furthermore, without limiting the foregoing, the Settlement Trust shall be empowered to maintain, administer, preserve, or pursue the Insurance Actions and the Insurance Action Recoveries.

Y.    <u>Notation on Claims Register Regarding Tort Claims</u>. On the Effective Date, all Tort Claims and Indirect Tort Related Tort Claims filed against the Debtors in the Chapter 11 Cases shall be marked on the Claims Register as "Channeled to the Settlement Trust" and resolved exclusively in accordance with the Trust Distribution Procedures.

**ARTICLE V.**
**<u>Means for Implementation of the Plan</u>**

A.    <u>General</u>. On and after the Confirmation Date, the Debtors shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions consistent with the Plan as may be necessary or appropriate to enable them to implement the provisions of the Plan

37

before, on, or after the Effective Date, including the creation of the Settlement Trust and the preparations for the transfer of the Settlement Trust Assets to the Settlement Trust.

B.     Compromise and Settlement of Claims, Interests and Controversies.  Pursuant to § 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the classification, distributions, releases, and other benefits provided under the Plan and Plan Documents, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that holders of Claims and Interests might have with respect to any Claim, Interest, or any Distribution to be made on account of an Allowed Claim under the Plan or any distribution to be made on account of an Allowed Claim.  The Plan specifically constitutes a good faith compromise and settlement between the Debtors and their Estates on one hand, and the holders of Tort Claims on the other. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such Claims, Interests and controversies and the Bankruptcy Court's finding that all such compromises and settlements (i) are in the best interests of (x) the Debtors and their estates and (y) holders of Claims, and (ii) are fair, equitable and reasonable.

C.     Continued Legal Existence of RI and RMI. The Reorganized RI and Reorganized RMI shall continue to exist on and after the Effective Date, with all of the powers each is entitled to exercise under applicable law and pursuant to their articles of formation and bylaws in effect prior to the Effective Date, except to the extent such articles of formation and bylaws are amended.

D.     Merger of Reorganized RMI into Reorganized RI.  On the Effective Date, all assets and liabilities of the Reorganized RMI shall be merged into Reorganized RI with the Reorganized RI being the surviving entity.  Upon the occurrence of the merger, all assets of Reorganized RMI shall be transferred, and conveyed to and become the assets of the Reorganized RI, and all liabilities of the Reorganized RMI (including liabilities under the Plan) shall become the liabilities of Reorganized RI.  Reorganized RMI in furtherance of this Plan, shall record all deeds necessary to effectuate the conveyance of all real property it owns to the Reorganized RI.

E.     Operations of the Debtors between Confirmation and the Effective Date. The Debtors shall continue to operate as debtors and debtors in possession during the period from the Confirmation Date to the Effective Date.

F.     Reorganized Debtors' Directors and Officers. Pursuant to section 1129(a)(5) of the Bankruptcy Code, to the extent that there are anticipated changes in Reorganized Debtors' directors and officers, the Debtors will identify any such changes in the Plan Supplement and the nature of any compensation to be paid to any director or officer that is an Insider.

G.     Due Authorization. As of the Effective Date, all actions contemplated by the Plan that require corporate action of the Debtors, or either of them, including actions requiring a vote of all the Equity Security Holders in each Debtor, and execution of all documentation incident to the Plan, shall be deemed to have been authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by the Bankruptcy Court, members, officers, or directors of the Debtors, Reorganized Debtors, or any other Person.

H.      Restatement.  Except as otherwise provided in the Plan, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, the Debtors as a result of the satisfactions, Injunctions, Releases, Discharges and other transactions provided for in the Plan shall be deemed null and void and shall be of no force or effect. Nothing contained herein shall be deemed to, terminate, release, or discharge the obligation of the Debtors or any of their counterparties under any Executory Contract or Unexpired Lease to the extent such Executory Contract or Unexpired Lease has been assumed by the Debtors pursuant to a Final Order of the Bankruptcy Court, including the Confirmation Order.

I.      Cancellation of Liens. Except as otherwise provided in the Plan, on the Effective Date, any Lien securing any Allowed Secured Claim shall be deemed released and the holder of such Allowed Secured Claim shall be authorized and directed to release any collateral or other property of any Debtor held by such holder and to take such actions as may be requested by the Debtors (or Reorganized Debtors, as the case may be) to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases as may be requested by the Debtors (or Reorganized Debtors, as the case may be).

J.      Effectuating Documents and Further Transactions. The officers of the Debtors are authorized to execute, deliver, file or record such contracts, instruments, releases, indentures, and other agreements or documents and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan in the name of and on behalf of Reorganized Debtors, without the need for any approvals, authorizations, actions, or consents except for those expressly required pursuant to the Plan.  The secretary or any assistant secretary of each Debtor, as applicable, shall be authorized to attest any of the foregoing actions.

K.      Payment of the Equity Security Holders Contribution.  On the Effective Date, the Equity Security Holders shall fund the Equity Security Holders Contribution to the Reorganized RI.

L.      Exit Financing Facility.

1.      On the Effective Date, the Exit Financing Facility Agreement and any applicable collateral and other loan documents governing the Exit Financing Facility shall be executed and delivered, and Reorganized Debtors shall be authorized to execute, deliver and enter into, the Exit Financing Facility Agreement and related documentation governing the Exit Financing Facility without the need for any further corporate action or any further notice to or order of the Bankruptcy Court.

2.      As of the Effective Date, upon the granting of Liens in accordance with the Exit Financing Facility Agreement and any applicable collateral and other loan documents governing the Exit Financing Facility, all of the Liens and security interests granted thereunder (a) shall be deemed to have been granted, (b) shall be legal, binding, automatically perfected, non-avoidable, and enforceable first priority Liens on, and security interests in, all the assets of the Debtors and Reorganized Debtors, the collateral as of the Effective Date in accordance with the

respective terms of the Exit Financing Facility Agreement and related documentation. All Liens and security interests granted pursuant to the Exit Financing Facility Agreement and related documentation shall be (i) valid, binding, perfected, and enforceable first priority Liens and security interests in all assets (real property and personal property) of the Reorganized Debtors described in and subject to such documents, with the first priorities established in respect thereof under applicable non-bankruptcy law; (ii) granted in good faith and deemed not to constitute a fraudulent conveyance or fraudulent transfer; and (c) not otherwise subject to avoidance, recharacterization, or subordination (whether equitable, contractual or otherwise) under any applicable law. The Debtors, and Reorganized Debtors are authorized to make, and to the extent contemplated by the Exit Financing Facility Agreement and related documentation, the Debtors and Reorganized Debtors, will make, all filings and recordings, and obtain all governmental approvals and consents necessary to establish, attach and perfect such Liens and security interests under any applicable law (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interest to third parties.

        3.     On the Effective Date, the Exit Financing Lender shall fund the Exit Financing Facility to the Reorganized RI.

        M.    <u>Sources of Consideration for Distributions</u>. Distributions under the Plan shall be funded from the following sources:

        1.     the Reorganized Debtors shall fund (a) the Professional Fee Reserve on account of and satisfy Allowed Professional Fee Claims, (b) the Settlement Trust Contribution and (c) the GUC Fund, from the proceeds from any or all of the following sources, the Exit Financing Facility, the Equity Security Holders Contribution and Cash on hand on or after the Effective Date in accordance with the terms of the Plan and Confirmation Order;

        2.     the Reorganized Debtors shall fund Distributions on account of and satisfy Allowed General Unsecured Claims exclusively from the GUC Fund;

        3.     the Settlement Trust shall fund distributions on account of and satisfy compensable Tort Claims in accordance with the Trust Distribution Procedures from the Settlement Trust Assets; and

        4.     the Reorganized Debtors shall fund Distributions on account of and satisfy all other Allowed Claims with Cash on hand on or after the Effective Date in accordance with the terms of the Plan and the Confirmation Order.

        N.    <u>Resolution of Tort Claims</u>. All Tort Claims shall be channeled to and resolved by the Settlement Trust in accordance with the Trust Distribution Procedures; <u>provided</u>, that any Insurance Company may, subject to <u>Article X.M</u>, raise any valid Insurance Coverage Defense in response to a demand by the Settlement Trust, including any right of such Insurance Company to assert any defense that could, but for the Settlement Trust's assumption of the liabilities, obligations, and

responsibilities of the Protected Parties for Tort Claims, have been raised by the Debtors or other applicable Protected Party with respect to such Claim.

O.    <u>Funding by the Settlement Trust</u>. Except as set forth in the Plan or the Settlement Trust Documents, as applicable, the Settlement Trust shall have no obligation to fund costs or expenses.

P.    <u>Disbursing Agent</u>. The Disbursing Agent shall have the rights, powers and responsibilities provided in <u>Article VII</u>. The reasonable fees and actual and necessary costs and expenses of the Disbursing Agent, if any, shall be paid by Reorganized Debtors.

Q.    <u>Single Satisfaction of Allowed General Unsecured Claims</u>. In no event shall any holder of an Allowed General Unsecured Claim recover more than the full amount of its Allowed General Unsecured Claim from the GUC Fund, and to the extent that the holder of an Allowed General Unsecured Claim has received, or in the future receives, payment on account of such Allowed General Unsecured Claim from a party that is not a Debtor or Reorganized Debtor, such holder shall repay, return, or deliver to the GUC Fund any Distribution held by or transferred to such holder to the extent the holder's total recovery on account of its Allowed General Unsecured Claim from the third party and from the GUC Fund exceeds the amount of such holder's Allowed General Unsecured Claim.

R.    <u>Exemption from Certain Transfer Taxes and Recording Fees</u>. To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code and applicable law, any transfers of property pursuant to the Plan, including the conveyance of the real property owned by the Reorganized RMI to Reorganized RI, any transfers to the Settlement Trust by the Debtors and any Settling Insurance Company, and payments by Reorganized RI to or from the GUC Fund, shall constitute "transfers under a plan" within the purview of 1146(a) of the Bankruptcy Code and shall not be taxed under any law imposing a stamp tax or similar tax.

### ARTICLE VI.
### Executory Contracts and Unexpired Leases

A.    <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>.

1.    On the Effective Date, except as otherwise provided herein, all Executory Contracts and Unexpired Leases shall be deemed assumed by Reorganized Debtors without the need for any further notice to or action, order, or approval of the Bankruptcy Court under sections 365 or 1123 of the Bankruptcy Code, except for Executory Contracts or Unexpired Leases: (a) that are identified on the Rejected Contracts and Unexpired Leases Schedule; (b) that previously expired or terminated pursuant to their terms; (c) that the Debtors have previously assumed or rejected pursuant to a Final Order of the Bankruptcy Court; (d) that are the subject of a motion to reject that remains pending as of the Effective Date; (e) as to which the effective date of rejection will occur (or is requested by the Debtors to occur) after the Effective Date; or (f) as to which the Debtors or Reorganized Debtors, as applicable, determine, in the exercise of their reasonable business judgment, that the Cure Amount, as determined by a Final Order or as otherwise finally resolved, would render assumption of such Executory Contract or Unexpired Lease unfavorable to Debtors or Reorganized

Debtors; _provided_ that the Debtors reserve the right to seek enforcement of an assumed or assumed and assigned Executory Contract or Unexpired Lease following the Confirmation Date, including seeking an order of the Bankruptcy Court rejecting such Executory Contract or Unexpired Lease for cause.

2.    Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumption or rejection, as applicable, of Executory Contracts or Unexpired Leases pursuant to the Plan, pursuant to sections 365 and 1123 of the Bankruptcy Code. Except as otherwise set forth herein, the assumption or rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall be effective as of the Effective Date; _provided_ that the rejection of an Unexpired Lease shall be effective as of the later of: (a) the Effective Date; and (b) the date on which the leased premises are unconditionally surrendered to the non-Debtor counterparty to the rejected Unexpired Lease.

3.    Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or a Final Order of the Bankruptcy Court shall re-vest in and be fully enforceable by Reorganized Debtors in accordance with its terms, except as such terms may have been modified by the provisions of the Plan, the Confirmation Order, or any Final Order of the Bankruptcy Court authorizing and providing for its assumption. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by Reorganized Debtors.

B.    Rejection Damages Claims. Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim for Rejection Damages Claims, if any, shall be filed within thirty (30) days after the latest to occur of: (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; (2) the effective date of the rejection of such Executory Contract or Unexpired Lease; or (3) the Effective Date (as applicable, the "Rejection Damages Bar Date"). Claims arising from the rejection of an Executory Contract or an Unexpired Lease shall be classified as General Unsecured Claims and subject to the provisions of Article VII and the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. Any holder of a Rejection Damages Claim that is required to file a Proof of Claim in accordance with this Article VI.B but fails to do so on or before the Rejection Damages Bar Date shall not be treated as a creditor with respect to such Claim for the purposes of voting or Distributions, and such Rejection Damages Claim shall be automatically Disallowed, forever barred from assertion, and unenforceable against the Debtors, their Estates, Reorganized Debtors, or its or their respective property, whether by setoff, recoupment, or otherwise, without the need for any objection by the Debtors or Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court, and such Rejection Damages Claim shall be deemed fully satisfied, released, and discharged.

C.    Cure of Defaults under Executory Contracts and Unexpired Leases.

1.    Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount in Cash on the Effective Date or in the ordinary

course of the Debtors' or Reorganized Debtors' operations, subject to the limitation described below.

2.    Except as otherwise provided in the Plan, the Debtors shall, on or before the date of filing of the Plan Supplement, cause the Cure and Assumption Notices to be served on counterparties to Executory Contracts and Unexpired Leases to be assumed pursuant to the Plan. Any objection by a non-Debtor counterparty to an Executory Contract or Unexpired Lease to the assumption, assumption and assignment, the related Cure Amount, or adequate assurance, must be filed, served, and actually received by the Debtors on or prior to the deadline for filing objections to the Plan (or such later date as may be provided in the applicable Cure and Assumption Notice); provided that each counterparty to an Executory Contract or Unexpired Lease (a) that the Debtors later determine to assume or (b) as to which the Debtors modify the applicable Cure Amount, must object to the assumption or Cure Amount, as applicable, by the earlier of: (i) fourteen (14) days after the Debtors serve such counterparty with a corresponding Cure and Assumption Notice; and (ii) the Confirmation Hearing. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease shall be forever barred, estopped, and enjoined from contesting the Debtors' assumption of the applicable Executory Contract or Unexpired Lease and from requesting payment of a Cure Amount that differs from the amounts paid or proposed to be paid by the Debtors or Reorganized Debtors, in each case without the need for any objection by the Debtors or Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court. Reorganized Debtors may settle any dispute regarding a Cure Amount without any further notice to or action, order, or approval of the Bankruptcy Court.

3.    To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed, or assumed and assigned, pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or would be deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any change of control or similar provision), then such provision shall be deemed preempted and modified such that neither the Debtors' assumption or assumption and assignment of the Executory Contract or Unexpired Lease nor any of the transactions contemplated by the Plan shall entitle the non-debtor counterparty to terminate or modify such Executory Contract or Unexpired Lease or to exercise any other purported default-related rights thereunder.

4.    The Debtors' assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and payment of any applicable Cure Amount in accordance with the procedures set forth in this Article VI.C, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed, or assumed and assigned, Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, shall be deemed Disallowed and expunged as of the later of: (a) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such assumption; (b) the effective date of such assumption; or (c) the Effective Date, in each case without the need for any objection by the

43

Debtors or Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court.

D.      <u>Dispute Resolution</u>. In the event of a timely filed objection regarding: (1) a Cure Amount; (2) the ability of Reorganized Debtors or any assignee to provide adequate assurance of future performance within the meaning of section 365 of the Bankruptcy Code under the Executory Contract or Unexpired Lease to be assumed; or (3) any other matter pertaining to assumption or the requirements of section 365(b)(1) of the Bankruptcy Code, such dispute shall be resolved by a Final Order of the Bankruptcy Court (which may be the Confirmation Order) or as may be agreed upon by the Debtors or Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease. The Debtors or Reorganized Debtors, as applicable, shall pay the applicable Cure Amount as soon as reasonably practicable after entry of a Final Order resolving such dispute and approving such assumption, or as may otherwise be agreed upon by the Debtors or Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease. To the extent that a dispute regarding the applicable Cure Amount is resolved or determined unfavorably to the Debtors, the Debtors may, in their discretion, reject the applicable Executory Contract or Unexpired Lease after such determination, which rejection shall supersede, nullify, and render of no force or effect any earlier assumption or assumption and assignment. Under no circumstances shall the status of payment of a Cure Amount required by section 365(b)(1) of the Bankruptcy Code following the entry of a Final Order resolving the dispute and approving the assumption prevent or delay implementation of the Plan or the occurrence of the Effective Date.

E.      <u>Contracts and Leases Entered into After the Petition Date</u>. Contracts and leases entered into after the Petition Date by the Debtors, including any Executory Contracts and Unexpired Leases assumed by Debtors, will be performed by the Debtors or Reorganized Debtors in the ordinary course of its operations. Accordingly, such contracts and leases (including any assumed Executory Contract and Unexpired Leases) shall survive and remain unaffected by entry of the Confirmation Order.

F.      <u>Insurance Policies.</u>

1.      Notwithstanding anything to the contrary herein, all Insurance Policies issued to or entered into by the Debtors prior to the Petition Date shall not be considered Executory Contracts and shall neither be assumed nor rejected by the Debtors; <u>provided, however</u>, that to the extent any Insurance Policy is determined to be an Executory Contract, then, notwithstanding anything contained in the Plan to the contrary, the Plan will constitute a motion to assume such Insurance Policy and pay all future obligations, if any, in respect thereof and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interests of the Debtors, their respective Estates and all parties in interest. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of any Debtor existing as of the Confirmation Date with respect to any Insurance Policy; and prior payments for premiums or other charges made prior to the Petition Date under or with respect to any Insurance Policy shall be indefeasible. Moreover, as of the Effective Date, all payments of premiums or other charges made by the Debtors on or after the

44

Petition Date under or with respect to any Insurance Policy shall be deemed to have been authorized, approved, and ratified in all respects without any requirement of further action by the Bankruptcy Court. Notwithstanding anything to the contrary contained herein, Confirmation shall not discharge, impair or otherwise modify any obligations assumed by the foregoing assumption, and each such obligation shall be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be filed.

2.     Notwithstanding anything to the contrary contained in the Plan, entry of the Confirmation Order shall not discharge, impair, or otherwise modify any indemnity obligations assumed as a result of the foregoing assumption of the Insurance Policies that are D&O Liability Insurance Policies (and related documents) issued to the Debtors, and each such indemnity obligations will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtors under the Plan as to which no Proof of Claim need be filed.

3.     Other than the permissibility of the Insurance Assignment, or as otherwise provided in the Bankruptcy Code, applicable law, the findings made by the Bankruptcy Court in the Confirmation Order, the rights and obligations of the parties under the Insurance Policies, including the question of whether any breach has occurred, shall be determined under applicable law.

G.     <u>Indemnification Obligations.</u>

1.     Notwithstanding anything in the Plan to the contrary, each Indemnification Obligation shall be assumed by Reorganized Debtors effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code or otherwise. Subject to the foregoing sentence, each Indemnification Obligation shall remain in full force and effect, shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose. For the avoidance of doubt, this <u>Article VI.G</u> affects only the obligations of the Debtors and Reorganized Debtors with respect to any Indemnification Obligations owed to or for the benefit of past and present directors, officers, employees, attorneys, accountants, and other professionals and agents of the Debtors, and shall have no effect on nor in any way discharge or reduce, in whole or in part, any obligation of any other Person owed to or for the benefit of such directors, officers, employees, attorneys, accountants, and other professionals and agents of the Debtors.

H.     <u>Modifications, Amendments, Supplements, Restatements, or Other Agreements</u>. Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless the Debtors reject or repudiate any of the foregoing agreements. Modifications, amendments, and supplements to, or restatements of, prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

I.  Reservation of Rights. Neither the inclusion of any Executory Contract or Unexpired Lease on the Schedules, a Cure and Assumption Notice, or the Rejected Executory contracts and Unexpired Leases Schedule, nor anything contained in any Plan Document, shall constitute an admission by the Debtors that a contract or lease is in fact an Executory Contract or Unexpired Lease or that Reorganized Debtors has any liability thereunder. If there is a dispute as of the Confirmation Date regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors, or, after the Effective Date, Reorganized Debtors, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease *nunc pro tunc* to the Confirmation Date.

## ARTICLE VII.
## Provisions Governing Distributions

A.  Applicability. None of the terms or provision of this Article VII shall apply to Tort Claims, which shall be exclusively processed, liquidated and paid by the Settlement Trust in accordance with the Settlement Trust Documents. Except as otherwise provided herein, none of the terms or provision of this Article VII shall apply to any Indirect Tort Related Claims or Non-Tort Litigation Claims, which shall be processed, liquidated and paid by the Settlement Trust in accordance with the Settlement Trust Documents.

B.  Distributions Generally. The Disbursing Agent shall make all Distributions to appropriate holders of Allowed Claims in accordance with the terms of the Plan.

C.  Distributions on Account of Certain Claims Allowed as of the Effective Date. Except as otherwise provided in the Plan, on or as soon as practicable after the Effective Date, the Disbursing Agent shall make Distributions in Cash in amounts equal to all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and if applicable, Allowed Secured Claims.

D.  Distributions on Account of Allowed General Unsecured Claims. On each Distribution Date, the Disbursing Agent shall Distribute to each holder of an Allowed General Unsecured Claim an amount equal to such holder's Pro Rata Share of (1) the total balance of the GUC Fund as of such date, less (2) the balance of the Disputed Claims Reserve.

E.  Distributions on Account of Disputed Claims Allowed After the Effective Date. Distributions on account of any Disputed Claim shall be made to the extent such Claim is Allowed in accordance with the provisions of Article VIII. Except as otherwise provided in the Plan, the Confirmation Order, another order of the Bankruptcy Court, or as agreed to by the relevant parties, Distributions under the Plan on account of Disputed Claims that become Allowed after the Effective Date shall be made as soon as practicable after the Disputed Claim becomes an Allowed Claim.

F.      Rights and Powers of Disbursing Agent.

1.      The Disbursing Agent shall make all Distributions to the appropriate holders of Allowed Claims in accordance with the terms of the Plan, including this Article VII. Except as otherwise ordered by the Bankruptcy Court, the Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.

2.      The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all Distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof. The Disbursing Agent may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns for all taxable periods through the date on which final Distributions are made.

G.      Delivery of Distributions and Undeliverable or Unclaimed Distributions.

1.      Claims Record Date. As of the close of business on the Claims Record Date, the various transfer registers for each of the Classes of Claims as maintained by the Debtors shall be deemed closed for purposes of determining whether a holder of such a Claim is a record holder entitled to a Distribution under the Plan, and there shall be no further changes in the record holders or the permitted designees with respect to such Claims. The Debtors or Reorganized Debtors, as applicable, shall have no obligation to recognize any transfer or designation of such Claims occurring after the close of business on the Claims Record Date. With respect to payment of any Cure Amounts or assumption disputes, neither the Debtors nor Reorganized Debtors shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the close of business on the Claims Record Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure Amount.

2.      Delivery of Distributions. If a Person holds more than one Claim in any one Class, in the Disbursing Agent's sole discretion, all such Claims will be aggregated into one Claim and one Distribution will be made with respect to the aggregated Claim.

3.      Special Rules for Distributions to Holders of Disputed Claims. Except as otherwise provided in the Plan or agreed to by the relevant parties: (a) no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order; and (b) any Person that holds both an Allowed Claim and a Disputed Claim shall not receive any Distribution on account of the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order or the Disputed Claims have been Allowed or expunged. Any Distributions arising from property Distributed to holders of Allowed Claims in a Class and paid to such holders under the Plan shall also be paid, in the applicable amounts, to any holder of a Disputed Claim in such Class that becomes an Allowed Claim after the date or dates that such Distributions were earlier paid to holders of Allowed Claims in such Class.

47

H.      Undeliverable and Non-Negotiated Distributions.

1.      Undeliverable Distributions. If any Distribution to a holder of an Allowed Claim is returned to Reorganized Debtor as undeliverable, no further Distributions shall be made to such holder unless and until Reorganized Debtor is notified in writing of such holder's then-current address or other necessary information for delivery, at which time such previously undeliverable Distribution shall be made to such holder within ninety (90) days of receipt of such holder's then-current address or other necessary information; provided, however, that any such undeliverable Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 180 days after the date of the initial attempted Distribution. After such date, all unclaimed property or interests in property shall revert to Reorganized RI automatically and without the need for any notice to or further order of the Bankruptcy Court (notwithstanding any applicable non-bankruptcy escheatment, abandoned, or unclaimed property laws to the contrary), and the right, title, and interest of any holder to such property or interest in property shall be  discharged and forever barred; provided that Distributions made from the GUC Fund and returned as undeliverable shall revert to the GUC Fund.

2.      Non-Negotiated Distributions. If any Distribution to a holder of an Allowed Claim is not negotiated for a period of 180 days after the Distribution, then such Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and re-vest in Reorganized RI. After such date, all non-negotiated property or interests in property shall revert to Reorganized Debtors automatically and without the need for any notice to or further order of the Bankruptcy Court (notwithstanding any applicable non-bankruptcy escheatment, abandoned, or unclaimed property laws to the contrary), and the right, title, and interest of any holder to such property or interest in property shall be discharged and forever barred.

I.      Manner of Payment under the Plan. Except as otherwise specifically provided in the Plan, at the option of Reorganized Debtors, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of Reorganized Debtors.

J.      Satisfaction of Claims. Except as otherwise specifically provided in the Plan, any Distributions to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims.

K.      Minimum Cash Distributions. Reorganized Debtors shall not be required to make any Distribution of Cash less than twenty dollars ($20) to any holder of an Allowed Claim; provided, however, that if any Distribution is not made pursuant to this Article VII.K, such Distribution shall be added to any subsequent Distribution to be made on behalf of the holder's Allowed Claim.

L.      Postpetition Interest. Interest shall not accrue on Impaired Claims; no holder of an Impaired Claim shall be entitled to interest accruing on or after the Petition Date on any such Impaired Claim, and interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Petition Date to the date a Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

48

M.    Setoffs. The Debtors and Reorganized Debtors may, pursuant to the applicable provisions of the Bankruptcy Code, or applicable non-bankruptcy law, set off against any applicable Allowed Claim (before any Distribution is made on account of such Claim) any and all claims, rights, Causes of Action, debts or liabilities of any nature that the Debtors or Reorganized Debtor may hold against the holder of such Allowed Claim; provided, however, that the failure to effect such a setoff shall not constitute a waiver or release of any such claims, rights, Causes of Action, debts or liabilities.

N.    Claims Paid or Payable by Third Parties.

1.    Claims Paid by Third Parties. A Claim shall be reduced in full, and such Claim shall be Disallowed without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor. To the extent a holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not a Debtor or Reorganized Debtor on account of such Claim, such holder shall repay, return, or deliver any Distribution held by or transferred to such holder to Reorganized Debtor to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan.

2.    Non-Tort Litigation Claims Payable from Insurance. Subject to Article IV.D.3, no Distributions under the Plan shall be made on account of any Allowed Non-Tort Litigation Claim that is payable pursuant to an Insurance Policy until the holder of such Allowed Non-Tort Litigation Claim has exhausted all remedies with respect to such insurance policy, including pursuing such insurance through litigation and obtaining entry of a final, non-appealable order. To the extent that one or more of the Insurance Companies satisfies in full or in part an Allowed Non-Tort Litigation Claim, then immediately upon such satisfaction, the portion of the Claim so satisfied may be expunged from the Claims Register by the Reorganized Debtors filing a withdrawal of the underlying proof of claim (referencing this section of the Plan as the basis for the withdrawal) without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

O.    Compliance with Tax Requirements and Allocations.

1.    In connection with the Plan and all Distributions hereunder, the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on them by any federal, state or local taxing authority, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions including tax certification forms, or establishing any other mechanisms it believes are reasonable and appropriate.

49

2.    For tax purposes, Distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claim.

## ARTICLE VIII.
## Procedures for Resolving Contingent, Unliquidated, and Disputed Claims

A.    <u>Applicability</u>. All Disputed Claims against the Debtors, other than Administrative Expense Claims, shall be subject to the provisions of this <u>Article VIII</u>. All Administrative Expense Claims shall be determined and, if Allowed, paid in accordance with <u>Article III</u>. None of the terms or provision of this <u>Article VIII</u> shall apply to Tort Claims, or <u>except as provide below</u>, to Indirect Tort Related Claims, or <u>except as provided below</u>, to Non-Tort Litigation Claims, which shall be exclusively processed, liquidated and paid by the Settlement Trust in accordance with the Settlement Trust Documents; provided, however, the Settlement Trust has reserved the right to file an objection to (i) any Indirect Tort Related Claim or (ii) any Non-Tort Litigation Claim with the Bankruptcy Court for determination.

B.    <u>Allowance of Claims</u>. After the Effective Date, Reorganized Debtors shall have and retain any and all rights and defenses that the Debtors, or either of them, had with respect to any Claim immediately before the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim becomes Allowed by Final Order of the Bankruptcy Court or by agreement between the Debtors or Reorganized Debtors, on the one hand, and the holder of such Claim, on the other.

C.    <u>Claims Administration Responsibilities</u>.  Except as otherwise expressly provided in the Plan, from and after the Effective Date, Reorganized Debtors shall have the authority (a) to file, withdraw, or litigate to judgment objections to Claims; (b) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

D.    <u>Estimation of Claims</u>. The Debtors (before the Effective Date) or Reorganized Debtors (on and after the Effective Date) may at any time request that the Bankruptcy Court to estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim against any Person.  If the estimated amount of a Claim constitutes a maximum limitation on such Claim, the Debtors (before the Effective Date) or Reorganized Debtors (on and after the Effective Date) may elect to pursue any supplemental proceedings to object to any ultimate Distribution on such Claim.  All of the objection, estimation, settlement, and resolution procedures set forth in the Plan

50

are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, objected to, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

E.    No Distributions Pending Allowance. No Distributions or other consideration shall be paid with respect to any Claim that is a Disputed Claim unless and until all objections to such Disputed Claim are resolved and such Disputed Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court or agreement between the Debtors or Reorganized Debtors, on the one hand, and the holder of such Claim, on the other.

F.    Distributions after Allowance. To the extent that a Disputed Claim (or a portion thereof) becomes an Allowed Claim, Distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.

G.    Disputed Claims Reserve. The provisions of this Article VIII.G apply only to the extent that any General Unsecured Claims remain Disputed as of any Distribution Date.

1.    If any General Unsecured Claims remain Disputed as of any Distribution Date, the undistributed portion of the GUC Fund shall be held in a segregated account. Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, or the receipt of a determination from the IRS, the Disbursing Agent shall treat the Disputed Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 and, to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. All parties (including the Debtors, Reorganized Debtors, the Disbursing Agent, and holders of General Unsecured Claims) shall be required to report for tax purposes in a manner consistent with the foregoing. The Disputed Claims Reserve shall be responsible for payment, out of the assets of the Disputed Claims Reserve, of any taxes imposed on the Disputed Claims Reserve or its assets.

2.    The Debtors or Reorganized Debtors, as applicable, shall determine the amount of the Disputed Claims Reserve, if applicable, as of the initial Distribution Date, based on the least of: (a) the asserted amount of the Disputed General Unsecured Claims in the applicable Proofs of Claim; (b) the amount, if any, estimated by the Bankruptcy Court pursuant to (i) section 502(c) of the Bankruptcy Code or (ii) Article VIII.D if, after the Effective Date, a motion is filed by Reorganized Debtors to estimate such Claim; (c) the amount otherwise agreed to by the Debtors (or Reorganized Debtors, if after the Effective Date) and the holders of such Disputed General Unsecured Claims; or (d) any amount otherwise approved by the Bankruptcy Court. Upon each Distribution Date, Reorganized Debtors shall deposit into the Disputed Claims Reserve an amount of Cash equal to the amount sufficient to make the Distributions to which holders of Disputed General Unsecured Claims would be entitled under the Plan as of the applicable Distribution Date if the Disputed General Unsecured Claims were Allowed Claims as of such date.

3.    If a Disputed General Unsecured Claim becomes an Allowed Claim after the first Distribution Date, the Disbursing Agent shall, on the next Distribution Date after the Disputed General Unsecured Claim becomes an Allowed Claim (or, if the Disputed General Unsecured Claim becomes an Allowed Claim after the final Distribution Date, as soon as

51

practicable after Allowance), Distribute to the holder of such Claim, exclusively from the Disputed Claims Reserve, the amount of Cash that such holder would have received in that Distribution and all prior Distributions (if any) if such holder's General Unsecured Claim had been Allowed as of the Effective Date, net of any allocable taxes imposed thereon or otherwise payable by the Disputed Claims Reserve.

4.      If a Disputed Claim is Disallowed, in whole or in part, then on the Distribution Date next following the date of Disallowance, Cash shall be released from the Disputed Claims Reserve and placed in the GUC Fund, which Cash shall then be unreserved and unrestricted, and which shall be available for Distribution to holders of Allowed General Unsecured Claims.

5.      If any assets remain in the Disputed Claims Reserve after all Disputed General Unsecured Claims have been resolved, such assets shall be placed in the GUC Fund and distributed Pro Rata to all holders of Allowed General Unsecured Claims on the next Distribution Date (or, if all Disputed General Unsecured Claims are resolved after the final Distribution Date, as soon as practicable thereafter).

H.      Adjustment to Claims Register without Objection. Any duplicate Proof of Claim that has been paid or satisfied, or any Proof of Claim that is clearly marked as amended or superseded by a subsequently filed Proof of Claim that remains on the Claims Register, may be adjusted or expunged on the Claims Register by Notice and Reorganized Debtors stipulation between the parties in interest without an objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

I.      Time to File Objections to Claims. Any objections to Claims must be filed on or before the applicable Claims Objection Deadline, as such deadline may be extended from time to time. The expiration of the Claims Objection Deadline shall not limit or affect the Debtors' or Reorganized Debtors' rights to dispute Claims asserted in the ordinary course of the Debtors or Reorganized Debtors' operations other than through a Proof of Claim.

J.      Treatment of Untimely Claims. Except as provided herein or otherwise agreed, any and all creditors that have filed Proofs of Claim after the applicable Bar Date shall not be treated as a creditor with respect to such Claim for the purposes of voting and distribution.   No distributions shall be made on account of any Proof of Claim filed after the applicable Bar Date.

## ARTICLE IX.
## Conditions Precedent to Confirmation and Effective Date

A.      Conditions Precedent to Confirmation of the Plan.

Confirmation of the Plan shall not occur unless each of the following conditions precedent has been satisfied or waived in accordance with Article IX.C.

1.      The Bankruptcy Court shall have entered the Disclosure Statement Order, in form and substance reasonably acceptable to the Debtors and Equity Security Holders.

2.      The Debtors and Equity Security Holders shall have approved of or accepted the Confirmation Order;

3.      The Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the Confirmation Order and any other order in conjunction therewith, in form and substance acceptable to the Debtors and Equity Security Holders.  These findings and determinations are designed, among other things, to ensure that the Injunctions, Releases and Discharges set forth in <u>Article X</u> shall be effective, binding and enforceable and shall, among other things, provide that:

a.      the Plan complies with all applicable provisions of the Bankruptcy Code, including that the Plan be proposed in good faith and that the Confirmation Order not be procured by fraud;

b.      the Channeling Injunction and the Insurance Entity Injunction are to be implemented in connection with the Settlement Trust and shall be in full force and effect on the Effective Date;

c.      upon the Effective Date, the Settlement Trust shall assume the liabilities of the Protected Parties with respect to Tort Claims;

d.      the Settlement Trust will be funded with the Settlement Trust Assets;

e.      the Settlement Trust will use the Settlement Trust Assets to resolve the Tort Claims and Non-Tort Litigation Claims;

f.      the terms of the Discharge Injunction, the Channeling Injunction, the Release Injunctions, and the Insurance Entity Injunction, including any provisions barring actions against third parties, are set out in conspicuous language in the Plan and in the Disclosure Statement;

g.      the Plan complies with section 105(a) of the Bankruptcy Code to the extent applicable;

h.      the Injunctions are essential to the Plan and the Debtors' reorganization efforts;

i.      the Insurance Assignment is authorized and permissible by applicable law as provided in the Plan, notwithstanding any terms of any policies or provisions of non-bankruptcy law that are argued to prohibit the delegation, assignment, or other transfer of such rights, and the Settlement Trust is a proper defendant for Tort Claims to assert the liability of the Protected Parties to trigger such insurance rights;

j. the Plan Documents (including the Plan) and the Confirmation Order shall be binding on all parties in interest consistent with applicable legal doctrines, including the doctrine of res judicata and collateral estoppel, and section 1141 of the Bankruptcy Code (and related legal authority);

k. (i) the procedures included in the Trust Distribution Procedures pertaining to the allowance of Tort Claims, and (ii) the criteria included in the Trust Distribution Procedures pertaining to the calculation of the Allowed Claim Amounts are appropriate and provide for a fair and equitable settlement of Tort Claims and Non-Tort Litigation Claims based on the evidentiary record offered to the Bankruptcy Court as required by and in compliance with section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, provide adequate and proper means for the implementation of the Plan as required by and in compliance with section 1123 of the Bankruptcy Code, comport with the requirements for the issuance of the Channeling Injunction under section 105(a) of the Bankruptcy Code, and otherwise comply with the Bankruptcy Code and applicable law;

l. the right to payment that the holder of a Tort Claim has against the Debtors or another Protected Party is the amount of such Tort Claim as determined under the Trust Distribution Procedures and is not the Debtors' Settlement Trust Contribution provided, however, that nothing herein shall determine that any insurer is obligated to pay the Debtors' or another Protected Party's liability so determined under the Trust Distribution Procedures;

m. the right to payment that the holder of a Non-Tort Litigation Claim has against the Debtors or another Protected Party is the amount of such Non-Tort Litigation Claim as determined under the Trust Distribution Procedures or the Bankruptcy Court, if the Settlement Trust elects to file with the Bankruptcy Court an objection to any Non-Tort Litigation Claim or any Indirect Tort Related Claim that was filed against the Debtors with the Bankruptcy Court; and

n. the Plan and the Trust Distribution Procedures were proposed in good faith and are sufficient to satisfy the requirements of section 1129(a)(3) of the Bankruptcy Code.

B. <u>Conditions Precedent to the Effective Date</u>.

Notwithstanding any other provision of the Plan or the Confirmation Order, the Effective Date shall occur on the first Business Day on which each of the following conditions precedent has been satisfied or waived pursuant to <u>Article IX.C</u>:

1. (a) at least fifteen (15) days shall have passed following entry of the Confirmation Order; (b) no court shall have entered an order staying the occurrence of the Effective Date pending an appeal of the Confirmation Order; and (c) no request for a stay of the occurrence of the Effective Date shall be pending;

2. simultaneously with the occurrence of the Effective Date, all documents necessary or appropriate to effectuate the merger of the Reorganized RMI with the Reorganized RI shall have been executed, delivered, and filed with the appropriate governmental authorities so

54

as to consummate the merger with the Reorganized RI being the surviving entity as of the Effective Date;

3. the Exit Financing Agreement and any applicable collateral and other loan documents governing the Exit Financing shall have been duly executed and delivered by the Debtors and Reorganized Debtors and all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the effectiveness thereof shall have been satisfied or duly waived in writing in accordance with the terms of the Exit Financing Agreement and related documentation, and the closing shall have occurred thereunder;

4. the Debtors shall have adequately funded the Professional Fee Reserve so as to permit the Debtors to make Distributions on account of Allowed Professional Fee Claims in accordance with Article III;

5. the Debtors shall have delivered the Settlement Trust Contribution to the Settlement Trust;

6. the Settlement Trust Assets shall, simultaneously with the occurrence of the Effective Date or as otherwise provided herein, be transferred to, vested in, and assumed by the Settlement Trust in accordance with Article IV and Article V;

7. the Settlement Trust Documents and other applicable Plan Documents necessary or appropriate to implement the Plan shall have been executed, delivered;

8. the Debtors shall have obtained all authorizations, consents, certifications, approvals, rulings, opinions or other documents that are necessary to implement and effectuate the Plan;

9. all actions, documents, and agreements necessary to implement and effectuate the Plan shall have been effected or executed; and

10. the Debtors shall have filed a notice of occurrence of the Effective Date.

C.   Waiver of Conditions Precedent. To the fullest extent permitted by law, each of the conditions precedent in this Article IX may be waived or modified, in whole or in part, in the sole discretion of the Debtors. Any waiver or modification of a condition precedent under this Article IX may be effectuated at any time, without notice, without leave or order of the Bankruptcy Court, and without any other formal action other than proceedings to Confirm or consummate the Plan.

D.   Substantial Consummation of the Plan. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

E.   *Vacatur* of Confirmation Order; Non-Occurrence of Effective Date. If the Confirmation Order is vacated or the Effective Date does not occur within 180 days after entry of the Confirmation Order (subject to extension by the Debtors in their sole discretion), the Plan shall be

55

null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall (1) constitute a waiver or release of any Causes of Action by or Claims against or Interests in the Debtors or any Person; (2) prejudice in any manner the rights of the Debtors, any holders of a Claim or Interest or any other Person; (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any holders of a Claim or Interest, or any other Person in any respect; or (4) be used by the Debtors or any other Person as evidence (or in any other way) in any litigation, including with respect to the strengths and weaknesses of positions, arguments or claims of any of the parties to such litigation.

### ARTICLE X.
### Effect of Plan Confirmation

A.    <u>Vesting of Assets in Reorganized Debtors</u>. On the Effective Date, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, all property comprising the Estates shall vest in Reorganized Debtors free and clear of all Liens, Claims, interests, charges, other Encumbrances and liabilities of any kind. On and after the Effective Date, Reorganized Debtors may continue its operations and may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

B.    <u>Retention of Certain Causes of Action</u>. In accordance with section 1123(b)(3) of the Bankruptcy Code, subject to the transfer of the Debtors' Settlement Trust Causes of Action to the Settlement Trust under <u>Article IV.D</u> and the Debtors' and their Estates' release of certain Estate Causes of Action under <u>Article X.J</u>, and except as otherwise provided in the Plan, all Causes of Action that each Debtor may hold against any Person shall vest in Reorganized Debtors on the Effective Date. Thereafter, subject to <u>Article IV.D</u> and <u>Article X.J</u>, Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, whether arising before or after the Petition Date, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any specific Cause of Action as any indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action. The Debtors or Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to any Cause of Action upon, after, or as a consequence of Confirmation or the occurrence of the Effective Date.

C.    <u>Binding Effect</u>. As of the Effective Date, all provisions of the Plan, including all agreements, instruments and other documents entered into in connection with the Plan by the Debtors or Reorganized Debtors, the Settlement Trust, or the Protected Parties, shall be binding upon the Debtors, the Estates, Reorganized Debtors, all holders of Claims against and Interests in the Debtors, each such holder's respective successors and assigns, and all other Persons that are affected in any manner by the Plan, regardless of whether the Claim or Interest of such holder is

Impaired under the Plan or whether such holder has accepted the Plan. Except as otherwise expressly provided in the Plan, all agreements, instruments and other documents filed in connection with the Plan shall be given full force and effect and shall bind all Persons referred to therein on and after the Effective Date, whether or not such agreements are actually issued, delivered or recorded on or after the Effective Date and whether or not such Persons have actually executed such agreement.

D.      Post-Confirmation Interim Injunction and Stays. All injunctions and stays arising under or entered during the Chapter 11 Cases, whether under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date shall remain in full force and effect until the Effective Date.

E.      Discharge.

1.      Discharge of the Debtors. Except as expressly provided in the Plan or the Confirmation Order, the treatment of Claims under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, termination and release of, all Claims and Interests of any nature whatsoever against or in the Debtors or any of their assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date, and, as of the Effective Date, each of the Debtors shall be deemed discharged and released, and each holder of a Claim or Interest and any successor, assign, and affiliate of such holder shall be deemed to have forever waived, discharged and released each of the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights and liabilities, and all debts of the kind specified in section 502 of the Bankruptcy Code, based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date, in each case whether or not (a) a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, (c) a Claim based upon such debt is or has been Disallowed by order of the Bankruptcy Court, or (d) the holder of a Claim based upon such debt is deemed to have accepted the Plan. Notwithstanding the foregoing, nothing in this Article X.E shall be construed to modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Tort Litigation Claim to recover on account of such Allowed Claim in accordance with Article II.B.4 and Article IV.D.3.

2.      Discharge Injunction. From and after the Effective Date, except as expressly provided in the Plan or the Confirmation Order, all holders of Claims or Interests of any nature whatsoever against or in the Debtors or any of their assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are discharged pursuant to the terms of the Plan shall be precluded and permanently enjoined from taking any of the following actions on account of, or on the basis of, such discharged Claims and Interests: (a) commencing or continuing any action or other proceeding of any kind against the Debtors, Reorganized Debtors, the Settlement Trust, or its or their respective property; (b) enforcing, attaching, collecting, or recovering by any manner or means of judgment, award, decree or other against the Debtors, Reorganized Debtors, the Settlement Trust, or its or their respective property; (c) creating, perfecting or enforcing any Lien or Encumbrance of any kind against the Debtors, Reorganized Debtors, the Settlement Trust, or its or their respective property; or (d) commencing or

continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. The foregoing injunction shall extend to the successors and assigns of the Debtors (including Reorganized Debtors) and its and their respective properties and interests in property. In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge or termination of all Claims, Interests and other debts and liabilities against or in the Debtors pursuant to sections 105, 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time to the extent such judgment relates to a discharged Claim or Interest.

F.    **Channeling Injunction.**

1.    **Terms**. **Notwithstanding anything to the contrary herein, to preserve and promote the settlements contemplated by and provided for in the Plan, where necessary, the injunctive effect of the Discharge as provided in sections 1141 and 524 of the Bankruptcy Code and as described in this <u>Article X</u>, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under section 105(a) of the Bankruptcy Code, the sole recourse of any holder of a Tort Claim against a Protected Party on account of such Tort Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Tort Claim against any Protected Party or any property or interest in property of any Protected Party. For the avoidance of doubt, the sole recourse for any holder of a Tort Claim covered by any insurance policy issued by a Settling Insurance Company shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents. Accordingly, on and after the Effective Date, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Tort Claim against the Protected Parties, or any of them, shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Protected Party with respect to any such Tort Claim, other than from the Settlement Trust pursuant to the Settlement Trust Document, including:**

a.    **commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Protected Party, or any property or interest in property of any Protected Party;**

b.    **enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Protected Party, or any property or interest in property of any Protected Party;**

c.    **creating, perfecting, or otherwise enforcing in any manner, whether directly or indirectly, any Encumbrance of any kind against any Protected Party, or any property or interest in property of any Protected Party;**

          d.      **asserting, implementing or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Protected Party, or any property or interest in property of any Protected Party; or**

          e.      **taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Tort Claim.**

        2.      **<u>Reservations</u>. Notwithstanding anything to the contrary in this <u>Article X.F</u>, the Channeling Injunction shall not enjoin:**

          a.      **the rights of holders of Tort Claims to assert such Tort Claims against the Settlement Trust in accordance with the Trust Distribution Procedures, including the ability to pursue the Settlement Trust in the tort system as described in Article XII of the Trust Distribution Procedures;**

          b.      **the right of any Person to assert any Claim, debt, obligation or liability for payment of Settlement Trust Expenses solely against the Settlement Trust in accordance with the Settlement Trust Documents;**

          c.      **the Settlement Trust from enforcing its rights under the Plan and the Settlement Trust Documents; or**

          d.      **the rights of the Settlement Trust to prosecute any action against any Non-Settling Insurance Company based on or arising from Tort Insurance Policies, subject to any Insurance Coverage Defenses.**

       G.      <u>Provisions Relating to Channeling Injunction.</u>

        1.      <u>Modifications</u>. Subject to post-Effective Date settlements between the Settlement Trustee or Insurance Companies under the applicable provisions of <u>Article IV</u>, there can be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction.

        2.      <u>Non-Limitation</u>. Nothing in the Plan or the Settlement Trust Documents shall or shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction or the Settlement Trust's assumption of all liability with respect to Tort Claims.

        3.      <u>Bankruptcy Rule 3016 Compliance</u>. The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute or be deemed to constitute an admission

that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

    4.    <u>Enforcement</u>. Any Protected Party may enforce the Channeling Injunction as a defense to any Claim (in whole or in part) brought against such Protected Party that is enjoined under the Plan as to such Protected Party and may seek to enforce such injunction in a court of competent jurisdiction.

    5.    <u>Contribution Claims</u>. If any Non-Settling Insurance Company asserts that it has rights, whether legal, equitable, contractual, or otherwise, of contribution, indemnity, reimbursement, subrogation or other similar claims directly or indirectly arising out of or in any way relating to such Non-Settling Insurance Company's payment of loss on behalf of one or more of the Debtors in connection with any Tort Claim against a Settling Insurance Company (collectively, "<u>Contribution Claims</u>"), (a) such Contribution Claims may be asserted as a defense or counterclaim against the Settlement Trust in any Insurance Action involving such Non- Settling Insurance Co., and the Settlement Trust may assert the legal or equitable rights (if any) of the Settling Insurance Company, and (b) to the extent such Contribution Claims are determined to be valid, the liability (if any) of such Non-Settling Insurance Company to the Settlement Trust shall be reduced by the amount of such Contribution Claims.

    6.    <u>No Duplicative Recovery</u>. In no event shall any holder of a Tort Claim be entitled to receive any duplicative payment, reimbursement, or restitution from any Protected Party under any theory of liability for the same loss, damage, or other Claim that is reimbursed by the Settlement Trust or is otherwise based on the same events, facts, matters, or circumstances that gave rise to the applicable Tort Claim.

    H.    **<u>Insurance Entity Injunction</u>.**

    **1.    <u>Purpose</u>. To facilitate the Insurance Assignment, protect the Settlement Trust, and preserve the Settlement Trust Assets, pursuant to the equitable jurisdiction and power of the Bankruptcy Court under section 105(a) of the Bankruptcy Code, the Bankruptcy Court shall issue the injunction set forth in this <u>Article X.H</u> (the "<u>Insurance Entity Injunction</u>"); <u>provided</u>, <u>however</u>, that the Insurance Entity Injunction is not issued for the benefit of any Non-Settling Insurance Company, and no Non-Settling Insurance Company is a third-party beneficiary of the Insurance Entity Injunction, except as otherwise may be specifically provided in any Insurance Settlement Agreement.**

    **2.    <u>Terms Regarding Claims against Insurance Companies</u>. Subject to the terms of <u>Article X.E</u> and <u>Article X.F</u>, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any claim or cause of action (including any Tort Claim or any claim for or respecting any Settlement Trust Expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Tort Insurance Policy or other insurance policy issued by a Settling Insurance Company covering Tort Claims, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, or any other theory of law, equity, or admiralty, shall be stayed, restrained, and**

enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such claim or cause of action, including:

      a.      commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such claim, demand, or cause of action against any Insurance Company, or against the property of any Insurance Company, with respect to any such claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such claim, demand, or cause of action against any Insurance Company);

      b.      enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such claim or cause of action;

      c.      creating, perfecting, or enforcing in any manner, directly or indirectly, any Lien or Encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such claim or cause of action; and

      d.      except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such claim or cause of action; **provided**, **however**, that: (i) the injunction set forth in this **Article X.**H shall not impair in any way any (a) actions brought by the Settlement Trust against any Non-Settling Insurance Company, (b) actions brought by holders of Non-Tort Litigation Claims consistent with **Article IV.D.3**, or (c) the rights of any co-insured of the Debtors (x) under any Non-Tort Insurance Policy and (y) as specified under any Final Order of the Bankruptcy Court approving an Insurance Settlement Agreement; and (ii) the Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction set forth in this **Article X.H** with respect to any Non-Settling Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Non-Settling Insurance Company, except that the Settlement Trust shall not have any authority to terminate, reduce or limit the scope of the injunction herein with respect to any Settling Insurance Company so long as, but only to the extent that, such Settling Insurance Company complies fully with its obligations under any applicable Insurance Settlement Agreement.

      3.      <u>Reservations</u>. Notwithstanding anything to the contrary in this **Article X.H**, the Insurance Entity Injunction shall not enjoin:

      a.      the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of holders of Tort Claims to assert such Claims, as applicable, in accordance with the Trust Distribution Procedures, and the rights of holders

of Non-Tort Litigation Claims to assert such Claims, as applicable in accordance with **Article IV.D.3;**

        b.     the rights of any Person to assert any claim, debt, obligation, cause of action or liability for payment of Settlement Trust Expenses against the Settlement Trust;

        c.     the rights of the Settlement Trust to prosecute any action based on or arising from Tort Insurance Policies, except to the extent otherwise released;

        d.     the rights of the Settlement Trust to assert any claim, debt, obligation, cause of action or liability for payment against a Non-Settling Insurance Company based on or arising from the Tort Insurance Policies;

        e.     the rights of any Insurance Company to assert any claim, debt, obligation, cause of action or liability for payment against any Non-Settling Insurance Company; or

        f.     the claims for reinsurance under reinsurance contracts or claims under retrocessional contracts among the Settling Insurance Companies and other insurance companies.

        I.     **Injunction against Interference with Plan**. Upon entry of the Confirmation Order, all holders of Claims and Interests shall be precluded and enjoined from taking any actions to interfere with the implementation and consummation of the Plan.

        J.     **Releases**.

        1.     **Releases by the Debtors and the Estates**.

        a.     **Releases by the Debtors and the Estates of the Released Parties. As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the**

Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in this <u>Article X.J.1</u> shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

        b.      <u>Releases by the Debtors and the Estates of Avoidance Actions</u>. As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the assistance of the Equity Security Holders in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized Debtors, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General Unsecured Claims, Non-Tort Litigation Claims, and Interests including, the Equity Security Holders of and from any and all Avoidance Actions.

        2.      <u>Releases by Holders of Tort Claims</u>. As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Protected Parties to facilitate and implement the reorganization of the Debtors, including the settlements embodied in the Plan, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all holders of Tort Claims shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever discharge and release: (a) each and all of the Protected Parties and their respective property and successors and assigns of and from all Tort Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Tort Claims; (b) each and all Equity Security Holders and their respective property and successors and assigns of and from all Tort Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, in law, equity, or otherwise, whether

for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Tort Claims; provided, however, that the releases set forth in this Article X.J.2 shall not, and shall not be construed to: (i) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (ii) modify, reduce, impair or otherwise affect the ability of any holder of a Tort Claim to recover on account of such Claim in accordance with  Article II.B.5 or Article II.B.6, as applicable. For the avoidance of doubt, holders of Tort Claims covered by any insurance policy issued by a Settling Insurance Company shall, and shall be deemed to, release and discharge the Settling Insurance Companies for such Claims.  The releases in Article X.J.3 shall not, and shall not be deemed to, limit the releases in this Article X.J.2.

    3.  **Releases by Holders of Claims**. As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all Releasing Claim Holders shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in this Article X.J.3 shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability

of any holder of an Allowed Non-Tort Litigation Claim to recover on account of such Allowed Claim in accordance with **Article II.B.4**. Notwithstanding the foregoing or anything to the contrary herein, with respect to holders of Allowed General Unsecured Claims or Allowed Non-Tort Litigation Claims, nothing in the Plan or the release set forth in **Article X.J.3** shall, or shall be construed to, release any such claims or Causes of Action against any Insurance Company (subject to **Article IV.D.3**).

K.    **Exculpation**. From and after the Effective Date, none of the Exculpated Parties shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or after the Petition Date up to and including the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith or willful misconduct). In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence.

L.    **Injunctions Related to Releases and Exculpation**.

1.    **Injunction Related to Releases**. As of the Effective Date, all holders of Claims that are the subject of **Article X.J** are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** or released under **Article X.J**; **provided, however**, that the injunctions set forth in this **Article X.L.1** shall not, and shall not be construed to, enjoin any holder of a Claim that is only the subject of **Article X.J.3** (and no other release set forth in Article X.J) from taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

2.    **Injunction Related to Exculpation**. As of the Effective Date, all holders of Claims that are the subject of **Article X.K** are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly

65

or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under Article X.E or exculpated under Article X.K; provided, however, that the injunctions set forth in this Article X.L.2 shall not, and shall not be construed to, enjoin any Person that is the subject of Article X.K from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

M.      Insurance Provisions.

1.      Except for the Insurance Assignment, or as otherwise provided in the Bankruptcy Code, applicable law, the findings made by the Bankruptcy Court in the Confirmation Order, nothing in the Plan shall modify, amend, or supplement, or be interpreted as modifying, amending, or supplementing, the terms of any Insurance Policy or rights or obligations under an Insurance Policy to the extent such rights and obligations are otherwise available under applicable law, and the rights and obligations, if any, of any Non-Settling Insurance Company relating to or arising out of the Plan Documents, including the Plan, the Confirmation Order, or any provision thereof, shall be determined pursuant to the terms and provisions of the Insurance Policies and applicable law.

2.      No provision of the Plan, other than those provisions contained in the applicable Injunctions contained in Article X of the Plan, shall be interpreted to affect or limit the protections afforded to any Settling Insurance Company by the Channeling Injunction.

3.      Nothing in this Article X.M is intended or shall be construed to preclude otherwise applicable principles of *res judicata* or collateral estoppel from being applied against any Person.

N.      Judgment Reduction.

1.      Without limiting the Discharges, Releases and Injunctions set forth above, if any Person, including a holder of a Tort Claim ("Plaintiff"), asserts a Cause of Action against any other Person arising from or relating to  a Tort Claim that is the subject of a Proof of Claim filed against the Debtors in the Chapter 11 Cases, regardless of whether such Cause of Action may be asserted pursuant to the Bankruptcy Code or is in the nature of or sounding in contract, tort, warranty or any other theory of law or equity whatsoever (each such Cause of Action, a "Tort Cause of Action"), and such Tort Cause of Action results in a determination by the court or tribunal hearing the Tort Cause of Action (including by a jury empaneled by such court or tribunal) that any Person who is not a Protected Party (each, a "Specified Person") is liable in damages to Plaintiff, then, prior to final entry of any judgment, order or arbitration award ("Judgment") in such Tort Cause of Action, Plaintiff shall provide notice and a copy of the Confirmation Order to the Trial Court. Such

court or tribunal shall determine whether the Tort Cause of Action gives rise to any Cause of Action on which any Protected Party would have been liable to Plaintiff in the absence of the Plan and Confirmation Order. The court or tribunal shall reduce any Judgment against a Specified Person by an amount equal to the "Judgment Reduction Amount," which shall equal the greatest amount such Specified Person would be entitled, under applicable non-bankruptcy law, to set off or credit against the Judgment if such Protected Party were not entitled to the benefits of the Discharges, Releases, or Injunctions set forth herein.

2. Nothing herein shall prejudice or operate to preclude the right of any Specified Person to (a) provide notice of the Confirmation Order to any court or tribunal hearing a Tort Cause of Action, (b) raise any issues, claims or defenses regarding the Judgment Reduction Amount, including the contractual liability and/or relative or comparative fault of any Person, including any Protected Party, in any court or tribunal hearing any Tort Cause of Action in accordance with applicable law or procedure, or (c) take discovery of Protected Parties in accordance with applicable law or procedure; provided, however, that nothing herein shall in any way modify or affect the Discharges, Releases or Injunctions. For the avoidance of doubt, nothing herein shall (i) be deemed to entitle a Plaintiff to more than a single satisfaction with respect to any Tort Cause of Action or (ii) prejudice or operate to preclude the rights of any Specified Person to assert any claims or causes of action that have not been discharged, released, or enjoined under the Plan or Confirmation Order.

3. Each Plaintiff is hereby enjoined and restrained from seeking relief or collecting judgments against any Specified Person in a manner that fails to conform to the terms of this Article X.N.

4. If any Plaintiff enters into a settlement with any Person with respect to one or more causes of action based upon, arising from, or related to a Tort Cause of Action, then such Plaintiff shall cause to be included, and in all events, the settlement shall be deemed to include, a dismissal, release and waiver of any Tort Cause of Action with respect to such settlement.

O. Reservation of Rights. Notwithstanding any other provision of the Plan to the contrary, no provision of this Article X shall be deemed or construed to satisfy, discharge, release or enjoin claims by the Settlement Trust, Reorganized Debtors, or any other Person, as the case may be, against (1) the Settlement Trust for payment of Tort Claims in accordance with the Trust Distribution Procedures, (2) the Settlement Trust for the payment of Settlement Trust Expenses, or (3) any Insurance Company that has not performed under an Insurance Policy (to the extent such Insurance Policy is not the subject of an Insurance Settlement Agreement) or an Insurance Settlement Agreement.

P. Disallowed Claims. On and after the Effective Date, the Debtors and Reorganized Debtors shall be fully and finally discharged of any and all liability or obligation on any and all Disallowed Claims, and any order Disallowing a Claim that is not a Final Order as of the Effective Date solely because of a Person's right to move for reconsideration of such order pursuant to section 502 of the Bankruptcy Code or Bankruptcy Rule 3008 shall nevertheless become and be deemed to be a Final Order on the Effective Date.

Q.    <u>No Successor Liability</u>. Except as otherwise expressly provided in the Plan, Reorganized Debtors do not, pursuant to the Plan or otherwise, assume, agree to perform, pay or indemnify any Person, or otherwise have any responsibility for any liabilities or obligations of the Debtors relating to or arising out of the operations of or assets of the Debtors, whether arising prior to, on or after the Effective Date. Neither the Debtors, Reorganized Debtors, nor the Settlement Trust is, or shall be deemed to be, a successor to any of the Debtors by reason of any theory of law or equity (except as otherwise provided in <u>Article IV.C</u>), and none shall have any successor or transferee liability of any kind or character; <u>provided</u>, <u>however</u>, that Reorganized Debtors and the Settlement Trust shall assume and remain liable for their respective obligations specified in the Plan and the Confirmation Order.

R.    <u>Indemnities</u>.

1.    <u>Prepetition Indemnification and Reimbursement Obligations</u>.    The respective obligations of the Debtors to indemnify and reimburse Persons who are or were directors, officers or employees of the Debtors on the Petition Date or at any time thereafter up to and including the Effective Date, against and for any obligations pursuant to the bylaws, applicable state or non-bankruptcy law, or specific agreement or any combination of the foregoing, shall: (a) survive Confirmation of the Plan and remain unaffected thereby; (b) be assumed by Reorganized Debtors as of the Effective Date; and (c) not be discharged under section 1141 of the Bankruptcy Code, irrespective of whether indemnification or reimbursement is owed in connection with any event occurring before, on or after the Petition Date.

2.    <u>Plan Indemnity</u>. In addition to the matters set forth above and not by way of limitation thereof, Reorganized Debtors shall indemnify and hold harmless all Persons who are or were officers or directors of the Debtors on the Petition Date or at any time thereafter up to and including the Effective Date on account of and with respect to any claim, cause of action, liability, judgment, settlement, cost or expense (including attorneys' fees) on account of claims or Causes of Action threatened or asserted by any third party against such officers or directors that seek contribution, indemnity, equitable indemnity, or any similar claim, based upon or as the result of the assertion of primary claims against such third party by any representative of the Debtors' Estates.

3.    <u>Limitation on Indemnification</u>. Notwithstanding anything to the contrary set forth in the Plan or elsewhere, neither the Debtors, nor the Reorganized Debtors, as applicable, shall be obligated to indemnify or hold harmless any Person for any claim, cause of action, liability, judgment, settlement, cost or expense that results primarily from such Person's bad faith, gross negligence or willful misconduct.

## ARTICLE XI.
## <u>Retention of Jurisdiction</u>

A.    <u>Jurisdiction</u>. Until the Chapter 11 Cases are closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction that is permissible, including the jurisdiction necessary to ensure that the purposes and intent of the Plan are carried out. Except as otherwise provided in the Plan or the Settlement Trust Agreement, the Bankruptcy Court shall retain

jurisdiction to hear and determine all Claims against and Interests in the Debtors, and to adjudicate and enforce the Insurance Actions, the Settlement Trust Causes of Action, and all other Causes of Action which may exist on behalf of the Debtors. Nothing contained herein shall prevent Reorganized Debtors or the Settlement Trust, as applicable, from taking such action as may be necessary in the enforcement of any Estate Cause of Action, Insurance Action, Settlement Trust Cause of Action, or other Cause of Action which the Debtors have or may have and which may not have been enforced or prosecuted by the Debtors, which actions or other Causes of Action shall survive Confirmation of the Plan and shall not be affected thereby except as specifically provided herein. Nothing contained herein concerning the retention of jurisdiction by the Bankruptcy Court shall be deemed to be a finding or conclusion that (1) the Bankruptcy Court in fact has jurisdiction with respect to any Insurance Action, (2) any such jurisdiction is exclusive with respect to any Insurance Action, or (3) abstention or dismissal of any Insurance Action pending in the Bankruptcy Court or the District Court as an adversary proceeding is or is not advisable or warranted, so that another court can hear and determine such Insurance Action(s). Any court other than the Bankruptcy Court that has jurisdiction over an Insurance Action shall have the right to exercise such jurisdiction.

B.    <u>General Retention</u>. Following Confirmation of the Plan, the administration of the Chapter 11 Cases will continue until the Chapter 11 Cases are closed by a Final Order of the Bankruptcy Court. The Bankruptcy Court shall also retain jurisdiction for the purpose of classification of any Claims and the re-examination of Claims which have been Allowed for purposes of voting, and the determination of such objections as may be filed with the Bankruptcy Court with respect to any Claims. The failure by the Debtors or Reorganized Debtors to object to, or examine, any Claim for the purposes of voting, shall not be deemed a waiver of the rights of the Debtors, Reorganized Debtors, or the Settlement Trust, as the case may be, to object to or reexamine such Claim in whole or part.

C.    <u>Specific Purposes</u>. In addition to the foregoing, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan, including jurisdiction to:

1.    modify the Plan after Confirmation pursuant to the provisions of the Bankruptcy Code and the Bankruptcy Rules;

2.    correct any defect, cure any omission, reconcile any inconsistency or make any other necessary changes or modifications in or to the Plan, the Settlement Trust Documents or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance in the Plan in the event the Effective Date does not occur as provided herein so that the intended effect of the Plan may be substantially realized thereby;

3.    assure performance by the Settlement Trust and the Disbursing Agent of their respective obligations to make distributions under the Plan;

4.    enforce and interpret the terms and conditions of the Plan, the Plan Documents, the Settlement Trust Documents, and any Insurance Settlement Agreements;

5.      enter such orders or judgments, including injunctions (a) as are necessary to enforce the title, rights and powers of Reorganized Debtors and the Settlement Trust, (b) to execute, implement, or consummate the provisions of the Plan, the Confirmation Order, and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or the Confirmation Order, and (c) as are necessary to enable holders of Claims to pursue their rights against any Person that may be liable therefor pursuant to applicable law or otherwise;

6.      hear and determine any and all motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date (which jurisdiction shall be non-exclusive as to any such non-core matters);

7.      hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters, including contested matters arising on account of transactions contemplated by the Plan, or relating to the period of administration of the Chapter 11 Cases;

8.      hear and determine all applications for compensation of Professionals and reimbursement of expenses under sections 328, 330, 331, or 503(b) of the Bankruptcy Code;

9.      hear and determine any Causes of Action arising during the period from the Petition Date to the Effective Date, or in any way related to the Plan or the transactions contemplated hereby, against the Debtors, Reorganized Debtors, the Settlement Trust, and their respective Representatives;

10.     hear and determine any and all motions for the rejection, assumption or assignment of Executory Contracts or Unexpired Leases and the Allowance of any Claims resulting therefrom;

11.     hear and determine such other matters and for such other purposes as may be provided in the Confirmation Order;

12.     hear and determine the Allowance and/or Disallowance of any Claims, including Administrative Expense Claims, against or Interests in the Debtors or their Estates, including any objections to any such Claims or Interests, and the compromise and settlement of any Claim, including Administrative Expense Claims, against or Interest in the Debtors or their Estates;

13.     hear and resolve disputes concerning any reserves under the Plan or the administration thereof;

14.     hear and determine all questions and disputes regarding title to the assets of the Debtors, their Estates or the Settlement Trust;

70

15. enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated, or if distributions pursuant to the Plan or under the Settlement Trust Documents are enjoined or stayed;

16. hear and determine the Insurance Actions, any Settlement Trust Cause of Action and any similar claims, Causes of Action or rights of the Settlement Trust to construe and take any action to enforce any Tort Insurance Policy, and to issue such orders as may be necessary for the execution, consummation and implementation of any Tort Insurance Policy, and to determine all questions and issues arising thereunder; provided, that such retention of jurisdiction shall not constitute a waiver of any right of a Non-Settling Insurance Company to seek to remove or withdraw the reference of any Insurance Action filed after the Effective Date;

17. hear and determine any other matters related hereto, including the implementation and enforcement of all orders entered by the Bankruptcy Court in the Chapter 11 Cases;

18. resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Cases, the Bar Date established in the Chapter 11 Cases, or any deadline for responding or objecting to a Cure Amount, in each case, for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose;

19. enter in aid of implementation of the Plan such orders as are necessary, including the implementation and enforcement of the Injunctions, Releases, and Discharges described herein, including the Channeling Injunction;

20. hearing a petition for relief by a Specified Person or any other party in interest in the event that a court or tribunal hearing a Tort Cause of Action fails to apply the judgment reduction provisions of Article X.N;

21. approve any extension of the Insurance Settlement Period, approve any Post-Effective Date Insurance Settlement and determine the adequacy of notice of a Post-Effective Date Insurance Settlement provided by the Settlement Trustee;

22. hear and determine any questions and disputes pertaining to, and to enforce, any Insurance Settlement Agreements, if applicable;

23. hear and determine all questions and disputes regarding matters pertaining to discovery rights of the Settlement Trust and the related agreements that include, but not limited to, the Plan, the Plan Documents, Settlement Trust Agreement, Trust Distribution Procedures, and Document Agreement;

24. enter a Final Order or decree concluding or closing the Chapter 11 Cases; and

25.    to enter and implement such orders as may be necessary or appropriate if any aspect of the Plan, the Settlement Trust, or the Confirmation Order is, for any reason or in any respect, determined by a court to be inconsistent with, to violate, or insufficient to satisfy any of the terms, conditions, or other duties associated with any Tort Insurance Policies; provided, however, that (a) such orders shall not impair the Insurance Coverage Defenses or the rights, claims, or defenses, if any, of any Insurance Company that are set forth or provided for in the Plan, the Plan Documents, the Confirmation Order, or any other Final Orders entered in the Debtors' Chapter 11 Cases, (b) this provision does not, in and of itself, grant this Court jurisdiction to hear and decide disputes arising out of or relating to the Tort Insurance Policies, and (c) all interested parties, including any Insurance Company, reserve the right to oppose or object to any such motion or order seeking such relief.

D.    Courts of Competent Jurisdiction. To the extent that the Bankruptcy Court is not permitted under applicable law to preside over any of the foregoing matters, the reference to the "Bankruptcy Court" in this Article XI shall be deemed to be replaced by the "District Court." If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XII.
## Miscellaneous Provisions

A.    Closing of Chapter 11 Cases. After each Chapter 11 Case has been fully administered, Reorganized Debtors shall file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close such Chapter 11 Case.

B.    Amendment or Modification of the Plan.

1.    Plan Modifications. The Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, and after entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend, modify or supplement the Plan in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case without additional disclosure pursuant to section 1125 of the Bankruptcy Code unless section 1127 of the Bankruptcy Code requires additional disclosure. In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to the Plan, the Debtors may remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of the Plan, and any holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified, or supplemented.

2.      Other Amendments. Before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court.

C.      Revocation or Withdrawal of Plan. The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date. If the Plan has been revoked or withdrawn prior to the Effective Date, or if Confirmation of the Plan or the occurrence of the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan, including the Settlement Trust Documents, shall be deemed null and void; and (3) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim against, or any Interest in, the Debtors or any other Person; (ii) prejudice in any manner the rights of the Debtors or any other Person; or (iii) constitute an admission of any sort by the Debtors or any other Person.

D.      Request for Expedited Determination of Taxes. The Debtors and Reorganized Debtors, as applicable, shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date to and including the Effective Date.

E.      Non-Severability of Plan Provisions. If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms, (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors or Reorganized Debtors (as the case may be), and (3) nonseverable and mutually dependent.

F.      Notices. All notices, requests, and demands to or upon the Debtors or Reorganized Debtors to be effective shall be in writing (including by email transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, addressed as follows:

If to the Debtors, addressed to:

      Roosevelt Inn, LLC
      Attention:  Anthony Uzzo
      A.Uzzo & Company, CPA's PC
      287 Bowman Avenue
      Purchase, NY 10577

With a copy to counsel:

      Karalis PC
      Attention:  Aris J. Karalis, Esquire
      1900 Spruce Street
      Philadelphia, PA 19103
      Phone: (215) 546-4500

G.    <u>Notices to Other Persons</u>. After the occurrence of the Effective Date, Reorganized Debtors has authority to send a notice to any Person providing that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Person must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002; <u>provided</u>, <u>however</u>, that the U.S. Trustee need not file such a renewed request and shall continue to receive documents without any further action being necessary. After the occurrence of the Effective Date, Reorganized Debtors is authorized to limit the list of Persons receiving documents pursuant to Bankruptcy Rule 2002 to the U.S. Trustee and those Persons that have filed such renewed requests.

H.    <u>Governing Law</u>. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement or any other Plan Document provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Pennsylvania, without giving effect to the principles of conflict of laws thereof.

I.    <u>Immediate Binding Effect</u>. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of any Person named or referred to in the Plan and the successors and assigns of such Person.

J.    <u>Timing of Distributions or Actions</u>. In the event that any payment, Distribution, act or deadline under the Plan is required to be made or performed or occurs on a day that is not a Business Day, then such payment, Distribution, act or deadline shall be deemed to occur on the next succeeding Business Day, but if so made, performed or completed by such next succeeding Business Day, shall be deemed to have been completed or to have occurred as of the required date.

K.    <u>Deemed Acts</u>. Whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred by virtue of the Plan or the Confirmation Order without any further act by any Person.

L.    <u>Entire Agreement</u>. The Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions, negotiations, understandings and documents. No Person shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for in the Plan or the other Plan Documents or as may hereafter be agreed to by the affected parties in writing.

M.    <u>Plan Supplement</u>. Any and all exhibits, lists, or schedules referred to herein but not filed with the Plan shall be contained in the Plan Supplement to be filed with the Clerk of the Bankruptcy Court prior to the Confirmation Hearing on the Plan, and such Plan Supplement is incorporated into and is part of the Plan as if set forth in full herein. The Plan Supplement will be available for inspection in the office of the Clerk of the Bankruptcy Court during normal court hours at the Bankruptcy Court's website (http://ecf.paeb.uscourts.gov).

N.    <u>Withholding of Taxes</u>. The Disbursing Agent, the Settlement Trust or any other applicable withholding agent, as applicable, shall withhold from any assets or property distributed under the Plan any assets or property which must be withheld for foreign, federal, state and local taxes payable with respect thereto or payable by the Person entitled to such assets to the extent required by applicable law.

O.    <u>Payment of Quarterly Fees</u>. All Quarterly Fees due and payable prior to the Effective Date shall be paid on or before the Effective Date. The Reorganized Debtors shall pay all such fees that arise after the Effective Date, but before the closing of the Chapter 11 Cases, and shall comply with all applicable statutory reporting requirements.

P.    <u>Effective Date Actions Simultaneous</u>. Unless the Plan or the Confirmation Order provides otherwise, actions required to be taken on the Effective Date shall take place and be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

Q.    <u>Consent to Jurisdiction</u>. Upon default under the Plan, Reorganized Debtors, the Settlement Trust, the Settlement Trustee, and the Protected Parties, or any successor thereto, respectively, consent to the jurisdiction of the Bankruptcy Court, and agree that it shall be the preferred forum for all proceedings relating to any such default.

*[SIGNATURE PAGE TO FOLLOW]*

**ROOSEVELT INN, LLC**


By:    /s/ Anthony Uzzo
          Anthony Uzzo, Officer


**ROOSEVELT MOTOR INN, INC.**


By:    /s/ Anthony Uzzo
          Anthony Uzzo, Vice President



**KARALIS PC**


By:    /s/ Aris J. Karalis
          Aris J. Karalis, Esquire
          Robert W. Seitzer, Esquire
          1900 Spruce Street
          Philadelphia, PA  19103
          215-546-4500
          Attorneys for the Debtors


[SIGNATURE PAGE TO JOINT PLAN OF REORGANIZATION]

## <u>EXHIBITS AND SCHEDULES TO THE PLAN OF REORGANIZATION</u>

### <u>Exhibits</u>

Exhibit "A"      Settlement Trust Agreement

Exhibit "B"      Trust Distribution Procedures

### <u>Schedules</u>

Schedule 1      Debtors' Insurance Policies

Schedule 2      New Claims

**EXHIBIT "A"**

**SETTLEMENT TRUST AGREEMENT**
(to be supplied)

**EXHIBIT "B"**

**SETTLEMENT TRUST DISTRIBUTION PROCEDURES**
(to be supplied)

**SCHEDULE 1**

**DEBTORS' INSURANCE POLICIES**

| | 04/01/2007 – 04/01/2008 | 04/01/2008 – 04/01/2009 | 04/01/2009 – 04/01/2010 | 04/01/2010 – 04/01/2011 | 04/01/2011 – 04/01/2012 | 04/01/2012 – 04/01/2013 | 04/01/2013 – 04/20/2013 | 04/20/2013 – 04/20/2014 | 04/20/2014 – 04/20/2015 | 04/20/2015 – 04/20/2016 | 04/20/2016 – 04/20/2017 | 04/20/2017 – 04/20/2018 | 04/20/2018 – 04/20/2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Primary Insurance & Limits** | Praetorian Insurance Co. **Policy No.** H470011142 **Limits:** $2,000,000 – General Aggregate $1,000,000 – Personal and Advertising Injury Limit $1,000,000 – Each Occurrence | Public Service Mutual Ins Co. **Policy No.** CG 001611 **Limits:** $2,000,000 – General Aggregate $1,000,000 – Personal and Advertising Injury $1,000,000 – Each Occurrence | Harleysville Preferred Insurance Company **Policy No.** MPA000000384 92C **Limits:** $1,000,000 – Each Occurrence $1,000,000 – Personal and Advertising Injury (Any One Person or Organization) $2,000,000 – General Aggregate (Other than Products-Completed Operations) | Harleysville Preferred Insurance Company **Policy No.** MPA000000384 92C **Limits:** $1,000,000 – Each Occurrence $1,000,000 – Personal and Advertising Injury (Any One Person or Organization) $2,000,000 – General Aggregate (Other than Products-Completed Operations) | Harleysville Preferred Insurance Company **Policy No.** MPA000000384 92C **Limits:** $1,000,000 – Each Occurrence $1,000,000 – Personal and Advertising Injury (Any One Person or Organization) $2,000,000 – General Aggregate (Other than Products-Completed Operations) | Harleysville Mutual Insurance Company **Policy No.** MPA000000907 92M **Limits:** $1,000,000 – Each Occurrence $1,000,000 – Personal and Advertising Injury (Any One Person or Organization) $2,000,000 – General Aggregate (Other than Products-Completed Operations) | Harleysville – Nationwide Mutual Insurance Company **Policy No.** MPA000000907 92M **Limits:** $1,000,000 – Each Occurrence $1,000,000 – Personal and Advertising Injury (Any One Person or Organization) $2,000,000 – General Aggregate (Other than Products-Completed Operations) | Samsung Fire & Marine Insurance Co., Ltd. (U.S. Branch) **Policy No.** CPP 0000842 00 **Limits:** $1,000,000 – Each Occurrence $1,000,000 – Personal and Advertising Injury $2,000,000 – General Aggregate (Other than Products-Completed Operations) | Samsung Fire & Marine Insurance Co., Ltd. (U.S. Branch) **Policy No.** CPP 0000842 01 **Limits:** $1,000,000 – Each Occurrence $1,000,000 – Personal and Advertising Injury $2,000,000 – General Aggregate (Other than Products-Completed Operations) | Associated Industries Insurance Company, Inc. **Policy No.** AES1034559 00 **Limits:** $1,000,000 – Each Occurrence $1,000,000 – Personal and Advertising Injury $2,000,000 – General Aggregate (Other than Products-Completed Operations) | Associated Industries Insurance Company, Inc. **Policy No.** AES1034559 01 **Limits:** $1,000,000 – Each Occurrence $1,000,000 – Personal and Advertising Injury $2,000,000 – General Aggregate (Other than Products-Completed Operations) | Associated Industries Insurance Company, Inc. **Policy No.** AES1034559 02 **Limits:** $1,000,000 – Each Occurrence $1,000,000 – Personal and Advertising Injury $2,000,000 – General Aggregate (Other than Products-Completed Operations) | United Specialty Ins. Co. **Policy No.** EGM-MGL2991-18 **Limits:** $1,000,000 – Each Occurrence $1,000,000 – Personal and Advertising Injury $2,000,000 – General Aggregate (Other than Products-Completed Operations) |
| **Excess Insurance & Limits** | American Guarantee & Liability Ins. Co. – Zurich **Policy No.** AUC382552604 **Limits:** $25,000,000 – Each Occurrence $25,000,000 – Other Aggregate | American Guarantee & Liability Ins. Co. – Zurich **Policy No.** AUC374862006 **Limits:** $25,000,000 – Each Occurrence $25,000,000 – Other Aggregate | ACE Property & Casualty Insurance Company **Policy No.** G24898593 **Limits:** $25,000,000 – Each Occurrence $25,000,000 – General Aggregate | ACE Property & Casualty Insurance Company **Policy No.** G24898593 002 **Limits:** $25,000,000 – Each Occurrence $25,000,000 – General Aggregate | ACE Property & Casualty Insurance Company **Policy No.** G24898593 003 **Limits:** $25,000,000 – Each Occurrence $25,000,000 – General Aggregate | ACE Property & Casualty Insurance Company **Policy No.** G24898593 004 **Limits:** $25,000,000 – Each Occurrence $25,000,000 – General Aggregate | | ACE Property & Casualty Insurance Company **Policy No.** G24898593 005 **Limits:** $25,000,000 – Each Occurrence $25,000,000 – General Aggregate | *Policy Period: 04/01/2014 to 04/10/2015 ACE Property & Casualty Insurance Company **Policy No.** G24898593 006 **Limits:** $25,000,000 – Each Occurrence $25,000,000 – General Aggregate | Allied World Assurance Company **Policy No.** 0309-0061 **Limits:** $10,000,000 – Each Occurrence $10,000,000 – General Aggregate | Allied World Assurance Company **Policy No.** 0309-5871 **Limits:** $10,000,000 – Each Occurrence $10,000,000 – General Aggregate | Allied World Assurance Company **Policy No.** 0310-1356 **Limits:** $10,000,000 – Each Occurrence $10,000,000 – General Aggregate | Allied World Insurance Company **Policy No.** 0310-9283 **Limits:** $10,000,000 – Each Occurrence $10,000,000 – General Aggregate |
| **Additional Excess Insurance & Limits** | | | Westchester Fire Insurance Co. **Policy No.** G24045638001 **Limits:** $25M XS $25M | Westchester Fire Insurance Co. **Policy No.** G24095885001 **Limits:** $25M XS $25M | | | | | | National Union Fire Insurance Company of Pittsburgh, PA **Policy No.** 015375222 **Limits:** | National Union Fire Insurance Company of Pittsburgh, PA **Policy No.** 015375241 **Limits:** | National Union Fire Insurance Company of Pittsburgh, PA **Policy No.** 015375250 **Limits:** | National Union Fire Insurance Company of Pittsburgh, PA **Policy No.** 023627270 **Limits:** |

| | 04/01/2007 – 04/01/2008 | 04/01/2008 – 04/01/2009 | 04/01/2009 – 04/01/2010 | 04/01/2010 – 04/01/2011 | 04/01/2011 – 04/01/2012 | 04/01/2012 – 04/01/2013 | 04/01/2013 – 04/20/2013 | 04/20/2013 – 04/20/2014 | 04/20/2014 – 04/20/2015 | 04/20/2015 – 04/20/2016 | 04/20/2016 – 04/20/2017 | 04/20/2017 – 04/20/2018 | 04/20/2018 – 04/20/2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | $25,000,000 – Each Occurrence  $25,000,000 – Annual Aggregate | $25,000,000 – Each Occurrence  $25,000,000 – Annual Aggregate | $15,000,000 XS $10,000,000 | $15,000,000 XS $10,000,000 |
| Additional Excess Insurance & Limits | | | | | | | | | | | | Allied World Assurance Company  **Policy No.** 0310-1780  **Limits:** $10,000,000 XS $25,000,000 | Allied World Assurance Company  **Policy No.**  0310-9279  **Limits:** $10,000,000 XS $25,000,000 |
| Additional Excess Insurance & Limits | | | | | | | | | | | | Great American Insurance Co. of NY  **Policy No.** EXC4100770  **Limits:** $15,000,000 XS $35,000,000 | Great American Insurance Co. of NY  **Policy No.** EXC1615069  **Limits:** $15,000,000 XS $35,000,000 |

## SCHEDULE 2

## NEW CLAIMS

**ROOSEVELT INN, LLC, et al.**
**Bankruptcy No. 21-11697(AMC)**
**NOTICES SENT TO INSURANCE COMPANIES FOR 10 NEW TORT CLAIMS**


**DEBTORS' INSURANCE COMPANIES**

| | NOTICE DATE | CARRIER | POLICY NUMBER | POLICY PERIOD | CLAIMANT |
|---|---|---|---|---|---|
| 1 | 1/14/2022 | ACE Property & Casualty Company | G24898593 | 4/1/2009 to 4/1/2010 | D.P., D.W., E.B., J.H., L.E., S.M., S.W. |
| | | | G24898593 002 | 4/1/2010 to 4/1/2011 | |
| | | | G24898593 003 | 4/1/2011 to 4/1/2012 | |
| | | | G24898593 004 | 4/1/2012 to 4/1/2013 | |
| | | | G24898593 005 | 4/1/2013 to 4/1/2014 | |
| | | | G24898593 006 | 4/20/2013 to 4/20/2014 | |
| 2 | 1/14/2022 | Allied World Assurance Company (U.S.) Inc. | 0309-0061 | 4/20/2015 to 4/20/2016 | T.H., T.S., B.S. |
| | | | 0309-5871 | 4/20/2016 to 4/20/2017 | |
| | | | 0310-1356 | 4/20/2017 to 4/20/2018 | |
| | | | 0310-1780 | 4/20/2017 to 4/20/2018 | |
| | | | 0310-9283 | 4/20/2018 to 4/20/2019 | |
| | | | 0310-9279 | 4/20/2018 to 4/20/2019 | |
| 3 | 1/14/2022 | AmTrust North America | AES1034559 00 | 4/20/2015 to 4/20/2016 | T.H., T.S., B.S. |
| | | | AES1034559 01 | 4/20/2016 to 4/20/2017 | |
| | | | AES1034559 02 | 4/20/2017 to 4/20/2018 | |
| 4 | 1/14/2022 | Great American Insurance Company of New York | EXC4100770 | 4/20/2017 to 4/20/2018 | T.S.,  B.S. |
| | | | EXC1615069 | 4/20/2018 to 4/20/2019 | |
| 5 | 1/14/2022 | Harleysville Mutual Insurance Company | MPA00000038492C | 4/1/2009 to 4/1/2010 | D.P., D.W., L.E., S.W. |
| | | | MPA00000038492C | 4/1/2010 to 4/1/2011 | |
| | | | MPA00000038492C | 4/1/2011 to 4/1/2012 | |
| | | | MPA0000009072M | 4/1/2012 to 4/20/2013 | |

**ROOSEVELT INN, LLC, et al.**
**Bankruptcy No. 21-11697(AMC)**
**NOTICES SENT TO INSURANCE COMPANIES FOR 10 NEW TORT CLAIMS**

| | NOTICE DATE | CARRIER | POLICY NUMBER | POLICY PERIOD | CLAIMANT |
|---|---|---|---|---|---|
| 6 | 1/14/2022 | National Union Fire Insurance Company of Pittsburgh, PA | 015375222 | 4/20/2015 to 4/20/2016 | T.H., T.S., B.S. |
| | | | 015375241 | 4/20/2016 to 4/20/2017 | |
| | | | 015385250 | 4/20/2017 to 4/20/2018 | |
| | | | 023627270 | 4/20/2018 to 4/20/2019 | |

| | NOTICE DATE | CARRIER | POLICY NUMBER | POLICY PERIOD | CLAIMANT |
|---|---|---|---|---|---|
| 7 | 1/14/2022 | Samsung Fire & Marine Insurance Co., Ltd. | CPP000842 00 | 4/20/2013 to 4/20/2014 | D.W., E.B., J.H., S.M., S.W. |
| | | | CCP000842 01 | 4/20/2014 to 4/20/2015 | |

| | NOTICE DATE | CARRIER | POLICY NUMBER | POLICY PERIOD | CLAIMANT |
|---|---|---|---|---|---|
| 8 | 3/14/2022 | United Specialty Insurance Company | EGM-MGL2991-18 | 4/20/2018 to 4/20/2019 | B.S. |

| | NOTICE DATE | CARRIER | POLICY NUMBER | POLICY PERIOD | CLAIMANT |
|---|---|---|---|---|---|
| 9 | 1/18/2022 | Westchester Fire Insurance Co. | G24045638001 | 4/1/2009 to 4/1/2010 | A.H. |
| | | | G24095885001 | 4/1/2010 to 4/1/2011 | |

**ALPHA'S INSURANCE COMPANIES**

| | NOTICE DATE | CARRIER | POLICY NUMBER | POLICY PERIOD | CLAIMANT |
|---|---|---|---|---|---|
| 10 | 1/14/2022 | Everest Indemnity Insurance Company | 51GL002418-081 | 3/11/2008 to 3/11/2009 | A.H. |

| | NOTICE DATE | CARRIER | POLICY NUMBER | POLICY PERIOD | CLAIMANT |
|---|---|---|---|---|---|
| 11 | 1/14/2022 | Philadelphia Indemnity Insurance Company | HPK396765 | 3/11/2009 to 3/11/2010 | A.H., B.H., C.A., D.P., D.W., K.R., L.E., M.B., S.W. |
| | | | PHPK540637 | 3/11/2010 to 3/11/2011 | |
| | | | PHPK693782 | 3/11/2011 to 3/11/2012 | |
| | | | PHUB360526 | 9/26/2011 to 3/11/2012 | |
| | | | PHPK839522 | 3/11/2012 to 3/11/2013 | |
| | | | PHUB376235 | 3/11/2012 to 3/11/2013 | |
| | | | PHPK991117 | 3/11/2013 to 3/11/2014 | |
| | | | PHUB414051 | 3/11/2013 to 3/11/2014 | |

| | NOTICE DATE | CARRIER | POLICY NUMBER | POLICY PERIOD | CLAIMANT |
|---|---|---|---|---|---|
| 12 | 1/14/2022 | Capitol Specialty Insurance Corporation | CS02272641-01 | 8/5/2013 to 8/5/2014 | B.H., C.A., D.W., K.R., M.B., S.W. |

**ROOSEVELT INN, LLC et al.**
**Bankruptcy No. 21-11697(AMC)**
**NOTICES SENT TO INSURANCE COMPANIES FOR 10 NEW TORT CLAIMS**

|    | NOTICE DATE | CARRIER | POLICY NUMBER | POLICY PERIOD | CLAIMANT |
|----|-------------|---------|---------------|---------------|----------|
| 13 | 1/14/2022 | Western Heritage Insurance Company | SCP1006746 | 8/5/2014 to 8/5/2015 | B.S., E.B., J.H., S.M., S.W., T.S. |