IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| ROOSEVELT INN, LLC and | : | Bky. No. 21-11697(AMC) |
| ROOSEVELT MOTOR INN, INC. | : | |
| | : | JOINTLY ADMINISTERED |
| Debtors | : | |
| | : | |

EXHIBIT "A" TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING
THE DISCLOSURE STATEMENT AND THE FORM AND MANNER OF NOTICE,
(II) APPROVING PLAN SOLICITATION AND VOTING PROCEDURES,
(III) APPROVING FORMS OF BALLOTS, (IV) APPROVING FORM, MANNER, AND
SCOPE OF CONFIRMATION NOTICES, (V) ESTABLISHING CERTAIN DEADLINES
IN CONNECTION WITH APPROVAL OF THE DISCLOSURE STATEMENT AND
CONFIRMATION OF THE PLAN, AND (VI) GRANTING RELATED RELIEF

KARALIS PC
Aris J. Karalis
Robert W. Seitzer
1900 Spruce Street
Philadelphia, PA 19103
(215) 546-4500
Attorneys for the Debtors
and Debtors in Possession

Dated: December 22, 2022

**<u>Exhibit A</u>**
**Solicitation Procedures Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | **CHAPTER 11** |
| | : | |
| **ROOSEVELT INN, LLC and** | : | **Bky. No. 21-11697(AMC)** |
| **ROOSEVELT MOTOR INN, INC.** | : | |
| | : | **JOINTLY ADMINISTERED** |
| **Debtors** | : | |

**ORDER (I) APPROVING THE DISCLOSURE STATEMENT
AND THE FORM AND MANNER OF NOTICE, (II) APPROVING
PLAN SOLICITATION AND VOTING PROCEDURES, (III) APPROVING
FORMS OF BALLOTS, (IV) APPROVING FORM, MANNER, AND SCOPE OF
CONFIRMATION NOTICES, (V) ESTABLISHING CERTAIN DEADLINES IN
CONNECTION WITH APPROVAL OF THE DISCLOSURE STATEMENT AND
CONFIRMATION OF THE PLAN, AND (VI) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[1] of the Debtors for entry of an order (this "Solicitation Procedures Order"), pursuant to sections 105(a), 502, 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3003, 3016, 3017, 3018, 3020, 9006, and 9008, and Local Rules 2002-1, 3017-1, and 9006-1, (a) approving the Disclosure Statement for the Plan, (b) approving the form and manner of the Disclosure Statement Hearing Notice in respect of the Disclosure Statement Hearing, (c) establishing the Solicitation Procedures, (d) approving the forms of Ballots, (e) approving the date, time, manner, and scope of the Confirmation Notices in respect of the Confirmation Hearing, (f) establishing certain deadlines in connection with the foregoing, and (g) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion in accordance with 28 U.S.C. § 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion, the Disclosure Statement, or the Plan, as applicable.

and appropriate notice of and opportunity for a hearing on the Motion having been given and no

other or further notice being necessary; and upon the record herein; and after due deliberation

thereon; and the Court having determined that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.     Notice of the Disclosure Statement Hearing was sufficient and appropriate under

the circumstances and complied with the applicable requirements of the Bankruptcy Code,

Bankruptcy Rules, and the Local Rules, and no further notice is needed.

B.     The Disclosure Statement, as may be modified and amended in accordance with

the record at the Disclosure Statement Hearing, contains "adequate information" regarding the

Plan within the meaning of section 1125 of the Bankruptcy Code.  No further information is

deemed necessary or required.

C.     The Disclosure Statement complies with Bankruptcy Rule 3016(c) and describes,

in specific and conspicuous language, the acts to be enjoined and the entities subject to the

injunction, exculpation, and release provisions contained in the Plan.

D.     The Solicitation Procedures attached hereto as **Exhibit 1** provide a fair and

equitable voting process and are consistent with section 1126 of the Bankruptcy Code and the

applicable Bankruptcy Rules.

E.     The contents of the Solicitation Packages and other notices, as set forth in the

Motion and the Solicitation Procedures, comply with Bankruptcy Rules 2002 and 3017 and

constitute sufficient notice to all interested parties of the Record Date, the Voting Deadline, the

Plan Objection Deadline, the Confirmation Hearing, the Plan, the procedures described to solicit votes to accept or reject the Plan, and related matters to all interested parties.

F.      The forms of Ballots, substantially in the forms attached hereto as **Exhibits 2-1**, **2-2**, **2-3**, **2-4**, **2-4A**, and **2-5**, including all instructions provided therein, (i) are sufficiently consistent with Official Form No. 314 to be approved, (ii) adequately address the particular needs of these Chapter 11 Cases, and (iii) are appropriate for the Voting Classes of Claims entitled to vote to accept or reject the Plan.  No further information or instructions are necessary.

G.      Pursuant to the Plan, the holders of Claims in Class 1 (Secured Claims), Class 3 (General Unsecured Claims), Class 4 (Non-Tort Litigation Claims), Class 5 (Direct Tort Claims), and Class 6 (Indirect Tort Related Claims) are impaired and entitled to receive distributions under the Plan.  Accordingly, holders of Claims in such classes are entitled to vote on account of such Claims.

H.      Ballots need not be provided to holders of Claims or Interests in the Non-Voting Classes (Classes 2, 7 and 8).  Classes 2, 7 and 8 are Unimpaired and are conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.

I.      The form of Non-Voting Status Notice, substantially in the form attached hereto as **Exhibit 4**, complies with Bankruptcy Rule 3017(d) and, together with the Confirmation Hearing Notice, provide adequate notice to the holders of Claims and Interests in the Non-Voting Classes (or other holders of Claims or Interests that are otherwise deemed not entitled to vote to accept or reject the Plan) of their non-voting status.  No further notice is deemed necessary or required.

4

J.      The period during which the Debtors may solicit votes on the Plan is a reasonable and adequate period of time for holders of Claims entitled to vote on the Plan to make an informed decision to accept or reject the Plan and timely return Ballots evidencing such decision.

K.      The Confirmation Hearing Notice, substantially in the form attached hereto as **Exhibit 3**, provides good and sufficient notice of the Plan, the Confirmation Hearing, and the opportunity to vote on and object to the Plan, complies with Bankruptcy Rules 2002 and 3017, and satisfies the requirements of due process with respect to all known and unknown creditors.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The relief requested in the Motion is GRANTED as set forth herein.

**Disclosure Statement**

2.      The Disclosure Statement is APPROVED as containing "adequate information" within the meaning of section 1125(a) of the Bankruptcy Code.

3.      All objections to the Disclosure Statement that have not been withdrawn or resolved previously or at the hearing to consider approval of the Disclosure Statement are overruled.

**Plan Confirmation Schedule**

4.      The following dates and deadlines in connection with the Solicitation Procedures and Confirmation Hearing are APPROVED:

| Event | Proposed Date |
|---|---|
| Voting Record Date | [●], 2023 |
| Solicitation Date | [●], 2023 |
| Plan Supplement Deadline | [●], 2023 |
| Voting Resolution Event Deadline | [●], 2023 |
| Voting Deadline | [●], 2023 at 4:00 p.m. (Eastern Time) |

| Plan Objection Deadline | [●], 2023 at 4:00 p.m. (Eastern Time) |
|---|---|
| Voting Report Deadline | [●], 2023 |
| Confirmation Brief/Plan Reply Deadline | [●], 2023 |
| Confirmation Hearing | [●], 2023 at [● .m.] (Eastern Time) |

5.     The Confirmation Hearing shall be held on [●], **2023, at [●].m. (Eastern Time)**. The Confirmation Hearing may be adjourned from time to time by this Court or the Debtors without further notice other than as indicated in any notice or agenda of matters scheduled for a particular hearing that is filed with the Court.

**Distribution of Solicitation Packages**

6.     The proposed distribution and contents of the Solicitation Packages, which shall include the following, are APPROVED:

(a)     the Cover Letter describing the contents of the Solicitation Package and urging holders of Claims in the Voting Classes to vote to accept the Plan;

(b)     the Confirmation Hearing Notice;

(c)     the Disclosure Statement with all exhibits, including the Plan and all exhibits (to the extent such exhibits are filed with the Court before the Solicitation Date);

(d)     this Solicitation Procedures Order, including the Solicitation Procedures and all exhibits;

(e)     an appropriate form of Ballot with return instructions and a return envelope; and

(f)     any other materials ordered by the Court to be included as part of the Solicitation Package.

7.     The Debtors are authorized, but not directed or required, to distribute the Disclosure Statement, the Plan, and this Solicitation Procedures Order to holders of Claims entitled to vote on

the Plan. The Cover Letter included in the Solicitation Package and attached to this Solicitation

Procedures Order as **Exhibit 6** is hereby approved.

8.      The Debtors shall distribute the Solicitation Packages and Ballots by mail to holders

of Claims in the Voting Classes; provided however, the Debtors shall also distribute a Solicitation

Package and POA Ballots to the known attorneys with respect to each of their Tort Claim clients.

9.      The Debtors shall also distribute Solicitation Packages without ballots to (a) the

U.S. Trustee, (b) the SEC, and (c) the 2002 List.

10.     Karalis PC ("Debtors' Counsel") is authorized to assist the Debtors in (a)

distributing the Solicitation Package, (b) receiving, tabulating, and reporting on Ballots cast to

accept or reject the Plan by holders of Claims, (c) responding to inquiries from holders of Claims

and Interests and other parties in interest relating to the Disclosure Statement and Plan, the Ballots,

the Solicitation Packages, and all other related documents and matters related thereto, including

the procedures and requirements for voting to accept or reject the Plan and for objecting to the

Plan, (d) soliciting votes on the Plan, and (e) if necessary, contacting creditors regarding the Plan.

11.     The Debtors and Debtors' Counsel shall not be required to mail a Solicitation

Package or any other materials related to voting or confirmation of the Plan to any person or entity

from which the notice of the Motion or other mailed notice in these Chapter 11 Cases was

returned as undeliverable by the postal service, unless the Debtors' Counsel is provided with

accurate addresses for such persons or entities before the Solicitation Date, and failure to mail

Solicitation Packages or any other materials related to voting or confirmation of the Plan to such

persons or entities shall not constitute inadequate notice of the Confirmation Hearing or the

Voting Deadline and shall not constitute a violation of Bankruptcy Rule 3017(d).

12.     The Debtors shall distribute a copy of the Confirmation Hearing Notice and Non-Voting Status Notice to the Non-Voting Classes and to the holders of Unclassified Claims. The Debtors shall not be required to mail a Solicitation Package or any other materials related to voting or confirmation of the Plan to the holders of Claims in the Non-Voting Classes or holders of Unclassified Claims, unless otherwise requested through the process set forth in the Non-Voting Status Notice.

13.     The Debtors shall file and serve the Plan Supplement Notice on the 2002 List on the date the Plan Supplement is filed or as soon as reasonably practicable thereafter.

**Solicitation Procedures**

14.     The Debtors are authorized to solicit, receive, and tabulate votes to accept or reject the Plan in accordance with the Solicitation Procedures attached hereto as **Exhibit 1**, which are hereby APPROVED in their entirety.

15.     The forms of Ballots attached hereto as **Exhibits 2-1**, **2-2**, **2-3**, **2-4**, **2-4A**, and **2-5**, respectively, are APPROVED in all respects.

16.     All Direct Tort Claims and Indirect Tort Related Claims in Classes 5 and 6 of the Plan shall be temporarily allowed in the amount of $1.00 in the aggregate per claimant solely for purposes of voting to accept or reject the Plan and not for any other purpose.

17.     All Non-Tort Litigation Claims filed on account of litigation against the Debtors, including any insured Non-Tort Claims, which have not been fixed pursuant to a judgment or settlement entered prior to the Voting Record Date, shall be classified as contingent and unliquidated Claims in accordance with the Solicitation Procedures and shall have a single vote in the amount, for voting purposes only, of $1.00 in the aggregate per claimant.

18.    Debtors' Counsel in these Chapter 11 Cases shall process and tabulate Ballots in accordance with the Solicitation Procedures and file the Voting Report no later than the Voting Report deadline of [●], 2023.

**Confirmation Notices and Objection Procedures**

19.    The form, manner, and scope of the Confirmation Hearing Notice, the Non-Voting Status Notice, and the Plan Supplement Notice, substantially in the forms attached hereto as **Exhibits** **3**, **4**, and **5**, respectively, constitute good, sufficient, and adequate notice to all parties, including known and unknown creditors, comply with the requirements of due process, and are APPROVED.    Such notices are being provided by means reasonably calculated to reach all interested persons, reasonably convey all the required information to inform all persons affected thereby, and provide a reasonable time for a response and an opportunity to object to the relief requested.  No other or further notice is necessary.

20.    Notwithstanding anything else herein, the Debtors shall serve the Confirmation Hearing Notice on: (a) all holders of Claims, including Unclassified Claims, regardless of whether they are entitled to vote; (b) the 2002 List; (c) the Internal Revenue Service; (d) the SEC; (e) the U.S. Trustee; (f) all federal, state, and local taxing authorities in the jurisdictions in which the Debtors have tax liabilities; (g) all other persons or entities listed on the Debtors' creditor mailing matrix; and (h ) all counterparties to Executory Contracts and Unexpired Leases.

21.    Objections and responses, if any, to confirmation of the Plan must (a) be in writing, (b) set forth in detail the name and address of any party filing the objection, the legal and factual basis for the objection, the amount of the objector's Claims or such other grounds that give the objector standing to assert the objection, and any evidentiary support thereof, (c) conform to the Bankruptcy Rules and Local Rules, (d) be filed with this Court, and (e) be served upon the parties

listed in the Confirmation Hearing Notice at the addresses set forth therein, on or before the Plan

Objection Deadline, which service may be through the CM/ECF system, with courtesy copies by

email delivered to counsel of the Debtors.

22.    Objections to confirmation of the Plan not timely filed and served in accordance

with the provisions of this Solicitation Procedures Order may not be considered by this Court

and may be denied and overruled unless otherwise ordered by this Court.

23.    The Debtors or other parties in interest may file and serve a reply or replies to any

objections or responses to confirmation of the Plan on or before the Confirmation Brief/Plan

Reply Deadline of [●], **2023**.

**Additional Relief**

24.    The Debtors are authorized to take any action necessary or appropriate to

implement the terms of and the relief granted in this Solicitation Procedures Order without seeking

further order of this Court.

25.    The Debtors are authorized to make any non-substantive changes to the Plan and

Disclosure Statement, the Solicitation Procedures, the Ballots, the Solicitation Packages, the

Confirmation Notices, and related documents without further order of this Court, including,

without limitation, changes to (a) correct any typographical, grammatical, and formatting errors or

omissions, and (b) make conforming changes to the Plan, the Disclosure Statement, and any other

materials in the Solicitation Packages before distribution.

26.    Nothing in this Solicitation Procedures Order shall be construed as a waiver of the

right of the Debtors or other party in interest, as applicable, to object to a Proof of Claim after the

Voting Record Date.

27.     All time periods set forth in this Solicitation Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

28.     Notwithstanding any applicable Bankruptcy Rule, the terms and conditions of this Solicitation Procedures Order shall be immediately effective and enforceable upon its entirety.

29.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

30.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Solicitation Procedures Order.

BY THE COURT:

Dated: _____          _____
                                     ASHELY M. CHAN
                                     UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Solicitation Procedures**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| ROOSEVELT INN, LLC and | : | Bky. No. 21-11697(AMC) |
| ROOSEVELT MOTOR INN, INC. | : | |
| | : | JOINTLY ADMINISTERED |
| Debtors | : | |
| | : | |

## SOLICITATION PROCEDURES

**PLEASE TAKE NOTICE THAT** on [●], 2023, the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court") entered an order in the above-captioned Chapter 11 Cases [D.I. [●]] (the "Solicitation Procedures Order"): (a) approving the *Disclosure Statement for the Plan of Reorganization for Roosevelt Inn, LLC and Roosevelt Motor Inn, Inc.* (the "Disclosure Statement"); (b) establishing the Voting Record Date, Voting Deadline, and other related dates in connection with confirmation of the *Plan of Reorganization for Roosevelt Inn, LLC and Roosevelt Motor Inn, Inc.* (as may be modified, amended, or supplemented from time to time, the "Plan");[1] (c) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan; (d) approving the form and manner of notice and other related documents as they relate to the Debtors; and (e) granting related relief.

The Solicitation Procedures set forth in this document are supplemented by the instructions accompanying the Ballots included in the Solicitation Packages that will be sent to those holders of Claims entitled to vote to accept or reject the Plan. Reference should be made to those instructions in addition to this document; however, in the case of a conflict, the terms of the Ballots control.

## I.    VOTING RECORD DATE

The Bankruptcy Court has established [●], **2023**, as the record date for purposes of determining which holders of Claims in Class 1 (Secured Claims), Class 3 (General Unsecured Claims), Class 4 (Non-Tort Litigation Claims), Class 5 (Direct Tort Claims), and Class 6 (Indirect Tort Related Claims) are entitled to vote on the Plan (the "Voting Record Date").

## II.    VOTING DEADLINE

The Bankruptcy Court has approved [●], **2023 at 4:00 p.m. (Eastern Time)** as the deadline to vote to accept or reject the Plan (the "Voting Deadline"). The Debtors may extend the Voting

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Debtors' Motion for Entry of an Order (I) Approving the Disclosure Statement and the Form and Manner of Notice, (II) Approving Plan Solicitation and Voting Procedures, (III) Approving Forms of Ballots, (IV) Approving Form, Manner, and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (VI) Granting Related Relief* [D.I. [355]] (the "Solicitation Procedures Motion"), the Plan, the Disclosure Statement.

Deadline, in their discretion, without further order of the Bankruptcy Court. To be counted as a vote to accept or reject the Plan, each Ballot ("Ballot") must be properly executed, completed, and delivered by (1) mail, (2) overnight delivery, or (3) personal delivery, so that it is ***actually received***, in each case, by Karalis PC ("Debtors' Counsel") no later than the Voting Deadline. Specifically, each Ballot must be returned by mail using the envelope included in the Solicitation Package, as applicable, or by overnight or personal delivery to the following address:

> Karalis PC
> Attn: Aris J. Karalis, Esquire
> 1900 Spruce Street
> Philadelphia, PA 19103

Only one Ballot may be submitted on account of each Claim. Delivery of a Ballot to Debtors' Counsel by facsimile or electronic means shall not be valid.

## III.    FORM, CONTENT, AND MANNER OF NOTICES

### A.    Content of the Solicitation Package.

The following materials shall constitute the solicitation package (the "Solicitation Package"):

1.  a cover letter describing the contents of the Solicitation Package and urging holders of Claims in the Voting Classes to vote to accept the Plan (the "Cover Letter");

2.  the *Notice of Hearing to Consider Confirmation of the Plan of Reorganization for Roosevelt Inn, LLC and Roosevelt Motor Inn, Inc.*, substantially in the form annexed to the Solicitation Procedures Order as **Exhibit 3** (the "Confirmation Hearing Notice");

3.  the Disclosure Statement with all exhibits, including the Plan and all exhibits (to the extent such exhibits are filed with the Bankruptcy Court before the Solicitation Date);

4.  the Solicitation Procedures Order, including the Solicitation Procedures and all exhibits;

5.  an appropriate form of Ballot with return instructions and a return envelope; and

6.  any other materials ordered by the Bankruptcy Court to be included as part of the Solicitation Package.

**B.**      **Distribution of the Solicitation Package.**

This Section explains the manner in which Solicitation Packages shall be distributed to holders of Claims entitled to vote on the Plan and other interested parties.

The Cover Letter shall include the Plan, the Disclosure Statement, the Solicitation Procedures Order and exhibits, including a ballot or ballots, as applicable.

1.      *Direct Tort Claims*. The Debtors shall cause a Solicitation Package to be served on holders of Direct Tort Claims and their known counsel in the manner described in Section IV below.

2.      *Claims in the Other Voting Classes*. The Debtors shall cause a Solicitation Package to be served on each holder of a Claim in the Voting Classes other than Direct Tort Claims who is entitled to vote by the Solicitation Date.

3.      *Other Parties*. The Debtors shall cause a Solicitation Package (without a Ballot) to be served for informational purposes on (a) the Office of the United States Trustee for the Eastern District of Pennsylvania, (b) the Securities and Exchange Commission, and (c) each party that has requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 by the Solicitation Date.

4.      *Exception for Undeliverables*. Notwithstanding any provision to the contrary herein, neither the Debtors nor Debtors' Counsel shall be required to distribute a Solicitation Package to any Person or Entity as to whom the notice of the Solicitation Procedures Motion or other mailed notice in the Chapter 11 Cases was returned as undeliverable by the postal service, unless Debtors' Counsel is provided with an accurate address for such Person or Entity before the Solicitation Date.

5.      *Avoidance of Duplication.* The Debtors shall make reasonable efforts to ensure that any holder of a Claim that has filed duplicative Claims and/or Claims that are amended and superseded by a later filed Claim against a Debtor (whether against the same or both Debtors) that are classified under the Plan in the same Voting Class receives no more than one Solicitation Package (and, therefore, one Ballot) on account of such Claim and with respect to that Class. If the Debtors timely receive more than one Ballot from or on behalf of the holder of a single Direct Tort Claim, the effective vote shall be determined in accordance with Section V below.

**C.      Resolution of Disputed Claims for Voting Purposes; Resolution Event.**

1.      Absent further order of the Bankruptcy Court, the holder of a Claim in a Voting Class that is the subject of a pending "reclassify" or "reduce and allow" objection only to reclassify or reduce the amount of such Claim shall be entitled to vote such Claim in accordance with the proposed reclassification or in the reduced amount (as applicable) contained in such objection.

2.      If a Claim in a Voting Class is subject to an objection other than a "reclassify" or "reduce and allow" objection that is filed with the Bankruptcy Court after the Solicitation Date, the applicable Claim shall be deemed temporarily allowed solely for voting purposes to the extent otherwise allowed for voting purposes in accordance with these Solicitation Procedures, without further action by the Debtors or the holder of such Claim and without further order of the Bankruptcy Court, unless the Debtors and claimant agree to other treatment for voting purposes or the Bankruptcy Court orders otherwise.

3.      If the holder of any Disputed Claim seeks to challenge the disallowance or estimation of its Claim for voting purposes, such holder must file with the Bankruptcy Court a motion for an order, pursuant to Bankruptcy Rule 3018(a), temporarily allowing such claim for purposes of voting to accept or reject the Plan (a "Rule 3018(a) Motion").  Any Rule 3018(a) Motion shall be filed with the Bankruptcy Court and served on the Debtors on or before [●], 2023. If a holder of a Disputed Claim files a timely Rule 3018(a) Motion, such holder's Ballot shall not be counted unless a Resolution Event occurs with respect to such Disputed Claim prior to [●], **2023** (the "Voting Resolution Event Deadline").

4.      A "Resolution Event" means, with respect to a Disputed Claim that is the subject of an objection other than a "reclassify" or "reduce and allow" objection, the occurrence of one or more of the following events on or before the Voting Resolution Event Deadline:

a.      An order of the Bankruptcy Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

b.      entry of an order of the Bankruptcy Court, after notice and a hearing, granting a Rule 3018(a) Motion and temporarily allowing such Claim for voting purposes in accordance with Section III.C.4 above;

c.      execution of a stipulation or other agreement between the holder of a Disputed Claim and the Debtors (a) resolving the objection and allowing such Claim for voting purposes in an agreed-upon amount or (b) otherwise fixing an amount of the Claim for voting purposes; or

d.      the pending objection is voluntarily withdrawn by the objecting party.

4

5. No later than two (2) Business Days following the occurrence of a Resolution Event, the Debtors shall serve, via email, overnight mail, or personal delivery, a Solicitation Package to the relevant holder to the extent such holder has not already received a Solicitation Package containing a Ballot.

**D.      Non-Voting Status Notice for Unclassified and Unimpaired Classes of Claims.**

Certain holders of Claims that are not classified under Article III of the Plan in accordance with section 1123(a)(1) of the Bankruptcy Code or who are not entitled to vote because they are presumed to accept the Plan under section 1126(f) of the Bankruptcy Code shall receive only the *Notice of Non-Voting Status to Holders of Unclassified Claims and Holders of Unimpaired Claims Conclusively Presumed to Accept the Plan of Reorganization for Roosevelt Inn, LLC and Roosevelt Motor Inn, Inc.*, substantially in the form annexed to the Solicitation Procedures Order as **Exhibit 4**. The notice shall instruct these holders as to how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots).

## IV.      SPECIAL PROCEDURES RELATING TO TORT CLAIMS

The procedures set forth in this Section IV only apply to holders of Direct Tort Claims and Indirect Tort Related Claims, unless otherwise expressly indicated.

**A.      To Holders of Direct Tort Claims:**

1. Debtors shall cause a Solicitation Package, including a Class 5 (Direct Tort Claim) Ballot substantially in the form annexed to the Solicitation Procedures Order as **Exhibit 2-4**, to be served upon each known Direct Tort Claimant (and their known counsel as set forth in Section IV.A.2 below) who is entitled to vote to accept or reject the Plan and whose Claim has not been withdrawn or disallowed or expunged by an order of the Bankruptcy Court on or before the Solicitation Date.

2. The Solicitation Package to be served upon known counsel for each Direct Tort Claimant shall include a *modified* Class 5 (Direct Tort Claim) Ballot (the "POA Ballot"), substantially in the form annexed to the Solicitation Procedures Order as **Exhibit 2-4A**, which subject to compliance with these Solicitation Procedures including, Section IV.B below, may be completed and returned by an authorized Firm (as defined below) on behalf of his or her Tort Claim client.

**B.      To Attorneys Representing Holders of Direct Tort Claims:**

1. Attorneys representing holders of Direct Tort Claims (each, a "Firm"), may complete and submit a POA Ballot to Debtors' Counsel on behalf of each Tort Claim client, but only to the extent such Firm has the requisite authority to do so under applicable law, completes the certification of such authority on the POA Ballot, and delivers concurrently with each POA Ballot a valid power of attorney from each Tort Claim client that provided the Firm with the authorization to act on behalf of such Tort Claim client to vote to accept or reject the Plan (in addition to the other elections under the Ballot).

2.      In addition to the foregoing certification on the POA Ballot, you must also file a verified statement with the Bankruptcy Court pursuant to Bankruptcy Rule 2019 prior to or concurrently with the submission of the POA Ballot on behalf of a Direct Tort Claim clients containing the following (each, a "Rule 2019 Statement"): (i) a list of the names, addresses, and claim numbers of all Tort Claim Clients that the such Firm represents; (ii) an exemplar of the engagement letter used to engage the Tort Claim Clients. The Firm may redact pricing, compensation amounts or percentages, and personal identifying information of holders of Direct Tort Claims.[2] You must submit a copy of the Rule 2019 Statement with unredacted personal identifying information with your Master Ballot and Exhibit submission to Debtors' Counsel.

3.      The POA Ballot contains inter alia a certification section, to be completed by each Firm preparing and signing a POA Ballot, if applicable, pursuant to which such Firm shall certify that he or she has the authority under applicable law to vote to accept or reject the Plan on behalf of the Tort Claim client identified in the POA Ballot.

4.      If the attorney is unable to make such certification on behalf of his or her Tort Claim client, the attorney may **not** cast a vote on behalf of such Tort Claim client and **must** timely advise Debtors' Counsel, that said Firm will not be submitting a POA Ballot on behalf of his or her Tort Claim client.

**C.      To Holders of Indirect Tort Related Claims:**  Debtors shall cause a Solicitation Package, including a Class 6 (Indirect Tort Related Claim) Ballot substantially in the form annexed to the Solicitation Procedures Order as **Exhibit 2-5**, to be served upon each known holder of an Indirect Tort Related Claim who is entitled to vote to accept or reject the Plan and whose Claim has not been withdrawn or disallowed or expunged by an order of the Bankruptcy Court on or before the Solicitation Date.

**D.      Calculation of Voting Amount with Respect to Direct and Indirect Tort Related Claims.**[3]

1.      Each holder of a Direct Tort Claim who is entitled to vote shall have a single vote in the amount, for voting purposes only, of $1.00 in the aggregate per claimant. The temporary allowance of Direct Tort Claims in the amount of $1.00 is solely for voting purposes, and shall not be binding upon the holder, the Debtors, the Settlement Trust, or any other party for any purpose other than voting on the Plan.

2.      Each holder of an Indirect Tort Related Claim, which includes, without limitation, any Indirect Tort Related Claim for contribution, indemnity, reimbursement, or subrogation, who is entitled to vote shall have a single vote in the amount, for voting purposes only, of $1.00 in the aggregate per claimant. The temporary allowance of any Indirect Tort Related Claim

---

[2] For the avoidance of doubt, personal identifying information related to holders of Direct Tort Claims on such Rule 2019 Statement shall be filed under seal with the Bankruptcy Court in accordance with the Order to Seal; provided that copies of such information shall be made available to "Permitted Parties" as defined in the Order to Seal.

[3] For the avoidance of doubt, in the event of a conflict between this Section IV.D describing the calculation of votes for Direct Tort Claims and Indirect Tort Related Claim and any other section of these Solicitation Procedures, including Section V.B, the terms of this Section IV.D shall control.

in the amount of $1.00 is solely for voting purposes, and shall not be binding upon the holder, the Debtors, the Settlement Trust or any other party for any purpose other than voting on the Plan.

### E.        Receipt of Multiple Ballots for a Single Direct Tort Claim.

If notwithstanding their reasonable efforts to ensure that only one Solicitation Package (including one Ballot) is distributed on account of each holder of a Direct Tort Claim who has filed duplicative Tort Claims and/or on account of Tort Claims that have been amended and superseded by later filed Tort Claims, Debtors' Counsel receives more than one Ballot from or on behalf of the holder of a single Direct Tort Claim on or before the Voting Deadline, the effective vote shall be the last Ballot actually received by Debtors' Counsel before the Voting Deadline that satisfies the voting and tabulation procedures specified in Section V, unless otherwise agreed to by the Debtors in their sole discretion; *provided, however*, that to the extent the Debtors receive a Ballot from a holder of a Direct Tort Claim entitled to vote and a Ballot from an attorney purporting to represent such holder, the Ballot received from the holder of the Direct Tort Claim entitled to vote shall be counted; *provided further*, that if inconsistent votes are received by Debtors' Counsel on the same day for a single Direct Tort Claim, such votes shall not be counted. A summary of how Ballots will be counted for a single Direct Tort Claim is as follows:

- if a POA Ballot is received from a Firm on behalf of a Direct Tort Claim, such Ballot will be counted, unless a Class 5 Ballot is also received directly from the holder of such Direct Tort Claim, in which case the holder's Class 5 Ballot shall be counted;

- if no POA Ballot is received from a Firm, the last timely received Class 5 Ballot submitted by the holder of the Direct Tort Claim shall be counted, and if Debtors' Counsel receive a Class 5 Ballot from such holder and from an attorney purporting to represent such holder, the Class 5 Ballot received from such holder shall be counted;

- if multiple inconsistent votes are received by Debtors' Counsel on the same day for a single Direct Tort Claim, such votes shall not be counted.

## V.    VOTING AND TABULATION PROCEDURES

### A.        Holders of Claims Entitled to Vote.

Only the following holders of Claims in the Voting Classes shall be entitled to vote with respect to such Claims (in addition to the special procedures set forth in **Section IV** above for holders of Direct and holders of Indirect Tort Related Claims):

1.        Holders of Claims who, on or before the Voting Record Date, have timely filed a Proof of Claim that (a) has not been expunged, disallowed, disqualified, withdrawn, or superseded prior to the Voting Record Date, and (b) is not the subject of a pending objection, other than a "reclassify" or "reduce and allow" objection, filed with the Bankruptcy Court on or before the Solicitation Date, pending the occurrence of a Resolution Event as provided herein; *provided that* a holder of a Claim that is the subject of a pending objection on a "reclassify" or "reduce and allow"

basis shall receive a Solicitation Package and be entitled to vote such Claim in the reclassified priority or reduced amount contained in such objection absent a further order of the Bankruptcy Court;

2.      Holders of Claims that are listed on the Debtors' Schedules; *provided* that Claims that are scheduled as contingent, unliquidated, or disputed (excluding such scheduled disputed, contingent or unliquidated Claims that have been paid or superseded by a timely filed Proof of Claim) shall be allowed to vote only in the amounts set forth in **Sections IV.D** and **V.B** of these Solicitation Procedures;

3.      Holders of Claims whose Claims arise (a) pursuant to an agreement or settlement with the Debtors, as reflected in a document filed with the Bankruptcy Court, (b) in an order entered by the Bankruptcy Court, or (c) in a document executed by the Debtors pursuant to authority granted by the Bankruptcy Court, in each case regardless of whether a Proof of Claim has been filed;

4.      Holders of any Disputed Claim that has been temporarily allowed to vote on the Plan pursuant to Bankruptcy Rule 3018 in accordance with **Section III.C.4** above; and

5.      The assignee of any Claim (other than a Tort Claim) that was transferred on or before the Voting Record Date by any Entity described in subparagraphs (1) through (4) above; *provided* that such transfer or assignment has been fully effectuated pursuant to the procedures set forth in Bankruptcy Rule 3001(e) and such transfer is reflected on the Claims Register as of the Voting Record Date.

**B.      Establishing Claim Amounts for Voting Purposes.**

1.      If a Proof of Claim has been amended, the last-filed Proof of Claim as of the Voting Record Date shall be subject to these Solicitation Procedures and shall supersede any earlier filed Proof of Claim for voting purposes. Any earlier-filed Proof of Claim shall be disallowed for voting purposes, regardless of whether the Debtors have objected to such earlier filed Claim.

2.      Duplicate Claims within the same Voting Class shall be deemed temporarily allowed for voting purposes only in an amount equal to one such Claim and not in an amount equal to the aggregate of such Claims.

3.      Claims filed for $0.00 are not entitled to vote on the Plan.

4.      *Class 1 Secured Claims*. The Claim amount of Class 1 Claims shall be established based on the amount of the applicable positions held by holders of Class 1 Claims as of the Voting Record Date, as evidenced by (a) the Debtors' applicable books and records and (b) the claims register maintained in these Chapter 11 Cases.

5.      *Class 3 General Unsecured Claims*. The Claim amount of Class 3 Claims shall be established based on the amount of the applicable positions held by holders of Class 3

Claims as of the Voting Record Date, as evidenced by (a) the Debtors' applicable books and records and (b) the claims register maintained in these Chapter 11 Cases.

6.     *Class 4 Non-Tort Litigation Claims*. The Claim amount of Class 4 Claims shall be established based on the amount of the applicable positions held by holders of Class 4 Claims as of the Voting Record Date, as evidenced by (a) the Debtors' applicable books and records and (b) the claims register maintained in these Chapter 11 Cases. For the avoidance of doubt, all Non-Tort Litigation Claims in Class 4, including any insured Non-Tort Litigation Claim, which have not been fixed pursuant to a judgment or settlement entered prior to the Voting Record Date, shall be classified as a contingent and unliquidated Claim in accordance with this Section V.B and shall have a single vote in the amount, for voting purposes only, of $1.00 in aggregate per claimant. Such temporary allowance is solely for voting purposes, and will not be binding on the holder, the Debtors, or any other party for any purpose other than voting on the Plan.

7.     *Claim Amounts for Voting Purposes*. The Claim amount established herein shall control for voting purposes only and shall not constitute the Allowed amount of any Claim under the terms of the Plan. Moreover, any amounts filled in on Ballots by the Debtors through Debtors' Counsel, as applicable, are not binding for purposes of allowance and distribution. In tabulating votes, the following hierarchy shall be used to determine the amount of the Claim associated with each claimant's vote:

a.     the Claim amount (i) settled or agreed upon by the Debtors, as memorialized in a document filed with the Bankruptcy Court, (ii) set forth in an order of the Bankruptcy Court or (iii) set forth in a document executed by the Debtors pursuant to authority granted by the Bankruptcy Court;

b.     if subsection (a) does not apply, the Claim amount allowed (temporarily or otherwise) pursuant to a Resolution Event under Section III.C of these Solicitation Procedures;

c.     if none of subsections (a)-(b) apply, the Claim amount asserted in a Proof of Claim that has been timely filed (or deemed timely filed by the Bankruptcy Court under applicable law) and filed in good faith (in the reasonable discretion of the Debtors), except for any amounts that have been paid or asserted on account of any interest accrued after the Petition Date; *provided*, that any Ballot submitted by a holder of a Claim who timely filed a Proof of Claim in respect of (i) a contingent Claim, whether liquidated or unliquidated, or a Claim in a wholly-unliquidated, unknown or undetermined amount (based on a reasonable review by the Debtors) that is not the subject of an objection shall count toward satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code and shall count as a Ballot for a Claim in the amount of $1.00 solely for the purposes of satisfying the amount requirement of section 1126(c) of the Bankruptcy Code, and (ii) with respect to a non-contingent, partially liquidated and partially unliquidated Claim, such Claim shall be allowed for voting purposes only in the liquidated amount; *provided, further*, that if the Debtors determine in their reasonable discretion that the Proof of Claim contains any amount that was not asserted

9

in good faith (a "Contested Claim"), the Claim amount listed in the Schedules, if any, shall be used for voting purposes only and to resolve such disagreement, such holder shall be deemed to consent to the amendment of its Proof of Claim to the Claim amount listed in the Schedules, if any, for voting purposes only and no further action shall be required by the Debtors or holder; *provided, further*, that if the Debtors determine that any Proof of Claim is a Contested Claim (in the Debtors' reasonable discretion), and the Claim is not listed in the Schedules, the Debtors shall contact the holder of the Contested Claim to consensually agree upon a Claim amount for voting purposes only, which agreed amount shall not require notice or consent of the Bankruptcy Court; *provided, further*, that if no agreement is reached regarding the amount of the Contested Claim for voting purposes only, the Debtors may file an objection to the Contested Claim and treat such Contested Claim as a Disputed Claim in accordance with **Section III.C** of these Solicitation Procedures;

d.    if none of subsections (a)-(c) apply (or in the case of a Contested Claim as specified in subsection (c)), the Claim amount listed in the Schedules (to the extent such Claim has not been superseded by a timely filed Proof of Claim); *provided* that such Claim is not scheduled as contingent, disputed, or unliquidated and has not been paid; *provided, further*, that a Claim that is listed in the Schedules as contingent, unliquidated, or disputed and for which a Proof of Claim was not (i) filed by the applicable Bar Date or (ii) deemed timely filed by an order of the Bankruptcy Court prior to the Voting Deadline is not entitled to vote; and

e.    if none of subsections (a)-(d) apply, such Claim shall be disallowed for voting purposes

8.    *Stipulation.* The Debtors are authorized to enter into stipulations or other agreements with the holder of any Claim or Interest agreeing to the amount of a Claim or Interest for voting purposes.

### C.    Voting and Ballot Tabulation Procedures.

The following voting procedures and standard assumptions shall be used in tabulating Ballots, along with the procedures described in the Ballots, subject to the Debtors' right to waive any of the below specified requirements (in the Debtors' sole discretion and without further order from or notice to the Bankruptcy Court) for completion and submission of Ballots so long as such requirement is not otherwise required by the Bankruptcy Code, Bankruptcy Rules or Local Rules.[4]

1.    Debtors' Counsel shall date-stamp all Ballots when received. Ballots received on the day of the Voting Deadline shall be date and time-stamped.

---

[4] The summary provided herein is for illustrative purposes only and is subject to the procedures described in the Ballots in all respects. In the event of any inconsistency between the summary of voting and tabulation procedures as set forth herein and the Ballots, the Ballots will control.

2.      Except as otherwise provided in these Solicitation Procedures, unless a Ballot is received by Debtors' Counsel on or prior to the Voting Deadline (as the same may be extended by the Debtors in their sole discretion), the Debtors shall reject such Ballot as invalid and, therefore, shall not count it in connection with confirmation of the Plan.

3.      If a Claim has been estimated for voting purposes in accordance with **Section III.C.4** above or otherwise allowed for voting purposes by order of the Bankruptcy Court, such Claim is temporarily allowed for voting purposes in the amount so estimated or allowed in such order.

4.      For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a Voting Class shall be aggregated as if such creditor held one Claim in the Voting Class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan.

5.      The Debtors shall make reasonable efforts to provide any holder of a Claim who has filed or purchased duplicate Claims within the same Class with only one Solicitation Package and one Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claims; *provided* that if the Debtors timely receive more than one Ballot from or on behalf of the holder of a single Direct Tort Claim, the effective vote shall be determined in accordance with **Section IV.E** above, and if the Debtors timely receive more than one Ballot from or on behalf of the holder of a single Claim other than a Direct Tort Claim (including an Indirect Tort Related Claim), the effective vote shall be the Ballot last received by Debtors' Counsel that satisfies the voting and tabulation procedures specified in this **Section V.D**.  If more than one Ballot voting the same Claim is received prior to the Voting Deadline, the latest received, properly executed Ballot received by Debtors' Counsel before the Voting Deadline will supersede and revoke any prior Ballot.

6.      If the holder of a Claim submits inconsistent Ballots received by Debtors' Counsel on the same day, such Ballots shall not be counted.

7.      Delivery of a defective or irregular Ballot shall not be deemed to have been made until such defect or irregularity has been cured or waived by the Debtors. Any waiver by the Debtors of defects or irregularities in any Ballot shall be detailed in the Voting Report filed by Debtors' Counsel.

8.      After the Voting Deadline, no Ballot may be withdrawn or modified without the prior written consent of the Debtors.

9.      The holder of a Claim must complete each section of the Ballot, including, without limitation, certifying the amount of its Claim, voting to accept or reject the Plan, completing the requested identification information, and signing and dating the Ballot.

10.     The holder of a Claim must vote all of its Claims either to accept or reject the Plan.  Accordingly, a Ballot that partially rejects and partially accepts the Plan may not be counted.

To the extent possible, the Debtors shall distribute to each holder of a Claim in the Voting Classes a single Ballot on account of the Claim held by such holder in the Voting Classes.

11.     The Debtors expressly reserve the right to amend the terms of the Plan (subject to compliance with section 1127 of the Bankruptcy Code). If the Debtors make material changes to the terms of the Plan, the Debtors shall disseminate additional solicitation materials and extend the solicitation period, in each case to the extent required by law or further order of the Bankruptcy Court.

12.     If the party executing the Ballot is signing as a trustee, executor, guardian, attorney-in-fact, officer of a corporation, or acting in fiduciary or representative capacity, such party must indicate such capacity when signing and, if required or requested by the Debtors, or the Bankruptcy Court, must provide evidence satisfactory to the requesting party to act on behalf of the holder of the Claim.

13.     Subject to any contrary order of the Bankruptcy Court, the Debtors further reserve the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot.

14.     Neither the Debtors, nor any other person or entity, shall be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor shall any of them incur any liabilities for failure to provide such notification.

15.     Debtors' Counsel, in its discretion, may contact entities entitled to vote to cure any defects in the Ballot; *provided, however,* that Debtors' Counsel is not obligated to do so.

16.     If no Ballot is submitted in a Class, then such Class shall be deemed to have voted to accept the Plan.

17.     A voter may withdraw a valid Ballot by delivering a written notice of withdrawal to Debtors' Counsel before the Voting Deadline – the withdrawal must be signed by the party who signed the Ballot, and the Debtors reserve the right to contest any withdrawals.

18.     If multiple Ballots are timely received from or on behalf of a holder of a single Claim other than a Direct Tort Claim (including any Indirect Tort Related Claim), the effective vote shall be the last properly executed Ballot timely received by Debtors' Counsel that satisfies the voting and tabulation procedures specified in this **Section V.D.** and shall supersede any revoke any prior Ballot received, provided that if such holder submits inconsistent Ballots received by Debtors' Counsel on the same day, such Ballots shall not be counted; provided that if the Debtors timely receive more than one Ballot from or on behalf of the holder of a single Direct Tort Claim, the effective vote shall be determined in accordance with **Section IV.E** above.

19.     If multiple Ballots are received directly from the holder of a Claim and from a purported attorney or agent for such holder prior to the Voting Deadline, the Ballot received directly from the holder shall be the Ballot that is counted. In addition, the following Ballots may not be counted in determining the acceptance or rejection of the Plan:

a.  any Ballot submitted by a person who does not hold, or represent a person that holds, a Claim in the applicable Voting Class as of the Voting Record Date;

b.  any Ballot received after the Voting Deadline unless the Debtors have granted an extension in writing (including e-mail) with respect to such Ballot. The holder of a Claim may choose the method of delivery of its Ballot to Debtors' Counsel at its own risk. Delivery of the Ballot shall be deemed made only when the original properly executed Ballot is actually received by Debtors' Counsel;

c.  any Ballot delivered by facsimile transmission, electronic mail, or any other means not specifically approved herein (unless a written exception has been granted by the Debtors);

d.  any Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

e.  any Ballot that is submitted in an inappropriate form that is not the appropriate Ballot for such Claim;

f.  any Ballot sent to a person other than Debtors' Counsel;

g.  any Ballot that is unsigned; or

h.  a Ballot without a vote on the Plan or in which the claimant has voted to both accept and reject the Plan.

## VI.    AMENDMENTS TO THE PLAN AND SOLICITATION PROCEDURES

The Debtors reserve the right to make non-substantive or immaterial changes to the Disclosure Statement, the Solicitation Procedures Order, the Plan, the Ballots, the Confirmation Hearing Notice, and related documents without further order of the Bankruptcy Court, including, without limitation, changes to correct typographical and grammatical errors, and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Package before their distribution.

\*        \*        \*        \*        \*

**Exhibit 2-1**

Class 1 Ballot
Secured Claims

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| ROOSEVELT INN, LLC and | : | Bky. No. 21-11697(AMC) |
| ROOSEVELT MOTOR INN, INC. | : | |
| | : | JOINTLYADMINISTERED |
| Debtors | : | |
| | : | |

**BALLOT FOR CLASS 1 (SECURED CLAIMS)**

---

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING YOUR BALLOT CAREFULLY BEFORE COMPLETING THIS BALLOT.

<u>ACCESS TO SOLICITATION MATERIALS</u>:

YOU HAVE RECEIVED A PAPER FORMAT OF THE PLAN, THE DISCLOSURE STATEMENT, THE BALLOT, AND THE SOLICITATION PROCEDURES ORDER WITH THIS SOLICITATION PACKAGE. IF YOU NEED TO OBTAIN ADDITIONAL SOLICITATION PACKAGES, PLEASE CONTACT DEBTORS' COUNSEL BY (A) CALLING KARALIS PC AT (215) 546-4500, (B) E-MAILING JHYSLEY@KARALISLAW.COM, OR (C) WRITING TO ARIS J. KARALIS, ESQUIRE, KARALIS PC, 1900 SPRUCE STREET, PHILADELPHIA, PA 19103.

THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE <u>ACTUALLY</u> <u>RECEIVED</u> BY DEBTORS' COUNSEL BY 4:00 P.M. (EASTERN TIME) ON _____ (THE "<u>VOTING DEADLINE</u>").

---

IF YOU VOTE TO ACCEPT OR REJECT THE PLAN, YOU WILL BE RELEASING THE RELEASED PARTIES FROM ANY AND ALL CLAIMS/CAUSES OF ACTION TO THE EXTENT PROVIDED IN <u>ARTICLE X.J.3</u> OF THE PLAN UNLESS YOU "OPT-OUT" OF SUCH RELEASES. YOU MAY "OPT-OUT" OF SUCH RELEASES AND YOU MUST INDICATE SUCH "OPT-OUT" IN THE BALLOT.

Pursuant to this ballot (this "Ballot"), the above-captioned debtors and debtors-in-possession (together, the "Debtors") are soliciting votes from holders of Class 1 Claims (Secured Claims) on the *Plan of Reorganization for Roosevelt Inn, LLC and Roosevelt Motor Inn, Inc.* dated December 16, 2022 [D.I. 353] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan"), which is described in greater detail in that certain disclosure statement regarding the Plan, filed on December 16, 2022 [D.I. 354] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement"). Capitalized terms used but not

otherwise defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable.  On [•] , the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court") entered an order [D.I. [•]] (the "Solicitation Procedures Order") approving the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code and the procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures").  Bankruptcy Court approval of the Disclosure Statement does not indicate the approval of the Plan by the Bankruptcy Court.

You are receiving this Ballot because you are a holder of a Secured Claim in Class 1 against the Debtors as of the Voting Record Date.  **Accordingly, you have a right to vote to accept or reject the Plan.**

Your rights are described in the Disclosure Statement for the Plan and the Solicitation Procedures Order.  **This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Ballot in error, or if you believe that you received the wrong Ballot, please contact the Debtors' Counsel immediately via the contact information set forth above.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.**  To have your vote counted, you must complete, sign, and return this Ballot to Debtors' Counsel by the Voting Deadline.

If you vote to accept or reject the Plan, you will be deemed to provide the releases in **Article X.J.3** of the Plan and as set forth below unless you opt out of such releases.  You may check the box below to opt out of the releases in **Article X.J.3** of the Plan.  Please be advised that the Plan also contains injunction and exculpation provisions, certain of which are set forth below.  If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on you whether or not you elect to opt out of the releases in **Article X.J.3** of the Plan by this Ballot.  For a full description of these provisions, see **Article IV.N** of the Disclosure Statement and **Article X** of the Plan, which sets forth the terms of each of these provisions.

**You should carefully review the Plan and Disclosure Statement before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.  If you hold Claims in more than one Class, you will receive a Ballot for each Class in which you are entitled to vote.**

*[Remainder of Page Intentionally Left Blank]*

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

**PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW.  PLEASE FILL IN ALL
OF THE INFORMATION REQUESTED UNDER ITEM 4.  IF THIS BALLOT HAS
NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY
NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1.**        **Amount of Claim.**

For purposes of voting to accept or reject the Plan, the undersigned hereby certifies that as of the Voting Record Date, the undersigned was a holder (or authorized signatory of such holder) of a Secured Claim in the following aggregate unpaid principal amount, without regard to any accrued by unpaid interest

---

**Debtor:** _____

**Claim(s) Amount:** _____

---

**Item 2.**        **Vote on the Plan**

Please vote to either accept or to reject the Plan with respect to your Claim set forth in Item 1 (please check one). Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

Prior to voting on the Plan, please note the following:

If you vote to accept or reject the Plan, you shall be deemed to have consented to the release set forth in **Article X.J.3** of the Plan unless you opt of the release by checking the box in Item 3 below.

If you abstain from voting, you shall not be deemed to have consented to the release provisions set forth in **Article X.J.3** of the Plan.  The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions in **Article X** of the Plan.

---

**Check _only_ one box:**

☐        **ACCEPT (I.E., VOTE IN FAVOR OF)** the Plan

☐        **REJECT (I.E., VOTE AGAINST)** the Plan

---

3

**Item 3.**      **Optional Release Election.**

Unless a holder of a Class 1 Claim who votes to accept or reject the Plan opts out of the Releases by holders of Claims set forth below, such holder shall be deemed to have consented to the releases contained in **Article X.J.3** of the Plan, which provides as follows:

**Article X.J.3 of the Plan – Releases by Holders of Claims.**

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties[1] to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all Releasing Claim Holders[2] shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, or any related agreements, instruments,

---

[1]  "Released Parties" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized RI; (c) the Reorganized RMI; (d) UVFS Management Company, LLC; (e) Yagna Patel; (f) the Equity Security Holders; (g) any Settling Insurance Company, and (h) all of such Persons' Representative, provided, however, that the definition of "Released Parties" shall in all instances be subject to Article X.J of the Plan.

[2]  "Releasing Claim Holder" means, collectively, (a) all holders of Claims that vote to accept the Plan and do not opt out of the releases set forth in Article X.J.3 of the Plan; (b) all holders of Claims that are presumed to accept the Plan, except for holders of such Claims that file a timely objection to the releases set forth in Article X.J.3 of the Plan; (c) all holders of Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases set forth in Article X.J.3 of the Plan; and (d) all of predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and all such Persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such. No holder of a Claim in a Class that is Impaired under the Plan will be deemed a "Releasing Claim Holder" to the extent such holder abstained from voting.

4

and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in **Article X.J.3** of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Tort Litigation Claim to recover on account of such Allowed Claim in accordance with **Article II.B.4** of the Plan. Notwithstanding the foregoing or anything to the contrary herein, with respect to holders of Allowed General Unsecured Claims or Allowed Non-Tort Litigation Claims, nothing in the Plan or the release set forth in **Article X.J.3** of the Plan shall, or shall be construed to, release any such claims or Causes of Action against any Insurance Company (subject to **Article IV.D.3** of the Plan).

If you voted to accept or reject the Plan in Item 3 above, check this box if you elect not to grant the release contained in **Article X.J.3** of the Plan.

The undersigned, as a holder of (or representative of a holder of) a Class 1 Claim, elects to:

☐    **Opt out of the third party release in Article X.J.3 of the Plan.**

**Certain other Releases, Injunction and Exculpation Provisions Contained in the Plan**

**Article X.J.1 of the Plan - Releases by the Debtors and the Estates.**

**Releases by the Debtors and the Estates of the Released Parties.** As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance

5

taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in **Article X.J.1** of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

Releases by the Debtors and the Estates of Avoidance Actions. As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the assistance of the Equity Security Holders in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized Debtors, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General Unsecured Claims, Non-Tort Litigation Claims, and Interests including, the Equity Security Holders of and from any and all Avoidance Actions.

## Article X.K of the Plan – Exculpation.

From and after the Effective Date, none of the Exculpated Parties[3] shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or after the Petition Date up to and including the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith or willful misconduct). In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence.

---

[3]    "Exculpated Parties" means, collectively, the following Persons: (a) the Debtors; (b) Reorganized Debtors; and (c) all of such Persons' current officers and directors, employees, agents, attorneys, financial advisors, accountants, consultants, representatives, and other professionals.

**Article X.L. of the Plan – Injunctions Related to Releases and Exculpation.**

**Injunction Related to Releases.**  As of the Effective Date, all holders of Claims that are the subject of Article X.J of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under Article X.E of the Plan or released under Article X.J of the Plan; provided, however, that the injunctions set forth in Article X.L.1 of the Plan shall not, and shall not be construed to, enjoin any holder of a Claim that is only the subject of Article X.J of the Plan from taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Injunction Related to Exculpation.**  As of the Effective Date, all holders of Claims that are the subject of Article X.K of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under Article X.E of the Plan or exculpated under Article K of the Plan; provided, however, that the injunctions set forth in Article X.L.2 of the Plan shall not, and shall not be construed to, enjoin any Person that is the subject of Article X.K of the Plan from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Item 4.**          **Certifications, Acknowledgment, Signature and Date.**

By signing this Ballot, the holder of the Claim set forth in Item 1 (or authorized signatory of such holder acknowledges receipt of the Disclosure Statement, the Plan, and the other applicable solicitation materials, and certifies that:

(i)      it has the power and authority to vote to accept or reject the Plan,

(ii)     it was the holder (or is entitled to vote on behalf of such holder) of the Class 1 Claim described in Item 1 as of the Voting Record Date,

(iii)    it has not submitted any other Ballots for other Class 1 Claims, or if it has submitted any other Ballots with respect to such Claims, then any such Ballots dated earlier in time are hereby revoked,

(iv)     it acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of such Entity as a holder of a Class 1 Claim,

(v)      it understands and, if accepting the Plan, agrees with the treatment provided for its Claim(s) under the Plan,

(vi)     it understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by Debtors' Counsel before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by Debtors' Counsel, and

(vii)    all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustee in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that any otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

| | |
|---|---|
| Print or Type Name of Claimant | _____ |
| Last Four Digits of Social Security Number of Claimant: | _____ |
| Birthdate of Claimant (MM/DD/YY): | _____ |
| Signature: | _____ |
| Name of Signatory (if different than Claimant: | _____ |
| If by Authorized Agent, Title of Agent: | _____ |
| Street Address: | _____ |
| City, State, Zip Code: | _____ |
| Telephone Number: | _____ |
| Email Address: | _____ |
| Date Completed: | _____ |

**IF THIS BALLOT IS NOT RECEIVED BY THE DEBTORS' COUNSEL
ON OR BEFORE _____, 2023 AT 4:00 P.M. (EASTERN TIME)
YOUR VOTE WILL NOT BE COUNTED.**

**Ballots must be delivered to Debtors' Counsel at the appropriate address listed below, or in the enclosed envelope, as applicable.**

9

**By standard mail, or overnight mail or personal delivery:**

**Aris J. Karalis, Esquire**
**Karalis PC**
**1900 Spruce Street**
**Philadelphia, PA 19103**

Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.

If you have questions about this Ballot, or if you did not receive access to a copy of the Plan or any related materials, please contact Debtors' Counsel by (a) calling Karalis PC at (215) 546-4500, (b) emailing jhysley@karalislaw.com, or (c) writing to Aris J. Karalis, Esquire, Karalis PC, 1900 Spruce Street, Philadelphia, PA 19103.

**DEBTORS' COUNSEL IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Any admission of Claims for purposes of voting on the Plan is not an admission of liability on the part of the Debtors or any other party for payment purposes

10

## INSTRUCTIONS FOR COMPLETING YOUR BALLOT

To properly complete this Ballot, you must follow the procedures described below, which explain each of the items contained in your Ballot. If you have questions, please contact the Debtors' Counsel using the contact information provided above.

1. **Ballots must be submitted by Standard Mail, or Overnight Mail or Personal Delivery:**

Submit your complete and signed Ballot by standard mail using the pre-addressed envelope included in the Solicitation Package, or by overnight mail or personal delivery to:

| |
|---|
| Aris J. Karalis, Esquire |
| Karalis PC |
| 1900 Spruce Street |
| Philadelphia, PA 19103 |

**Debtors' Counsel will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2. **To fill out your Ballot, you must complete the following:**

a. **Item 1 (Amount of Claim)**. Make sure that the information contained in Item 1 regarding the principal amount of your Claim you held on the Voting Record Date is correct. **Please note that, except as otherwise set forth in the Disclosure Statement and Solicitation Procedures Order, each contingent Claim, whether liquidated or unliquidated, or a Claim in a wholly-unliquidated, unknown, or undetermined amount that if not the subject of any objection, will be allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance, or any other purpose.**

b. If you hold Claims in more than one class, you may receive more than one Ballot or Solicitation Package, labeled for a different class of Claims. Your vote will be counted in determining acceptance or rejection of the Plan by a particular class of Claims only if you complete, sign, and return the Ballot labeled for such class of Claims in accordance with the instructions on that Ballot.

c. **Item 2 (Vote on the Plan)**. Cast one vote to accept or reject the Plan by checking the appropriate box in Item 2. You must vote the entire amount of your Claim either to accept (*i.e.*, vote in favor of) or reject (*i.e.*, vote against) the Plan and you may not split your vote. Accordingly, any vote within a single Class that attempts partially to accept and partially reject the Plan will not be counted.

d. **Item 3 (Releases)**. Pursuant to Article X of the Plan, the Debtors seek approval of the release provision set forth in Article X.J.3 of the Plan and provided above. Holders of General Unsecured Claims who vote to accept or reject the Plan may opt out of this release by checking the box in Item 3.

**IF THE PLAN BECOMES EFFECTIVE, AS A HOLDER OF A CLASS 1 CLAIM UNDER THE PLAN, IF YOU VOTE TO ACCEPT OR REJECT THE PLAN YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN <u>ARTICLE X.J.3</u> OF THE PLAN, AS SET FORTH ABOVE, UNLESS YOU CHECK THE BOX IN ITEM 3 TO OPT OUT OF THE RELEASES.**

e. <u>**Item 4 (Certifications, Acknowledgement, Signature, and Date)**</u>. Either the claimant, the claimant's personal representative, or the claimant's attorney <u>must</u> sign the Ballot. If the Ballot is not signed, the vote shown on the Ballot will <u>not</u> be counted.

f. Claimants with Social Security Numbers <u>must</u> provide the last four digits of their Social Security Number in Item 4 of the Ballot.

g. The claimant, the claimant's personal representative, or the claimant's attorney, must certify certain information on the Ballot. Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

h. By signing the Ballot, you make the following certifications on information and belief:

(i) I have the power and authority to vote to accept or reject the Plan,

(ii) I was the holder (or am entitled to vote on behalf of such holder) of the Class 1 Claim described in Item 1 as of the Voting Record Date,

(iii) I have not submitted any other Ballots for other Class 1 Secured Claims, or if I have submitted any other Ballots with respect to such Claims, then any such Ballots dated earlier in time are hereby revoked,

(iv) I acknowledge that a vote to accept the Plan constitutes an acceptance of the treatment of such Entity as a holder of a Class 1 Claim,

(v) I understand and, if accepting the Plan, agree with the treatment provided for my Claim(s) under the Plan,

(vi) I understand and acknowledge that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by Debtors' Counsel before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by Debtors' Counsel, and

(vii) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustee in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that any otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

**3. Other Instructions for Completing the Ballots:**

a. The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest or an assertion or admission of a Claim or Interest.

b. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

c. If you submit more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Debtors' Counsel and received by the Debtors' Counsel before the Voting Deadline will supersede and revoke any prior Ballot.

d. If more than one Ballot is received from the holder of a General Unsecured Claim entitled to vote <u>and</u> from an attorney purporting to represent such holder prior to the Voting Deadline, the Ballot received from the holder of the General Unsecured Claim entitled to vote will be counted.

e. To the extent you have received two (2) or more duplicative Ballots on account of the same Claim, please note that each claimant is authorized to submit only one Ballot on account of such Claim.

f. In the event that (a) the Debtors revoke or withdraw the Plan, or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

g. There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

---

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS INCLUDED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPCY COURT.**

---

13

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, DID NOT RECEIVE INSTRUCTIONS REGARDING ACCESSING THE DISCLOSURE STATEMENT OR PLAN, RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT DEBTORS' COUNSEL AT:**

**TELEPHONE:**          **215-546-4500**

**E-MAIL:**               jhysley@karalislaw.com

**ADDRESS:**            **Aris J. Karalis, Esquire**
**Karalis PC**
**1900 Spruce Street**
**Philadelphia, PA 19103**

**Exhibit 2-2**

Class 3 Ballot
General Unsecured Claims

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| ROOSEVELT INN, LLC and | : | Bky. No. 21-11697(AMC) |
| ROOSEVELT MOTOR INN, INC. | : | |
| | : | JOINTLYADMINISTERED |
| Debtors | : | |
| | : | |

**BALLOT FOR CLASS 3 (GENERAL UNSECURED CLAIMS)**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING YOUR BALLOT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**ACCESS TO SOLICITATION MATERIALS:**

**YOU HAVE RECEIVED A PAPER FORMAT OF THE PLAN, THE DISCLOSURE STATEMENT, THE BALLOT, AND THE SOLICITATION PROCEDURES ORDER WITH THIS SOLICITATION PACKAGE. IF YOU NEED TO OBTAIN ADDITIONAL SOLICITATION PACKAGES, PLEASE CONTACT DEBTORS' COUNSEL BY (A) CALLING KARALIS PC AT (215) 546-4500, (B) E-MAILING JHYSLEY@KARALISLAW.COM, OR (C) WRITING TO ARIS J. KARALIS, ESQUIRE, KARALIS PC, 1900 SPRUCE STREET, PHILADELPHIA, PA 19103.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY DEBTORS' COUNSEL BY 4:00 P.M. (EASTERN TIME) ON _____ (THE "VOTING DEADLINE").**

---

**IF YOU VOTE TO ACCEPT OR REJECT THE PLAN, YOU WILL BE RELEASING THE RELEASED PARTIES FROM ANY AND ALL CLAIMS/CAUSES OF ACTION TO THE EXTENT PROVIDED IN ARTICLE X.J.3 OF THE PLAN UNLESS YOU "OPT-OUT" OF SUCH RELEASES. YOU MAY "OPT-OUT" OF SUCH RELEASES AND YOU MUST INDICATE SUCH "OPT-OUT" IN THE BALLOT.**

---

Pursuant to this ballot (this "Ballot"), the above-captioned debtors and debtors-in-possession (together, the "Debtors") are soliciting votes from holders of Class 3 Claims (General Unsecured Claims) on the *Plan of Reorganization for Roosevelt Inn, LLC and Roosevelt Motor Inn, Inc.* dated December 16, 2022 [D.I. 353] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan"), which is described in greater detail in that certain disclosure statement regarding the Plan, filed on December 16, 2022 [D.I. 354] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement"). Capitalized terms used but not

otherwise defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable. On [•], 20__, the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court") entered an order [D.I. [•]] (the "Solicitation Procedures Order") approving the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code and the procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures"). Bankruptcy Court approval of the Disclosure Statement does not indicate the approval of the Plan by the Bankruptcy Court.

You are receiving this Ballot because you are a holder of a General Unsecured Claim in Class 3 against the Debtors as of the Voting Record Date. **Accordingly, you have a right to vote to accept or reject the Plan.**

Your rights are described in the Disclosure Statement for the Plan and the Solicitation Procedures Order. **This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Ballot in error, or if you believe that you received the wrong Ballot, please contact the Debtors' Counsel immediately via the contact information set forth above.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.** To have your vote counted, you must complete, sign, and return this Ballot to Debtors' Counsel by the Voting Deadline.

If you vote to accept or reject the Plan, you will be deemed to provide the releases in **Article X.J.3** of the Plan and as set forth below unless you opt out of such releases. You may check the box below to opt out of the releases in **Article X.J.3** of the Plan. Please be advised that the Plan also contains injunction and exculpation provisions, certain of which are set forth below. If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on you whether or not you elect to opt out of the releases in **Article X.J.3** of the Plan by this Ballot. For a full description of these provisions, see **Article IV.N** of the Disclosure Statement and **Article X** of the Plan, which sets forth the terms of each of these provisions.

**You should carefully review the Plan and Disclosure Statement before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. If you hold Claims in more than one Class, you will receive a Ballot for each Class in which you are entitled to vote.**

*[Remainder of Page Intentionally Left Blank]*

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

> **PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW. PLEASE FILL IN ALL
> OF THE INFORMATION REQUESTED UNDER ITEM 4. IF THIS BALLOT HAS
> NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY
> NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

**Item 1.**          **Amount of Claim.**

For purposes of voting to accept or reject the Plan, the undersigned hereby certifies that as
of the Voting Record Date, the undersigned was a holder (or authorized signatory of such holder)
of a General Unsecured Claim in the following aggregate unpaid principal amount, without regard
to any accrued by unpaid interest

> **Debtor:** _____
>
>
> **Claim(s) Amount:** _____

**Item 2.**          **Vote on the Plan**

Please vote to either accept or to reject the Plan with respect to your Claim set forth in Item
1 (please check one). Any Ballot not marked either to accept or reject the Plan, or marked both to
accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the
Plan.

Prior to voting on the Plan, please note the following:

If you vote to accept or reject the Plan, you shall be deemed to have consented to the release
set forth in **Article X.J.3** of the Plan unless you opt of the release by checking the box in Item 3
below.

If you abstain from voting, you shall not be deemed to have consented to the release
provisions set forth in **Article X.J.3** of the Plan. The Disclosure Statement and the Plan must be
referenced for a complete description of the release, injunction, and exculpation provisions in
**Article X** of the Plan.

> **Check only one box:**
>
> ☐     **ACCEPT (I.E., VOTE IN FAVOR OF)** the Plan
>
> ☐     **REJECT (I.E., VOTE AGAINST)** the Plan

<u>Item 3.</u>        **Optional Release Election.**

Unless a holder of a Class 3 Claim who votes to accept or reject the Plan opts out of the Releases by holders of Claims set forth below, such holder shall be deemed to have consented to the releases contained in <u>Article X.J.3</u> of the Plan, which provides as follows:

<u>Article X.J.3 of the Plan – Releases by Holders of Claims.</u>

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties[1] to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all Releasing Claim Holders[2] shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, or any related agreements, instruments,

---

[1]    "<u>Released Parties</u>" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized RI; (c) the Reorganized RMI; (d) UVFS Management Company, LLC; (e) Yagna Patel; (f) the Equity Security Holders; (g) any Settling Insurance Company, and (h) all of such Persons' Representative, <u>provided, however</u>, that the definition of "Released Parties" shall in all instances be subject to <u>Article X.J</u> of the Plan.

[2]    "<u>Releasing Claim Holder</u>" means, collectively, (a) all holders of Claims that vote to accept the Plan and do not opt out of the releases set forth in <u>Article X.J.3</u> of the Plan; (b) all holders of Claims that are presumed to accept the Plan, except for holders of such Claims that file a timely objection to the releases set forth in <u>Article X.J.3</u> of the Plan; (c) all holders of Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases set forth in <u>Article X.J.3</u> of the Plan; and (d) all of predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and all such Persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such. No holder of a Claim in a Class that is Impaired under the Plan will be deemed a "Releasing Claim Holder" to the extent such holder abstained from voting.

and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in Article X.J.3 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Tort Litigation Claim to recover on account of such Allowed Claim in accordance with Article II.B.4 of the Plan. Notwithstanding the foregoing or anything to the contrary herein, with respect to holders of Allowed General Unsecured Claims or Allowed Non-Tort Litigation Claims, nothing in the Plan or the release set forth in Article X.J.3 of the Plan shall, or shall be construed to, release any such claims or Causes of Action against any Insurance Company (subject to Article IV.D.3 of the Plan).

If you voted to accept or reject the Plan in Item 3 above, check this box if you elect not to grant the release contained in **Article X.J.3** of the Plan.



The undersigned, as a holder of (or representative of a holder of) a Class 3 Claim, elects to:

☐      **Opt out of the third party release in Article X.J.3 of the Plan.**

### Certain other Releases, Injunction and Exculpation Provisions Contained in the Plan

### Article X.J.1 of the Plan - Releases by the Debtors and the Estates.

**Releases by the Debtors and the Estates of the Released Parties.** As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance

taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in <u>Article X.J.1</u> of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

<u>Releases by the Debtors and the Estates of Avoidance Actions</u>. As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the assistance of the Equity Security Holders in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized Debtors, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General Unsecured Claims, Non-Tort Litigation Claims, and Interests including, the Equity Security Holders of and from any and all Avoidance Actions.

## <u>Article X.K of the Plan – Exculpation.</u>

From and after the Effective Date, none of the Exculpated Parties[3] shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or after the Petition Date up to and including the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith or willful misconduct). In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence.

---

[3]    "<u>Exculpated Parties</u>" means, collectively, the following Persons: (a) the Debtors; (b) Reorganized Debtors; and (c) all of such Persons' current officers and directors, employees, agents, attorneys, financial advisors, accountants, consultants, representatives, and other professionals.

**Article X.L. of the Plan – Injunctions Related to Releases and Exculpation.**

**Injunction Related to Releases.** As of the Effective Date, all holders of Claims that are the subject of **Article X.J** of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** of the Plan or released under **Article X.J** of the Plan; *provided, however,* that the injunctions set forth in **Article X.L.1** of the Plan shall not, and shall not be construed to, enjoin any holder of a Claim that is only the subject of **Article X.J** of the Plan from taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Injunction Related to Exculpation.** As of the Effective Date, all holders of Claims that are the subject of **Article X.K** of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** of the Plan or exculpated under **Article K** of the Plan; *provided, however,* that the injunctions set forth in **Article X.L.2** of the Plan shall not, and shall not be construed to, enjoin any Person that is the subject of **Article X.K** of the Plan from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Item 4.**        **Certifications, Acknowledgment, Signature and Date.**

By signing this Ballot, the holder of the Claim set forth in Item 1 (or authorized signatory of such holder acknowledges receipt of the Disclosure Statement, the Plan, and the other applicable solicitation materials, and certifies that:

7

(i)     it has the power and authority to vote to accept or reject the Plan,

(ii)    it was the holder (or is entitled to vote on behalf of such holder) of the Class 3 Claim described in Item 1 as of the Voting Record Date,

(iii)   it has not submitted any other Ballots for other Class 3 Claims, or if it has submitted any other Ballots with respect to such Claims, then any such Ballots dated earlier in time are hereby revoked,

(iv)   it acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of such Entity as a holder of a Class 3 Claim,

(v)    it understands and, if accepting the Plan, agrees with the treatment provided for its Claim(s) under the Plan,

(vi)   it understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by Debtors' Counsel before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by Debtors' Counsel, and

(vii)  all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustee in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that any otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

| | |
|---|---|
| Print or Type Name of Claimant | _____ |
| Last Four Digits of Social Security Number of Claimant: | _____ |
| Birthdate of Claimant (MM/DD/YY): | _____ |
| Signature: | _____ |
| Name of Signatory (if different than Claimant: | _____ |
| If by Authorized Agent, Title of Agent: | _____ |
| Street Address: | _____ |
| City, State, Zip Code: | _____ |
| Telephone Number: | _____ |
| Email Address: | _____ |
| Date Completed: | _____ |

**IF THIS BALLOT IS NOT RECEIVED BY THE DEBTORS' COUNSEL
ON OR BEFORE _____, 2023 AT 4:00 P.M. (EASTERN TIME)
YOUR VOTE WILL NOT BE COUNTED.**

**Ballots must be delivered to Debtors' Counsel at the appropriate address listed below, or in the enclosed envelope, as applicable.**

9

**By standard mail, or overnight mail or personal delivery:**

**Aris J. Karalis, Esquire**
**Karalis PC**
**1900 Spruce Street**
**Philadelphia, PA 19103**

Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.

If you have questions about this Ballot, or if you did not receive access to a copy of the Plan or any related materials, please contact Debtors' Counsel by (a) calling Karalis PC at (215) 546-4500, (b) emailing jhysley@karalislaw.com, or (c) writing to Aris J. Karalis, Esquire, Karalis PC, 1900 Spruce Street, Philadelphia, PA 19103.

**DEBTORS' COUNSEL IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtors or any other party for payment purposes

10

## INSTRUCTIONS FOR COMPLETING YOUR BALLOT

To properly complete this Ballot, you must follow the procedures described below, which explain each of the items contained in your Ballot. If you have questions, please contact the Debtors' Counsel using the contact information provided above.

**1.    Ballots must be submitted by Standard Mail, or Overnight Mail or Personal Delivery:**

Submit your complete and signed Ballot by standard mail using the pre-addressed envelope included in the Solicitation Package, or by overnight mail or personal delivery to:

| Aris J. Karalis, Esquire |
|---|
| Karalis PC |
| 1900 Spruce Street |
| Philadelphia, PA 19103 |

**Debtors' Counsel will tabulate all properly completed Ballots received on or before the Voting Deadline.**

**2.    To fill out your Ballot, you must complete the following:**

a.    **Item 1 (Amount of Claim)**. Make sure that the information contained in Item 1 regarding the principal amount of your Claim you held on the Voting Record Date is correct. **Please note that, except as otherwise set forth in the Disclosure Statement and Solicitation Procedures Order, each contingent Claim, whether liquidated or unliquidated, or a Claim in a wholly-unliquidated, unknown, or undetermined amount that if not the subject of any objection, will be allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance, or any other purpose.**

b.    If you hold Claims in more than one class, you may receive more than one Ballot or Solicitation Package, labeled for a different class of Claims. Your vote will be counted in determining acceptance or rejection of the Plan by a particular class of Claims only if you complete, sign, and return the Ballot labeled for such class of Claims in accordance with the instructions on that Ballot.

c.    **Item 2 (Vote on the Plan)**. Cast one vote to accept or reject the Plan by checking the appropriate box in Item 2. You must vote the entire amount of your Claim either to accept (*i.e.*, vote in favor of) or reject (*i.e.*, vote against) the Plan and you may not split your vote. Accordingly, any vote within a single Class that attempts partially to accept and partially reject the Plan will not be counted.

d.    **Item 3 (Releases)**. Pursuant to Article X of the Plan, the Debtors seek approval of the release provision set forth in Article X.J.3 of the Plan and provided above. Holders of General Unsecured Claims who vote to accept or reject the Plan may opt out of this release by checking the box in Item 3.

11

**IF THE PLAN BECOMES EFFECTIVE, AS A HOLDER OF A CLASS 3 CLAIM UNDER THE PLAN, IF YOU VOTE TO ACCEPT OR REJECT THE PLAN YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN <u>ARTICLE X.J.3</u> OF THE PLAN, AS SET FORTH ABOVE, UNLESS YOU CHECK THE BOX IN ITEM 3 TO OPT OUT OF THE RELEASES.**

    e.    <u>**Item 4 (Certifications, Acknowledgement, Signature, and Date)**</u>. Either the claimant, the claimant's personal representative, or the claimant's attorney <u>must</u> sign the Ballot. If the Ballot is not signed, the vote shown on the Ballot will <u>not</u> be counted.

    f.    Claimants with Social Security Numbers <u>must</u> provide the last four digits of their Social Security Number in Item 4 of the Ballot.

    g.    The claimant, the claimant's personal representative, or the claimant's attorney, must certify certain information on the Ballot. Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

    h.    By signing the Ballot, you make the following certifications on information and belief:

    (i)    I have the power and authority to vote to accept or reject the Plan,

    (ii)    I was the holder (or am entitled to vote on behalf of such holder) of the Class 3 Claim described in Item 1 as of the Voting Record Date,

    (iii)    I have not submitted any other Ballots for other Class 3 General Unsecured Claims, or if I have submitted any other Ballots with respect to such Claims, then any such Ballots dated earlier in time are hereby revoked,

    (iv)    I acknowledge that a vote to accept the Plan constitutes an acceptance of the treatment of such Entity as a holder of a Class 3 Claim,

    (v)    I understand and, if accepting the Plan, agree with the treatment provided for my Claim(s) under the Plan,

    (vi)    I understand and acknowledge that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by Debtors' Counsel before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by Debtors' Counsel, and

(vii)    all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustee in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that any otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

**3.      Other Instructions for Completing the Ballots:**

a.      The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest or an assertion or admission of a Claim or Interest.

b.      The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

c.      If you submit more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Debtors' Counsel and received by the Debtors' Counsel before the Voting Deadline will supersede and revoke any prior Ballot.

d.      If more than one Ballot is received from the holder of a General Unsecured Claim entitled to vote <u>and</u> from an attorney purporting to represent such holder prior to the Voting Deadline, the Ballot received from the holder of the General Unsecured Claim entitled to vote will be counted.

e.      To the extent you have received two (2) or more duplicative Ballots on account of the same Claim, please note that each claimant is authorized to submit only one Ballot on account of such Claim.

f.      In the event that (a) the Debtors revoke or withdraw the Plan, or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

g.      There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

---

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS INCLUDED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPCY COURT.**

---

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, DID NOT RECEIVE INSTRUCTIONS REGARDING ACCESSING THE DISCLOSURE STATEMENT OR PLAN, RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT DEBTORS' COUNSEL AT:**

**TELEPHONE:**          215-546-4500

**E-MAIL:**              jhysley@karalislaw.com

**ADDRESS:**             Aris J. Karalis, Esquire
                         Karalis PC
                         1900 Spruce Street
                         Philadelphia, PA 19103

## **Exhibit 2-3**

Class 4
Non-Tort Litigation Claims

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| ROOSEVELT INN, LLC and | : | Bky. No. 21-11697(AMC) |
| ROOSEVELT MOTOR INN, INC. | : | |
| | : | JOINTLYADMINISTERED |
| Debtors | : | |
| | : | |

BALLOT FOR CLASS 4 (NON-TORT LITIGATION CLAIMS)

---

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING YOUR BALLOT CAREFULLY BEFORE COMPLETING THIS BALLOT.

ACCESS TO SOLICITATION MATERIALS:

YOU HAVE RECEIVED A PAPER FORMAT OF THE PLAN, THE DISCLOSURE STATEMENT, THE BALLOT, AND THE SOLICITATION PROCEDURES ORDER WITH THIS SOLICITATION PACKAGE. IF YOU NEED TO OBTAIN ADDITIONAL SOLICITATION PACKAGES, PLEASE CONTACT DEBTORS' COUNSEL BY (A) CALLING KARALIS PC AT (215) 546-4500, (B) E-MAILING JHYSLEY@KARALISLAW.COM, OR (C) WRITING TO ARIS J. KARALIS, ESQUIRE, KARALIS PC, 1900 SPRUCE STREET, PHILADELPHIA, PA 19103.

THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY DEBTORS' COUNSEL BY 4:00 P.M. (EASTERN TIME) ON _____ (THE "VOTING DEADLINE").

---

IF YOU VOTE TO ACCEPT OR REJECT THE PLAN, YOU WILL BE RELEASING THE RELEASED PARTIES FROM ANY AND ALL CLAIMS/CAUSES OF ACTION TO THE EXTENT PROVIDED IN ARTICLE X.J.3 OF THE PLAN UNLESS YOU "OPT-OUT" OF SUCH RELEASES. YOU MAY "OPT-OUT" OF SUCH RELEASES AND YOU MUST INDICATE SUCH "OPT-OUT" IN THE BALLOT.

---

Pursuant to this ballot (this "Ballot"), the above-captioned debtors and debtors-in-possession (together, the "Debtors") are soliciting votes from holders of Class 4 Non-Tort Litigation Claims on the *Plan of Reorganization for Roosevelt Inn, LLC and Roosevelt Motor Inn, Inc.* dated December 16, 2022 [D.I. 353] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan"), which is described in greater detail in that certain disclosure statement regarding the Plan, filed on December 16, 2022 [D.I. 354] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement"). Capitalized terms used but not

otherwise defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable.  On [•] , the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court") entered an order [D.I. [•]] (the "Solicitation Procedures Order") approving the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code and the procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures").  Bankruptcy Court approval of the Disclosure Statement does not indicate the approval of the Plan by the Bankruptcy Court.

You are receiving this Ballot because you are a holder of a Non-Tort Litigation Claim in Class 4 against the Debtors as of the Voting Record Date.  **Accordingly, you have a right to vote to accept or reject the Plan.**

Your rights are described in the Disclosure Statement for the Plan and the Solicitation Procedures Order.  **This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Ballot in error, or if you believe that you received the wrong Ballot, please contact the Debtors' Counsel immediately via the contact information set forth above.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.**  To have your vote counted, you must complete, sign, and return this Ballot to Debtors' Counsel by the Voting Deadline.

If you vote to accept or reject the Plan, you will be deemed to provide the releases in **Article X.J.3** of the Plan and as set forth below unless you opt out of such releases.  You may check the box below to opt out of the releases in **Article X.J.3** of the Plan.  Please be advised that the Plan also contains injunction and exculpation provisions, certain of which are set forth below.  If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on you whether or not you elect to opt out of the releases in **Article X.J.3** of the Plan by this Ballot.  For a full description of these provisions, see **Article IV.N** of the Disclosure Statement and **Article X** of the Plan, which sets forth the terms of each of these provisions.

**You should carefully review the Plan and Disclosure Statement before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.  If you hold Claims in more than one Class, you will receive a Ballot for each Class in which you are entitled to vote.**

*[Remainder of Page Intentionally Left Blank]*

2

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

**PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW. PLEASE FILL IN ALL
OF THE INFORMATION REQUESTED UNDER ITEM 4. IF THIS BALLOT HAS
NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY
NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1.**         **Amount of Claim.**

For purposes of voting to accept or reject the Plan, the undersigned hereby certifies that as of the Voting Record Date, the undersigned was the holder (or the authorized signatory of such holder) of a Non-Tort Litigation Claim in the amount set forth below. **Please note that, except as otherwise may be set forth in the Disclosure Statement and Solicitation Procedures Order, each Non-Tort Litigation Claim in Class 4 has been temporarily allowed in the amount of $1.00 for voting purpose only, and not for distribution, allowance, or any other purpose.**

| | |
|---|---|
| **Debtor:** | _____ |
| **Claim(s) Amount:** | $1.00 _____ |

**Item 2.**         **Vote on the Plan**

Please vote to either accept or to reject the Plan with respect to your Claim in Class 4 below (please check one). Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

Prior to voting on the Plan, please note the following:

If you vote to accept or reject the Plan, you shall be deemed to have consented to the release set forth in **Article X.J.3** of the Plan unless you opt of the release by checking the box in Item 3 below.

If you abstain from voting, you shall not be deemed to have consented to the release provisions set forth in **Article X.J.3** of the Plan. The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions in **Article X** of the Plan.

| Check only one box: | |
|---|---|
| ☐ | **ACCEPT (I.E., VOTE IN FAVOR OF)** the Plan |
| ☐ | **REJECT (I.E., VOTE AGAINST)** the Plan |

<u>**Item 3.**</u>      **Optional Release Election.**

Unless a holder of a Class 4 Claim who votes to accept or reject the Plan opts out of the Releases by holders of Claims set forth below, such holder shall be deemed to have consented to the releases contained in <u>Article X.J.3</u> of the Plan, which provides as follows:

<u>**Article X.J.3 of the Plan – Releases by Holders of Claims.**</u>

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties[1] to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all Releasing Claim Holders[2] shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, in law, equity, contract, tort or otherwise, based

---

[1]  "<u>Released Parties</u>" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized RI; (c) the Reorganized RMI; (d) UVFS Management Company, LLC; (e) Yagna Patel; (f) the Equity Security Holders; (g) any Settling Insurance Company, and (h) all of such Persons' Representative, <u>provided</u>, <u>however</u>, that the definition of "Released Parties" shall in all instances be subject to <u>Article X.J</u> of the Plan.

[2]  "<u>Releasing Claim Holder</u>" means, collectively, (a) all holders of Claims that vote to accept the Plan and do not opt out of the releases set forth in <u>Article X.J.3</u> of the Plan; (b) all holders of Claims that are presumed to accept the Plan, except for holders of such Claims that file a timely objection to the releases set forth in <u>Article X.J.3</u> of the Plan; (c) all holders of Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases set forth in <u>Article X.J.3</u> of the Plan; and (d) all of predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and all such Persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such. No holder of a Claim in a Class that is Impaired under the Plan will be deemed a "Releasing Claim Holder" to the extent such holder abstained from voting.

on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in **Article X.J.3** of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Tort Litigation Claim to recover on account of such Allowed Claim in accordance with **Article II.B.4** of the Plan. Notwithstanding the foregoing or anything to the contrary herein, with respect to holders of Allowed General Unsecured Claims or Allowed Non-Tort Litigation Claims, nothing in the Plan or the release set forth in **Article X.J.3** of the Plan shall, or shall be construed to, release any such claims or Causes of Action against any Insurance Company (subject to **Article IV.D.3** of the Plan).

If you voted to accept or reject the Plan in Item 2 above, check this box if you elect not to grant the release contained in **Article X.J.3** of the Plan.



The undersigned, as a holder of (or representative of a holder of) a Class 4 Claim, elects to:

☐ **Opt out of the third party release in Article X.J.3 of the Plan.**

**Certain other Releases, Injunction and Exculpation Provisions Contained in the Plan**

**Article X.J.1 of the Plan - Releases by the Debtors and the Estates.**

**Releases by the Debtors and the Estates of the Released Parties.** As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the

Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in <u>Article X.J.1</u> of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

<u>Releases by the Debtors and the Estates of Avoidance Actions</u>. As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the assistance of the Equity Security Holders in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized Debtors, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General Unsecured Claims, Non-Tort Litigation Claims, and Interests including, the Equity Security Holders of and from any and all Avoidance Actions.

<u>Article X.K of the Plan – Exculpation.</u>

From and after the Effective Date, none of the Exculpated Parties[3] shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or after the Petition Date up to and including the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, the Releases and Injunctions, the pursuit of

---

[3]    "<u>Exculpated Parties</u>" means, collectively, the following Persons: (a) the Debtors; (b) Reorganized Debtors; and (c) all of such Persons' current officers and directors, employees, agents, attorneys, financial advisors, accountants, consultants, representatives, and other professionals.

Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith or willful misconduct). In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence.

**Article X.L. of the Plan – Injunctions Related to Releases and Exculpation.**

**Injunction Related to Releases.** As of the Effective Date, all holders of Claims that are the subject of Article X.J of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under Article X.E of the Plan or released under Article X.J of the Plan; provided, however, that the injunctions set forth in Article X.L.1 of the Plan shall not, and shall not be construed to, enjoin any holder of a Claim that is only the subject of Article X.J of the Plan from taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Injunction Related to Exculpation.** As of the Effective Date, all holders of Claims that are the subject of Article X.K of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under Article X.E or exculpated under Article K of the Plan; provided, however, that the injunctions set forth in Article X.L.2 of the Plan shall not, and shall not be construed to, enjoin any Person that is the subject of Article X.K of the Plan from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

7

**Item 4.**          **Certifications, Acknowledgment, Signature and Date.**

By signing this Ballot, the holder of the Non-Tort Litigation Claim (or authorized signatory of such holder acknowledges receipt of the Disclosure Statement, the Plan, and the other applicable solicitation materials, and certifies that:

(i)     it has the power and authority to vote to accept or reject the Plan,

(ii)    it was the holder (or is entitled to vote on behalf of such holder) of the Class 4 Non-Tort Litigation Claim described in Item 1 as of the Voting Record Date,

(iii)   it has not submitted any other Ballots for other Class 4 Claims, or if it has submitted any other Ballots with respect to such Claims, then any such Ballots dated earlier in time are hereby revoked,

(iv)    it acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of such Entity as a holder of a Class 4 Claim,

(v)     it understands and, if accepting the Plan, agrees with the treatment provided for its Claim(s) under the Plan,

(vi)    it understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by the Debtors' Counsel before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Debtors' Counsel, and

(vii)   all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustee in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that any otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

| | |
|---|---|
| Print or Type Name of Claimant | |
| Last Four Digits of Social Security Number of Claimant: | |
| Birthdate of Claimant (MM/DD/YY): | |
| Signature: | |
| Name of Signatory (if different than Claimant: | |
| If by Authorized Agent, Title of Agent: | |
| Street Address: | |
| City, State, Zip Code: | |
| Telephone Number: | |
| Email Address: | |
| Date Completed: | |

**IF THIS BALLOT IS NOT RECEIVED BY THE DEBTORS' COUNSEL
ON OR BEFORE _____ , 2023 AT 4:00 P.M. (EASTERN TIME)
YOUR VOTE WILL NOT BE COUNTED.**

    **Ballots must be delivered to Debtors' Counsel at the appropriate address listed below, or in the enclosed envelope, as applicable.**

**By standard mail, or overnight mail or personal delivery:**

**Aris J. Karalis, Esquire**
**Karalis PC**
**1900 Spruce Street**
**Philadelphia, PA 19103**

Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.

If you have questions about this Ballot, or if you did not receive access to a copy of the Plan or any related materials, please contact Debtors' Counsel by (a) calling Karalis PC at (215) 546-4500, (b) emailing jhysley@karalislaw.com, or (c) writing to Aris J. Karalis, Esquire, Karalis PC, 1900 Spruce Street, Philadelphia, PA 19103.

**DEBTORS' COUNSEL IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtors or any other party for payment purposes

## <u>INSTRUCTIONS FOR COMPLETING YOUR BALLOT</u>

To properly complete this Ballot, you must follow the procedures described below, which explain each of the items contained in your Ballot.  If you have questions, please contact the Debtors' Counsel using the contact information provided above.

**1.     Ballots must be submitted by Standard Mail, or Overnight Mail or Personal Delivery:**

Submit your complete and signed Ballot by standard mail using the pre-addressed envelope included in the Solicitation Package, or by overnight mail or personal delivery to:

| |
|---|
| Aris J. Karalis, Esquire |
| Karalis PC |
| 1900 Spruce Street |
| Philadelphia, PA 19103 |

**Debtors' Counsel will tabulate all properly completed Ballots received on or before the Voting Deadline.**

**2.     To fill out your Ballot, you must complete the following:**

a.     **<u>Item 1 (Amount of Claim)</u>.  Please note that, except as otherwise set forth in the Disclosure Statement and Solicitation Procedures Order, each contingent Claim, whether liquidated or unliquidated, or a Claim in a wholly-unliquidated, unknown, or undetermined amount that if not the subject of any objection, will be allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance, or any other purpose. For the avoidance of doubt, all Non-Tort Litigation Claims in Class 4, including any insured Non-Tort Claim, which have not been fixed pursuant to a judgment or settlement entered prior to the Voting Record Date, shall be classified as a contingent and unliquidated Claim as set forth above.  Such temporary allowance is only for voting purposes, and shall not be binding on the holder, the Debtors, or any other party for distribution under the Plan or any purpose other than voting on the Plan.**

b.     **<u>Item 2 (Vote on the Plan)</u>**.  Cast one vote to accept or reject the Plan by checking the appropriate box in Item 2.  You must vote the entire amount of your Non-Tort Litigation Claim either to accept (*i.e.*, vote in favor of) or reject (*i.e.*, vote against) the Plan and you may not split your vote.  Accordingly, any vote within a single Class that attempts partially to accept and partially reject the Plan will not be counted.

c.     If you hold Claims in more than one class, you may receive more than one Ballot or Solicitation Package, labeled for a different class of Claims.  Your vote will be counted in determining acceptance or rejection of the Plan by a particular class of Claims only if you complete, sign, and return the Ballot labeled for such class of Claims in accordance with the instructions on that Ballot.

11

d.    **Item 3 (Releases)**.  Pursuant to <u>Article X</u> of the Plan, the Debtors seek approval of the release provision set forth in <u>Article X.J.3</u> of the Plan and provided above.  Holders of Direct Tort Claims who vote to accept or reject the Plan may opt out of this release by checking the box in Item 3.

> **IF THE PLAN BECOMES EFFECTIVE, AS A HOLDER OF A CLASS 4 NON-TORT LITIGATION CLAIM UNDER THE PLAN, IF YOU VOTE TO ACCEPT OR REJECT THE PLAN YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN <u>ARTICLE X.J.3</u> OF THE PLAN, AS SET FORTH ABOVE, UNLESS YOU CHECK THE BOX IN ITEM 3 TO OPT OUT OF THE RELEASES.**

e.    **Item 4 (Certifications, Acknowledgement, Signature, and Date)**.  Either the claimant, the claimant's personal representative, or the claimant's attorney <u>must</u> sign the Ballot.  If the Ballot is not signed, the vote shown on the Ballot will <u>not</u> be counted.

f.    Claimants with Social Security Numbers <u>must</u> provide the last four digits of their Social Security Number in Item 4 of the Ballot.

g.    The claimant, the claimant's personal representative, or the claimant's attorney, must certify certain information on the Ballot.  Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

h.    By signing the Ballot, you make the following certifications on information and belief:

(i)    I have the power and authority to vote to accept or reject the Plan,

(ii)   I was the holder (or am entitled to vote on behalf of such holder) of the Class 4 Non-Tort Litigation Claim described in Item 1 as of the Voting Record Date,

(iii)  I have not submitted any other Ballots for other Class 4 Claims, or if I have submitted any other Ballots with respect to such Claims, then any such Ballots dated earlier in time are hereby revoked,

(iv)   I acknowledge that a vote to accept the Plan constitutes an acceptance of the treatment of my Claim as a Class 4 Claim,

(v)    I understand and, if accepting the Plan, agree with the treatment provided for my Claim(s) under the Plan,

(vi)   I understand and acknowledge that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by Debtors' Counsel before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by Debtors'

Counsel, and

(vii)   all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustee in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that any otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

**3.      Other Instructions for Completing the Ballots:**

a.      The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest or an assertion or admission of a Claim or Interest.

b.      The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

c.      If you submit more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to Debtors' Counsel and received by Debtors' Counsel before the Voting Deadline will supersede and revoke any prior Ballot.

d.      If more than one Ballot is received from the holder of a Non-Tort Litigation Claim entitled to vote and from an attorney purporting to represent such holder prior to the Voting Deadline, the Ballot received from the holder of the Non-Tort Litigation Claim entitled to vote will be counted.

e.      To the extent you have received two (2) or more duplicative Ballots on account of the same Non-Tort Litigation Claim, please note that each claimant is authorized to submit only one Ballot on account of such Claim.

f.      In the event that (a) the Debtors revoke or withdraw the Plan, or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

g.      There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS INCLUDED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPCY COURT.

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, DID NOT RECEIVE INSTRUCTIONS REGARDING ACCESSING THE DISCLOSURE STATEMENT OR PLAN, RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT DEBTORS' COUNSEL AT:

TELEPHONE:          215-546-4500

E-MAIL:             jhysley@karalislaw.com

ADDRESS:            Aris J. Karalis, Esquire
                    Karalis PC
                    1900 Spruce Street
                    Philadelphia, PA 19103

**Exhibit 2-4**

Class 5
Direct Tort Claims

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | **CHAPTER 11** |
| | : | |
| **ROOSEVELT INN, LLC and** | : | **Bky. No. 21-11697(AMC)** |
| **ROOSEVELT MOTOR INN, INC.** | : | |
| | : | **JOINTLY ADMINISTERED** |
| Debtors | : | |
| | : | |

## BALLOT FOR CLASS 5 (DIRECT TORT CLAIMS)

---

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING YOUR BALLOT CAREFULLY BEFORE COMPLETING THIS BALLOT.

**ACCESS TO SOLICITATION MATERIALS:**

YOU HAVE RECEIVED A PAPER FORMAT OF THE PLAN, THE DISCLOSURE STATEMENT, THE BALLOT, AND THE SOLICITATION PROCEDURES ORDER WITH THIS SOLICITATION PACKAGE. IF YOU NEED TO OBTAIN ADDITIONAL SOLICITATION PACKAGES, PLEASE CONTACT DEBTORS' COUNSEL BY (A) CALLING KARALIS PC AT (215) 546-4500, (B) E-MAILING JHYSLEY@KARALISLAW.COM, OR (C) WRITING TO ARIS J. KARALIS, ESQUIRE, KARALIS PC, 1900 SPRUCE STREET, PHILADELPHIA, PA 19103.

---

THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE **ACTUALLY RECEIVED** BY DEBTORS' COUNSEL BY 4:00 P.M. (EASTERN TIME) ON _____ (THE "VOTING DEADLINE").

---

IF YOU VOTE TO ACCEPT OR REJECT THE PLAN, YOU WILL BE RELEASING THE RELEASED PARTIES FROM ANY AND ALL CLAIMS/CAUSES OF ACTION TO THE EXTENT PROVIDED IN ARTICLE X.J.3 OF THE PLAN UNLESS YOU "OPT-OUT" OF SUCH RELEASES. YOU MAY "OPT-OUT" OF SUCH RELEASES AND YOU MUST INDICATE SUCH "OPT-OUT" IN THE BALLOT.

---

Pursuant to this ballot (this "Ballot"), the above-captioned debtors and debtors-in-possession (together, the "Debtors") are soliciting votes from holders of Class 5 Direct Tort Claims on the *Plan of Reorganization for Roosevelt Inn, LLC and Roosevelt Motor Inn, Inc.* dated December 16, 2022 [D.I. 353] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan"), which is described in greater detail in that certain disclosure statement regarding the Plan, filed on December 16, 2022_ [D.I. 354] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement"). Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable. On [•] , the United States Bankruptcy Court for the Eastern District of

Pennsylvania (the "Bankruptcy Court") entered an order [D.I. [•]] (the "Solicitation Procedures Order") approving the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code and the procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures"). Bankruptcy Court approval of the Disclosure Statement does not indicate the approval of the Plan by the Bankruptcy Court.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code, which is a mechanism by which Tort Claims will be channeled to a Settlement Trust established pursuant to section 105(a) of the Bankruptcy Code. For a description of the causes of action to be enjoined and the identities of the Entities that would be subject to these injunctions, see **Article IV.N** of the Disclosure Statement and **Article X** of the Plan, which sets forth the terms of each of these provisions.

The Protected Parties are defined in the Plan and means the following Persons: (a) the Debtors; (b) the Reorganized Debtors; (c) UVFS Management Company, LLC, (d) Yagna Patel; (e) the Equity Security Holders, (f) any Settling Insurance Company, and (g) all of such Persons' Representatives. If the Plan is confirmed, the Protected Parties will benefit from the Channeling Injunction.

You are receiving this Ballot because you have asserted a Tort Claim[1] against the Debtors that occurred prior to the Petition Date (as defined in the Plan, a "Direct Tort Claim"). Your Direct Tort Claim is classified under the Plan in Class 5 (Direct Tort Claims). Accordingly, you have a right to vote to accept or reject the Plan.

Your rights are described in the Disclosure Statement for the Plan and the Solicitation Procedures Order. **This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain elections and certifications with respect to the Plan. If you believe you have received this Ballot in error, or if you believe that have received the wrong Ballot, please contact Debtors' counsel immediately via the contact information set forth above.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.** To have your vote counted, you must complete, sign, and return this Ballot to Debtors' counsel by the Voting Deadline.

---

[1]    "Tort Claim" means a liquidated or unliquidated Claim against a Protected Party, or any of their respective Representatives (in their capacities as such) that is attributable to, arises from, is based upon, relates to, or results from, in whole or in part, directly, indirectly, or derivatively, from alleged injury to an individual's body, mind or emotions, or sexual conduct or misconduct, sexual abuse or molestation, sexual exploitation, indecent assault and/or battery, or rape, including sex trafficking, or sexually related psychological or emotional harm, humiliation, anguish, shock, sickness, disease, disability, dysfunction, or intimidation that occurred at the Debtors' hotel on or before the Petition Date and allegedly caused by the negligent or intentional conduct of the Debtors, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, alter ego, or respondeat superior, any negligence-based or employment-based theory, (including any such Claim that has been asserted or may be amended to assert in a proof of claim such claims, whether or not timely filed, in the Chapter 11 Cases, or any such Claim that has been asserted against the Settlement Trust) including any proportionate or allocable share of liability based thereon. Tort Claims include any Indirect Tort Related Claims. For the avoidance of doubt, Direct Tort Claims include the fifteen (15) Direct Tort proofs of claim filed with the Bankruptcy Court before the Tort Bar Date by each of the following claimants: A.H., B.H., C.A., K.R., M.B., B.S., D.P., D.W., E.B., J.H., L.E., S.M., S.W., T.H., and T.S.

If you vote to accept or reject the Plan, you will be deemed to provide the releases in **Article X.J.3** of the Plan and as set forth below unless you opt out of such releases.  You may check the box below to opt of the releases in **Article X.J.3** of the Plan.  Please be advised that the Plan also contains injunction and exculpation provisions, certain of which are set forth below.  If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on you whether or not you elect to opt out of the releases in **Article X.J.3** of the Plan by this Ballot.  For a full description of these provisions, see Article IV.N of the Disclosure Statement and Article X of the Plan, which sets forth the terms of each of these provisions.

**You should carefully review the Disclosure Statement and the Plan, including the Plan's injunction, exculpation, and release provisions, as the rights of holders of Direct Tort Claim may be affected thereunder.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.**

*[Remainder of Page Intentionally Left Blank]*

3

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

**PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW.  PLEASE FILL IN ALL
OF THE INFORMATION REQUESTED UNDER ITEM 4.  IF THIS BALLOT HAS
NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY
NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

<u>**Item 1**</u>.        **Amount of Claim.**

For purposes of voting to accept or reject the Plan, the undersigned certifies that as of the
Voting Record Date, the undersigned holds a Direct Tort Claim in the amount set forth below.
**Please note that, except as otherwise may be set forth in the Disclosure Statement and
Solicitation Procedures Order, each Direct Tort Claim in Class 5 has been temporarily
allowed in the amount of $1.00 for voting purpose only, and not for distribution, allowance,
or any other purpose.**

| | |
|---|---|
| **Debtor:** | |
| **Claim(s) Amount:** | $1.00 |

<u>**Item 2**</u>.        **Vote on the Plan**

Please vote to either accept or to reject the Plan with respect to your Claims in Class 5
below (please check one).  Any Ballot not marked either to accept or reject the Plan, or marked
both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection
of the Plan.

Prior to voting on the Plan, please note the following:

If you vote to accept or reject the Plan, you shall be deemed to have consented to the release
set forth in <u>Article X.J.3</u> of the Plan unless you opt of the release by checking the box in Item 3
below.

If you abstain from voting, you shall not be deemed to have consented to the release
provisions set forth in <u>Article X.J.3</u> of the Plan.  The Disclosure Statement and the Plan must be
referenced for a complete description of the release, injunction, and exculpation provisions in
<u>Article X</u> of the Plan.

| Check <u>only</u> one box: | |
|---|---|
| ☐ | **ACCEPT (I.E., VOTE IN FAVOR OF)** the Plan |
| ☐ | **REJECT (I.E., VOTE AGAINST)** the Plan |

<u>Item 3.</u>          **Optional Release Election.**

Unless a holder of a Class 5 Claim who votes to accept or reject the Plan opts out of the Releases by holders of Claims set forth below, such holder shall be deemed to have consented to the releases contained in <u>Article X.J.3</u> of the Plan, which provides as follows:

<u>Article X.J.3 of the Plan – Releases by Holders of Claims.</u>

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties[2] to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all Releasing Claim Holders[3] shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the

---

[2]    "<u>Released Parties</u>" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized RI; (c) the Reorganized RMI; (d) UVFS Management Company, LLC; (e) Yagna Patel; (f) the Equity Security Holders; (g) any Settling Insurance Company, and (h) all of such Persons' Representative, <u>provided</u>, <u>however</u>, that the definition of "Released Parties" shall in all instances be subject to <u>Article X.J</u> of the Plan.

[3]    "<u>Releasing Claim Holder</u>" means, collectively, (a) all holders of Claims that vote to accept the Plan and do not opt out of the releases set forth in <u>Article X.J.3</u> of the Plan; (b) all holders of Claims that are presumed to accept the Plan, except for holders of such Claims that file a timely objection to the releases set forth in <u>Article X.J.3</u> of the Plan; (c) all holders of Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases set forth in <u>Article X.J.3</u> of the Plan; and (d) all of predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and all such Persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such. No holder of a Claim in a Class that is Impaired under the Plan will be deemed a "Releasing Claim Holder" to the extent such holder abstained from voting.

negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in Article X.J.3 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Tort Litigation Claim to recover on account of such Allowed Claim in accordance with Article II.B.4 of the Plan. Notwithstanding the foregoing or anything to the contrary herein, with respect to holders of Allowed General Unsecured Claims or Allowed Non-Tort Litigation Claims, nothing in the Plan or the release set forth in Article X.J.3 of the Plan shall, or shall be construed to, release any such claims or Causes of Action against any Insurance Company (subject to Article IV.D.3 of the Plan).

If you voted to accept or reject the Plan in Item 2 above, check this box if you elect not to grant the release contained in Article X.J.3 of the Plan.

The undersigned, as a holder of (or representative of a holder of) a Class 5 Claim, elects to:

☐      **Opt out of the third party release in Article X.J.3 of the Plan.**

### Certain other Releases, Injunction and Exculpation Provisions Contained in the Plan

### Article X.F of the Plan – Channeling Injunction.

**Terms.** To preserve and promote the settlements contemplated by and provided for in the Plan, where necessary, the injunctive effect of the Discharge as provided in sections 1141 and 524 of the Bankruptcy Code and as described in Article X of the Plan, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under section 105(a) of the Bankruptcy Code, the sole recourse of any holder of a Tort Claim against a Protected Party on account of such Tort Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents,[4] and such holder shall have no right whatsoever at any time to assert such Tort Claim against any Protected Party or any property or interest in property of any Protected Party. For the avoidance of doubt, the sole recourse for any holder of a Tort Claim covered by any insurance policy issued by a Settling Insurance Company shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents. Accordingly, on and after the Effective Date, all Persons that have held or asserted, currently hold or

---

[4]    "Settlement Trust Documents" means, collectively, (a) the Settlement Trust Agreement, (b) the Trust Distribution Procedures, (c) the Document Agreement, (d) the Confirmation Order, and (e) any other agreements, instruments and documents governing the establishment, administration and operation of the Settlement Trust, which shall be substantially in the forms set forth as exhibits in the Plan or in the Plan Supplement, as the same may be amended or modified from time to time in accordance with the terms thereof.

assert, or that may in the future hold or assert, any Tort Claim against the Protected Parties, or any of them, shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Protected Party with respect to any such Tort Claim, other than from the Settlement Trust pursuant to the Settlement Trust Document, including:

a.      commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Protected Party, or any property or interest in property of any Protected Party;

b.      enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Protected Party, or any property or interest in property of any Protected Party;

c.      creating, perfecting, or otherwise enforcing in any manner, whether directly or indirectly, any Encumbrance of any kind against any Protected Party, or any property or interest in property of any Protected Party;

d.      asserting, implementing or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Protected Party, or any property or interest in property of any Protected Party; or

e.      taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Tort Claim.

<u>Reservations</u>. Notwithstanding anything to the contrary in <u>Article X.F of the Plan</u>, the Channeling Injunction shall not enjoin:

a.      the rights of holders of Tort Claims to assert such Tort Claims against the Settlement Trust in accordance with the Trust Distribution Procedures, including the ability to pursue the Settlement Trust in the tort system as described in Article XII of the Trust Distribution Procedures;

b.      the right of any Person to assert any Claim, debt, obligation or liability for payment of Settlement Trust Expenses solely against the Settlement Trust in accordance with the Settlement Trust Documents;

c.      the Settlement Trust from enforcing its rights under the Plan and the Settlement Trust Documents; or

d.      the rights of the Settlement Trust to prosecute any action against any Non-Settling Insurance Company based on or arising from Tort Insurance Policies, subject to any Insurance Coverage Defenses.

**Article X.J.1 of the Plan – Releases by the Debtors and the Estates.**

**Releases by the Debtors and the Estates of the Released Parties.** As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in Article X.J.1 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

**Releases by the Debtors and the Estates of Avoidance Actions.** As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the assistance of the Equity Security Holders in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized Debtors, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General

8

Unsecured Claims, Non-Tort Litigation Claims, and Interests including, the Equity Security Holders of and from any and all Avoidance Actions.

**Article X.J.2 of the Plan – Releases by Holders of Tort Claims.**

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Protected Parties to facilitate and implement the reorganization of the Debtors, including the settlements embodied in the Plan, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all holders of Tort Claims shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever discharge and release: (a) each and all of the Protected Parties and their respective property and successors and assigns of and from all Tort Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Tort Claims; (b) each and all Equity Security Holders and their respective property and successors and assigns of and from all Tort Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Tort Claims; provided, however, that the releases set forth in Article X.J.2 of the Plan shall not, and shall not be construed to: (i) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (ii) modify, reduce, impair or otherwise affect the ability of any holder of a Tort Claim to recover on account of such Claim in accordance with  Article II.B.5 or  Article II.B.6 of the Plan, as applicable. For the avoidance of doubt, holders of Tort Claims covered by any insurance policy issued by a Settling Insurance Company shall, and shall be deemed to, release and discharge the Settling Insurance Companies for such Claims.  The releases in Article X.J.3 of the Plan shall not, and shall not be deemed to, limit the releases in Article X.J.2 of the Plan.

**Article X.K of the Plan – Exculpation.**

From and after the Effective Date, none of the Exculpated Parties[5] shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or after the Petition Date up to and including the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan

---

[5]   "Exculpated Parties" means, collectively, the following Persons: (a) the Debtors; (b) Reorganized Debtors; and (c) all of such Persons' current officers and directors, employees, agents, attorneys, financial advisors, accountants, consultants, representatives, and other professionals.

or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith or willful misconduct). In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence.

### Article X.L. of the Plan – Injunctions Related to Releases and Exculpation.

**Injunction Related to Releases**. As of the Effective Date, all holders of Claims that are the subject of Article X.J of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under Article X.E of the Plan or released under Article X.J of the Plan; provided, however, that the injunctions set forth in Article X.L.1 of the Plan shall not, and shall not be construed to, enjoin any holder of a Claim that is only the subject of Article X.J of the Plan from taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Injunction Related to Exculpation**. As of the Effective Date, all holders of Claims that are the subject of Article X.K of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under Article X.E of the Plan or exculpated under Article K of the Plan; provided, however, that the injunctions set forth in Article X.L.2 of the Plan shall not, and shall not be construed to, enjoin any Person that is the subject of Article X.K of the Plan from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Item 4.**          **Certifications, Acknowledgment, Signature and Date.**

By signing this Ballot, the holder of the Class 5 Direct Tort Claim (or authorized signatory of such holder) acknowledges receipt of the Disclosure Statement, the Plan, and the other applicable solicitation materials, and certifies that:

(i)     it has the power and authority to vote to accept or reject the Plan,

(ii)    it was the holder (or is entitled to vote on behalf of such holder) of the Class 5 Direct Tort Claim described in Item 1 as of the Voting Record Date,

(iii)   it has not submitted any other Ballots for other Class 5 Direct Tort Claims, or if I have submitted any other Ballots with respect to such Claims, then any such Ballots dated earlier in time are hereby revoked,

(iv)    it acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of such Entity as a holder of a Class 5 Claim,

(v)     it understands and, if accepting the Plan, agrees with the treatment provided for its Claim(s) under the Plan,

(vi)    it understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by Debtors' counsel before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by Debtors' counsel, and

(vii)   all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustee in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that any otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

| | |
|---|---|
| Print or Type Name of Claimant | _____<br>_____ |
| Last Four Digits of Social Security Number of Claimant: | _____ |
| Birthdate of Claimant (MM/DD/YY): | _____ |

| | |
|---|---|
| Signature: | |
| Name of Signatory (if different than Claimant: | |
| If by Authorized Agent, Title of Agent: | |
| Street Address: | |
| City, State, Zip Code: | |
| Telephone Number: | |
| Email Address: | |
| Date Completed: | |

**IF THIS BALLOT IS NOT RECEIVED BY THE DEBTORS' COUNSEL ON OR BEFORE _____, 2023 AT 4:00 P.M. (EASTERN TIME) YOUR VOTE WILL NOT BE COUNTED.**

       **Ballots must be delivered to Debtors' Counsel at the appropriate address listed below, or in the enclosed envelope, as applicable.**

**By standard or overnight mail or personal delivery:**

**Aris J. Karalis, Esquire**
**Karalis PC**
**1900 Spruce Street**
**Philadelphia, PA 19103**

       Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.

If you have questions about this Ballot, or if you did not receive access to a copy of the Plan or any related materials, please contact Debtors' counsel by (a) calling Karalis PC at (215) 546-4500, (b) emailing jhysley@karalislaw.com, or (c) writing to Aris J. Karalis, Esquire, Karalis PC, 1900 Spruce Street, Philadelphia, PA 19103.

**DEBTORS COUNSEL IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtors or any other party for payment purposes

## INSTRUCTIONS FOR COMPLETING YOUR BALLOT

To properly complete this Ballot, you must follow the procedures described below, which explain each of the items contained in your Ballot. If you have questions, please contact Debtors' counsel using the contact information provided above.

**1.      Ballots must be submitted by Standard Mail, or Overnight Mail or Personal Delivery:**

Submit your complete and signed Ballot by standard mail using the pre-addressed envelope included in the Solicitation Package, or by overnight mail or personal delivery to:

| |
|---|
| Aris J. Karalis, Esquire |
| Karalis PC |
| 1900 Spruce Street |
| Philadelphia, PA 19103 |

**Debtors counsel will tabulate all properly completed Ballots received on or before the Voting Deadline.**

**2.      To fill out your Ballot, you must complete the following:**

a.      **Item 1 (Amount of Claim). Please note that, except as otherwise set forth in the Disclosure Statement and Solicitation Procedures Order, each Direct Tort Claim in Class 5 has been allowed in the amount of $1.00 for voting purposes only, and shall not be binding upon the holder of the Direct Tort Claim, the Debtors, the Settlement Trust, or any other party for any purpose other than voting on the Plan.**

b.      **Item 2 (Vote on the Plan).** Cast one vote to accept or reject the Plan by checking the appropriate box in Item 2. You must vote the entire amount of your Direct Tort Claim either to accept (i.e., vote in favor of) or reject (i.e., vote against) the Plan and you may not split your vote. Accordingly, any vote within a single Class that attempts partially to accept and partially reject the Plan will not be counted.

c.      If you hold Claims in more than one class, you may receive more than one Ballot or Solicitation Package, labeled for a different class of Claims. Your vote will be counted in determining acceptance or rejection of the Plan by a particular class of Claims only if you complete, sign, and return the Ballot labeled for such class of Claims in accordance with the instructions on the Ballot.

d.      **Item 3 (Releases).** Pursuant to Article X of the Plan, the Debtors seek approval of the release provision set forth in Article X.J.3 of the Plan and provided above. Holders of Direct Tort Claims who vote to accept or reject the Plan may opt out of this release by checking the box in Item 3.

14

> **IF THE PLAN BECOMES EFFECTIVE, AS A HOLDER OF A DIRECT TORT CLAIM UNDER THE PLAN, IF YOU VOTE TO ACCEPT OR REJECT THE PLAN YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN <u>ARTICLE X.J.3</u> OF THE PLAN, AS SET FORTH ABOVE, UNLESS YOU CHECK THE BOX IN ITEM 3 TO OPT OUT OF THE RELEASES.**

e.       **<u>Item 4 (Certifications, Acknowledgement, Signature, and Date)</u>**. Either the claimant, the claimant's personal representative, or the claimant's attorney <u>must</u> sign the Ballot. If the Ballot is not signed, the vote shown on the Ballot will <u>not</u> be counted.

f.       Claimants with Social Security Numbers <u>must</u> provide the last four digits of their Social Security Number in Item 4 of the Ballot.

g.       The claimant, the claimant's personal representative, or the claimant's attorney, must certify certain information on the Ballot. Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

h.       By signing the Ballot, you make the following certifications on information and belief:

(i)       I have the power and authority to vote to accept or reject the Plan,

(ii)      I am the holder (or am entitled to vote on behalf of such holder) of the Direct Tort Claim described in Item 1 as of the Voting Record Date,

(iii)     I have not submitted any other Ballots for other Class 5 Direct Tort Claims, or if I have submitted any other Ballots with respect to such Claims, then any such Ballots dated earlier in time are hereby revoked,

(iv)      I acknowledge that a vote to accept the Plan constitutes an acceptance of the treatment of my Claim as a Class 5 Claim,

(v)       I understand and, if accepting the Plan, agree with the treatment provided for my Claim(s) under the Plan,

(vi)      I understand and acknowledge that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by Debtors' counsel before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by Debtors' counsel, and

(vii)     all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors,

15

administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

**3.      Other Instructions for Completing the Ballots:**

a.      The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest or an assertion or admission of a Claim or Interest.

b.      The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

c.      If you submit more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to Debtors' counsel and received by Debtors' counsel before the Voting Deadline will supersede and revoke any prior Ballot.

d.      If more than one Ballot is received from the holder of a Direct Tort Claim entitled to vote <u>and</u> from an attorney purporting to represent such holder prior to the Voting Deadline, the Ballot received from the holder of the Direct Tort Claim entitled to vote will be counted.

e.      To the extent you have received two (2) or more duplicative Ballots on account of the same Direct Tort Claim, please note that each claimant is authorized to submit only one Ballot on account of such Claim.

f.      In the event that (a) the Debtors revoke or withdraw the Plan, or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

g.      There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS INCLUDED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPCY COURT.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, DID NOT RECEIVE INSTRUCTIONS REGARDING ACCESSING THE DISCLOSURE STATEMENT OR PLAN, RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR**

**NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT DEBTORS COUNSEL AT:**

**TELEPHONE:**          **215-546-4500**

**E-MAIL:**               jhysley@karalislaw.com

**ADDRESS:**            **Aris J. Karalis, Esquire**
**Karalis PC**
**1900 Spruce Street**
**Philadelphia, PA 19103**

**Exhibit 2-4A**

Class 5
POA Ballot

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| ROOSEVELT INN, LLC and | : | Bky. No. 21-11697(AMC) |
| ROOSEVELT MOTOR INN, INC. | : | |
| | : | JOINTLYADMINISTERED |
| **Debtors** | : | |

POA BALLOT FOR CLASS 5 (DIRECT TORT CLAIMS)

---

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING YOUR BALLOT CAREFULLY BEFORE COMPLETING THIS BALLOT.

ACCESS TO SOLICITATION MATERIALS:

YOU HAVE RECEIVED A PAPER FORMAT OF THE PLAN, THE DISCLOSURE STATEMENT, THE BALLOT, AND THE SOLICITATION PROCEDURES ORDER WITH THIS SOLICITATION PACKAGE. IF YOU NEED TO OBTAIN ADDITIONAL SOLICITATION PACKAGES, PLEASE CONTACT DEBTORS' COUNSEL BY (A) CALLING KARALIS PC AT (215) 546-4500, (B) E-MAILING JHYSLEY@KARALISLAW.COM, OR (C) WRITING TO ARIS J. KARALIS, ESQUIRE, KARALIS PC, 1900 SPRUCE STREET, PHILADELPHIA, PA 19103.

---

THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY DEBTORS' COUNSEL BY 4:00 P.M. (EASTERN TIME) ON _____ (THE "VOTING DEADLINE").

---

IF YOU VOTE TO ACCEPT OR REJECT THE PLAN, YOU WILL BE RELEASING THE RELEASED PARTIES FROM ANY AND ALL CLAIMS/CAUSES OF ACTION TO THE EXTENT PROVIDED IN ARTICLE X.J.3 OF THE PLAN UNLESS YOU "OPT-OUT" OF SUCH RELEASES. YOU MAY "OPT-OUT" OF SUCH RELEASES AND YOU MUST INDICATE SUCH "OPT-OUT" IN THE BALLOT.

---

Pursuant to this POA ballot (this "POA Ballot"), the above-captioned debtors and debtors-in-possession (together, the "Debtors") are soliciting votes from holders of Class 5 Direct Tort Claims on the *Plan of Reorganization for Roosevelt Inn, LLC and Roosevelt Motor Inn, Inc.* dated December 16, 2022 [D.I. 353] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan"), which is described in greater detail in that certain disclosure statement regarding the Plan, filed on December 16, 2022_ [D.I. 354] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement"). Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Disclosure

Statement, as applicable.  On [•], the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court") entered an order [D.I. [•]] (the "Solicitation Procedures Order") approving the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code and the procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures").  Bankruptcy Court approval of the Disclosure Statement does not indicate the approval of the Plan by the Bankruptcy Court.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code, which is a mechanism by which Tort Claims will be channeled to a Settlement Trust established pursuant to section 105(a) of the Bankruptcy Code.  For a description of the causes of action to be enjoined and the identities of the Entities that would be subject to these injunctions, see **Article IV.N** of the Disclosure Statement and **Article X** of the Plan, which sets forth the terms of each of these provisions.

The Protected Parties are defined in the Plan and means the following Persons: (a) the Debtors; (b) the Reorganized Debtors; (c) UVFS Management Company, LLC, (d) Yagna Patel; (e) the Equity Security Holders, (f) any Settling Insurance Company, and (g) all of such Persons' Representatives.  If the Plan is confirmed, the Protected Parties will benefit from the Channeling Injunction.

You are receiving this Ballot because you represent a client ("Tort Claim Client") that has asserted a Tort Claim[1] against the Debtors that occurred prior to the Petition Date (as defined in the Plan, a "Direct Tort Claim").  Your client's Direct Tort Claim is classified under the Plan in Class 5 (Direct Tort Claims).

Your firm (each, a "Firm") must certify that it has the authority under a power of attorney to vote to accept or reject the Plan (in addition to any the other election made under the POA Ballot) on behalf of its Tort Claim Client with respect to submission of this POA Ballot (the "Certification").  Additionally, the Firm may complete the POA Ballot in accordance with the power granted to the Firm and reflect that the vote and other elections thereon were collected by means of the power of attorney that provided the Firm with the authorization to act on behalf of its Tort Claim Client.  The power of attorney signed and notarized by the Tort Claim Client must be submitted concurrently with the POA Ballot.

---

[1] "Tort Claim" means a liquidated or unliquidated Claim against a Protected Party, or any of their respective Representatives (in their capacities as such) that is attributable to, arises from, is based upon, relates to, or results from, in whole or in part, directly, indirectly, or derivatively, from alleged injury to an individual's body, mind or emotions, or sexual conduct or misconduct, sexual abuse or molestation, sexual exploitation, indecent assault and/or battery, or rape, including sex trafficking, or sexually related psychological or emotional harm, humiliation, anguish, shock, sickness, disease, disability, dysfunction, or intimidation that occurred at the Debtors' hotel on or before the Petition Date and allegedly caused by the negligent or intentional conduct of the Debtors, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, alter ego, or respondeat superior, any negligence-based or employment-based theory, (including any such Claim that has been asserted or may be amended to assert in a proof of claim such claims, whether or not timely filed, in the Chapter 11 Cases, or any such Claim that has been asserted against the Settlement Trust) including any proportionate or allocable share of liability based thereon. Tort Claims include any Indirect Tort Related Claims.  For the avoidance of doubt, Direct Tort Claims include the fifteen (15) Direct Tort proofs of claim filed with the Bankruptcy Court before the Tort Bar Date by each of the following claimants: A.H., B.H., C.A., K.R., M.B., B.S., D.P., D.W., E.B., J.H., L.E., S.M., S.W., T.H., and T.S.

In addition to the foregoing certification, you must also file a verified statement with the Court pursuant to Bankruptcy Rule 2019 prior to or concurrently with the submission of its POA Ballot containing the following (each, a "Rule 2019 Statement"): (i) a list of the name, address, of its Tort Claim Client that the such Firm represents; and (ii) an exemplar of the engagement letter used to engage the Tort Claim Client. The Firm may redact pricing, compensation amounts or percentages, and personal identifying information of holders of Direct Tort Claims.[2] You must submit a copy of the Rule 2019 Statement with unredacted personal identifying information with your POA Ballot and power of attorney submission to Debtors' Counsel.

**To use this POA Ballot, you must meet all applicable standards to receive informed consent from your Tort Claim Client.** In addition, you must provide the Solicitation Package materials (excluding a ballot) to your Tort Claim Client.

The rights of holders of Direct Tort Claims in Class 5 are described in the Disclosure Statement for the Plan and the Solicitation Procedures Order. **This POA Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications and elections with respect to the Plan. If you believe you have received this POA Ballot in error, or if you believe that you have received the wrong POA Ballot, you must contact Debtors' Counsel immediately via the contact information set forth herein.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on your Tort Claim Client whether or not you vote or if you vote to reject the Plan.** To have your clients' votes counted, you must complete, sign, and return this POA Ballot and your Tort Claim Client's power of attorney with the POA Ballot to Debtors' Counsel by the Voting Deadline.

If your Tort Claim Client votes to accept or reject the Plan, they will deemed to provide the releases in **Article X.J.3** of Plan and as set forth below unless they opt out of such releases. In accordance with the above Certification, your Tort Claim Client may make the selection on the POA Ballot to opt out of the releases in **Article X.J.3** of the Plan. Please be advised that the Plan also contains releases, injunctions and exculpation provisions, certain of which are set forth below. If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on your Tort Claim Client whether or not you elect to opt out of the releases in **Article X.J.3** of the Plan by this POA Ballot. For a full description of these provisions, see **Article IV.N** of the Disclosure Statement and **Article X** of the Plan, which sets forth the terms of each of these provisions.

**You should carefully review the Disclosure Statement and the Plan, including the Plan's releases, injunction, and exculpation provisions, and inform your Tort Claim Client of such provisions as the rights of your Tort Claim Client may be affected thereunder.**

*[Remainder of Page Intentionally Left Blank]*

---

[2] For the avoidance of doubt, personal identifying information related to holders of Direct Tort Claims on such Rule 2019 Statement shall be filed under seal with the Bankruptcy Court in accordance with the Order to Seal; provided that copies of such information shall be made available to "Permitted Parties" as defined in the Order to Seal.

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS POA BALLOT**

---

**PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW. PLEASE FILL IN ALL
OF THE INFORMATION REQUESTED UNDER ITEM 4. IF THIS BALLOT HAS
NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY
NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

<u>**Item 1.**</u>        **Amount of Claim.**

For purposes of voting to accept or reject the Plan, the undersigned certifies that as of the Voting Record Date, the named Direct Tort Client holds a Direct Tort Claim in the amount set forth below. **Please note that, except as otherwise may be set forth in the Disclosure Statement and Solicitation Procedures Order, each Direct Tort Claim in Class 5 has been temporarily allowed in the amount of $1.00 for voting purpose only, and not for distribution, allowance, or any other purpose.**

| | |
|---|---|
| **Debtor:** | _____ |
| **Claim(s) Amount:** | $1.00 |

<u>**Item 2.**</u>        **Vote on the Plan**

For your Tort Claim Clients, please vote to either accept or to reject the Plan with respect to his or her Claims in Class 5 below (please check one). Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

Prior to voting on the Plan, please note the following:

If you vote to accept or reject the Plan on behalf of your Tort Claim Client, your Tort Claim Client shall be deemed to have consented to the release set forth in <u>Article X.J.3</u> of the Plan unless you opt of the release by checking the box in Item 3 below.

If you abstain from voting on behalf of your Tort Claim Client, your Tort Claim Client shall not be deemed to have consented to the release provisions set forth in <u>Article X.J.3</u> of the Plan. The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions in <u>Article X</u> of the Plan.

| Check <u>only</u> one box: | |
|---|---|
| ☐ | **ACCEPT (I.E., VOTE IN FAVOR OF)** the Plan |
| ☐ | **REJECT (I.E., VOTE AGAINST)** the Plan |

## Item 3.          Optional Release Election.

Please not the following regarding the releases contained under the Plan, unless a holder of a Class 5 Claim who votes to accept or reject the Plan opts out of the Releases by holders of Claims set forth below, such holder shall be deemed to have consented to the releases contained in Article X.J.3 of the Plan, which provides as follows:

## Article X.J.3 of the Plan – Releases by Holders of Claims.

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties[3] to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all Releasing Claim Holders[4] shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, or any related agreements, instruments,

---

[3] "Released Parties" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized RI; (c) the Reorganized RMI; (d) UVFS Management Company, LLC; (e) Yagna Patel; (f) the Equity Security Holders; (g) any Settling Insurance Company, and (h) all of such Persons' Representative, provided, however, that the definition of "Released Parties" shall in all instances be subject to Article X.J of the Plan.

[4] "Releasing Claim Holder" means, collectively, (a) all holders of Claims that vote to accept the Plan and do not opt out of the releases set forth in Article X.J.3 of the Plan; (b) all holders of Claims that are presumed to accept the Plan, except for holders of such Claims that file a timely objection to the releases set forth in Article X.J.3 of the Plan; (c) all holders of Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases set forth in Article X.J.3 of the Plan; and (d) all of predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and all such Persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such. No holder of a Claim in a Class that is Impaired under the Plan will be deemed a "Releasing Claim Holder" to the extent such holder abstained from voting.

and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in **Article X.J.3** of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Tort Litigation Claim to recover on account of such Allowed Claim in accordance with **Article II.B.4** of the Plan. Notwithstanding the foregoing or anything to the contrary herein, with respect to holders of Allowed General Unsecured Claims or Allowed Non-Tort Litigation Claims, nothing in the Plan or the release set forth in **Article X.J.3** of the Plan shall, or shall be construed to, release any such claims or Causes of Action against any Insurance Company (subject to **Article IV.D.3** of the Plan).

If, on behalf of your Tort Claim Client, you voted to accept or reject the Plan in Item 2 above, check this box if your Tort Claim Client elects not to grant the release contained in Article X.J.3 of the Plan.

> The undersigned, as a holder of (or representative of a holder of) a Class 5 Claim, elects to:
>
> ☐      **Opt out of the third party release in Article X.J.3 of the Plan.**

**Certain other Releases, Injunction and Exculpation Provisions Contained in the Plan**

**Article X.F of the Plan – Channeling Injunction.**

**Terms.** To preserve and promote the settlements contemplated by and provided for in the Plan, where necessary, the injunctive effect of the Discharge as provided in sections 1141 and 524 of the Bankruptcy Code and as described in **Article X of the Plan**, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under section 105(a) of the Bankruptcy Code, the sole recourse of any holder of a Tort Claim against a Protected Party on account of such Tort Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents,[5] and such holder shall have no right whatsoever at any time to assert such Tort Claim against any Protected Party or any property or interest in property of any Protected Party. For the avoidance of doubt, the sole recourse for any holder of a Tort Claim covered by any insurance policy issued by a Settling Insurance Company shall be to

---

[5] "Settlement Trust Documents" means, collectively, (a) the Settlement Trust Agreement, (b) the Trust Distribution Procedures, (c) the Document Agreement, (d) the Confirmation Order, and (e) any other agreements, instruments and documents governing the establishment, administration and operation of the Settlement Trust, which shall be substantially in the forms set forth as exhibits in the Plan or in the Plan Supplement, as the same may be amended or modified from time to time in accordance with the terms thereof.

and against the Settlement Trust pursuant to the Settlement Trust Documents. Accordingly, on and after the Effective Date, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Tort Claim against the Protected Parties, or any of them, shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Protected Party with respect to any such Tort Claim, other than from the Settlement Trust pursuant to the Settlement Trust Document, including:

a.    commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Protected Party, or any property or interest in property of any Protected Party;

b.    enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Protected Party, or any property or interest in property of any Protected Party;

c.    creating, perfecting, or otherwise enforcing in any manner, whether directly or indirectly, any Encumbrance of any kind against any Protected Party, or any property or interest in property of any Protected Party;

d.    asserting, implementing or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Protected Party, or any property or interest in property of any Protected Party; or

e.    taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Tort Claim.

Reservations. Notwithstanding anything to the contrary in Article X.F of the Plan, the Channeling Injunction shall not enjoin:

a.    the rights of holders of Tort Claims to assert such Tort Claims against the Settlement Trust in accordance with the Trust Distribution Procedures, including the ability to pursue the Settlement Trust in the tort system as described in Article XII of the Trust Distribution Procedures;

b.    the right of any Person to assert any Claim, debt, obligation or liability for payment of Settlement Trust Expenses solely against the Settlement Trust in accordance with the Settlement Trust Documents;

c.    the Settlement Trust from enforcing its rights under the Plan and the Settlement Trust Documents; or

d.    the rights of the Settlement Trust to prosecute any action against any Non-Settling Insurance Company based on or arising from Tort Insurance Policies, subject to any Insurance Coverage Defenses.

**Article X.J.1 of the Plan – Releases by the Debtors and the Estates.**

**Releases by the Debtors and the Estates of the Released Parties.** As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in <u>Article X.J.1</u> of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

**Releases by the Debtors and the Estates of Avoidance Actions.** As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the assistance of the Equity Security Holders in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized Debtors, and

8

the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General Unsecured Claims, Non-Tort Litigation Claims, and Interests including, the Equity Security Holders of and from any and all Avoidance Actions.

Article X.J.2 of the Plan – Releases by Holders of Tort Claims.

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Protected Parties to facilitate and implement the reorganization of the Debtors, including the settlements embodied in the Plan, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all holders of Tort Claims shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever discharge and release: (a) each and all of the Protected Parties and their respective property and successors and assigns of and from all Tort Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Tort Claims; (b) each and all Equity Security Holders and their respective property and successors and assigns of and from all Tort Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Tort Claims; provided, however, that the releases set forth in Article X.J.2 of the Plan shall not, and shall not be construed to: (i) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (ii) modify, reduce, impair or otherwise affect the ability of any holder of a Tort Claim to recover on account of such Claim in accordance with  Article II.B.5 or Article II.B.6 of the Plan, as applicable. For the avoidance of doubt, holders of Tort Claims covered by any insurance policy issued by a Settling Insurance Company shall, and shall be deemed to, release and discharge the Settling Insurance Companies for such Claims.  The releases in Article X.J.3 of the Plan shall not, and shall not be deemed to, limit the releases in Article X.J.2 of the Plan.

Article X.K of the Plan – Exculpation.

From and after the Effective Date, none of the Exculpated Parties[6] shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or after the Petition Date up to and including the Effective Date in connection with, relating to or arising out of the Chapter 11

---

[6]    "Exculpated Parties" means, collectively, the following Persons: (a) the Debtors; (b) Reorganized Debtors; and (c) all of such Persons' current officers and directors, employees, agents, attorneys, financial advisors, accountants, consultants, representatives, and other professionals.

9

Cases, the negotiation of the Plan Documents, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith or willful misconduct). In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence.

## Article X.L. of the Plan – Injunctions Related to Releases and Exculpation.

**Injunction Related to Releases**. As of the Effective Date, all holders of Claims that are the subject of Article X.J of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under Article X.E of the Plan or released under Article X.J of the Plan; provided, however, that the injunctions set forth in Article X.L.1 of the Plan shall not, and shall not be construed to, enjoin any holder of a Claim that is only the subject of Article X.J of the Plan from taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Injunction Related to Exculpation**. As of the Effective Date, all holders of Claims that are the subject of Article X.K of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under Article X.E of the Plan or exculpated under Article K of the Plan; provided, however, that the injunctions set forth in Article X.L.2 of the Plan shall not, and shall not be construed to, enjoin any Person that is the subject of Article X.K of the Plan from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Item 4.**        **Certifications, Acknowledgment, Signature and Date.**

By signing this POA Ballot, the undersigned certifies under penalty of perjury that each of the following statements is true and correct:

| (i) | I have been provided with a copy of the Disclosure Statement, including the Plan and all other exhibits thereto, and the Solicitation Package materials. |
| --- | --- |

    (i)     I have been provided with a copy of the Disclosure Statement, including the Plan and all other exhibits thereto, and the Solicitation Package materials.

    (ii)    I certify that the claimant identified on this POA Ballot is represented by me.

    (iii)   I have met all applicable standards to receive informed consent from my Tort Claim Client with respect to my client's vote and the release election on this POA Ballot.

    (iv)   I have conducted the diligence necessary to form a reasonable belief that my Tort Claim Client identified on this POA Ballot is a holder of a Class 5 Direct Tort Claim as of the Voting Record Date.

    (v)    I acknowledge that a vote to accept the Plan constitutes acceptance of the treatment of my Tort Claim Client as a holder of a Direct Tort Claim.

    (vi)   I understand that, if accepting the Plan on behalf of one of my Tort Claim Client, my client agrees with the treatment provided for his or her Claim under the Plan.

    (vii)  I have provided the Solicitation Package materials (excluding a ballot) in a timely manner in the form (hard copy, flash drive, or electronic format) to my Tort Claim Client in the form that my Tort Claim Client requested.

    (viii) I further acknowledge that the solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement, the Solicitation Procedures Order, and the Solicitation Procedures contained therein.

    (ix)   I attach to this ballot the signed and notarized power of attorney of my Tort Claim Client that authorizes me to vote to accept or reject the Plan (in addition to any the other election made under the POA Ballot) on behalf of my client.

| Print or Type Name of Attorney: | |
| --- | --- |
| Name of Law Firm: | |
| Attorney Signature: | |
| Street Address: | |

11

| City, State, Zip Code: | |
| Telephone Number: | |
| Email Address: | |
| Date Completed: | |
| Last Four Digits of Social Security Number of Tort Claim Client: | |
| Birthdate of Tort Claim Client (MM/DD/YY): | |

**IF THIS POA BALLOT IS NOT RECEIVED BY THE DEBTORS' COUNSEL ON OR BEFORE _____, 2023 AT 4:00 P.M. (EASTERN TIME) YOUR VOTE WILL NOT BE COUNTED.**

**POA Ballots must be delivered to Debtors' Counsel at the appropriate address listed below, or in the enclosed envelope, as applicable.**

**By standard mail, or overnight mail or personal delivery:**

**Aris J. Karalis, Esquire**
**Karalis PC**
**1900 Spruce Street**
**Philadelphia, PA 19103**

**POA** Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.

If you have questions about this POA Ballot, or if you did not receive access to a copy of the Plan or any related materials, please contact Debtors' counsel by (a) calling Karalis PC at (215) 546-4500, (b) emailing jhysley@karalislaw.com, or (c) writing to Aris J. Karalis, Esquire, Karalis PC, 1900 Spruce Street, Philadelphia, PA 19103.

**DEBTORS COUNSEL IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtors or any other party for payment purposes

## INSTRUCTIONS FOR COMPLETING YOUR MASTER BALLOT

To properly complete this POA Ballot, you must follow the procedures described below, which explain each of the items contained on your POA Ballot. If you have questions, please contact Debtors' counsel using the contact information provided above.

> **1.     POA Ballots and Power of Attorney must be submitted by Standard Mail, or Overnight Mail or Personal Delivery:**

Submit your complete and signed POA Ballot and power of attorney by standard mail using the pre-addressed envelope included in the Solicitation Package, or by overnight mail or personal delivery to:

| Aris J. Karalis, Esquire |
|---|
| Karalis PC |
| 1900 Spruce Street |
| Philadelphia, PA 19103 |

**Debtors counsel will tabulate all properly completed POA Ballots received on or before the Voting Deadline.**

> **2.     To fill out your POA Ballot, you must complete the following:**

a.     **Item 1 (Amount of Claim). Please note that, except as otherwise set forth in the Disclosure Statement and Solicitation Procedures Order, each Direct Tort Claim in Class 5 has been allowed in the amount of $1.00 for voting purposes only, and shall not be binding upon the holder of the Direct Tort Claim, the Debtors, the Settlement Trust, or any other party for any purpose other than voting on the Plan.**

b.     **Item 2 (Vote on the Plan)**. Cast one vote to accept or reject the Plan by checking the appropriate box in Item 2. You must vote the entire amount of your Direct Tort Claim either to accept (i.e., vote in favor of) or reject (i.e., vote against) the Plan and you may not split your vote. Accordingly, any vote within a single Class that attempts partially to accept and partially reject the Plan will not be counted.

c.     If you hold Claims in more than one class, you may receive more than one Ballot or Solicitation Package, labeled for a different class of Claims. Your vote will be counted in determining acceptance or rejection of the Plan by a particular class of Claims only if you complete, sign, and return the Ballot labeled for such class of Claims in accordance with the instructions on the Ballot.

d.     **Item 3 (Releases)**. Pursuant to Article X of the Plan, the Debtors seek approval of the release provision set forth in Article X.J.3 of the Plan and provided above. Holders of Direct Tort Claims who vote to accept or reject the Plan may opt out of this release by checking the box in Item 3.

**IF THE PLAN BECOMES EFFECTIVE, AS A HOLDER OF A DIRECT TORT CLAIM UNDER THE PLAN, IF YOU VOTE TO ACCEPT OR REJECT THE PLAN YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN <u>ARTICLE X.J.3</u> OF THE PLAN, AS SET FORTH ABOVE, UNLESS YOU CHECK THE BOX IN ITEM 3 TO OPT OUT OF THE RELEASES.**

e.    **<u>Item 4 (Certifications, Acknowledgement, Signature, and Date)</u>**. Item 4 contains certain certifications, to be completed by the attorney preparing and signing the POA Ballot, pursuant to which such attorney shall certify under penalty of perjury that he or she has the authority under applicable law to vote to accept or reject the Plan on behalf of the holders of Direct Tort Claims who are listed on the Exhibit to the POA Ballot. Please ensure that you have read and understood the certifications before signing the POA Ballot. If you are unable to make such certifications on behalf of any holder of a Direct Tort Claim under penalty of perjury, you may **not** cast a vote on behalf of such holder and **must** timely send the information regarding the name, claim, and address of such holder to Debtors' Counsel so that such holders may be directly solicited for their vote on the Plan. If the POA Ballot is not signed, the vote(s) shown on the POA Ballot will <u>not</u> be counted.

3.    **Other Instructions for Completing POA Ballots:**

a.    Holders of Direct Tort Claims must vote the full amount of their Claims to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan. A holder of a Direct Tort Claim may not split his or her vote. Accordingly, the vote of any holder of a Direct Tort Claim who purports partially to accept and partially to reject the Plan will not be counted.

b.    Please note that, except as otherwise set forth in the Disclosure Statement and Solicitation Procedures Order, each Direct Tort Claim in Class 5 has been allowed in the amount of $1.00 solely for voting purposes, and shall not be binding upon the **holder of the Direct Tort Claim, the Debtors, the Settlement Trust, the Firms, or any other party for any purpose other than voting on the Plan.**

c.    This POA Ballot is to be used by Firms who represent, and are authorized to vote on behalf of a Direct Tort Claimant. You may be required to provide evidence of your authorization by holders of Direct Tort Claims to vote to accept or reject the Plan. In order to have your Tort Claim Client's vote be counted, your Firm must file a Rule 2019 Statement with the Court prior to or concurrently with the submission of your POA Ballot, and must also submit a copy of the Rule 2019 Statement to Debtors' Counsel with its submission of the POA Ballot and Exhibit. Tort Claim Client information shall be filed under seal in accordance with the Order to Seal and the Bar Date Order; *provided* that copies of such information shall be made available to "Permitted Parties" as defined in the Bar Date Order and Order to Seal.

d.    Each Firm must submit a valid power of attorney to Debtors' Counsel concurrently with its submission of the POA Ballot.

e.    If a Ballot is received directly from the holder of a Direct Tort Claim <u>and</u> a POA Ballot is received from a Firm on account of the same Direct Tort Claim, the Ballot returned by holder of such Claim by the Voting Deadline shall supersede any POA Ballot with respect to such Claim and such POA Ballot shall not be counted.

f.      The POA Ballot may not be used for any purpose other than to transmit votes on the Plan.

g.      Multiple POA Ballots may be completed and delivered to Debtors' Counsel. Subject to the terms of the Solicitation Procedures, votes reflected by multiple POA Ballots shall be counted except to the extent that they are duplicative of other POA Ballots.  If two or more such ballots are inconsistent, the last-dated POA Ballot received before the Voting Deadline will, to the extent of such inconsistency, govern unless otherwise ordered by the Bankruptcy Court.  Notwithstanding the foregoing, if two or more POA Ballots are received from separate counsel on or before the Voting Deadline, each of whom purports to represent the same holder of a Direct Tort Claim and the votes conflict, the Debtors shall reach out to both Firms, and request written documentation of each attorney's representation of such holder in order to resolve the conflict.  If representation of the holder of the Direct Tort Claim is not resolved within ten (10) days from the notice of the conflict as provided by the Debtors, such votes shall not be counted.

f.      Either the claimant, the claimant's personal representative, or the claimant's attorney must sign the Ballot.  If the Ballot is not signed, the vote shown on the Ballot will not be counted.

g.      You must provide the last four digits of the Tort Claim Claimants Social Security Number in Item 4 of the Ballot.

---

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS INCLUDED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPCY COURT.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, DID NOT RECEIVE INSTRUCTIONS REGARDING ACCESSING THE DISCLOSURE STATEMENT OR PLAN, RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT DEBTORS COUNSEL AT:**

**TELEPHONE:**          **215-546-4500**

**E-MAIL:**              jhysley@karalislaw.com

**ADDRESS:**            **Aris J. Karalis, Esquire**
                        **Karalis PC**
                        **1900 Spruce Street**
                        **Philadelphia, PA 19103**

---

**Exhibit 2-5**

Class 6
Indirect Tort Claims

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| ROOSEVELT INN, LLC and | : | Bky. No. 21-11697(AMC) |
| ROOSEVELT MOTOR INN, INC. | : | |
| | : | JOINTLY ADMINISTERED |
| **Debtors** | : | |

### BALLOT FOR CLASS 6 (INDIRECT TORT RELATED CLAIMS)

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING YOUR BALLOT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**ACCESS TO SOLICITATION MATERIALS:**

**YOU HAVE RECEIVED A PAPER FORMAT OF THE PLAN, THE DISCLOSURE STATEMENT, THE BALLOT, AND THE SOLICITATION PROCEDURES ORDER WITH THIS SOLICITATION PACKAGE. IF YOU NEED TO OBTAIN ADDITIONAL SOLICITATION PACKAGES, PLEASE CONTACT DEBTORS' COUNSEL BY (A) CALLING KARALIS PC AT (215) 546-4500 (B) E-MAILING JHYSLEY@KARALISLAW.COM, OR (C) WRITING TO ARIS J. KARALIS, ESQUIRE, KARALIS PC, 1900 SPRUCE STREET, PHILADELPHIA, PA 19103.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE <u>ACTUALLY RECEIVED</u> BY DEBTORS' COUNSEL BY 4:00 P.M. (EASTERN TIME) ON _____ (THE "<u>VOTING DEADLINE</u>").**

**IF YOU VOTE TO ACCEPT OR REJECT THE PLAN, YOU WILL BE RELEASING THE RELEASED PARTIES FROM ANY AND ALL CLAIMS/CAUSES OF ACTION TO THE EXTENT PROVIDED IN ARTICLE X.J.3 OF THE PLAN UNLESS YOU "OPT-OUT" OF SUCH RELEASES. YOU MAY "OPT-OUT" OF SUCH RELEASES AND YOU MUST INDICATE SUCH "OPT-OUT" IN THE BALLOT.**

Pursuant to this ballot (this "Ballot"), the above-captioned debtors and debtors-in-possession (together, the "Debtors") are soliciting votes from holders of Class 6 Indirect Tort Related Claims on the *Plan of Reorganization for Roosevelt Inn, LLC and Roosevelt Motor Inn, Inc.* dated December 16, 2022 [D.I. 353] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan"), which is described in greater detail in that certain disclosure statement regarding the Plan, filed on December 16, 2022_ [D.I. 354] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement"). Capitalized terms used but not

otherwise defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable. On [•], 20__, the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court") entered an order [D.I. [•]] (the "Solicitation Procedures Order") approving the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code and the procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures"). Bankruptcy Court approval of the Disclosure Statement does not indicate the approval of the Plan by the Bankruptcy Court.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code, which is a mechanism by which Tort Related Claims will be channeled to a Settlement Trust established pursuant to section 105(a) of the Bankruptcy Code. For a description of the causes of action to be enjoined and the identities of the Entities that would be subject to these injunctions, see **Article IV.N** of the Disclosure Statement and **Article X** of the Plan, which sets forth the terms of each of these provisions.

The Protected Parties are defined in the Plan and means the following Persons: (a) the Debtors; (b) the Reorganized Debtors; (c) UVFS Management Company, LLC, (d) Yagna Patel; (e) the Equity Security Holders, (f) any Settling Insurance Company, and (g) all of such Persons' Representatives. If the Plan is confirmed, the Protected Parties will benefit from the Channeling Injunction.

You are receiving this Ballot because you have asserted an Indirect Tort Related Claim[1] against the Debtors that occurred prior to the Petition Date (as defined in the Plan, an "Indirect Tort Related Claim"). Your Indirect Tort Related Claim is classified under the Plan in Class 6 (Indirect Tort Related Claims). Accordingly, you have a right to vote to accept or reject the Plan.

Your rights are described in the Disclosure Statement for the Plan and the Solicitation Procedures Order. **This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain elections and certifications with respect to the Plan. If you believe you have received this Ballot in error, or if you believe that have received the wrong Ballot, please contact Debtors' Counsel immediately via the contact information set forth above.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.** To have your vote counted, you must complete, sign, and return this Ballot to Debtors' Counsel by the Voting Deadline.

---

[1] "Indirect Tort Related Claim" means a liquidated or unliquidated claim for contribution, indemnity, subrogation, or reimbursement whether contractual or implied by law (as those terms are defined by applicable non-bankruptcy law of the relevant jurisdiction), or any other indirect or derivative recovery, on account of, or with respect to, any Protected Party's actual or alleged liability, for any Claim related to a Tort Claim and any other derivative Tort Claim of any kind whatsoever whether in the nature of or sounding in contract, tort, warranty or any other theory of law or equity whatsoever, including any indemnification, reimbursement, hold-harmless or other payment obligation provided for under any prepetition insurance policy or contract; provided, however, that any retrospective premiums and self-insured retentions arising out of any Tort Claims under the Tort Insurance Policies shall not constitute an Indirect Tort Related Claim and shall be treated in accordance with Article IV.D.1 of the Plan.

2

If you vote to accept or reject the Plan, you will be deemed to provide the releases in **<u>Article X.J.3</u>** of the Plan and as set forth below unless you opt out of such releases. You may check the box below to opt out of the releases in **<u>Article X.J.3</u>** of the Plan. Please be advised that the Plan also contains injunction and exculpation provisions, certain of which are set forth below. If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on you whether or not you elect to opt out of the releases in **<u>Article X.J.3</u>** of the Plan by this Ballot. For a full description of these provisions, see Article IV.N of the Disclosure Statement and Article X of the Plan, which sets forth the terms of each of these provisions.

**You should carefully review the Disclosure Statement and the Plan, including the Plan's injunction, exculpation, and release provisions, as the rights of holders of Indirect Tort Related Claims may be affected thereunder. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.**

*[Remainder of Page Intentionally Left Blank]*

3

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

**PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW.  PLEASE FILL IN ALL
OF THE INFORMATION REQUESTED UNDER ITEM 4.  IF THIS BALLOT HAS
NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY
NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

**<u>Item 1</u>.**        **Amount of Claim.**

For purposes of voting to accept or reject the Plan, the undersigned certifies that as of the Voting Record Date, the undersigned holds an Indirect Tort Related Claim in the amount set forth below.  **Please note that, except as otherwise may be set forth in the Disclosure Statement and Solicitation Procedures Order, each Indirect Tort Related Claim in Class 6 has been temporarily allowed in the amount of $1.00 for voting purpose only, and not for distribution, allowance, or any other purpose.**

| | |
|---|---|
| **Debtor:** | _____ |
| **Claim(s) Amount:** | $1.00 |

**<u>Item 2.</u>**        **Vote on the Plan**

Please vote to either accept or to reject the Plan with respect to your Claims in Class 6 below (please check one).  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

Prior to voting on the Plan, please note the following:

If you vote to accept or reject the Plan, you shall be deemed to have consented to the release set forth in <u>Article X.J.3</u> of the Plan unless you opt out of the release by checking the box in Item 3 below.

If you abstain from voting, you shall not be deemed to have consented to the release provisions set forth in <u>Article X.J.3</u> of the Plan.  The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions in <u>Article X</u> of the Plan.

| Check <u>only</u> one box: | |
|---|---|
| ☐ | **ACCEPT (I.E., VOTE IN FAVOR OF)** the Plan |
| ☐ | **REJECT (I.E., VOTE AGAINST)** the Plan |

4

<u>Item 3.</u>          **Optional Release Election.**

Unless a holder of a Class 6 Claim who votes to accept or reject the Plan opts out of the Releases by holders of Claims set forth below, such holder shall be deemed to have consented to the releases contained in <u>Article X.J.3</u> of the Plan, which provides as follows:

<u>Article X.J.3 of the Plan – Releases by Holders of Claims.</u>

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties[2] to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all Releasing Claim Holders[3] shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the

---

[2]    "<u>Released Parties</u>" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized RI; (c) the Reorganized RMI; (d) UVFS Management Company, LLC; (e) Yagna Patel; (f)  the Equity Security Holders; (g) any Settling Insurance Company, and (h) all of such Persons' Representative, <u>provided</u>, <u>however</u>, that the definition of "Released Parties" shall in all instances be subject to <u>Article X.J</u> of the Plan.

[3]    "<u>Releasing Claim Holder</u>" means, collectively, (a) all holders of Claims that vote to accept the Plan and do not opt out of the releases set forth in <u>Article X.J.3</u> of the Plan; (b) all holders of Claims that are presumed to accept the Plan, except for holders of such Claims that file a timely objection to the releases set forth in <u>Article X.J.3</u> of the Plan; (c) all holders of Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases set forth in <u>Article X.J.3</u> of the Plan; and (d) all of predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and all such Persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such. No holder of a Claim in a Class that is Impaired under the Plan will be deemed a "Releasing Claim Holder" to the extent such holder abstained from voting.

negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in Article X.J.3 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Tort Litigation Claim to recover on account of such Allowed Claim in accordance with Article II.B.4 of the Plan. Notwithstanding the foregoing or anything to the contrary herein, with respect to holders of Allowed General Unsecured Claims or Allowed Non-Tort Litigation Claims, nothing in the Plan or the release set forth in Article X.J.3 of the Plan shall, or shall be construed to, release any such claims or Causes of Action against any Insurance Company (subject to Article IV.D.3 of the Plan).

If you voted to accept or reject the Plan in Item 2 above, check this box if you elect not to grant the release contained in Article X.J.3 of the Plan.

| | |
|---|---|
| The undersigned, as a holder of (or representative of a holder of) a Class 6 Claim, elects to: | |
| ☐ | **Opt out of the third party release in Article X.J.3 of the Plan.** |

### Certain other Releases, Injunction and Exculpation Provisions Contained in the Plan

### Article X.F of the Plan – Channeling Injunction.

**Terms.** To preserve and promote the settlements contemplated by and provided for in the Plan, where necessary, the injunctive effect of the Discharge as provided in sections 1141 and 524 of the Bankruptcy Code and as described in Article X of the Plan, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under section 105(a) of the Bankruptcy Code, the sole recourse of any holder of a Tort Claim against a Protected Party on account of such Tort Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents,[4] and such holder shall have no right whatsoever at any time to assert such Tort Claim against any Protected Party or any property or interest in property of any Protected Party. For the avoidance of doubt, the sole recourse for any holder of a Tort Claim covered by any insurance policy issued by a Settling Insurance Company shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents. Accordingly, on and after the Effective Date, all Persons that have held or asserted, currently hold or

---

[4]   "Settlement Trust Documents" means, collectively, (a) the Settlement Trust Agreement, (b) the Trust Distribution Procedures, (c) the Document Agreement, (d) the Confirmation Order, and (e) any other agreements, instruments and documents governing the establishment, administration and operation of the Settlement Trust, which shall be substantially in the forms set forth as exhibits in the Plan or in the Plan Supplement, as the same may be amended or modified from time to time in accordance with the terms thereof.

assert, or that may in the future hold or assert, any Tort Claim against the Protected Parties, or any of them, shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Protected Party with respect to any such Tort Claim, other than from the Settlement Trust pursuant to the Settlement Trust Document, including:

a.      commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Protected Party, or any property or interest in property of any Protected Party;

b.      enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Protected Party, or any property or interest in property of any Protected Party;

c.      creating, perfecting, or otherwise enforcing in any manner, whether directly or indirectly, any Encumbrance of any kind against any Protected Party, or any property or interest in property of any Protected Party;

d.      asserting, implementing or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Protected Party, or any property or interest in property of any Protected Party; or

e.      taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Tort Claim.

<u>Reservations</u>. Notwithstanding anything to the contrary in <u>Article X.F</u> of the Plan, the Channeling Injunction shall not enjoin:

a.      the rights of holders of Tort Claims to assert such Tort Claims against the Settlement Trust in accordance with the Trust Distribution Procedures, including the ability to pursue the Settlement Trust in the tort system as described in Article XII of the Trust Distribution Procedures;

b.      the right of any Person to assert any Claim, debt, obligation or liability for payment of Settlement Trust Expenses solely against the Settlement Trust in accordance with the Settlement Trust Documents;

c.      the Settlement Trust from enforcing its rights under the Plan and the Settlement Trust Documents; or

d.    the rights of the Settlement Trust to prosecute any action against any Non-Settling Insurance Company based on or arising from Tort Insurance Policies, subject to any Insurance Coverage Defenses.

**Article X.J.1 of the Plan – Releases by the Debtors and the Estates.**

**Releases by the Debtors and the Estates of the Released Parties.** As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in Article X.J.1 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

**Releases by the Debtors and the Estates of Avoidance Actions.** As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the assistance of the Equity Security Holders in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized Debtors, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General Unsecured

8

Claims, Non-Tort Litigation Claims, and Interests including, the Equity Security Holders of and from any and all Avoidance Actions.

**Article X.J.2 of the Plan – Releases by Holders of Tort Related Claims.**

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Protected Parties to facilitate and implement the reorganization of the Debtors, including the settlements embodied in the Plan, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all holders of Tort Claims shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever discharge and release: (a) each and all of the Protected Parties and their respective property and successors and assigns of and from all Tort Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Tort Claims; (b) each and all Equity Security Holders and their respective property and successors and assigns of and from all Tort Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Tort Claims; provided, however, that the releases set forth in Article X.J.2 of the Plan shall not, and shall not be construed to: (i) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (ii) modify, reduce, impair or otherwise affect the ability of any holder of a Tort Claim to recover on account of such Claim in accordance with  Article II.B.5 or Article II.B.6 of the Plan, as applicable. For the avoidance of doubt, holders of Tort Claims covered by any insurance policy issued by a Settling Insurance Company shall, and shall be deemed to, release and discharge the Settling Insurance Companies for such Claims.  The releases in Article X.J.3 of the Plan shall not, and shall not be deemed to, limit the releases in Article X.J.2 of the Plan.

**Article X.K of the Plan – Exculpation.**

From and after the Effective Date, none of the Exculpated Parties[5] shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or after the Petition Date up to and including the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan

---

[5]    "Exculpated Parties" means, collectively, the following Persons: (a) the Debtors; (b) Reorganized Debtors; and (c) all of such Persons' current officers and directors, employees, agents, attorneys, financial advisors, accountants, consultants, representatives, and other professionals.

or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith or willful misconduct). In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence.

### Article X.L. of the Plan – Injunctions Related to Releases and Exculpation.

**Injunction Related to Releases.** As of the Effective Date, all holders of Claims that are the subject of Article X.J of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under Article X.E of the Plan or released under Article X.J of the Plan; provided, however, that the injunctions set forth in Article X.L.1 of the Plan shall not, and shall not be construed to, enjoin any holder of a Claim that is only the subject of Article X.J of the Plan from taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Injunction Related to Exculpation.** As of the Effective Date, all holders of Claims that are the subject of Article X.K of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under Article X.E of the Plan or exculpated under Article K of the Plan; provided, however, that the injunctions set forth in Article X.L.2 of the Plan shall not, and shall not be construed to, enjoin any Person that is the subject of Article X.K of the Plan from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

10

**Item 4.**         **Certifications, Acknowledgment, Signature and Date.**

By signing this Ballot, the holder of the Indirect Tort Related Claim (or authorized signatory of such holder) acknowledges receipt of the Disclosure Statement, the Plan, and the other applicable solicitation materials, and certifies that:

(i)     it has the power and authority to vote to accept or reject the Plan,

(ii)    it was the holder (or is entitled to vote on behalf of such holder) of the Class 6 Indirect Tort Related Claim described in Item 1 as of the Voting Record Date,

(iii)   it has not submitted any other Ballots for other Class 6 Indirect Tort Related Claims, or if it has submitted any other Ballots with respect to such Claims, then any such Ballots dated earlier in time are hereby revoked,

(iv)    it acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of such Entity as a holder of Class 6 Indirect Tort Related Claim,

(v)     it understands and, if accepting the Plan, agrees with the treatment provided for its Claim(s) under the Plan,

(vi)    it understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by Debtors' Counsel before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by Debtors' Counsel, and

(vii)   all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustee in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that any otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

| | |
|---|---|
| Print or Type Name of Claimant | |
| Last Four Digits of Social Security Number of Claimant: | |
| Birthdate of Claimant (MM/DD/YY): | |
| Signature: | |
| Name of Signatory (if different than Claimant: | |
| If by Authorized Agent, Title of Agent: | |
| Street Address: | |
| City, State, Zip Code: | |
| Telephone Number: | |
| Email Address: | |
| Date Completed: | |

**IF THIS BALLOT IS NOT RECEIVED BY DEBTORS' COUNSEL
ON OR BEFORE _____ , 2023 AT 4:00 P.M. (EASTERN TIME)
YOUR VOTE WILL NOT BE COUNTED.**

**Ballots must be delivered to Debtors' Counsel at the appropriate address listed below, or in the enclosed envelope, as applicable.**

12

**By standard or overnight mail or personal delivery:**

**Aris J. Karalis, Esquire**
**Karalis PC**
**1900 Spruce Street**
**Philadelphia, PA 19103**

Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.

If you have questions about this Ballot, or if you did not receive access to a copy of the Plan or any related materials, please contact Debtors' Counsel by (a) calling Karalis PC at (215) 546-4500, (b) emailing jhysley@karalislaw.com, or (c) writing to Aris J. Karalis, Esquire, Karalis PC, 1900 Spruce Street, Philadelphia, PA 19103.

**DEBTORS' COUNSEL IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtors or any other party for payment purposes.

## INSTRUCTIONS FOR COMPLETING YOUR BALLOT

To properly complete this Ballot, you must follow the procedures described below, which explain each of the items contained in your Ballot.  If you have questions, please contact Debtors' Counsel using the contact information provided above.

**1.    Ballots must be submitted by Standard Mail, or Overnight Mail or Personal Delivery:**

Submit your complete and signed Ballot by standard mail using the pre-addressed envelope included in the Solicitation Package, or by overnight mail or personal delivery to:

| |
|---|
| Aris J. Karalis, Esquire |
| Karalis PC |
| 1900 Spruce Street |
| Philadelphia, PA 19103 |

**Debtors' Counsel will tabulate all properly completed Ballots received on or before the Voting Deadline.**

**2.    To fill out your Ballot, you must complete the following:**

a.    **Item 1 (Amount of Claim).  Please note that, except as otherwise set forth in the Disclosure Statement and Solicitation Procedures Order, each Indirect Tort Related Claim in Class 6 has been allowed in the amount of $1.00 for voting purposes only, and shall not be binding upon the holder of the Indirect Tort Related Claim, the Debtors, the Settlement Trust, or any other party for any purpose other than voting on the Plan.**

b.    **Item 2 (Vote on the Plan)**.  Cast one vote to accept or reject the Plan by checking the appropriate box in Item 2.  You must vote the entire amount of your Indirect Tort Related Claim either to accept (*i.e.*, vote in favor of) or reject (*i.e.*, vote against) the Plan and you may not split your vote.  Accordingly, any vote within a single Class that attempts partially to accept and partially reject the Plan will not be counted.

c.    If you hold Claims in more than one class, you may receive more than one Ballot or Solicitation Package, labeled for a different class of Claims.  Your vote will be counted in determining acceptance or rejection of the Plan by a particular class of Claims only if you complete, sign, and return the Ballot labeled for such class of Claims in accordance with the instructions on the Ballot.

d.    **Item 3 (Releases)**.  Pursuant to Article X of the Plan, the Debtors seek approval of the release provision set forth in Article X.J.3 of the Plan and provided above.  Holders of Indirect Tort Related Claims who vote to accept or reject the Plan may opt out of this release by checking the box in Item 3.

14

> **IF THE PLAN BECOMES EFFECTIVE, AS A HOLDER OF AN INDIRECT ABUSE CLAIM UNDER THE PLAN, IF YOU VOTE TO ACCEPT OR REJECT THE PLAN YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN <u>ARTICLE X.J.3</u> OF THE PLAN, AS SET FORTH ABOVE, UNLESS YOU CHECK THE BOX IN ITEM 3 TO OPT OUT OF THE RELEASES.**

e.     <u>**Item 4 (Certifications, Acknowledgement, Signature, and Date)**</u>.  Either the claimant, the claimant's personal representative, or the claimant's attorney <u>must</u> sign the Ballot.  If the Ballot is not signed, the vote shown on the Ballot will <u>not</u> be counted.

f.     Claimants with Social Security Numbers <u>must</u> provide the last four digits of their Social Security Number in Item 4 of the Ballot.

g.     The claimant, the claimant's personal representative, or the claimant's attorney, must certify certain information on the Ballot.  Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

h.     By signing the Ballot, you make the following certifications on information and belief:

(i)     I have the power and authority to vote to accept or reject the Plan,

(ii)     I am the holder (or am entitled to vote on behalf of such holder) of the Indirect Tort Related Claim described in Item 1 as of the Voting Record Date,

(iii)     I have not submitted any other Ballots for other Class 6 Indirect Tort Related Claims, or if I have submitted any other Ballots with respect to such Claims, then any such Ballots dated earlier in time are hereby revoked,

(iv)     I acknowledge that a vote to accept the Plan constitutes an acceptance of the treatment of my Claim as Class 6 Claim,

(v)     I understand and, if accepting the Plan, agrees with the treatment provided for my Claim(s) under the Plan,

(vi)     I understand and acknowledge that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by Debtors' Counsel before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by Debtors' Counsel, and

(vii)     all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be

15

binding on the transferees, successors, assigns, heirs, executors, administrators, trustee in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that any otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

**3.**        **Other Instructions for Completing the Ballots:**

a.        The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest or an assertion or admission of a Claim or Interest.

b.        The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

c.        If you submit more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to Debtors' Counsel and received by Debtors' Counsel before the Voting Deadline will supersede and revoke any prior Ballot.

d.        If more than one Ballot is received from the holder of a Direct Tort Claim entitled to vote and from an attorney purporting to represent such holder prior to the Voting Deadline, the Ballot received from the holder of the Direct Tort Claim entitled to vote will be counted.

e.        To the extent you have received two (2) or more duplicative Ballots on account of the same Indirect Tort Related Claim, please note that each claimant is authorized to submit only one Ballot on account of such Claim.

f.        In the event that (a) the Debtors revoke or withdraw the Plan, or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

g.        There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS INCLUDED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPCY COURT.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, DID NOT RECEIVE INSTRUCTIONS REGARDING ACCESSING THE DISCLOSURE STATEMENT OR PLAN, RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT DEBTORS' COUNSEL AT:**

| | |
|---|---|
| **TELEPHONE:** | **215-546-4500** |
| **E-MAIL:** | **jhysley@karalislaw.com** |
| **ADDRESS:** | **Aris J. Karalis, Esquire**<br>**Karalis PC**<br>**1900 Spruce Street**<br>**Philadelphia, PA 19103** |

**Exhibit 3**

**Form of Confirmation Hearing Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **In re:** | : | **CHAPTER 11** |
| | : | |
| **ROOSEVELT INN, LLC and** | : | **Bky. No. 21-11697(AMC)** |
| **ROOSEVELT MOTOR INN, INC.** | : | |
| | : | **JOINTLY ADMINISTERED** |
| **Debtors** | : | |
| | : | |

**NOTICE OF HEARING TO CONSIDER CONFIRMATION
OF PLAN OF REORGANIZATION FOR
ROOSEVELT INN, LLC AND ROOSEVELT MOTOR INN, INC.**

**PLEASE TAKE NOTICE THAT** on December 16, 2022, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") filed:

- the *Plan of Reorganization for Roosevelt Inn, LLC and Roosevelt Motor Inn, Inc.* [D.I. [353]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan");[1] and

- the *Disclosure Statement for the Plan of Reorganization for Roosevelt Inn, LLC and Roosevelt Motor Inn, Inc.* [D.I. [354]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement").

**The Plan contains releases of the Debtors and certain third parties and related injunction provisions. If approved, these provisions could release Tort Claims held against the Debtors and the other Protected Parties. If approved, these provisions would prohibit holders of Tort Claims from filing lawsuits against the Debtors and the other Protected Parties. Instead, the Plan provides a mechanism by which Tort Claims against the Debtors will be channeled to a trust established pursuant to section 105(a) of the Bankruptcy Code.** The Debtors are proponents of the Plan and support confirmation thereof. You should carefully review the Plan and the release, injunction, and related provisions in the Plan.

You may access and download copies of the Plan, the Disclosure Statement, and the Solicitation Procedures Order for a fee via PACER at http://www.paed.uscourts.gov. If you would prefer to receive an email with pdf copies of the documents free of charge, please contact Karalis PC ("Debtors' Counsel") by: (a) calling Karalis PC at 215-546-4500, (b) emailing Jill Hysley at jhysley@karalislaw.com, or (c) writing to Aris J. Karalis, Esquire, Karalis PC, 1900 Spruce Street, Philadelphia, PA 19103.

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Solicitation Procedures (as defined below), as applicable.

**PLEASE TAKE FURTHER NOTICE THAT:**

1.    *Approval of Disclosure Statement.* On [●], 2023, the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court") entered an order [D.I. [●]] (the "Solicitation Procedures Order") approving the Disclosure Statement. The Solicitation Procedures Order, among other things, authorizes the Debtors to solicit votes to accept or reject the Plan and establishes procedures related thereto (the "Solicitation Procedures").

2.    *Confirmation Hearing.* The Bankruptcy Court has scheduled a hearing beginning on **[●], 2023 at [● .m.] (Eastern Time)** (the "Confirmation Hearing") to consider whether to confirm the Plan. The Confirmation Hearing will be held before the Honorable Ashely M. Chan, United States Bankruptcy Judge, at the Bankruptcy Court, located at 900 Market Street, Courtroom 4, Philadelphia, PA 19107. **The Confirmation Hearing will be conducted via [●]** *[to be determined].* **Please be advised that the Confirmation Hearing may be adjourned or continued from time to time by the Bankruptcy Court or the Debtors without further notice other than as indicated in any notice or agenda of matters scheduled for a particular hearing that is filed with the Bankruptcy Court.** The Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to creditors or other parties in interest, unless such notice is required by the Bankruptcy Code, Bankruptcy Rules, or other applicable law.

3.    *Voting Record Date.* Holders of Claims against the Debtors in Class 1 (Secured Claims), Class 3 (General Unsecured Claims), Class 4 (Non-Tort Litigation Claims), Class 5 (Direct Tort Claims), and Class 6 (Indirect Tort Related Claims), (each, a "Voting Class" and, collectively, the "Voting Classes") as of [●], 2023 (the "Voting Record Date") are entitled to vote on account of such Claims. However, a holder of a Claim in a Voting Class is nonetheless not entitled to vote under the following circumstances:

    (a)    a Claim filed for $0.00 is not entitled to vote on the Plan;

    (b)    as of the Voting Record Date, such holder's Claim that has been expunged, disallowed, disqualified, withdrawn, or superseded;

    (c)    as of the Solicitation Date, such holder's Claim is the subject of a pending objection filed with the Bankruptcy Court, other than a "reclassify" or "reduce and allow" objection, pending the occurrence of a Resolution Event as provided in the Solicitation Procedures;

    (d)    a Claim that is not listed on the Debtors' Schedules, or a Claim that is scheduled as contingent, unliquidated, or disputed and has not been paid or superseded by a timely filed Proof of Claim; and

    (e)    a holder of a Disputed Claim whose claim has not been resolved through a Resolution Event.

4.    ***Calculation of Votes with Respect to Non-Tort Litigation Claims, Direct Tort Claims, and Indirect Tort Related Claims.*** Pursuant to the Solicitation Procedures, all Non-Tort Litigation Claims, Direct Tort Claims and Indirect Tort Related Claims in Class 4, Class 5 and Class 6 of the Plan, respectively, will be temporarily allowed in the amount of $1.00 in the aggregate per claimant solely for purposes of voting to accept or reject the Plan and not for any other purpose.

5.    ***Voting Deadline.*** All votes to accept or reject the Plan must be <u>actually received</u> by the Debtors' Counsel by [●], 2023 at 4:00 p.m. (Eastern Time) (the "<u>Voting Deadline</u>"). If you are entitled to vote to accept or reject the Plan, an appropriate ballot and voting instructions have been included in the package of materials containing this Notice, or, alternatively, such items may have been sent to your attorney. You must return your Ballot to the address specified in the instructions accompanying the Ballot so that it is received by Debtors' Counsel no later than the Voting Deadline. **If you do not return your Ballot so that it is actually received by Debtors' Counsel by the Voting Deadline, your vote may not be counted.** Any failure to follow the voting instructions included with the Ballot may disqualify your Ballot and your vote. If you have not received a Ballot and are entitled to vote on the Plan, you may request a Ballot and voting instructions from Debtors' Counsel by: (a) calling Karalis PC at 215-546-4500, (b) emailing Jill Hysley at <u>jhysley@karalislaw.com</u>, or (c) writing to Aris J. Karalis, Esquire, Karalis PC, 1900 Spruce Street, Philadelphia, PA 19103

6.    ***Plan Supplement.*** The Debtors will file the Plan Supplement no later than **[●], 2021 at 4:00 p.m. (Eastern Time)**. The Plan Supplement will include: (a) the Assumed Contracts and Unexpired Leases Schedule; (b) the form of the Document Agreement; (c) change if any, to Reorganized RI's directors and officers; (d) the Rejected Contracts and Unexpired Leases Schedule; (e) the name of the initial members of the Settlement Trust Advisory Committee; and (f) the form of releases to be executed by a holder of a Tort Claim with respect to such Tort Claim as a condition precedent to receiving any proceeds from the Settlement Trust as set forth in the Trust Distribution Procedures; <u>provided</u> that the Plan Documents listed in clauses (a) and (d) of the foregoing sentence will be revised as needed, in the Debtors' discretion, subject to <u>Article VI</u> of the Plan. The Plan Supplement shall be served only on those parties that have requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 and any party in interest who requests in writing a copy from counsel to the Debtors.

7.    ***Parties in Interest Not Entitled to Vote.*** Pursuant to the Plan, holders of Unimpaired Claims are presumed to accept the Plan are not entitled to vote and will not receive a Ballot. Such holders will instead receive a Notice of Non-Voting Status. The holders of Administrative Expense Claims and Priority Tax Claims, which are unclassified under the Plan (collectively, the "<u>Unclassified Claims</u>") will also receive Notice of Non-Voting Status. If you have filed a Proof of Claim that is subject to an objection other than a "reclassify" or "reduce and allow" objection that is filed with the Bankruptcy Court on or before the Solicitation Date (a "<u>Disputed Claim</u>"), and if you seek to challenge the disallowance or estimation of your Disputed Claim for voting purposes, you must file with the Bankruptcy Court a motion for an order, pursuant to Bankruptcy Rule 3018(a), temporarily allowing such claim for purposes of voting to accept or reject the Plan (a "<u>Rule 3018(a) Motion</u>"). Any Rule 3018(a) Motion must be filed with the Bankruptcy Court and served on the Debtors on or before [●], 2023. If a holder of a Disputed Claim files a timely Rule 3018(a) Motion, such holder's Ballot shall not be counted unless a

Resolution Event occurs with respect to such Disputed Claim prior to **[●], 2023** (the "Voting Resolution Event Deadline").

8.    ***Objections to Confirmation.*** If you would like to object to the Plan, you may do so by filing your objection no later than **[●], 2023 at 4:00 p.m. (Eastern Time)** (the "Plan Objection Deadline"). Any objections or responses to confirmation of the Plan, must: (a) be in writing; (b) state the name and address of the objecting party and the nature and amount of the Claim of such party; (c) state with particularity the legal and factual basis and nature of any objection to the Plan and include any evidentiary support therefor; and (d) **If you are required to file documents electronically by Local Bankruptcy Rule 5005-1**, you must file your response electronically. **If you are not required to file** electronically, you must file your response at: Clerk, United States Bankruptcy Court for the Eastern District of Pennsylvania, Robert N.C. Nix Federal Building, 900 Market Street, Suite 400, Philadelphia, PA 19107 together with proof of service **on or before the Plan Objection Deadline,** and served so as to be actually received by the parties below on or before the Plan Objection Deadline, which service may be through the CM/ECF system, with courtesy copies by email:

(a)    Debtors' Counsel, Karalis PC, 1900 Spruce Street, Philadelphia, PA 19103 (Attn: Aris J. Karalis, Esquire (akaralis@karalislaw.com)); and

(b)    the U.S. Trustee, 900 Market Street, Suite 320, Philadelphia, PA 19107 (Attn: George M. Conway (george.m.conway@usdoj.gov)).

> **OBJECTIONS NOT TIMELY FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE DEEMED OVERRULED WITHOUT FURTHER NOTICE.**

9.    The Bankruptcy Court has approved the following dates and deadlines in connection with the solicitation of votes on the Plan.

| Event | Date |
| --- | --- |
| Voting Record Date | [●], 2023 |
| Deadline to Distribute Solicitation Packages | [●], 2023 |
| Plan Supplement Deadline | [●], 2023 |
| Voting Resolution Event Deadline | [●], 2023 |
| Voting Deadline | [●], 2023 |
| Plan Objection Deadline | [●], 2023 |
| Voting Report Deadline | [●], 2023 |
| Deadline to File Confirmation Briefs and Replies | [●], 2023 |
| Confirmation Hearing | [●], 2023 |

10.    Please be advised that the Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code. Additionally, <u>Article X</u> of the Plan contains certain releases, injunctions, and exculpation provisions, which will become effective if the Plan is approved and described in <u>Article IV.N</u> of the Disclosure Statement. Such provisions include the following:

a.    <u>Discharge Injunction</u>. From and after the Effective Date, except as expressly provided in the Plan or the Confirmation Order, all holders of Claims or Interests of any nature whatsoever against or in the Debtors or any of their assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are discharged pursuant to the terms of the Plan shall be precluded and permanently enjoined from taking any of the following actions on account of, or on the basis of, such discharged Claims and Interests: (a) commencing or continuing any action or other proceeding of any kind against the Debtors, Reorganized Debtors, the Settlement Trust, or its or their respective property; (b) enforcing, attaching, collecting, or recovering by any manner or means of judgment, award, decree or other against the Debtors, Reorganized Debtors, the Settlement Trust, or its or their respective property; (c) creating, perfecting or enforcing any Lien or Encumbrance of any kind against the Debtors, Reorganized Debtors, the Settlement Trust, or its or their respective property; or (d) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. The foregoing injunction shall extend to the successors and assigns of the Debtors (including Reorganized Debtors) and its and their respective properties and interests in property. In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge or termination of all Claims, Interests and other debts and liabilities against or in the Debtors pursuant to sections 105, 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time to the extent such judgment relates to a discharged Claim or Interest.

b.    <u>Releases by the Debtors and the Estates of the Released Parties</u>. As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties[2] to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or

---

[2] "Released Parties" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized RI; (c) the Reorganized RMI; (d) UVFS Management Company, LLC; (e) Yagna Patel; (f) the Equity Security Holders; (g) any Settling Insurance Company, and (h) all of such Persons' Representative, <u>provided</u>, <u>however</u>, that the definition of "Released Parties" shall in all instances be subject to <u>Article X.J</u> of the Plan.

that may be asserted on behalf of the Debtors, Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in <u>Article X.J.1</u> of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

      c.      <u>Releases by the Debtors and the Estates of Avoidance Actions</u>.  As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the assistance of the Equity Security Holders in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized Debtors, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General Unsecured Claims, Non-Tort Litigation Claims, and Interests including, the Equity Security Holders of and from any and all Avoidance Actions.

      d.      <u>Releases by Holders of Tort Claims</u>. As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Protected Parties[3] to facilitate and implement the reorganization of the Debtors, including the settlements embodied in the Plan, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all holders of Tort Claims shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever discharge and release: (a)

---

[3] "<u>Protected Parties</u>" means the following Persons: (a) the Debtors; (b) the Reorganized Debtors; (c) UVFS Management Company, LLC, (d) Yagna Patel; (e) the Equity Security Holders, (f) any Settling Insurance Company, and (g) all of such Persons' Representatives.

each and all of the Protected Parties and their respective property and successors and assigns of and from all Tort Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Tort Claims; (b) each and all Equity Security Holders and their respective property and successors and assigns of and from all Tort Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Tort Claims; provided, however, that the releases set forth in Article X.J.2 of the Plan shall not, and shall not be construed to: (i) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (ii) modify, reduce, impair or otherwise affect the ability of any holder of a Tort Claim to recover on account of such Claim in accordance with Article II.B.5 or Article II.B.6, as applicable. For the avoidance of doubt, holders of Tort Claims covered by any insurance policy issued by a Settling Insurance Company shall, and shall be deemed to, release and discharge the Settling Insurance Companies for such Claims. The releases in Article X.J.3 of the Plan shall not, and shall not be deemed to, limit the releases in Article X.J.2 of the Plan.

e.    Releases by Holders of Claims. As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all Releasing Claim Holders[4] shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other

---

[4] "Releasing Claim Holder" means, collectively, (a) all holders of Claims that vote to accept the Plan and do not opt out of the releases set forth in Article X.J.3 of the Plan; (b) all holders of Claims that are presumed to accept the Plan, except for holders of such Claims that file a timely objection to the releases set forth in Article X.J.3 of the Plan; (c) all holders of Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases set forth in Article X.J.3 of the Plan; and (d) all of predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and all such Persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such. No holder of a Claim in a Class that is Impaired under the Plan will be deemed a "Releasing Claim Holder" to the extent such holder abstained from voting.

circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in Article X.J.3 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Tort Litigation Claim to recover on account of such Allowed Claim in accordance with Article II.B.4. Notwithstanding the foregoing or anything to the contrary herein, with respect to holders of Allowed General Unsecured Claims or Allowed Non-Tort Litigation Claims, nothing in the Plan or the release set forth in Article X.J.3 of the Plan shall, or shall be construed to, release any such claims or Causes of Action against any Insurance Company (subject to Article IV.D.3 of the Plan).

     f.    **Channeling Injunction.**

     1.    **Terms**. Notwithstanding anything to the contrary herein, to preserve and promote the settlements contemplated by and provided for in the Plan, where necessary, the injunctive effect of the Discharge as provided in sections 1141 and 524 of the Bankruptcy Code and as described in Article X of the Plan, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under section 105(a) of the Bankruptcy Code, the sole recourse of any holder of a Tort Claim against a Protected Party on account of such Tort Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Tort Claim against any Protected Party or any property or interest in property of any Protected Party. For the avoidance of doubt, the sole recourse for any holder of a Tort Claim covered by any insurance policy issued by a Settling Insurance Company shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents. Accordingly, on and after the Effective Date, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Tort Claim against the Protected Parties, or any of them, shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Protected Party with respect to any such Tort Claim, other than from the Settlement Trust pursuant to the Settlement Trust Document, including:

a.    commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Protected Party, or any property or interest in property of any Protected Party;

b.    enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Protected Party, or any property or interest in property of any Protected Party;

c.    creating, perfecting, or otherwise enforcing in any manner, whether directly or indirectly, any Encumbrance of any kind against any Protected Party, or any property or interest in property of any Protected Party;

d.    asserting, implementing or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Protected Party, or any property or interest in property of any Protected Party; or

e.    taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Tort Claim.

2.    <u>Reservations</u>. Notwithstanding anything to the contrary in <u>Article X.F</u> of the Plan, the Channeling Injunction shall not enjoin:

a.    the rights of holders of Tort Claims to assert such Tort Claims against the Settlement Trust in accordance with the Trust Distribution Procedures, including the ability to pursue the Settlement Trust in the tort system as described in Article XII of the Trust Distribution Procedures;

b.    the right of any Person to assert any Claim, debt, obligation or liability for payment of Settlement Trust Expenses solely against the Settlement Trust in accordance with the Settlement Trust Documents;

c.    the Settlement Trust from enforcing its rights under the Plan and the Settlement Trust Documents; or

d.    the rights of the Settlement Trust to prosecute any action against any Non-Settling Insurance Company based on or arising from Tort Insurance Policies, subject to any Insurance Coverage Defenses.

9

g. **Exculpation.** From and after the Effective Date, none of the Exculpated Parties[5] shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or after the Petition Date up to and including the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith or willful misconduct). In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence.

h. **Injunction Related to Releases.** As of the Effective Date, all holders of Claims that are the subject of Article X.J are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under Article X.E of the Plan or released under Article X.J of the Plan; provided, however, that the injunctions set forth in Article X.L.1 of the Plan shall not, and shall not be construed to, enjoin any holder of a Claim that is only the subject of Article X.J.3 of the Plan (and no other release set forth in Article X.J of the Plan) from taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

i. **Injunction Related to Exculpation.** As of the Effective Date, all holders of Claims that are the subject of Article X.K of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in

---

[5] "Exculpated Parties" means, collectively, the following Persons: (a) the Debtors; (b) Reorganized Debtors; and (c) all of such Persons' current officers and directors, employees, agents, attorneys, financial advisors, accountants, consultants, representatives, and other professionals.

any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under <u>Article X.E</u> of the Plan or exculpated under <u>Article X.K</u> of the Plan; <u>provided</u>, <u>however</u>, that the injunctions set forth in <u>Article X.L.2</u> of the Plan shall not, and shall not be construed to, enjoin any Person that is the subject of <u>Article X.K</u> of the Plan from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

---

**PLEASE BE ADVISED THAT IF YOUR CLAIM IS UNIMPAIRED UNDER THE PLAN, YOU WILL BE DEEMED TO HAVE GRANTED THE RELEASES CONTAINED IN <u>ARTICLE X.J.3</u> OF THE PLAN.**

**PLEASE ALSO BE ADVISED THAT IF YOUR CLAIM IS IMPAIRED AND YOU ARE ELIGIBLE TO VOTE TO ACCEPT OR REJECT THE PLAN AND YOU VOTE TO REJECT THE PLAN OR ABSTAIN FROM VOTING ON THE PLAN, YOU WILL BE DEEMED TO HAVE GRANTED THE RELEASES CONTAINED IN <u>ARTICLE X.J.3</u> OF THE PLAN UNLESS YOU TIMELY OPT OUT OF THE RELEASES IN <u>ARTICLE X.J.3</u> OF THE PLAN ON YOUR BALLOT.**

---

12.     If you would like copies of the Plan, the Disclosure Statement, the Solicitation Procedures Order, or other documents related to the Plan, free of charge, you may obtain these documents by contacting Debtors' Counsel by: (a) calling Karalis PC at 215-546-4500, (b) emailing Jill Hysley at jhysley@karalislaw.com, or (c) writing to Debtors' Counsel at Aris J. Karalis, Esquire, Karalis PC, 1900 Spruce Street, Philadelphia, PA 19103. You may also access from these materials for a fee via PACER at http://www.deb.uscourts.gov/.

---

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, PLEASE CONTACT DEBTORS' COUNSEL VIA ONE OF THE METHODS SPECIFIED ABOVE. PLEASE NOTE THAT DEBTORS' COUNSEL MAY NOT PROVIDE LEGAL ADVICE. IF YOU NEED LEGAL ADVICE, PLEASE CONTACT YOUR ATTORNEY.**

---

KARALIS PC
Aris J. Karalis, Esquire
1900 Spruce Street
Philadelphia, PA 19103
(215) 546-4500
akaralis@karalislaw.com
Counsel to the Debtors and
Debtors in Possession

## <u>Exhibit 4</u>

**Form of Non-Voting Status Notice**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| ROOSEVELT INN, LLC and | : | Bky. No. 21-11697(AMC) |
| ROOSEVELT MOTOR INN, INC. | : | |
| | : | JOINTLY ADMINISTERED |
| **Debtors** | : | |
| | : | |

**NOTICE OF NON-VOTING STATUS TO HOLDERS OF UNCLASSIFIED
CLAIMS AND HOLDERS OF UNIMPAIRED CLAIMS CONCLUSIVELY
PRESUMED TO ACCEPT THE PLAN OF REORGANIZATION
FOR ROOSEVELT INN, LLC AND ROOSEVELT MOTOR INN, INC.**

**To:**    All Holders of Unclassified Claims and Claims in Classes 2, 7 and 8

---

**IMPORTANT NOTICE REGARDING RELEASES
HOLDERS OF CLAIMS IN CLASSES 2, 7 AND 8**

YOU ARE PRESUMED TO ACCEPT THE PLAN. YOU ARE CONCLUSIVELY
PRESUMED TO GRANT THE "RELEASES BY HOLDERS OF CLAIMS" (SET
FORTH BELOW AND IN <u>ARTICLE X.J.3</u> OF THE PLAN) AND ARE NOT
ENTITLED TO OPT OUT OF SUCH RELEASE.

**HOLDERS OF ADMINISTRATIVE EXPENSE CLAIMS
AND PRIORITY TAX CLAIMS**

YOUR CLAIM IS UNCLASSIFIED UNDER THE PLAN AND YOU ARE NOT
ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN. YOU WILL BE
DEEMED TO HAVE GRANTED THE RELEASES CONTAINED IN <u>ARTICLE X.J.3</u>
OF THE PLAN UNLESS YOU TIMELY FILE AN OBJECTION TO THE PLAN IN
ACCORDANCE WITH THE PROCEDURES BELOW.

---

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

<u>APPROVAL OF DISCLOSURE STATEMENT</u>

1.      On [●], 2023, the United States Bankruptcy Court for the Eastern District of
Pennsylvania (the "<u>Bankruptcy Court</u>") entered an order in the above-captioned chapter 11
cases [D.I. [•]] (the "<u>Solicitation Procedures Order</u>"): (a) approving the *Disclosure Statement
for the Plan of Reorganization for Roosevelt Inn, LLC and Roosevelt Motor Inn, Inc.* [D.I. 354]
(together with all schedules and exhibits thereto, and as may be modified, amended, or
supplemented from time to time, the "<u>Disclosure Statement</u>"); (b) establishing the Voting
Record Date, Voting Deadline, and other related dates in connection with confirmation of the

*Plan of Reorganization for Roosevelt Inn, LLC and Roosevelt Motor Inn, Inc.* [D.I. 353] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan");[1] (c) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan (the "<u>Solicitation Procedures</u>"); and (d) approving the form and manner of notice and other related documents as they relate to the Debtors.

## <u>ENTITLEMENT TO VOTE ON PLAN</u>

2.      You are receiving this notice because you are the holder of a Claim(s) in Class 2 (Priority Non-Tax Claims), or Class 7 (Interests in RI), and/or Class 8 (Interests in RMI) and under the Plan (the "<u>Unimpaired Non-Voting Classes</u>"), or you are a holder of an Administrative Expense Claim or Priority Tax Claim, which are unclassified under the Plan (together, the "<u>Unclassified Claims</u>"). Pursuant to the terms of <u>Article III</u> of the Plan, holders of Claims in Classes 2, 7 and 8 are Unimpaired and therefore, pursuant to section 1126(f) of the Bankruptcy Code, **<u>you are conclusively presumed to have accepted the Plan and are not entitled to vote on the Plan.</u>** Accordingly, this notice is being sent to you for informational purposes only. Pursuant to the terms of <u>Article III</u> of the Plan, holders of Unclassified Claims are not entitled to vote on the Plan. Nonetheless, holders of Unclassified Claims will be deemed to release the Released Parties from any all Claims and causes of action to the extent provided in <u>Article X.J.3</u> of the Plan, unless such parties timely file an objection to the release no later than the Plan Objection Deadline (as defined below) in accordance with the procedures set forth below.

## <u>DEADLINE FOR OBJECTIONS TO CONFIRMATION OF PLAN</u>

3.      The Bankruptcy Court has scheduled a hearing beginning on **[●]at [● .m.] (Eastern Time)** (the "<u>Confirmation Hearing</u>") to consider whether to confirm the Plan. The Confirmation Hearing will be held before the Honorable Ashely M. Chan, United States Bankruptcy Judge, at the Bankruptcy Court, located at 900 Market Street, Courtroom 4, Philadelphia, PA 19107. **The hearing will be conducted via [●]** *[**to be determined**]*. **Please be advised that the Confirmation Hearing may be adjourned or continued from time to time by the Bankruptcy Court or the Debtors without further notice other than as indicated in any notice or agenda of matters scheduled for a particular hearing that is filed with the Bankruptcy Court.** The Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to creditors or other parties in interest, unless such notice is required by the Bankruptcy Code, Bankruptcy Rules, or other applicable law.

4.      Notwithstanding the fact that you are not entitled to vote to accept or reject the Plan you nevertheless may be a party in interest in these Chapter 11 Cases and you, therefore, may be entitled to participate in these Chapter 11 Cases, including by filing objections to confirmation of the Plan. If you would like to object to the Plan, you may do so by filing your objection no later than **[●], 2023 at 4:00 p.m. (Eastern Time)** (the "<u>Plan Objection Deadline</u>"). Any objections or responses to confirmation of the Plan, must: (a) be in writing; (b) state the name and address of the objecting party and the nature and amount of the Claim of such party; (c) state with

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Solicitation Procedures (defined as below), as applicable.

particularity the legal and factual basis and nature of any objection to the Plan and include any evidentiary support therefor; and (d) **If you are required to file documents electronically by Local Bankruptcy Rule 5005-1**, you must file your response electronically. **If you are not required to file** electronically, you must file your response at: Clerk, United States Bankruptcy Court for the Eastern District of Pennsylvania, Robert N.C. Nix Federal Building, 900 Market Street, Suite 400, Philadelphia, PA 19107 together with proof of service **on or before the Plan Objection Deadline**, and served so as to be <u>actually received</u> by the parties below on or before the Plan Objection Deadline, which service may be through the CM/ECF system, with courtesy copies by email:

(a)     counsel to the Debtors, Karalis PC, 1900 Spruce Street, Philadelphia, PA 19103 (Attn: Aris J. Karalis, Esquire (<u>akaralis@karalislaw.com</u>)); and

(b)     the U.S. Trustee, The Robert N.C. Nix Federal Building, 900 Market Street, Suite 320, Philadelphia, PA 19107 (Attn: George M. Conway, III (<u>george.m.conway@usdoj.gov</u>)).

**OBJECTIONS NOT TIMELY FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE DEEMED OVERRULED WITHOUT FURTHER NOTICE.**

## SUMMARY OF PLAN TREATMENT OF CLAIMS AND EQUITY INTERESTS

5.     The Plan proposes to modify the rights of certain creditors of the Debtors. The classification of Claims and Equity Interests under the Plan is described generally below.

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Secured Claims | Impaired | Entitled to Vote |
| 2 | Priority Non-Tax Claims | Unimpaired | Presumed to Accept; Not Entitled to Vote |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Non-Tort Litigation Claims | Impaired | Entitled to Vote |
| 5 | Direct Tort Claims | Impaired | Entitled to Vote |
| 6 | Indirect Tort Related Claims | Impaired | Entitled to Vote |
| 7 | Interests in RI Debtor | Unimpaired | Presumed to Accept; Not Entitled to Vote |
| 8 | Interest in RMI Debtor | Unimpaired | Presumed to Accept; Not Entitled to Vote |

## RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

6.     Pursuant to <u>Article X</u> of the Plan, the Debtors are seeking approval of certain releases, injunctions, and exculpation provisions, which will become effective if

3

the Plan is approved and described in Article IV.N of the Disclosure Statement. **If you hold a Claim in one of the Unimpaired Classes, you will be presumed to accept the Plan and grant the Releases by holders of Claims set forth below and in Article X.J.3 of the Plan. If you hold an Unclassified Claim, you will be deemed to grant such release unless you object to the release before the Plan Objection Deadline.** Such provisions include the following:

a. **Discharge Injunction.** **From and after the Effective Date, except as expressly provided in the Plan or the Confirmation Order, all holders of Claims or Interests of any nature whatsoever against or in the Debtors or any of their assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are discharged pursuant to the terms of the Plan shall be precluded and permanently enjoined from taking any of the following actions on account of, or on the basis of, such discharged Claims and Interests: (a) commencing or continuing any action or other proceeding of any kind against the Debtors, Reorganized Debtors, the Settlement Trust, or its or their respective property; (b) enforcing, attaching, collecting, or recovering by any manner or means of judgment, award, decree or other against the Debtors, Reorganized Debtors, the Settlement Trust, or its or their respective property; (c) creating, perfecting or enforcing any Lien or Encumbrance of any kind against the Debtors, Reorganized Debtors, the Settlement Trust, or its or their respective property; or (d) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. The foregoing injunction shall extend to the successors and assigns of the Debtors (including Reorganized Debtors) and its and their respective properties and interests in property. In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge or termination of all Claims, Interests and other debts and liabilities against or in the Debtors pursuant to sections 105, 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time to the extent such judgment relates to a discharged Claim or Interest.**

b. **Releases by the Debtors and the Estates of the Released Parties.** **As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties[2] to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of Action, any and all other Claims, Interests,**

---

[2] "Released Parties" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized RI; (c) the Reorganized RMI; (d) UVFS Management Company, LLC; (e) Yagna Patel; (f) the Equity Security Holders; (g) any Settling Insurance Company, and (h) all of such Persons' Representative, provided, however, that the definition of "Released Parties" shall in all instances be subject to Article X.J of the Plan.

obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in <u>Article X.J.1</u> of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

       c.    <u>Releases by the Debtors and the Estates of Avoidance Actions</u>. As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the assistance of the Equity Security Holders in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized Debtors, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General Unsecured Claims, Non-Tort Litigation Claims, and Interests including, the Equity Security Holders of and from any and all Avoidance Actions.

       d.    <u>Releases by Holders of Claims</u>. As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all Releasing Claim Holders[3] shall, and shall be deemed to, expressly, conclusively,

---

[3] "Releasing Claim Holder" means, collectively, (a) all holders of Claims that vote to accept the Plan and do not opt out of the releases set forth in Article X.J.3 of the Plan; (b) all holders of Claims that are presumed to accept the Plan, except for holders of such Claims that file a timely objection to the releases set forth in Article X.J.3 of the Plan; (c) all holders of

absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in Article X.J.3 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Tort Litigation Claim to recover on account of such Allowed Claim in accordance with Article II.B.4. Notwithstanding the foregoing or anything to the contrary herein, with respect to holders of Allowed General Unsecured Claims or Allowed Non-Tort Litigation Claims, nothing in the Plan or the release set forth in Article X.J.3 of the Plan shall, or shall be construed to, release any such claims or Causes of Action against any Insurance Company (subject to Article IV.D.3 of the Plan).

    e.  **Exculpation**. From and after the Effective Date, none of the Exculpated Parties[4] shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or after the

---

Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases set forth in Article X.J.3 of the Plan; and (d) all of predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and all such Persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such. No holder of a Claim in a Class that is Impaired under the Plan will be deemed a "Releasing Claim Holder" to the extent such holder abstained from voting.

[4] "Exculpated Parties" means, collectively, the following Persons: (a) the Debtors; (b) Reorganized Debtors; and (c) all of such Persons' current officers and directors, employees, agents, attorneys, financial advisors, accountants, consultants, representatives, and other professionals.

Petition Date up to and including the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith or willful misconduct). In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence.

f.  **Injunction Related to Releases**. As of the Effective Date, all holders of Claims that are the subject of <u>Article X.J</u> are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under <u>Article X.E</u> of the Plan or released under <u>Article X.J</u> of the Plan; <u>provided, however</u>, that the injunctions set forth in <u>Article X.L.1</u> of the Plan shall not, and shall not be construed to, enjoin any holder of a Claim that is only the subject of <u>Article X.J.3</u> of the Plan (and no other release set forth in Article X.J of the Plan) from taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

g.  **Injunction Related to Exculpation**. As of the Effective Date, all holders of Claims that are the subject of <u>Article X.K</u> of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under <u>Article X.E</u> of the Plan or exculpated under <u>Article X.K</u> of the Plan; <u>provided, however</u>, that the injunctions set forth in <u>Article X.L.2</u> of the Plan shall not, and shall not be construed to, enjoin any Person that is the subject of <u>Article X.K</u> of the Plan

from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

## COPIES OF PLAN AND DISCLOSURE STATEMENT

7.      If you would like copies of the Plan, the Disclosure Statement, the Solicitation Procedures Order, or other documents related to the Plan, you may obtain these documents on the Court's website for a fee via PACER at http://www.paed.uscourts.gov.  If you would prefer to receive an email with pdf copies of the documents free of charge, please contact Karalis PC ("Debtors' Counsel") by: (a) calling Karalis PC at 215-546-4500, (b) emailing Jill Hysley at jhysley@karalislaw.com, or (c) writing to Aris J. Karalis, Esquire, Karalis PC, 1900 Spruce Street, Philadelphia, PA 19103.

---

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, PLEASE CONTACT THE SOLICITATION AGENT VIA ONE OF THE METHODS SPECIFIED ABOVE. PLEASE NOTE THAT THE SOLICITATION AGENT MAY NOT PROVIDE LEGAL ADVICE. IF YOU NEED LEGAL ADVICE, PLEASE CONSULT WITH YOUR ATTORNEY.**

---

Dated: [●]                                    KARALIS PC
                                              Aris J. Karalis, Esquire
                                              1900 Spruce Street
                                              Philadelphia, PA 19103
                                              (215) 546-4500
                                              akaralis@karalislaw.com

                                              *Counsel to the Debtors*
                                              *and Debtors in Possession*

**Exhibit 5**

**Form of Plan Supplement Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | **CHAPTER 11** |
| | : | |
| **ROOSEVELT INN, LLC and** | : | **Bky. No. 21-11697(AMC)** |
| **ROOSEVELT MOTOR INN, INC.** | : | |
| | : | **JOINTLY ADMINISTERED** |
| **Debtors** | : | |
| | : | |

## NOTICE OF FILING OF PLAN SUPPLEMENT TO PLAN OF REORGANIZATION FOR ROOSEVELT INN, LLC AND ROOSEVELT MOTOR INN, INC.

## PLEASE TAKE NOTICE OF THE FOLLOWING:

1.    On [●], 2023, the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court") entered an order [D.I. [●]] (the "Solicitation Procedures Order"): (a) approving the *Disclosure Statement for the Plan of Reorganization for Roosevelt Inn, LLC and Roosevelt Motor Inn, Inc.,* [D.I. 354] together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time (the "Disclosure Statement"); (b) establishing the Voting Record Date, Voting Deadline, and other related dates in connection with confirmation of the *Plan of Reorganization for Roosevelt Inn, LLC and Roosevelt Motor Inn, Inc.* [D.I. 353] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan");[1] (c) approving procedures for soliciting, receiving, and tabulating votes on the Plan (the "Solicitation Procedures"); and (d) approving the manner and forms of notice and other related documents as they relate to the Debtors.

2.    As contemplated by the Plan, the Disclosure Statement, and the Solicitation Procedures Order, the Debtors filed a Plan Supplement with the Bankruptcy Court on [●], 2022 [D.I. [•]]. The Plan Supplement includes the following documents in connection with confirmation of the Plan (each as defined in the Plan), as may be amended, modified, or supplemented from time to time: (a) the Assumed Contracts and Unexpired Leases Schedule; (b) the form of the Document Agreement; (c) change if any, to Reorganized RI's directors and officers; (d) the Rejected Contracts and Unexpired Leases Schedule; (e) the name of the initial members of the Settlement Trust Advisory Committee; and (f) the form of releases to be executed by a holder of a Tort Claim with respect to such Tort Claim as a condition precedent to receiving any proceeds from the Settlement Trust as set forth in the Trust Distribution Procedures; provided that the Plan Documents listed in clauses (a) and (d) of the foregoing sentence will be revised as needed, in the Debtors' discretion, subject to Article VI of the Plan.  The Plan Supplement shall be served only on those parties that have requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 and any party in interest who requests in writing a copy from Karalis PC ("Debtors' Counsel").

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in in the Plan, the Disclosure Statement, or the Solicitation Procedures (defined as below), as applicable.

3.      The Plan Supplement is integral to, part of and incorporated by reference into the Plan. The documents included in the Plan Supplement have not yet been approved by the Bankruptcy Court and may be amended, modified or supplemented from time to time. If the Plan is confirmed by the Bankruptcy Court, the documents contained in this Plan Supplement will be approved by the Bankruptcy Court pursuant to the Confirmation Order.

4.      The Bankruptcy Court has scheduled a hearing beginning on **[●]at [● .m.] (Eastern Time)** (the "Confirmation Hearing") to consider whether to confirm the Plan. The Confirmation Hearing will be held before the Honorable Ashely M. Chan, United States Bankruptcy Judge, **in Courtroom No. 4, United States Bankruptcy Court, 900 Market Street, Philadelphia, PA 19107. The Confirmation Hearing will be conducted via [●]** *[to be determined]*. **Please be advised that the Confirmation Hearing may be adjourned or continued from time to time by the Bankruptcy Court or the Debtors without further notice other than as indicated in any notice or agenda of matters scheduled for a particular hearing that is filed with the Bankruptcy Court.** The Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to creditors or other parties in interest, unless such notice is required by the Bankruptcy Code, Bankruptcy Rules, or other applicable law.

5.      If you would like to object to the Plan, you may do so by filing your objection no later than **[●], 2023 at 4:00 p.m. (Eastern Time)** (the "Plan Objection Deadline"). Any objections or responses to confirmation of the Plan, must: (a) be in writing; (b) state the name and address of the objecting party and the nature and amount of the Claim of such party; (c) state with particularity the legal and factual basis and nature of any objection to the Plan and include any evidentiary support therefor; and (d) **If you are required to file documents electronically by Local Bankruptcy Rule 5005-1,** you must file your response electronically. **If you are not required to file** electronically, you must file your response at: Clerk, United States Bankruptcy Court for the Eastern District of Pennsylvania, Robert N.C. Nix Federal Building, 900 Market Street, Suite 400, Philadelphia, PA 19107 together with proof of service **on or before the Plan Objection Deadline,** and served so as to be underlined actually received by the parties below on or before the Plan Objection Deadline, which service may be through the CM/ECF system, with courtesy copies by email:

(a)      counsel to the Debtors at Karalis PC, 1900 Spruce Street, Philadelphia, PA 19103 (Attn: Aris J. Karalis (akaralis@karalislaw.com)); and

(b)      the U.S. Trustee, Robert N.C. Nix Federal Building, 900 Market Street, Suite 320, Philadelphia, PA 19107 (Attn: George M. Conway, III (george.m.conway@usdoj.gov)).

**OBJECTIONS NOT TIMELY FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE DEEMED OVERRULED WITHOUT FURTHER NOTICE.**

6.      The Debtors reserve all rights to amend, modify or supplement the Plan Supplement, and any of the exhibits included therein, in accordance with the terms of the Plan. To the extent material amendments or modifications are made to any of these exhibits, the

Debtors will file amended versions of such exhibits with the Bankruptcy Court prior to the Confirmation Hearing.

7.      If you would like copies of the Plan Supplement or other documents related to the Plan, you may obtain these documents on the Court's website for a fee via PACER at http://www.paed.uscourts.gov. If you would prefer to receive an email with pdf copies of the documents free of charge, please contact Karalis PC ("Debtors' Counsel") by: (a) calling Karalis PC at 215-546-4500, (b) emailing Jill Hysley at jhysley@karalislaw.com, or (c) writing to Aris J. Karalis, Esquire, Karalis PC, 1900 Spruce Street, Philadelphia, PA 19103.

---

**ARTICLE X OF THE PLAN CONTAINS CERTAIN RELEASES, INJUNCTIONS, AND EXCULPATION PROVISIONS, AND ARTICLE X.J.3 OF THE PLAN CONTAINS A THIRD-PARTY RELEASE WHICH WILL BECOME EFFECTIVE IF THE PLAN IS APPROVED.   THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, PLEASE CONTACT DEBTORS' COUNSEL VIA ONE OF THE METHODS SPECIFIED ABOVE. PLEASE NOTE THAT DEBTORS' COUNSEL MAY NOT PROVIDE LEGAL ADVICE. IF YOU NEED LEGAL ADVICE, PLEASE CONSULT YOUR ATTORNEY.**

---

Dated: [●]

KARALIS PC
Aris J. Karalis, Esquire
1900 Spruce Street
Philadelphia, PA 19103
(215) 546-4500
akaralis@karalislaw.com

*Counsel to the Debtors and*
*Debtors in Possession*

## Exhibit 6

**Form of Cover Letter**

# KARALIS PC

Attorneys at Law

1900 SPRUCE STREET
PHILADELPHIA, PA 19103-6697
TEL: 215.546.4500
FAX: 215.985.4175
www.karalislaw.com

ARIS J. KARALIS
TEL: 215.546.4500 ext. 104
E-mail: akaralis@karalislaw.com

_____, 2023

**Re:    Roosevelt Inn, LLC and Roosevelt Motor Inn, Inc.**
**Bankruptcy No. 21-11697(AMC) (Jointly Administered)**

**To All Holders of Claims Entitled to Vote on the Plan:**

On June 16, 2020, Roosevelt Inn, LLC, a Delaware limited liability company, and Roosevelt Motor Inn, Inc., a Pennsylvania corporation, that are debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court"). The Debtors filed the Chapter 11 Cases in order to address the significant potential liabilities arising from five (5) civil actions filed against the Debtors in the Philadelphia Court of Common Pleas asserting claims for negligence, alleging that sex trafficking occurred at various time from 2008 to 2015 at the Roosevelt Inn. The Debtors' restructuring objectives are to confirm a plan of reorganization that (a) timely and equitably compensates holders of Tort Claims that are compensable, and (b) ensures that the Debtors emerge from bankruptcy with the ability to continue to operate their hotel business.

On [*January 25*], 2023, the Bankruptcy Court held a hearing at which it approved the *Disclosure Statement for the Plan of Reorganization for Roosevelt Inn, LLC and Roosevelt Motor Inn, Inc.* [D.I. 354], filed on December 16, 2022, (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement") of the Debtors in the above-captioned chapter 11 cases. Thereafter, the Bankruptcy Court entered an order (the "Solicitation Procedures Order") that, among other things, authorizes the Debtors to solicit votes to accept or reject the *Plan of Reorganization for Roosevelt Inn, LLC and Roosevelt Motor Inn, Inc.* [D.I. 353], filed on December 16, 2022 (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan").[1]

You are receiving this letter and the accompanying materials because you are entitled to vote on the Plan.[1] The following materials constitute the "Solicitation Package" which, in addition to this letter, is comprised of:

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable

To All Holders of Claims Entitled to Vote on the Plan
January _____, 2023
Page 2

(a)    the Disclosure Statement with all exhibits thereto, including the Plan and all of its exhibits and schedules (to the extent such exhibits and schedules are filed with the Bankruptcy Court before the Solicitation Date);

(b)    the Solicitation Procedures Order;

(c)    the Confirmation Hearing Notice;

(d)    an appropriate ballot with detailed voting instructions, return instructions, and a return envelope with postage; and

(e)    any other materials ordered by the Bankruptcy Court to be included as part of the Solicitation Package.

You may also access and download copies of the Plan, the Disclosure Statement, and the Solicitation Procedures Order that accompany this letter on the Court's website for a fee via PACER at www.paed.uscourts.gov. If you would prefer to receive an email with pdf copies of the documents free of charge, please contact Karalis PC ("Debtors' Counsel") by: (a) calling Karalis PC at 215-546-4500, (b) emailing Jill Hysley at jhysley@karalislaw.com, or (c) writing to Aris J. Karalis, Esquire, Karalis PC, 1900 Spruce Street, Philadelphia, PA 19103.

The comprehensive restructuring of the Debtors proposed in the Plan is the product of extensive ongoing negotiations between the Debtors and the Tort Plaintiffs. The Debtors believe that the Plan, as proposed, provides the best possible outcome for all creditor constituencies. In particular, the Plan provides for a mechanism to channel to the Settlement Trust all Tort Claims asserted against the Debtors and certain other Protected Parties. If the Plan is approved, the Settlement Trust will exclusively administer and resolve the Tort Claims.

The Protected Parties will make a substantial contribution to the Settlement Trust to resolve the Tort Claims that may be asserted against them in exchange for being included as a Protected Party under the Plan and receiving the benefits of the Channeling Injunction. The Plan also provides a mechanism by which Settling Insurance Companies can make substantial contributions to the Settlement Trust in exchange for being included as a Protected Party under the Plan and receiving the benefits of the Channeling Injunction.

**The treatment of all classes of Claims entitled to vote is described more fully in the Plan and the Disclosure Statement. The Debtors support confirmation of the Plan and urge all claimants to vote in favor of the Plan. The Debtors believe that the Plan will offer the highest and best recovery for all creditors and more certain recoveries to holders of Tort Claims and other creditors than any other alternative. The Debtors also believe that the Plan will provide those recoveries more quickly than would any alternative, including by avoiding time-consuming and costly litigation.**

To All Holders of Claims Entitled to Vote on the Plan
January _____, 2023
Page 3

Please read the Plan carefully. In particular, please review the releases, injunctions, and exculpation provisions provided in <u>Article X</u> of the Plan which will become effective if the Plan is approved. You are entitled to opt out of the releases in <u>Article X.J.3</u> of the Plan <u>only</u> if you vote to reject the Plan or if you abstain from voting but opt out of the release on your ballot. If you decide to opt out of the release in <u>Article X.J.3</u> of the Plan, please do so by checking the appropriate box on your ballot.

The enclosed Plan constitutes a good-faith compromise and settlement of all Claims and controversies based upon the circumstances of these chapter 11 cases, and will provide the maximum recovery for creditors. The Debtors believe that the acceptance of the Plan by holders of Claims entitled to vote to accept or reject the Plan is in the best interests of holders of Claims against the Debtors. Moreover, the Debtors believe that any alternative other than Confirmation of the Plan may result in, among other risks, delays and increased administrative expenses, and diminished distributions on account of Allowed Claims.

The Debtors strongly urge you to properly and timely submit your ballot casting a vote to accept the Plan in accordance with the instructions in your ballot;

The Voting Deadline is [●], 2023 at 4:00 p.m. (Eastern Time).

Therefore, the Debtors recommend that all persons entitled to vote on the Plan vote to accept the Plan and submit a timely ballot. Instructions for casting your vote on the Plan are provided on your ballot. In order to have your vote to accept or reject the Plan counted, your Ballot must actually be received by Debtors' Counsel on or before [●], 2023 at 4:00 p.m. (Eastern Time).

If you have any questions, or need to obtain additional solicitation materials, you may contact Debtors' Counsel by: (a) calling Karalis PC at 215-546-4500, (b) emailing Jill Hysley at jhysley@karalislaw.com, or (c) writing to Debtors' Counsel at Aris J. Karalis, Esquire, Karalis PC, 1900 Spruce Street, Philadelphia, PA 19103.

Please note that Debtors' Counsel is not authorized to, and will not, provide legal advice to you. If you need legal advice, please consult with your attorney.

Sincerely,

*Aris J. Karalis*

Aris J. Karalis

Attorney for Debtors
and Debtors in Possession