**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>ROOSEVELT INN, LLC and<br>ROOSEVELT MOTOR INN, INC.<br><br>          Debtors. | Chapter 11<br><br>Case No. 21-11697(AMC)<br><br>JOINTLY ADMINISTERED |

**AMENDED DECLARATION OF LUKE E. DEBEVEC**
**IN SUPPORT OF THE SECOND AMENDED JOINT PLAN OF REORGANIZATION**

I, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information and belief:

1.      I am a partner in the law firm of Reed Smith LLP, which Roosevelt Inn, LLC and Roosevelt Motor Inn, Inc. (the "Debtors") have retained as special insurance coverage counsel in connection with insurance coverage and/or insurance litigation related to certain underlying lawsuits. I am admitted to practice in the Commonwealth of Pennsylvania, and the State of New Jersey.

2.      I make this declaration (the "Declaration") in support of the Second Amended Joint Plan of Reorganization dated May 10, 2023 (as may be amended, modified, or supplemented, the "Plan") proposed by the Debtors and to place before the Court certain documents that are relevant to the underlying claims against the Debtors as discussed below, including certain insurance policies that constitute the property of the Debtors. The statements in this Declaration are based on my personal knowledge.

**BACKGROUND**

3.      Beginning in March 2017, the Debtors were served with five lawsuits that alleged that traffickers would bring women, including minors, to the Debtors' insured property for the

purpose of commercial prostitution from 2008 through 2015, and these claimants asserted a variety of claims alleging that the Debtors and certain other named Defendants should be held responsible for such claims (the "Initial Pre-Petition Claims").

4.      The Debtors provided notices of these five Initial Pre-Petition Claims to their insurance companies, which resulted in reservations of rights, denials of coverage, and ultimately pending insurance coverage litigation regarding the insurance companies' obligations to the Debtors under the insurance policies sold to them.   In that coverage litigation, each of the insurance companies has sought to disclaim its obligation to defend and/or indemnify the Debtors in connection with the defense and/or any potential resolution of the Initial Pre-Petition Claims.

5.      As discussed below, following notice, the primary-layer insurance companies either agreed to defend the Debtors as to certain of the Initial Pre-Petition Claims, subject to their reservation of rights to ultimately disclaim all coverage and/or institute a declaratory judgment action to determine the extent of coverage, if any, or denied coverage for the Initial Pre-Petition Claims.  The excess-layer insurance companies generally responded with letters either denying coverage for the Initial Pre-Petition Claims and/or asserting that their excess policies have not yet been triggered.

6.      More specifically, regarding the insurance coverage litigation referenced above, first, on October 10, 2018, Samsung Fire & Marine Insurance Co., Ltd. (U.S. Branch) ("Samsung") filed a Complaint against the Debtors in the United States District Court for the

Eastern District of Pennsylvania under Case No. 2:18-cv-04365-CDJ (the "Samsung Coverage Litigation").[1]

7.    Ultimately, five other insurance companies, specifically Nationwide, Harleysville Preferred, ACE, PIIC, and Capitol, have become parties to the Samsung Coverage Litigation, which focuses on those parties' coverage obligations as to four of the Initial Pre-Petition Claims (M.B., B.H., C.A., and K.R).

8.    Second, on July 22, 2020, the Debtors filed a Complaint, focusing on one of the Initial Pre-Petition Claims (A.H.), against two other insurance companies – Praetorian Insurance Company ("Praetorian") and Public Service Mutual Insurance Company ("PSMI") – in the Pennsylvania Court of Common Pleas for Philadelphia County under Case ID No. 200701464 (the "Praetorian Coverage Litigation.").[2]

9.    On June 16, 2021 (the "Petition Date"), the Debtors commenced their Chapter 11 cases, which are jointly administered under the above-captioned Case No. 21-11697(AMC), by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court").

---

[1] Attached as **Exhibit A** is the docket in the Samsung Coverage Litigation.  The most recent, operative pleadings in that case are as follows: (1) Document 50: Samsung's January 7, 2020 Second Amended Declaratory Judgment Complaint; (2) Document 63: the Debtors' February 12, 2020 Fourth Amended Third-Party Complaint against Third-Party Defendant Nationwide Mutual Insurance Company ("Nationwide"), Third-Party Defendant Harleysville Preferred Insurance Company ("Harleysville Preferred"), and Third-Party Defendant ACE Property and Casualty Insurance Company ("ACE"); (3) Document 94: Nationwide's and Harleysville Preferred's November 3, 2020 Fourth-Party Complaint against Fourth-Party Defendant Philadelphia Indemnity Insurance Company ("PIIC"); (4) Document 100: PIIC's January 8, 2021 Fifth-Party Complaint against Fifth-Party Defendant Capitol Specialty Insurance Corporation ("Capitol"); (5) Document 106: Capitol's February 26, 2021 Counterclaim against PIIC and Crossclaims against Samsung, the Debtors, ACE, Nationwide, and Harleysville Preferred.

[2] Attached as **Exhibit B** is the operative May 3, 2021 Amended Complaint in the Praetorian Coverage Litigation.

10.    On September 24, 2021, the Bankruptcy Court entered an Order (the "Bar Date Order") (a) establishing October 30, 2021 as the General Bar Date, (b) establishing December 13, 2021 as the Governmental Bar Date, (c) establishing procedures to file general proofs of claim and (d) establishing procedures to file tort proofs of claim.

11.    On September 29, 2021, the Bankruptcy Court entered an Amended Order establishing certain confidentiality procedures for holders of tort claims to file proofs of claim (the "Tort Claim Confidentiality Order").

12.    Pursuant to the Bar Date Order and Tort Claim Confidentiality Order, the Direct Tort Claimants[3] in the five Initial Pre-Petition Claims – M.B., C.A., B.H., K.R., and A.H. – as well as ten new claimants – B.S., D.P., D.W., E.B., J.H., L.E., S.M., S.W., T.H., and T.S. (the claims of these ten new Direct Tort Claimants are referred to herein as the "New Direct Tort Claims" and together with the Initial Pre-Petition Claims, the "Direct Tort Claims" or at times the "Pre-Petition Claims" and the holders of these Direct Tort Claims are referred to as the "Direct Tort Claimants") – filed Proofs of Claim with the Bankruptcy Court against the Debtors that were asserting claims similar to the claims asserted in the five Initial Pre-Petition Claims.

13.    As detailed below, the Debtors provided notices of all Direct Tort Claims to all insurance companies which had sold potentially responsive policies to the Debtors, in addition to providing notice of the mediation process that was pending in the Bankruptcy Court.

14.    As discussed below, most of the primary-layer insurance companies either denied coverage for the Direct Tort Claims or agreed to defend the Debtors as to certain Direct Tort Claims, subject to a full reservation of rights to disclaim all coverage, pending the result of the

---

[3] A total of fifteen persons making such claims have been designated and defined herein as "Direct Tort Claimants."

Samsung Coverage Litigation or the Praetorian Coverage Litigation.  The excess-layer insurance companies generally responded with reservation of rights letters, denying coverage for the Direct Tort Claims and/or asserting that their excess policies have not yet been triggered.

15.    In addition to seeking insurance coverage under the policies sold to them, the Debtors have demanded insurance coverage for the Initial Pre-Petition Claims and New Direct Tort Claims under the "additional insured" provisions of the policies of Alpha Centurion Security, Inc. ("Alpha Centurion"), which had contracted to provide the Debtors with uniformed security officers at the Debtors' insured property.

16.    Alpha Centurion had agreed, in its contract with the Debtors, to add the Debtors as additional insureds to potentially responsive insurance policies sold to Alpha Centurion.  For example, Section 9 of Alpha Centurion's 2007 security contract with the Debtors specifically provided: "Service [Alpha Centurion] will carry comprehensive general liability insurance, issued by insurance companies licensed to do business in the Commonwealth of Pennsylvania and State of New Jersey with a minimum limit of $1 million and $2 million Aggregate, workers' compensation insurance covering its employees while working at Client's locations. Client shall be furnished with a certificate of insurance. ***Client [Debtors] will be added as an additionally*** [sic] ***insured***."[4]

17.    On March 20, 2023, the District Court in the Samsung Coverage Litigation issued an Opinion and Order "find[ing] that public policy bars coverage as to [Samsung, Nationwide, and ACE] and for the sake of judicial economy, the Court solely addresses this issue."[5]

---

[4] **Exhibit C** (emphasis added).

[5] **Exhibit A**, Document 140 at 11.

18.     On May 15, 2023, to expedite an appeal without waiver of claims that were not resolved in the Opinion and Order, the parties in the Samsung Coverage Litigation filed a Joint Stipulation, which the District Court accepted and filed as a Final Judgment on May 16, 2023, stating: "Pursuant to that Joint Stipulation, the Court hereby enters judgment to expedite a prompt appeal of its ruling in its March 20, 2023 Opinion and Order (ECF Nos. 140 and 141), in favor of Plaintiff Samsung [], Third-Party Defendant ACE [], Third-Party Defendant and Fourth-Party Plaintiff Harleysville Preferred [], Third-Party Defendant and Fourth-Party Plaintiff Nationwide [] and against Defendants/Counterclaim-Plaintiffs [Debtors]."[6]

19.     The parties in the Samsung Coverage Litigation "further stipulate[d] and agree[d] that all Parties' arguments regarding" their respective claims, counterclaims, and crossclaims "are not waived and are fully preserved for purposes of appeal."[7]

20.     The Debtors have filed a Notice of Appeal to the United States Court of Appeals for the Third Circuit.[8]

## THE DEBTORS ATTACH TO THIS DECLARATION ALL AVAILABLE INSURANCE POLICIES POTENTIALLY RESPONSIVE TO THE INITIAL PRE-PETITION CLAIMS AND NEW DIRECT TORT CLAIMS

21.     The Debtors attach to this Declaration electronic copies of all of the Debtors' insurance policies[9] that are potentially responsive to the Initial Pre-Petition Claims and New

---

[6] **Exhibit A**, Document 144 at 2.

[7] **Exhibit A**, Document 144 at 8.

[8] **Exhibit A**, Document 145.

[9] **Exhibits F** through **Z**, **Exhibits AA** through **II**, as further described below.

Direct Tort Claims, except for the four excess layer insurance policies listed below, the full copies of which are not in the Debtors' possession, as well as a chart[10] listing all such policies.

22.     In relation to the four known policies for which the Debtors do not have a copy, the Debtors attach to this Declaration certificates of insurance and evidence of insurance in the Debtors' possession evidencing these policies.[11]   As evidenced in the correspondence (as discussed further below) that the Debtors are filing as redacted exhibits to this Declaration, the Debtors have also asked all of the insurance companies that issued the policies below to provide full copies of the following policies:

a.   ACE Policy No.  G24898593[12] for the period April 1, 2009 through April 1, 2010.

b.   Westchester Fire Insurance Company ("Westchester") Policy No. G24045638001[13] for the period April 1, 2009 through April 1, 2010.

c.   Allied World Assurance Company ("Allied World") Policy No.  0310-1780[14] for the period April 20, 2017 through April 20, 2018.

d.   Great American Insurance Company of New York ("Great American") Policy No. EXC4100770[15] for the period April 20, 2017 through April 20, 2018.

---

[10] **Exhibit E.**

[11] *See* **Exhibit U** at 1-6; *see* **Exhibit DD** at 1, 5-6; *see* **Exhibit Z** at 1, Form "GL 00139 00 (12/11)", Form "00157 (11/05)", Form "00136 (11/05)", Form "00241 (11/05)", and Form "CR MANU A"; *see* **Exhibit BB** at Form "GAI 6600 (Ed. 06/97)".

[12] *See* **Exhibit U** at 1-6.

[13] *See* **Exhibit DD** at 1, 5-6.

[14] *See* **Exhibit Z** at 1, Form "GL 00139 00 (12/11)", Form "00157 (11/05)", Form "00136 (11/05)", Form "00241 (11/05)", and Form "CR MANU A".

[15] *See* **Exhibit BB** at Form "GAI 6600 (Ed. 06/97)".

23.     The Debtors additionally attach to this Declaration electronic copies of all of Alpha Centurion's insurance policies[16] that are potentially responsive (to the extent the Debtors have knowledge of such policies) to the Initial Pre-Petition Claims and New Direct Tort Claims, except for the three policies listed below, the full copies of which are not in the Debtors' possession.

24.     The Debtors are aware of the three Alpha Centurion insurance policies listed below, but the Debtors do not have a copy of these policies.   The Debtors attach to this Declaration evidence of insurance in the Debtors' possession referencing the two PIIC policies below.[17]   As evidenced in the correspondence (as discussed further below) that the Debtors are filing as redacted exhibits to this Declaration, the Debtors have also asked all of the insurance companies that issued the policies below to provide full copies of the following policies:

     a.   Everest Indemnity Insurance Company ("Everest") Policy No.: 51GL002418-081 for the period March 11, 2008 through March 11, 2009.

     b.   PIIC Policy No.: PHPK396765[18] for the period March 11, 2009 through March 11, 2010.

     c.   PIIC Policy No.: PHPK540637[19] for the period March 11, 2010 through March 11, 2011.

---

[16] **Exhibits JJ** through **QQ**, as further described below; *see also* **Exhibit D.41** at 12.

[17] *See* **Exhibit D.41** at 12; *see* **Exhibit JJ** at Form "CA DS 03 03 10" "Page 1 of 13".

[18] *See* **Exhibit D.41** at 12.

[19] *See* **Exhibit JJ** at Form "CA DS 03 03 10" "Page 1 of 13".

**THE DEBTORS ATTACH TO THIS DECLARATION ALL NOTICES TO
INSURANCE COMPANIES OF THE INITIAL PRE-PETITION CLAIMS AND
NEW DIRECT TORT CLAIMS AND THE INSURERS' COVERAGE
POSITIONS, IF ANY**

25.     As detailed below on an insurer-by-insurer basis, the Debtors provided notice of the Initial Pre-Petition Claims and New Direct Tort Claims to the insurance companies that sold all potentially responsive policies to the Debtors.

26.     The Debtors are filing as redacted exhibits to this Declaration, electronic copies of all of the above-referenced notice letters. The Debtors are filing as redacted exhibits to this Declaration, electronic copies of all of the above-referenced notice letters. The Debtor are filing redacted Insurance-Related Correspondence because these documents contain confidential discussion between the Debtors and their insurance companies regarding the Direct Tort Claims and/or Initial Pre-Petition Claims and detailed discussion of related coverage positions for these claims.

27.     To the extent the Debtors' insurance companies responded to the notice letters with a coverage position, the Debtors are filing as redacted exhibits to this Declaration, electronic copies of all such coverage position correspondence.

**A.      The Debtors Are Filing as Redacted Exhibits to this Declaration All Notices to Praetorian of Initial Pre-Petition Claims and that Insurance Company's Coverage Position.**

28.     Regarding Praetorian primary-layer Policy No. H470011142[20] for the period April 1, 2007 through April 1, 2008, the Debtors provided notice on January 30, 2020[21] that this policy

---

[20] **Exhibit F**.

[21] **Exhibit D.1** (Debtors' notice letter dated January 30, 2020 to Praetorian).

is potentially responsive to Direct Tort Claimant A.H.'s Complaint, which was served on Roosevelt Inn on January 29, 2020.

29.    On June 17, 2020, Praetorian denied coverage for Direct Tort Claimant A.H.'s Direct Tort Claim.[22]

30.    Praetorian is a party to the Praetorian Coverage Litigation.

**B.    The Debtors Are Filing as Redacted Exhibits to this Declaration All Notices to PSMI of Initial Pre-Petition Claims and that Insurance Company's Coverage Position.**

31.    Regarding PSMI primary-layer Policy No. CG001611[23] for the period April 1, 2008 through April 1, 2009, the Debtors provided notice on January 30, 2020[24] that this policy is potentially responsive to Direct Tort Claimant A.H.'s Complaint, which was served on Roosevelt Inn on January 29, 2020.

32.    On August 26, 2020, PSMI sent Roosevelt Inn a letter providing its coverage position regarding Direct Tort Claimant A.H.'s Complaint and stated: "subject to this reservation of rights to disclaim coverage, Public Service agrees to pay the reasonable attorneys' fees and costs for the defense of the Roosevelt Defendants in connection with the above-entitled action."[25]

33.    PSMI is a party to the Praetorian Coverage Litigation.

**C.    The Debtors Are Filing as Redacted Exhibits to this Declaration All Notices to Nationwide (and its affiliate companies Harleysville Preferred and Harleysville**

---

[22] **Exhibit D.2** (Praetorian's denial letter dated June 17, 2020).

[23] **Exhibit G**.

[24] **Exhibit D.3** (Debtors' notice letter dated January 30, 2020 to PSMI).

[25] **Exhibit D.4** at 1 (PSMI's reservation of rights letter dated August 26, 2020).

**Mutual) of the Initial Pre-Petition Claims and New Direct Tort Claims and those Insurance Companies' Coverage Positions.**

34.     Regarding the following 2 policies – Harleysville Preferred primary-layer Policy No. MPA00000038492C[26] for the period April 1, 2011 through April 1, 2012 and Harleysville Mutual Insurance Company ("Harleysville Mutual") primary-layer Policy No. MPA00000090792M[27] for the period April 1, 2012 through April 20, 2013, the Debtors provided notice on March 18, 2019[28] that these policies were potentially responsive to Direct Tort Claimants B.H.'s and C.A.'s Initial Pre-Petition Claims, which were filed as Complaints on or around March 27, 2019.

35.     On April 11, 2019, Nationwide, on behalf of its affiliate companies Harleysville Preferred and Harleysville Mutual, sent the Debtors a letter acknowledging notice of Direct Tort Claimants B.H.'s and C.A.'s Complaints and agreeing to defend the Debtors as to those Initial Pre-Petition Claims subject to a reservation of rights to disclaim coverage and/or institute a declaratory judgment action to determine the extent of coverage, if any.[29]  Harleysville Preferred and Nationwide subsequently became involved in the Samsung Coverage Litigation as Third-Party Defendants and Fourth-Party Plaintiffs, claiming that they do not owe coverage to the Debtors for the Initial Pre-Petition Claims.

---

[26] **Exhibit H**.

[27] **Exhibit I**.

[28] **Exhibit D.5** (Debtors' notice letter dated March 18, 2019 to Nationwide, Harleysville Preferred, and Harleysville Mutual).

[29] **Exhibit D.6** (Nationwide's reservation of rights letter dated April 11, 2019).

36.     Regarding Harleysville Mutual primary-layer Policy No. MPA00000090792M[30] for the period April 1, 2012 through April 20, 2013, the Debtors provided notice on November 13, 2019[31] that this policy is potentially responsive to Direct Tort Claimant K.R.'s Pre-Petition Complaint, which was filed on November 5, 2019.

37.     On December 12, 2019, Nationwide, on behalf of Harleysville Mutual, sent the Debtors a letter acknowledging notice of Direct Tort Claimant K.R.'s Complaint and agreeing to defend the Debtors as to this Initial Pre-Petition Claim subject to a reservation of rights to disclaim coverage and/or institute a declaratory judgment action to determine the extent of coverage, if any.[32]    Nationwide subsequently became involved in the Samsung Coverage Litigation as a Third-Party Defendant and Fourth-Party Plaintiff denying that it owed coverage to the Debtors for the Initial Pre-Petition Claims.

38.     Regarding the following two policies – Harleysville Preferred primary-layer Policy No. MPA00000038492C[33] for the period April 1, 2011 through April 1, 2012 and Harleysville Mutual primary-layer Policy No. MPA00000090792M[34] for the period April 1, 2012 through April 20, 2013, Nationwide, on behalf of Harleysville Preferred and Harleysville Mutual, sent the Debtors an April 12, 2022 letter acknowledging notice of the ten New Direct

---

[30] **Exhibit I.**

[31] **Exhibit D.7** (Debtors' notice letter dated November 13, 2019 to Nationwide and Harleysville Mutual).

[32] **Exhibit D.8** (Nationwide's reservation of rights letter dated December 12, 2019).

[33] **Exhibit H.**

[34] **Exhibit I.**

Tort Claims and reserving their rights to disclaim coverage and/or institute a declaratory judgment action to determine the extent of coverage, if any.[35]

**D.      The Debtors Are Filing as Redacted Exhibits to this Declaration All Notices to Samsung of Initial Pre-Petition Claims and New Direct Tort Claims and that Insurance Company's Coverage Position.**

39.      Regarding Samsung primary-layer Policy No. CPP 0000842 00[36] for the period April 20, 2013 through April 20, 2014 and Samsung primary-layer Policy No. CPP 0000842 01[37] for the period April 20, 2014 through April 20, 2015, Samsung's March 28, 2017 letter[38] to the Debtors acknowledged that Samsung had received notice on March 10, 2017 of these policies being potentially responsive to Direct Tort Claimant M.B.'s Complaint, which was filed on March 10, 2017.

40.      On April 18, 2017, Samsung sent the Debtors a letter agreeing to participate in the defense of the Debtors as to this Initial Pre-Petition Claim subject to a reservation of rights to disclaim coverage and/or institute a declaratory judgment action to determine the extent of coverage, if any.[39]   Samsung subsequently commenced the Samsung Coverage Litigation, denying that it owed coverage to the Debtors for the Initial Pre-Petition Claims.

41.      Regarding Samsung primary-layer Policy No. CPP 0000842 00[40] for the period April 20, 2013 through April 20, 2014, the Debtors provided notice on March 29, 2019[41] that this

---

[35] **Exhibit D.9** (Nationwide's reservation of rights letter dated April 12, 2022).

[36] **Exhibit J**.

[37] **Exhibit K**.

[38] **Exhibit D.10** (Samsung's letter dated March 28, 2017 acknowledging notice).

[39] **Exhibit D.11** (Samsung's reservation of rights letter dated April 18, 2017).

[40] **Exhibit J**.

policy is potentially responsive to Direct Tort Claimants B.H.'s and C.A.'s Initial Pre-Petition Claims, which were filed as Complaints on or around March 27, 2019.

42.     On April 17, 2019, Samsung sent the Debtors a letter agreeing to participate in the defense of the Debtors as to these Initial Pre-Petition Claims subject to a reservation of rights to disclaim coverage and/or institute a declaratory judgment action to determine the extent of coverage, if any.[42]  In the Samsung Coverage Litigation, Samsung denied that it owed coverage to the Debtors for the Initial Pre-Petition Claims.

43.     Regarding Samsung primary-layer Policy No. CPP 0000842 00[43] for the period April 20, 2013 through April 20, 2014, the Debtors provided notice on November 12, 2019[44] that this policy is potentially responsive to Direct Tort Claimant K.R.'s Pre-Petition Complaint, which was filed on November 5, 2019.

44.     On November 21, 2019, Broadspire Services, Inc., on behalf of Samsung, sent the Debtors a letter, agreeing to participate in the defense of the Debtors as to this Initial Pre-Petition Claim subject to a reservation of rights to disclaim coverage and/or institute a declaratory judgment action to determine the extent of coverage, if any.[45]  In the Samsung Coverage Litigation, Samsung denied that it owed coverage to the Debtors for the Initial Pre-Petition Claims.

---

Continued from previous page

[41] **Exhibit D.12** (Debtors' notice letter dated March 29, 2019 to Samsung).

[42] **Exhibit D.13** (Samsung's reservation of rights letter dated April 17, 2019).

[43] **Exhibit J**.

[44] **Exhibit D.14** (Debtors' notice letter dated November 12, 2019 to Samsung).

[45] **Exhibit D.15** (Samsung's reservation of rights letter dated November 21, 2019).

45.    Regarding Samsung primary-layer Policy No. CPP 0000842 00[46] for the period April 20, 2013 through April 20, 2014 and Samsung primary-layer Policy No. CPP 0000842 01[47] for the period April 20, 2014 through April 20, 2015, the Debtors provided notice on January 14, 2022[48] that these policies are potentially responsive to the New Direct Tort Claims of D.W., E.B., J.H., S.M., and S.W.

46.    On March 17, 2022, Samsung sent the Debtors a letter, agreeing to participate in the defense of the Debtors as to these New Direct Tort Claims subject to a reservation of rights to disclaim coverage and/or institute a declaratory judgment action to determine the extent of coverage, if any.[49]

**E.    The Debtors Are Filing as Redacted Exhibits to this Declaration All Notices to Associated Industries of New Direct Tort Claims and that Insurance Company's Coverage Position.**

47.    Regarding the following three policies – (1) Associated Industries Insurance Company, Inc. ("Associated Industries") primary-layer Policy No. AES1034559 00[50] for the period April 20, 2015 through April 20, 2016, (2) Associated Industries primary-layer Policy No. AES1034559 01[51] for the period April 20, 2016 through April 20, 2017, and (3) Associated Industries primary-layer Policy No. AES1034559 02[52] for the period April 20, 2017 through

---

[46] **Exhibit J.**

[47] **Exhibit K.**

[48] **Exhibit D.16** (Debtors' notice letter dated January 14, 2022 to Samsung).

[49] **Exhibit D.17** (Samsung's reservation of rights letter dated March 17, 2022).

[50] **Exhibit L.**

[51] **Exhibit M.**

[52] **Exhibit N.**

April 20, 2018, the Debtors provided notice on January 14, 2022[53] that these policies are potentially responsive to the New Direct Tort Claims of T.H., T.S., and B.S., and the Debtors demanded participation in the mediation of the bankruptcy case.

48.    On August 1, 2022, Associated Industries sent the Debtors a letter, agreeing that it would participate in this bankruptcy case's mediation(s) as to these New Direct Tort Claims subject to a reservation of rights to disclaim all coverage.[54]

**F.      The Debtors Are Filing as Redacted Exhibits to this Declaration All Notices to United Specialty of New Direct Tort Claims.**

49.    Regarding United Specialty Insurance Company ("United Specialty") primary-layer Policy No. EGM-MGL2991-18[55] for the period April 20, 2018 through April 20, 2019, the Debtors provided notice on March 14, 2022[56] and through a follow-up letter on August 12, 2022[57] that this policy is potentially responsive to the New Direct Tort Claim of B.S., and the Debtors demanded participation in the mediation of the bankruptcy case, but United Specialty has not responded to date with an acknowledgement of these claims or coverage position.

**G.      The Debtors Are Filing as Redacted Exhibits to this Declaration All Notices to AGLIC of Initial Pre-Petition Claims and that Insurance Company's Coverage Position.**

50.    Regarding American Guarantee and Liability Insurance Company ("AGLIC") excess-layer Policy No. AUC382552604[58] for the period April 1, 2007 through April 1, 2008 and

---

[53] **Exhibit D.18** (Debtors' notice letter dated January 14, 2022 to Associated Industries).

[54] **Exhibit D.19** (Associated Industries' reservation of rights letter dated August 1, 2022).

[55] **Exhibit O**.

[56] **Exhibit D.20** (Debtors' notice letter dated March 14, 2022 to United Specialty).

[57] **Exhibit D.21** (Debtors' follow-up notice letter dated August 12, 2022 to United Specialty).

[58] **Exhibit P**.

AGLIC excess-layer Policy No. AUC374862006[59] for the period April 1, 2008 through April 1, 2009, the Debtors provided notice on January 30, 2020[60] that these policies are potentially responsive to Direct Tort Claimant A.H.'s Complaint, which was served on Roosevelt Inn on January 29, 2020.

51.    On February 21, 2020, AGLIC sent the Debtors a reservation of rights letter asserting that its excess policies for the 2007 through 2009 policy periods have not yet been triggered.[61]

**H.    The Debtors Are Filing as Redacted Exhibits to this Declaration All Notices to ACE of Initial Pre-Petition Claims and New Direct Tort Claims and that Insurance Company's Coverage Position.**

52.    Regarding ACE excess-layer Policy No. G24898593 005[62] for the period April 20, 2013 through April 20, 2014, ACE sent the Debtors an October 4, 2017 letter[63] acknowledging notice of Direct Tort Claimant M.B.'s Pre-Petition Complaint, but denying coverage for this Initial Pre-Petition Claim under this policy.

53.    Regarding the following three policies – (1) ACE excess-layer Policy No. G24898593 003[64] for the period April 1, 2011 through April 1, 2012, (2) ACE excess-layer Policy No. G24898593 004[65] for the period April 1, 2012 through April 1, 2013, and (3) ACE

---

[59] **Exhibit Q**.

[60] **Exhibit D.22** (Debtors' notice letters dated January 30, 2020 to AGLIC).

[61] **Exhibit D.23** (AGLIC's reservation of rights letter dated February 21, 2020).

[62] **Exhibit R**.

[63] **Exhibit D.24** (ACE's denial letter dated October 4, 2017).

[64] **Exhibit S**.

[65] **Exhibit T**.

excess-layer Policy No. G24898593 005[66] for the period April 20, 2013 through April 20, 2014, the Debtors provided notice on March 29, 2019[67] that these policies are potentially responsive to Direct Tort Claimants B.H.'s and C.A.'s Initial Pre-Petition Claims.

54.    On June 12, 2019, ACE sent the Debtors a letter, denying coverage for these Initial Pre-Petition Claims.[68]

55.    Regarding the following two policies – ACE excess-layer Policy No. G24898593 004[69] for the period April 1, 2012 through April 1, 2013 and ACE excess-layer Policy No. G24898593 005[70] for the period April 20, 2013 through April 20, 2014, the Debtors provided notice on November 12, 2019[71] that these policies are potentially responsive to Direct Tort Claimant K.R.'s Initial Pre-Petition Claim.

56.    On December 15, 2022, ACE sent the Debtors a letter, denying coverage for this Initial Pre-Petition Claims.[72]

57.    Regarding six ACE policies ((1) ACE excess-layer Policy No. G24898593[73] for the period April 1, 2009 through April 1, 2010, (2) ACE excess-layer Policy No. G24898593

---

[66] **Exhibit R**.

[67] **Exhibit D.25** (Debtors' notice letter dated March 29, 2019 to ACE).

[68] **Exhibit D.26** (ACE's denial letters dated June 12, 2019).

[69] **Exhibit T**.

[70] **Exhibit R**.

[71] **Exhibit D.27** (Debtors' notice letter dated November 12, 2019 to ACE).

[72] **Exhibit D.28** (ACE's denial letters dated December 15, 2022).

[73] *See* **Exhibit U** at 1-6.

002[74] for the period April 1, 2010 through April 1, 2011, (3) ACE excess-layer Policy No. G24898593 003[75] for the period April 1, 2011 through April 1, 2012, (4) ACE excess-layer Policy No. G24898593 004[76] for the period April 1, 2012 through April 1, 2013, (5) ACE excess-layer Policy No. G24898593 005[77] for the period April 20, 2013 through April 20, 2014, and (6) ACE excess-layer Policy No. G24898593 006[78] for the period April 1, 2014 through April 1, 2015), the Debtors provided notice on January 14, 2022[79] that these policies are potentially responsive to the New Direct Tort Claims of D.P., D.W., E.B., J.H., L.E., S.M., and S.W, and the Debtors demanded participation in the mediation of the bankruptcy case.

58.    On December 15, 2022, ACE sent the Debtors letters, denying coverage for these New Direct Tort Claims.[80]

**I.    The Debtors Are Filing as Redacted Exhibits to this Declaration Notices to Allied World of New Direct Tort Claims and that Insurance Company's Coverage Position.**

59.    Regarding six policies ((1) Allied World excess-layer Policy No. 0309-0061[81] for the period April 20, 2015 through April 20, 2016, (2) Allied World excess-layer Policy No.

---

[74] **Exhibit V**.

[75] **Exhibit S**.

[76] **Exhibit T**.

[77] **Exhibit R**.

[78] **Exhibit W**.

[79] **Exhibit D.29** (Debtors' notice letter dated January 14, 2022 to ACE).

[80] **Exhibit D.30** (ACE's denial letter dated December 15, 2022).

[81] **Exhibit X**.

0309-5871[82] for the period April 20, 2016 through April 20, 2017, (3) Allied World excess-layer Policy No. 0310-1356[83] for the period April 20, 2017 through April 20, 2018, (4) Allied World Insurance Company excess-layer Policy No. 0310-9283[84] for the period April 20, 2018 through April 20, 2019, (5) Allied World Insurance Company third-layer-excess Policy No. 0310-1780[85] for the period April 20, 2017 through April 20, 2018, and (6) Allied World Insurance Company third-layer-excess Policy No. 0310-9279[86] for the period April 20, 2018 through April 20, 2019), the Debtors provided notice on January 14, 2022[87] that these policies are potentially responsive to the New Direct Tort Claims of T.H., T.S., and B.S, and the Debtors demanded participation in the mediation of the bankruptcy case.

60.    On January 20, 2022, Allied World acknowledged notice of these New Direct Tort Claims, but has not, to date, provided a coverage position.[88]

**J.    The Debtors Are Filing as Redacted Exhibits to this Declaration All Notices to Westchester of Initial Pre-Petition Claims and that Insurance Company's Coverage Position.**

61.    Regarding Westchester second-layer-excess Policy No. G24045638001[89] for the period April 1, 2009 through April 1, 2010 and Westchester second-layer-excess Policy No.

---

[82] **Exhibit Y**.

[83] **Exhibit Z**.

[84] **Exhibit AA**.

[85] *See* **Exhibit Z** at 1, Form "GL 00139 00 (12/11)", Form "00157 (11/05)", Form "00136 (11/05)", Form "00241 (11/05)", and Form "CR MANU A".

[86] **Exhibit CC**.

[87] **Exhibit D.31** (Debtors' notice letter dated January 14, 2022 to Allied World).

[88] **Exhibit D.32** (Allied World's letter dated January 20, 2022 acknowledging notice).

[89] **Exhibit DD**.

G24095885001[90] for the period April 1, 2010 through April 1, 2011, the Debtors provided notice

on January 18, 2022[91] that these policies are potentially responsive to A.H.'s Initial Pre-Petition

Claim.

62.    On June 8, 2022, Westchester acknowledged notice of this Initial Pre-Petition

Claim, but has not, to date, provided a coverage position.[92]

**K.     The Debtors Are Filing as Redacted Exhibits to this Declaration All Notices to National Union of New Direct Tort Claims and that Insurance Company's Coverage Position.**

63.    Regarding four policies sold by National Union Fire Insurance Company of

Pittsburgh, PA ("National Union"), including second-layer-excess Policy No. 015375222[93] for

the period April 20, 2015 through April 20, 2016, second-layer-excess Policy No. 015375241[94]

for the period April 20, 2016 through April 20, 2017, second-layer-excess Policy No.

015375250[95] for the period April 20, 2017 through April 20, 2018, and second-layer-excess

Policy No. 023627270[96] for the period April 20, 2018 through April 20, 2019), the Debtors

provided notice on January 18, 2022[97] that these policies are potentially responsive to the New

---

[90] **Exhibit EE**.

[91] **Exhibit D.33** (Debtors' notice letter dated January 18, 2022 to Westchester).

[92] **Exhibit D.34** (Westchester's email dated June 8, 2022 acknowledging notice).

[93] **Exhibit FF.**

[94] **Exhibit GG**.

[95] **Exhibit HH**.

[96] **Exhibit II**.

[97] **Exhibit D.35** (Debtors' notice letter dated January 18, 2022 to National Union).

Direct Tort Claims of T.H., T.S., and B.S., and the Debtors demanded participation in the mediation of the bankruptcy case.

64.    On January 19, 2022, National Union acknowledged notice of these New Direct Tort Claims, but has not, to date, provided a coverage position.[98]

**L.    The Debtors Are Filing as Redacted Exhibits to this Declaration All Notices to Great American of New Direct Tort Claims and that Insurance Company's Coverage Position.**

65.    Regarding two policies sold by Great American, including fourth-layer-excess Policy No. EXC4100770[99] for the period April 20, 2017 through April 20, 2018 and fourth-layer-excess Policy No. EXC1615069[100] for the period April 20, 2018 through April 20, 2019), the Debtors provided notice on January 14 and January 31, 2022[101] that these policies are potentially responsive to the New Direct Tort Claims of T.S. and B.S., and the Debtors demanded participation in the mediation of the bankruptcy case.

66.    On December 13, 2022, Great American acknowledged notice of these New Direct Tort Claims, but has not, to date, provided a coverage position.[102]

**THE DEBTORS ARE FILING AS REDACTED EXHIBITS TO THIS DECLARATION ALL NOTICES TO ALPHA CENTURION'S INSURANCE COMPANIES OF THE INITIAL PRE-PETITION CLAIMS AND NEW DIRECT TORT CLAIMS AND THE INSURERS' COVERAGE POSITIONS, IF ANY**

---

[98] **Exhibit D.36** (National Union's email dated January 19, 2022 acknowledging notice).

[99] *See* **Exhibit BB** at Form "GAI 6600 (Ed. 06/97)".

[100] **Exhibit BB**.

[101] **Exhibits D.37** (Debtors' notice letters dated January 14 and January 31, 2022 to Great American).

[102] **Exhibit D.38** (Great American's email dated December 13, 2022 acknowledging notice).

67.     As detailed below on an insurer-by-insurer basis, the Debtors provided notice of the Initial Pre-Petition Claims and New Direct Tort Claims to the insurance companies that sold all potentially responsive policies to Alpha Centurion (to the extent the Debtors have knowledge of such policies).

68.     The Debtors are filing as redacted exhibits to this Declaration all electronic copies of the above-referenced notice letters.

69.     To the extent Alpha Centurion's insurance companies responded to the notice letters with a coverage position, the Debtors are filing as redacted exhibits to this Declaration all electronic copies of such coverage position correspondence.

70.     Regarding Everest primary-layer Policy No. 51GL002418-081 for the period March 11, 2008 through March 11, 2009, the Debtors provided notice on January 14, 2022[103] and a follow-up letter on August 12, 2022[104] that this policy is potentially responsive to A.H.'s Initial Pre-Petition Claim, but Everest not responded to date with an acknowledgement or coverage position.

71.     Regarding eight policies sold by PIIC, including (1) primary-layer Policy No. PHPK396765[105] for the period March 11, 2009 through March 11, 2010, (2) primary-layer Policy No. PHPK540637[106] for the period March 11, 2010 through March 11, 2011, (3) primary-layer Policy No. PHPK693782[107] for the period March 11, 2011 through March 11, 2012, (4) primary-

---

[103] **Exhibit D.39** (Debtors' notice letters dated January 14, 2022 and August 12, 2022 to Everest).

[104] *Id*.

[105] *See* **Exhibit D.41** at 12.

[106] *See* **Exhibit JJ** at Form "CA DS 03 03 10" "Page 1 of 13".

[107] **Exhibit JJ**.

layer Policy No. PHPK839522[108] for the period March 11, 2012 through March 11, 2013, (5)

primary-layer Policy No. PHPK991117[109] for the period March 11, 2013 through May 15, 2013;

(6) excess-layer Policy No. PHUB360526[110] for the period September 26, 2011 through March

11, 2012; (7) excess-layer Policy No. PHUB376235[111] for the period September 26, 2012 through

March 11, 2013; and (8) excess-layer Policy No. PHUB414051[112] for the period March 11, 2013

through May 15, 2013), the Debtors provided notice on January 14, 2022[113] that these policies are

potentially responsive to the Initial Pre-Petition Claims and New Direct Tort Claims of A.H.,

B.H., C.A., D.P., D.W., K.R., L.E., M.B., and S.W., and the Debtors demanded participation in

the mediation of the bankruptcy case.

72.    On February 23, 2022, PIIC denied coverage for these Initial Pre-Petition Claims

and New Direct Tort Claims.[114]

73.    Regarding Capitol primary-layer Policy No. CS02272641-01[115] for the period

August 5, 2013 through August 5, 2014, the Debtors provided notice on January 14, 2022[116] that

this policy is potentially responsive to the Initial Pre-Petition Claims and New Direct Tort

---

[108] **Exhibit KK**.

[109] **Exhibit LL**.

[110] **Exhibit MM**.

[111] **Exhibit NN**.

[112] **Exhibit OO**.

[113] **Exhibit D.40** (Debtors' notice letter dated January 14, 2022 to PIIC).

[114] **Exhibit D.41** (PIIC's denial letter dated February 23, 2022).

[115] **Exhibit PP**.

[116] **Exhibit D.42** (Debtors' notice letter dated January 14, 2022 to Capitol).

Claims of B.H., C.A., D.W., K.R., M.B., and S.W. and the Debtors demanded participation in the mediation of the bankruptcy case.

74.    On September 8, 2022, Capitol denied coverage for these Initial Pre-Petition Claims and New Direct Tort Claims.[117]

75.    Regarding Western Heritage Insurance Company ("Western Heritage") primary-layer Policy No. SCP1006746[118] for the period August 5, 2014 through August 5, 2015, the Debtors provided notice on January 14, 2022[119] that this policy is potentially responsive to the New Direct Tort Claims of B.S., E.B., J.H., S.M., S.W., and T.S., and the Debtors demanded participation in the mediation of the bankruptcy case.

76.    On January 20, 2022, Western Heritage acknowledged notice of these New Direct Tort Claims, but has not, to date, provided a coverage position.[120]

Respectfully submitted,

Dated:  August 21, 2023                    By:    /s/Luke E. Debevec
                                                  Luke E. Debevec (PA I.D. No. 92860)
                                                  John N. Ellison (PA I.D. No. 51098)
                                                  Reed Smith LLP
                                                  Three Logan Square
                                                  1717 Arch Street
                                                  Philadelphia, PA 19103
                                                  Telephone:  (215) 851-8100
                                                  Facsimile:  (215) 851-1420
                                                  E-mail:ldebevec@reedsmith.com
                                                       jellison@reedsmith.com

---

[117] **Exhibit D.43** (Capitol's denial letter dated September 8, 2022).

[118] **Exhibit QQ**.

[119] **Exhibit D.44** (Debtors' notice letter dated January 14, 2022 to Western Heritage).

[120] **Exhibit D.45** (Western Heritage's letter dated January 20, 2022 acknowledging notice).